## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

GRIFOLS, S.A. and GRIFOLS SHARED
SERVICES NORTH AMERICA, INC.,

Plaintiffs,

v.

DANIEL YU, an individual, GOTHAM CITY
RESEARCH LLC, GENERAL INDUSTRIAL
PARTNERS LLP, CYRUS DE WECK, an
individual, JOHN DOES 1-10, and XYZ
CORPORATIONS 1-10.

Defendants.

No. 1:24-cv-00576-LJL

## GRIFOLS, S.A. AND GRIFOLS SHARED SERVICES NORTH AMERICA, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

PROSKAUER ROSE LLP

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com

*Counsel for Plaintiffs Grifols, S.A.
and Grifols Shared Services North
America, Inc.*

## <u>TABLE OF CONTENTS</u>[*]

PRELIMINARY STATEMENT.................................................................................................1

FACTUAL BACKGROUND ...............................................................................................5

    **I.**   Grifols ...........................................................................................................5

    **II.**  Defendants and Their Short Position in Grifols............................................5

    **III.** The False and Defamatory Gotham Report. ................................................6

    **IV.** The CNMV Report and Ongoing Criminal Investigation Into Gotham. ..........................7

LEGAL STANDARD .........................................................................................................8

ARGUMENT .....................................................................................................................9

    **I.**   GRIFOLS' DETAILED FACTUAL ALLEGATIONS STATE A VIABLE CLAIM FOR DEFAMATION AND LIBEL AGAINST GOTHAM AND YU. ....................................9

        **a.**  Grifols Has Sufficiently Alleged that Defendants Published Written Defamatory Statements of Fact Concerning Grifols.....................................................10

            **i.**   Defendants' Boilerplate Disclaimer Does Not Transform the Challenged Statements Into Protected Financial Commentary. ..........................................10

            **ii.**  Defendants' Use of Qualifying Language in the Gotham Report Does Not Render the Challenged Statements Protected Opinion. ...................................13

            **iii.** Citations to Public Documents or Lack of Reliance on Undisclosed Facts Do Not Shield Defendants from Liability................................................15

            **iv.** The Challenged Statements Are Factual. ........................................................16

        **b.**  Grifols Has Sufficiently Alleged that Defendants Published Each Challenged Statement With Actual Malice. ....................................................22

        **c.**  Grifols Has Sufficiently Alleged the Falsity of Each of Challenged Statement. ......27

        **d.**  Grifols Has Sufficiently Alleged Libel by Implication in the Alternative. ..............30

    **II.**  GRIFOLS HAS ALLEGED A VIABLE TORTIOUS INTERFERENCE CLAIM.........30

    **III.** GRIFOLS HAS ALLEGED VIABLE AIDING AND ABETTING CLAIMS AGAINST DE WECK AND GIP. ..............................................................................31

    **IV.** GRIFOLS HAS ALLEGED A VIABLE CLAIM FOR UNJUST ENRICHMENT. .......31

    **V.**  GSSNA IS AN APPROPRIATE PLAINTIFF.................................................32

CONCLUSION...................................................................................................................32

---

[*] Capitalized terms and party names not defined here have the same meaning as in the Amended Complaint. Emphasis in quotations is added unless otherwise noted.

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amira Nature Foods, Ltd. v. Prescience Point LLC*,
   No. 15-cv-09655-VEC (S.D.N.Y.) (Oct. 17 *Hr'g. Tr.*, ECF No. 66)
   ................................................................................................................11, 13, 14, 27

*Arar v. Ashcroft*,
   585 F.3d 559 (2d Cir. 2009)................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................9

*Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*,
   151 F. Supp. 3d 287 (E.D.N.Y. 2015) ...............................................................12

*Biro v. Conde Nast*,
   807 F.3d 541 (2d Cir. 2015)..........................................................................22, 24

*Biro v. Conde Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012)................................................................30

*Boule v. Hutton*,
   328 F.3d 84 (2d Cir. 2003)..................................................................................9

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004)..............................................................................31

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182 (2004) ..........................................................................................31

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014)...............................................................................17

*DiFolco v. MSNBC Cable L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)...............................................................................20

*DiLorenzo v. N.Y. News, Inc.*,
   78 A.D.2d 669 (1980) ........................................................................................25

*Flamm v. Am. Ass'n of Univ. Women*,
   201 F.3d 144 (2d Cir. 2000)...........................................................................10, 14

*Greenberg v. Spitzer*,
   132 N.Y.S.3d 601 (N.Y. Sup. Ct. 2020) ...........................................................18

*Gross v. N. Y. Times Co.*,
   82 N.Y.2d 146 (N.Y. 1993) ..............................................................................19

*Guccione v. Hustler Mag., Inc.*,
   800 F.2d 298 (2d Cir. 1986)..............................................................................27

*Harte Hanks Commc'ns. Inc. v. Connaughton.*
   491 U.S. 657 (1989).....................................................................................22, 23

*Immuno AG v. Moor-Jankowski*,
   77 N.Y.2d 235 (1991) ..................................................................................12, 17

*Jewell v. NYP Holdings., Inc.*,
   23 F. Supp. 2d 348 (S.D.N.Y. 1998)................................................................22

*Joyce v. Thompson Wigdor & Gilly LLP*,
   No. 06-15315, 2008 WL 2329227 (S.D.N.Y. June 3, 2008) ...........................13

*Kipper v. NYP Holdings Co., Inc.*,
   12 N.Y.3d 348 (2009) ......................................................................................24

*Lifemd, Inc. v. Lamarco*,
   607 F. Supp. 3d 576 (W.D. Pa. 2022)..............................................................13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).........................................................................................32

*Lynch v. City of N.Y.*,
   952 F.3d 67 (2d Cir. 2020)............................................................................8, 9

*Mi-Kyung Cho v. Young Bin Café*,
   42 F. Supp. 3d 495 (S.D.N.Y. 2013)................................................................30

*Milkovich v. Lorain J. Co.*,
   497 U.S. 1 (1990)............................................................................................13

*NovaGold Res., Inc. v. J Cap. Rsch.USA LLC*,
   No. 20-cv-2875 (LDH)(PK), 2022 WL 900604 (E.D.N.Y. Mar. 28, 2022)...................passim

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) ..........................................................................13

*Palin v. N.Y. Times Co.*,
   482 F. Supp. 3d 208 (S.D.N.Y.), *modified*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020) ..............................................................................................................26

*Palin v. N.Y. Times Co.*,
   940 F.3d 804 (2d Cir. 2019)......................................................................passim

*Pisani v. Staten Island Univ. Hosp.*
    440 F. Supp. 2d 168 (E.D.N.Y. 2006) ..................................................................22

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705 (S.D.N.Y. 2014).......................................................... passim

*Rinaldi v. Holt, Rinehart & Winston*,
    42 N.Y.2d 369 (N.Y. 1977) ...........................................................................19

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012)..............................................................................25

*Silvercorp Metals Inc. v. Anthion Mgmt. LLC*,
    36 Misc. 3d 1231(A) (Sup. Ct. 2012) ...................................................11, 12, 13

*St. Amant v. Thompson*,
    390 U.S. 727 (1968)........................................................................................27

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017)...........................................................................27

*Treppel v. Biovail Corp.*,
    2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005).................................................9, 27

*Yangtze River Port and Logistics Ltd. v.Rsch.*
    No. 150721/2019, 2020 WL 905770, at *9 (N.Y. Sup. Ct. Feb. 25, 2020) ..................................12

## PRELIMINARY STATEMENT

Defendants are not typical short sellers or analysts who simply shared an opinion about a stock. Their principal, Daniel Yu, is a convicted criminal and fraudster. Defendants are being criminally investigated for spreading false news and rumors about Grifols to manipulate the market for their own personal gain. The Gotham Report was a malicious attack on Grifols, not protected speech.

Around Spring 2023, Defendants "shorted" Grifols stock and bet on the share price declining. They bet wrong. By late 2023, Grifols' share price had risen, and more growth was projected for 2024. To avoid massive losses from a "short squeeze," Defendants set out to defraud the market. They wrote and published the false and defamatory Gotham Report, which claimed that Grifols stock was "worthless," and asserted that Grifols fails to disclose related-party loans and manipulates its financials. Defendants knew these statements were false. They published them because they wanted to drive down Grifols' share price to benefit their ill-advised short position. Unfortunately, they succeeded. The day that Defendants published the Gotham Report, a panic sell-off ensued that erased almost half of Grifols' market value. Grifols' investors lost over €3.8 billion. Despite telling the market that Grifols' shares would head to zero, Defendants, knowing that would never happen, immediately dumped their short position and walked away with a massive profit. While Grifols' share price has partially recovered, there is still lasting damage to Grifols' reputation from Defendants' short-and-distort scheme.

The Motion ignores Grifols' factual allegations and tries to recast Defendants as "journalists" who were vindicated by the Spanish securities regulator, the CNMV. This is another lie. Not only do Defendants distort the CNMV's statements about Grifols and Gotham, but Defendants entirely omit the CNMV's latest statements. This past September, before Defendants filed their Motion, the CNMV announced it referred Gotham to the Spanish prosecutor to

investigate criminal violations related to their market manipulation of Grifols stock. The Motion pretends this never happened. And since then, the Spanish National Court, Audiencia Nacional,[1] announced it opened a criminal probe into Defendants. Audiencia Nacional has "asked police to find the addresses of Daniel Yu, Gotham's founder, as well as of four of the fund's executives," and has asked Grifols for its pleading in this lawsuit.[2]

Consistent with the Spanish criminal investigation, Grifols alleges that Defendants sought to, and did, manipulate the market through fraudulent statements. Grifols' factual allegations establish that the statements in the Gotham Report—which knowingly, yet falsely, accuse Grifols of malfeasance and declare Grifols' stock to, *in fact,* be headed to zero—are not protected financial commentary. Each of the challenged defamatory statements made by Defendants in the Gotham Report (the "Challenged Statements") is plain, capable of being proven true or false, and when considered in context by the reader, understood to be conveying facts about Grifols.

Defendants treat their Motion as though they are the party whose characterizations of their statements and actions must be accepted as true as this stage of the litigation, when of course it is the opposite. Indeed, the Motion never addresses the relevant pleading standard. Defendants instead try to distract by pointing the Court to statements in the Gotham Report that Grifols has not challenged, arguing that those irrelevant statements are opinion or substantially true. And while Defendants cite a slew of inapposite defamation cases, they fail to cite directly on-point cases—

---

[1] Audiencia Nacional is a special national court in Spain with specific competence in the most serious and most relevant social crimes, including terrorism, organized crime, drug trafficking, crimes against the Crown, and serious financial crimes. *See* https://www.poderjudicial.es/cgpj/en/Judiciary/National-High-Court/Institutional-information/What-is-the-National-High-Court-/.

[2] https://www.reuters.com/business/healthcare-pharmaceuticals/spanish-court-opens-investigation-into-gotham-citys-attack-grifols-2024-11-19/.; https://www.reuters.com/markets/europe/spains-market-regulator-sees-signs-manipulation-grifols-gotham-dispute-2024-12-05/.

one involving their own counsel—in which courts have rejected similar efforts by deceitful short sellers to avoid liability by adding disclaimers and qualifiers to a defamatory report.

The Motion also ignores Grifols' factual allegations that show Defendants acted with actual malice. Grifols alleges that Defendants knew each specific Challenged Statement was false. Grifols also pleads a sequence of facts that shows Defendants' actual malice more generally:

- Defendants began investigating Grifols and shorting its stock in early 2023;

- Around the same time, Grifols began taking steps to deleverage its balance sheet and, in turn, its value began to rise;

- Faced with an impending "short squeeze," Defendants published their lies to the investing public via the Gotham Report, claiming that Grifols was engaged in deceitful accounting practices and that its stock was "worthless";

- As Defendants intended, their lies caused the market to panic and Grifols' share price plummeted, wiping out 43% of the stock's value;

- That same day, before Grifols could rebut the Gotham Report's lies and salvage its stock price, Defendants *immediately* dumped their short position;

- Once they secured this windfall,[3] Defendants tried to limit their legal exposure by quietly uploading a revised Gotham Report that no longer claimed that Grifols failed to disclose a $95 million loan; and

- Defendants failed to alert the public to their revision while allowing the original lie to be re-disseminated across the public domain even still today.

In the Motion, Defendants' arguments follow a pattern that is illustrated by their false statement that Grifols did not disclose the $95 million loan. First, Defendants contend they merely expressed their opinion, while pointing to language in the Gotham Report that Grifols did not challenge. For example, with respect to the supposedly undisclosed $95 million loan to Scranton, Defendants argue that their statements that the loan was "suspicious" or "odd" were opinion. Mot. at 19. But those are not the statements Grifols is suing over. The relevant Challenged Statement,

---

[3] According to Audiencia Nacional's announcement of its criminal investigation into Defendants, they profited approximately $10 million from their short-and-distort scheme. *See* n.2, *supra*.

which the Motion ignores, is Defendants' factual assertion that "Grifols does not disclose that the company lent $95 million to Scranton." AC ¶ 138. That is a statement of fact. And it is false.

Second, Defendants contend that what they said about Grifols was substantially true, while distorting the CNMV's statements and their relevance to this case. For example, Defendants point to a statement from the CNMV about a $200 million transaction (Mot. at 25), which the Gotham Report did not address, was not a loan, and has nothing to do with the $95 million loan that the Gotham Report addressed. The CNMV's comment that the $200 million transaction should have been "broken down" (*id.*) does not mean it was substantially true that "Grifols does not disclose that the company lent $95 million to Scranton" (AC ¶ 138). Again, Defendants' statement is false: Grifols disclosed the loan in each annual report from 2018 to 2022. *Id.* ¶ 139. Indeed, the CNMV said that the Gotham Report's statement about the $95 million loan was "***not true***." AC ¶ 141.

Third, Defendants claim that Grifols failed to plead actual malice, while ignoring Grifols' factual allegations that do just that. For example, with respect to the false statement that Grifols did not disclose the Scranton loan, Grifols alleges that Defendants knew the loan was disclosed because the Gotham Report cites the very annual reports containing the disclosure. AC ¶ 140. Grifols also alleges that, after dumping their short position, Defendants quietly modified the Gotham Report to say the disclosure was "buried" in a note to the annual report (which was also false). A "journalist" acting in good faith would have alerted the public to their mistake and their correction. As criminal market manipulators acting with malice, Defendants did the opposite: they dumped their short position and then uploaded a revised report without telling anyone they did so.

The Motion takes the same approach for the other Challenged Statements, distorting the statements Grifols challenged and focusing on other irrelevant statements in the Gotham Report, mischaracterizing and omitting the CNMV's findings, and ignoring Grifols' well-pleaded

allegations establishing falsity and actual malice. These efforts to distract and obfuscate should be rejected. Grifols has plausibly alleged all its claims. The Motion should be denied in full.

## FACTUAL BACKGROUND

### I.     Grifols

Grifols is a global healthcare company that supplies patients with lifesaving plasma-derived medicines. AC ¶ 2. As a public company, Grifols submits extensive documentation to its securities regulators in both Spain (CNMV) and the United States (SEC), evidencing, among other things, the company's audited financial statements, which discloses material information about Grifols, including its business, organizational structure, management and shareholders, financial information, and the offered securities and placement procedures. *Id.* ¶¶ 69, 72. As a foreign issuer, Grifols' financial reporting adheres to International Financial Reporting Standards ("IFRS"). *Id.* ¶ 87. The United States and Canada account for the majority of Grifols' total net revenue, the substantial majority of which comes from the United States. *Id.* ¶ 76. In the United States, Grifols Shared Services North America, Inc. ("GSSNA") is the main operational company that provides services for Grifols' business. *Id.* ¶¶ 78–79.

### II.    Defendants and Their Short Position in Grifols.

Daniel Yu, a convicted felon, formed Gotham as a mouthpiece to publish "reports" concerning purported fraud and mismanagement by public companies. *Id.* ¶¶ 96–97. Yu and Cyrus DeWeck partnered to form GIP as a short-selling fund (*id.* ¶ 107), and regularly use Gotham to target companies with short reports (*id.* ¶¶ 99, 108–13). Beginning in Spring 2023, Defendants amassed a large short position in Grifols, betting that Grifols' share price would decline. *Id.* ¶¶ 118–120. Problematically for Defendants and their short position, however, Grifols announced and engaged in significant debt deleveraging in the second half of 2023 (*id.* ¶¶ 114–117), leading to significant gains in Grifols' share price (for example, rising almost 10% on the NASDAQ on

5

December 29, 2023). *Id.* ¶ 120. Grifols' strong performance meant that Defendants were facing

potentially massive losses—in other words, a "short squeeze." *Id.* ¶¶ 119–20.

### III.    The False and Defamatory Gotham Report.

To salvage their ill-advised trade, Defendants authored the Gotham Report and then

published it on January 9, 2024. *Id.* ¶¶ 121–24. Grifols' Amended Complaint sets forth 28 discrete

false and defamatory statements in the Gotham Report. For the Court's convenience, an index of

these statements is attached as an Appendix. The statements are organized into six topics:

**(1) The "Undisclosed" Scranton Loan** (AC ¶¶ 137–148): Defendants falsely claimed that Grifols did not disclose a $95 million dollar loan to Scranton in Grifols' Annual Reports, despite the loan being disclosed on every single Annual Report from 2018 to 2022. The Gotham Report's title references this loan: "Grifols SA: Scranton and the Undisclosed Debts." The CNMV has confirmed this statement was false.

**(2) Grifols' Shares are "Worthless"** (*id.* ¶¶ 192–200): The Gotham Report falsely told the market that Grifols' shares are likely "worthless" and "worth zero." This panicked the market into a sell-off. But Grifols' share price never went to zero. And Defendants exited their short position immediately after publishing their defamatory report, proving they did not actually believe the stock would go to zero.

**(3) Grifols' EBITDA is "Materially Misleading and Incorrect"** (*id.* ¶¶ 149–153): Defendants lied when they said Grifols' definition of EBITDA is "materially misleading and incorrect" and claimed that Grifols "manipulates" its EBITDA. Indeed, Grifols' EBITDA is explicitly defined by Grifols' *lenders*, including global banks like J.P. Morgan, BNP Paribas, and Bank of America, and thus cannot be incorrect or manipulated.

**(4) Grifols' "Manipulation" of its Debt and Leverage Ratio** (*id.* ¶¶ 154–191): Defendants similarly claimed that Grifols "manipulated reported debt … to artificially reduce reported leverage." To convince the Gotham Report's readers this was true, Defendants falsely added over €1 billion in debt to Grifols' financials, while intentionally omitting key information. The CNMV reviewed Defendants' debt and leverage allegations and found they had no factual basis.

**(5) Grifols "Has No Claim" to Grifols Diagnostic Solutions' Income** (*id.* ¶¶ 201–208): Defendants claimed that Grifols had "no claim" to income from its subsidiary GDS. This was false: GDS is a Grifols majority-owned subsidiary. IFRS requires income from majority-owned subsidiaries, like GDS, to be included as income in Grifols' EBITDA calculation. The CNMV has confirmed as much.

6

(6) **Grifols' "Unexplained" Payments to ImmunoTek** (*id.* ¶¶ 209–216): Defendants lied that Grifols' payments to ImmunoTek were "unexplained," when in fact those payments were explained and disclosed via a collaboration agreement between ImmunoTek and Grifols. The CNMV raised no concerns about these payments.

Defendants made these false statements aiming to panic the market. That is what happened, with Grifols shares falling as much as 43% during trading on January 9, 2024. *Id.* ¶¶ 126–27. On that day, Defendants reduced their short position from 0.57% to 0.06%, resulting in a massive windfall. *Id.* ¶ 128. The Audiencia Nacional's announcement that Defendants are being criminally investigated noted that Defendants made nearly $10 million from their short-and-distort scheme.

After Defendants dumped their short position on January 9, 2024, Defendants revised the Gotham Report's statements about the disclosure of $95 million loan, and silently uploaded a modified report to Gotham's website on January 10, 2024. *Id.* ¶ 21. In the altered Gotham Report, Defendants withdrew their false claim that Grifols never disclosed to regulators and the market the $95 million loan. *Id.* Defendants did not alert the public that their original report—which had caused Grifols' share price to plummet—contained this material misstatement of fact. *Id.* ¶ 23.

## IV.   The CNMV Report and Ongoing Criminal Investigation Into Gotham.

In response to the Gotham Report, the CNMV requested information related to Grifols' financial reporting for the years 2018 through 2022, which Grifols provided. *Id.* ¶ 9. On January 23, 2024, the CNMV released a statement that it was "analysing Gotham's conduct … to determine whether such conduct is compliant with European market abuse regulations," including "those tackling the dissemination of misleading information." *Id.* On March 21, 2024, the CNMV issued findings regarding Grifols' financial reporting for 2018 to 2022 (the "CNMV Report"). *Id.* ¶ 10.

The "general conclusion" of the CNMV Report was that Grifols' 2018-2022 financial reporting, taken as whole, contains no "significant errors." *Id.* The CNMV also found "no evidence" that Grifols' disclosed financial indebtedness for 2018-2022 "does not correspond to

reality." *Id.* The CNMV Report also directly refuted some of the Challenged Statements. It concluded that Grifols' practices discussed in those statements were "reasonable" and "in accordance with" applicable accounting standards, and that the Gotham Report's statement that the Scranton loan was not disclosed in Grifols' annual reports was "not true." *Id.* ¶¶ 10, 20. The CNMV expressed concerns only about (1) the detail and accuracy of select financial breakdowns and explanatory notes for certain reporting years, and (2) the detail provided alongside the reporting of Grifols' EBITDA and debt-to-EBITDA ratio. *Id.* As a result, the CNMV concluded that Grifols does not "need to carry out any restatement of [its] accounts." *Id.* ¶ 10.

On September 25, 2024, the CNMV announced that it had referred Gotham to the Spanish prosecutor to investigate criminal violations related to their market manipulation of Grifols stock.[4] On November 19, 2024, Judge Jose Luis Calama, of the Audiencia Nacional, opened a criminal probe into the Gotham Report.[5] Judge Calama announced there was sufficient evidence to merit investigating the possible violation of market and consumer protection laws via "dissemination of news or rumors ... that could contain totally or partly false" information about Grifols. *Id.*[6]

## **LEGAL STANDARD**

Glaringly, Defendants avoid addressing the standard of review for the Motion. "The court, in deciding a Rule 12(b)(6) motion to dismiss a complaint, is required to accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir.

---

[4] https://www.cnmv.es/webservices/verdocumento/ver?t=%7B39a373bd-2db2-49a6-a384-a76acd7ae695%7D.

[5] https://www.reuters.com/business/healthcare-pharmaceuticals/spanish-court-opens-investigation-into-gotham-citys-attack-grifols-2024-11-19/.

[6] Grifols is aware of a recent report that the SEC allegedly "closed" its investigation into GIP related to Grifols. *See* https://www.bloomberg.com/news/articles/2024-12-05/sec-drops-probe-into-gotham-over-report-on-grifols-accounts?cmpid=socialflow-twitter-business&utm_content=business&utm_campaign=socialflow-organic&utm_source=twitter&utm_medium=social. To the extent Defendants contend this report somehow vindicates them, Grifols notes the report says nothing about a probe by the SEC into *Gotham*. Moreover, despite the article's headline, the article simply quotes from a non-public letter that apparently states the SEC does not "intend to recommend an enforcement action" against GIP, with no further context.

2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The Court also must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Id.* (quoting *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009)). To withstand a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that the Court can draw a "reasonable inference" of the defendant's liability for the alleged misconduct. *Iqbal*, 556 U.S. at 677–78.

## ARGUMENT

## I.  GRIFOLS' DETAILED FACTUAL ALLEGATIONS STATE A VIABLE CLAIM FOR DEFAMATION AND LIBEL AGAINST GOTHAM AND YU.[7]

To state a claim for defamation by libel per se in New York, a plaintiff must allege: "(1) a written defamatory statement of [fact] concerning the plaintiff; (2) publication to a third party; (3) fault [(either negligence or actual malice depending on the status of the libeled party)]; (4) falsity of the defamatory statement; and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).[8] At this stage, the falsity of the alleged defamatory statements is presumed, *Treppel v. Biovail Corp.*, 2005 WL 2086339, at *8 (S.D.N.Y. Aug. 30, 2005), and the Court "must decide [only] whether the statements alleged to have caused plaintiff injury are reasonably susceptible to the defamatory meaning imputed to them[,]" *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 718 (S.D.N.Y. 2014) (quotations omitted). Grifols meets each element of defamation by libel per se with ease.

---

[7] For brevity, Grifols refers to Gotham and Yu as "Defendants" in this section.

[8] For purposes of this motion only, Grifols assumes that it is required to plead actual malice. Defendants do not contend that Grifols failed to adequately plead the defamation by libel elements (2) publication to a third party and (5) special damages or per se actionability. Grifols has sufficiently alleged both elements. *See* AC ¶¶ 4, 17, 51, 122, 142, 232, 234 (publication to a third party); *id.* ¶ 238 (per se actionability); *id.* ¶¶ 222–230 (special damages). Moreover, it is well-settled that a statement that "impugns the basic integrity of a business" is per se defamatory. *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003). Defendants do not dispute that the Gotham Report is rife with such statements.

### a.  Grifols Has Sufficiently Alleged that Defendants Published Written Defamatory Statements of Fact Concerning Grifols.

Defendants argue that the Challenged Statements are protected opinion. To decide whether an allegedly defamatory statement is fact or opinion, New York courts consider three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements can be proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal ... readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir. 2000) (citations omitted). "At bottom, the inquiry is whether a reasonable listener is likely to have understood the statements as conveying provable facts about the plaintiff." *Restis*, 53 F. Supp. 3d at 719.

Defendants try to mount an "opinion" defense by arguing the Gotham Report: (i) has a disclaimer about Defendants' short position (Mot. § I(A)(i)); (ii) includes qualifying language suggesting that some statements are opinion (*id.* § I(A)(ii)); and (iii) cites publicly available documents and therefore does not imply reliance on undisclosed facts (*id.* § I(A)(iii)). Defendants are wrong on each point. Each Challenged Statement is actionable.

### i.  Defendants' Boilerplate Disclaimer Does Not Transform the Challenged Statements Into Protected Financial Commentary.

Defendants contend the statements in the Gotham Report must be considered protected financial commentary because Defendants are "known short sellers" and the Gotham Report contains a disclaimer at its outset stating that Defendants hold a short position in Grifols' stock. Mot. at 6. Defendants also argue that this disclosure somehow cabins the Gotham Report into a limited audience of "financially literate" readers, thereby creating context that necessarily leads a reader to conclude Defendants' statements amount to opinion. *Id.* These arguments fail.

First, "[a] [d]efendant is not absolved from defamation liability simply by virtue of being a short-seller or by the inclusion of a blanket disclosure that its Report is an opinion." *NovaGold*

*Res., Inc. v. J Cap. Rsch.USA LLC*, No. 20-cv-2875 (LDH)(PK), 2022 WL 900604 at *12 n.4 (E.D.N.Y. Mar. 28, 2022).[9] Indeed, *NovaGold* found that despite a short seller's inclusion of a disclaimer at the outset of its report, the "broad disclaimer[] on [its] own [is] insufficient to cloak the entire Report in the protections afforded to opinions." *Id.* The disclaimer analyzed in *NovaGold* is nearly identical to Defendants' disclaimer in the Gotham Report:

| Gotham Report Disclaimer[10] | NovaGold Disclaimer[11] |
|---|---|
| **"Opinion" Language:** <br> "Our research expresses our opinions, which we have based upon publicly obtainable information, field research, inferences and deductions through our due diligence and analytical process." <br><br> **Disclosure of Related Financial Position:** <br> "At the time of publication of this Report, GOTHAM CITY RESEARCH LLC, its affiliates, or related persons […] hold short positions in the issuer mentioned in this Report… the reader of the Report must bear in mind that GOTHAM CITY RESEARCH LLC's interest and that of its affiliates is to see the price of the issuer's stock decline." | **"Opinion" Language:** <br> Our research and reports express our opinions, which we have based upon generally available information, field research, inferences and deductions through our due diligence and analytical process. <br><br> **Disclosure of Related Financial Position:** <br> "[A]s of the publication date of our reports and research, J Capital Research USA LLC may benefit from short positions a client has in all stocks […] covered herein, and therefore stands to realize significant gains in the event that the price of either declines." |

A boilerplate disclaimer at the outset of a "short report" does not convert its statements into protected opinion. *NovaGold*, 2022 WL 900604 at *12; *Amira Nature Foods, Ltd. v. Prescience Point LLC*, No. 15-cv-09655-VEC (S.D.N.Y.) (Oct. 17, 2016 *Hr'g. Tr.* at 59:23-25, ECF No. 66)("*Amira*") ("Defendants cannot avoid liability simply by including a legal disclaimer").[12]

---

[9] It is surprising that the Motion does not address *NovaGold*. In addition to its factual similarities to this case, which are discussed below, counsel for Defendants also represented the defendants in *NovaGold*. *NovaGold* also rejected many of the same arguments Defendants make here.

[10] *See* ECF No. 22-1 at 2.

[11] *See NovaGold Res, Inc v. J. Cap. Rsch.USA LLC*, No. 20-cv-2875 (LDH)(PK), (ECF No. 39-1 (Ex. A – JCap Report at 1)).

[12] To argue otherwise, Defendants rely on inapposite cases. *Yangtze* and *Silvercorp* did not hold that the inclusion of a disclaimer automatically renders subsequent statements protected opinion. Nor did they hold that the corresponding defamation claims must be dismissed based on a conflict-of-interest disclosure alone. Those courts granted the defendants' motions because those plaintiffs failed to allege facts contradicting the challenged statements or establishing that those statements were not protected opinion. *See Silvercorp*

Second, Defendants cannot avoid liability based on their assertion that the Gotham Report was disseminated only to a "financially literate" audience who would automatically construe Defendants' statements as opinion. Mot. at 6. Instead, Grifols' allegations about Defendants' actions and intentions concerning Grifols and its stock establish the opposite. Defendants are predatory short sellers (not "journalists") who spread lies (not "financial opinion") about Grifols. AC ¶¶ 3, 11, 12, 95–113; 131–216. Defendants disseminated the Gotham Report to the entire investing public, not just "interested short investors." *Id.* ¶¶ 121–122. The report was published on a publicly available website and its statements were spread to any person with internet access by both Defendants (via social media) and numerous globally recognized media outlets. *Id.* ¶¶ 121–126. Indeed, Defendants' social media posts relating to Grifols were viewed over a million times. *See id.* ¶ 121; [x.com/GothamResearch](x.com/GothamResearch).[13] Accordingly, this situation bears no similarity to *Silvercorp*, where the defendant sent its letter to a "select audience" of sophisticated parties who knew of the writer's financial interest: the Ontario Securities Commission, several financial journalists, and Silvercorp's auditors. 2012 WL 3569952, at *2-3. Nor was the Gotham Report comparable to "conversations between two sophisticated investors." *See* Mot. at 6.[14]

---

*Metals Inc. v. Anthion Mgmt. LLC*, 36 Misc. 3d 1231(A) (Sup. Ct. 2012), at *12; *Yangtze River Port and Logistics Ltd. v. Rsch.*, No. 150721/2019, 2020 WL 905770, at *9 (N.Y. Sup. Ct. Feb. 25, 2020).

[13] A skim of Gotham's nearly 40,000 followers on X confirms that thousands are ordinary people who lack the same financial literacy or expertise as the recipients of letters or reports in the cases Defendants cite.

[14] Other cases that Defendants rely on are even less relevant. For example, *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235 (1991), which Defendants cite repeatedly to argue the Gotham Report was opinion, involved a letter to the editor of a scientific journal from an advocacy group for primates that expressed concern about a plan to test certain biologic products on chimpanzees. *Id.* at 239. None of the Challenged Statements here involve a similar subject matter, and the Gotham Report was not an opinion piece submitted to a scientific publication. Likewise, *Bellavia Blatt & Crossett, P.C. v. Kel & Partners LLC*, 151 F. Supp. 3d 287 (E.D.N.Y. 2015), was not only decided at the summary judgment stage, but also did not even concern a "short report" and a corresponding disclaimer. *Bellavia Blatt* instead concerned a single statement the defendant posted on a comment section on an automotive news website that invited commenters to post their "opinion" about a story regarding a lawsuit against TrueCar. *Bellavia Blatt*, 151 F. Supp. 3d at 290.

### ii. *Defendants' Use of Qualifying Language in the Gotham Report Does Not Render the Challenged Statements Protected Opinion.*

Defendants next contend that the entirety of the Challenged Statements, and in turn, the Gotham Report, should be considered "protected opinion" because it sprinkles in "qualifying language." Mot. at 8–11. But Defendants ignore the many instances in the Gotham Report where Defendants' conclusions are expressed in absolute, factual terms. AC ¶¶ 131–136.

Moreover, in the short-selling context, this Court has made clear that, "Defendants cannot avoid liability simply by […] sprinkling their report[] with words that they believe connote opinion." *Amira* at 59:23-25. This makes sense given, as the Supreme Court noted in *Milkovich v. Lorain J. Co.*, "the statement, '[i]n my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'" 497 U.S. 1, 19, (1990). Thus, "[s]imply couching such statements in terms of opinion does not dispel the[ir] implications." *Id.*; *see also Joyce v. Thompson Wigdor & Gilly LLP*, No. 06-15315, 2008 WL 2329227, at *11 (S.D.N.Y. June 3, 2008).

Courts around the country have adhered to this principle in the short-seller context. *Lifemd, Inc. v. Lamarco*, 607 F. Supp. 3d 576, 594 (W.D. Pa. 2022) ("The Report attempts to shield itself from defamatory communications by prefacing the communications with disclaimers such as 'we think' and 'we believe.' … The Court finds that the Report's prefatory disclaimers and exculpatory words are not enough to absolve the communications of defamatory meaning."); *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 703-04 (2007) ("statements in the publications d[id] not attain constitutional protection simply because they [we]re sprinkled with words to the effect that something does or does not 'appear' to be thus and so; or because they [we]re framed as being 'in our opinion' or as a matter of "concern"). Even *Silvercorp*, which Defendants cite repeatedly, recognized that a short seller's use of "linguistic devices such as 'belief' [...] will not guarantee immunity from defamation actions since, even where the utterance

13

is couched in the language of hypothesis or conclusion, it will still be actionable if it would be understood by the reasonable reader as assertions of fact." 2012 WL 3569952, at *11.

Defendants' statements in the Gotham Report, and the "qualified language" they cloak the statements in, are akin to those at issue in *Amira*. There, the plaintiff sued a short seller for defamation based on short reports that misstated significant facts about the plaintiff, such as its debt and equity figures and total revenue. *Amira* at 16:7-11. The plaintiff alleged the falsity of the statements by noting they were belied by the very SEC disclosures the defendants admitted they analyzed to reach their conclusions. *Id.* at 20:15-18. The Court rejected the defendants' opinion defense, explaining that New York's *Flamm* test (p. 10, *supra*) "does not parse the individual words or statements but instead considers the publication as a whole, asking whether a reasonable listener is likely to have understood the statements as conveying verifiable facts about the plaintiff." *Id.* at 59:23-25. The Court denied the motion to dismiss because it was "left with the clear impression that a reasonable investor would have understood [the short reports] convey[ed] provable facts about [the plaintiff]" and that "Defendants cannot avoid liability simply by [] sprinkling their reports with words that they believe connote opinion." *Id.* at 59:20-25.

Consistent with *Amira*, Defendants' strategic use of phrases like "we believe," "we find," "we estimate," or "appears to be," does not shield them from liability for spreading falsehoods about Grifols. The Gotham Report repeatedly declares in conclusive language that it is revealing the truth about Grifols' value, financial reporting, accounting practices, and corporate integrity. A reasonable member of the investing public would therefore understand Defendants to be conveying facts about Grifols. *See id.*; *Restis*, 53 F. Supp. 3d at 719. Defendants even urged any reader to conclude that Grifols' shares are, in fact, "uninvestable" and "worthless" because Grifols is "like" a previous target of Gotham's that ultimately went bankrupt. AC ¶ 134. Readers thus took away a

factual message that Grifols is a fraud (*id.* ¶ 135), as evidenced by the market's panicked reaction to the Gotham Report.

### iii. Citations to Public Documents or Lack of Reliance on Undisclosed Facts Do Not Shield Defendants from Liability.

Defendants' final argument in support of their "opinion" defense is that the Challenged Statements are not actionable because of how the Gotham Report presents the evidence it relies upon to support Defendants' conclusions. Defendants contend that each Challenged Statement must be considered "opinion" because it is either supported by citations to publicly available documents or does not imply reliance on undisclosed facts. Mot. at 11.[15]

Defendants assert this creates "an independent foundation for opinion, distinct from" the three factors New York Courts look to when conducting a fact versus opinion analysis. Mot. at 11. But the cases Defendants cite do not recognize any such "independent foundation." *Id.* On the contrary, this Court has expressly rejected Defendants' exact arguments in situations where a plaintiff sufficiently alleges either that the facts a defendant relies on to support certain challenged statements are false or that those statements mischaracterize facts. *Restis*, 53 F. Supp. 3d at 723 ("Defendants further argue that [its] presentation of the evidence on which its conclusions were based reflects Defendants' expression of opinion. [] However, [the defendants'] statements are still actionable if either the facts on which they rely are false or if the statements mischaracterized the facts."). That is exactly what Grifols has alleged here. The supposed facts that undergird the Gotham Report's factual conclusions are lies. So are the conclusions themselves.

---

[15] Defendants are incorrect on both fronts. As explained below, multiple Challenged Statements either fail to cite to facts gleaned from publicly available documents or rely on undisclosed facts supposedly derived from Defendants' unexplained "research investigation."

### iv. The Challenged Statements Are Factual.

As detailed below, each of the Challenged Statements meets the three factors New York Courts consider when concluding that statements constitute fact.

**Statements Regarding the Disclosure of a $95 million Loan to Scranton.** The Gotham Report states three different times that Grifols "**did not** disclose" a $95 million loan to Scranton Enterprises. AC ¶ 138. These statements can be proven true or false based on whether Grifols disclosed the loan (it did). And, when considered in the full context of the Gotham Report, which was disseminated to the investing public, these statements unambiguously convey that Grifols **in fact** failed to disclose the loan. The CNMV confirmed the Gotham Report's statements are a factual assertion, not opinion, given its finding that these statements by Defendants are "not true." AC ¶ 141. The Motion does not even address the Gotham Report's statements that Grifols "did not disclose" the Scranton loan, and therefore concedes that these statements are factual.[16]

Instead, the Motion tries to distract with red herrings, discussing statements about the $95 million loan that Defendants did *not* challenge. Defendants point to their assertion that this loan was "suspicious," and argue it is not factual. Mot. at 19. But Grifols did not challenge this statement or Defendants' statement that the place where Grifols disclosed the loan was "odd." *See id.*

Finally, the context of the Gotham Report reinforces that the Challenged Statements relating to the supposedly undisclosed Scranton loan are factual. One of these Challenged Statements appears in a summary of the report's key facts and the other two appear in a section of the report titled, "Grifols Undisclosed Loan to Scranton Enterprises," which is a factual assertion. Likewise, the title of the Gotham Report contains the same factual assertion: "Grifols SA: Scranton

---

[16] Similarly, Grifols challenged the statement in the revised Gotham Report that "[t]he details about [the $95 million] loan lie buried in Note 31 [of Grifols' 2018 Annual Report], *appearing nowhere else*...." AC ¶ 147. As Grifols alleges, the disclosure was also made in the body of the annual report. *Id.* Defendants make no effort to explain how this factual (and false) statement could be considered opinion.

and the Undisclosed Debts." In this context, there is zero reason for a reader to think that the Scranton loan being undisclosed is mere opinion. Indeed, it is not apparent how something binary (disclosed or undisclosed) could ever be a matter of opinion. It is inherently factual.

***Grifols' Shares are "Uninvestable" and "Worthless."*** The Gotham Report proclaims Grifols' shares "uninvestable," "worthless," "worth zero," and calls Grifols' debt "unsustainable." AC ¶ 193. The language surrounding these phrases reflects they are not hyperbole, but instead are meant literally. These statements can be proven true or false based on the value of Grifols' stock and whether Grifols can pay its debt.

Defendants couch these statements as protected "predictions," but the case they cite confirms there is no overarching principle of law that classifies predictive language as "opinion." *Immuno AG*, 77 N.Y.2d at 255. Instead, that court endorsed "an approach that takes into account the full context of challenged speech." *Id.* When considering the full context of these Challenged Statements, a reader would conclude Defendants are presenting facts about the actual value of Grifols' stock and Grifols' actual ability to pays its debt. Indeed, the entire context of the Gotham Report, and Defendants' self-serving motivations for publishing it, confirm these statements were meant to terrify the market into thinking Grifols is a sham company.

Similarly, Defendants' argument that these statements are "not [themselves] fact[s]—but rather, one's perception of facts—at the time it is uttered" misconstrues the cited authority. Mot. at 9 (quoting *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014) (alterations in the Motion)). Defendants do not mention it, but the statements at issue in *Chau* were not that a company was worthless, but rather insults calling the plaintiff a "sucker" and "fool" for trading collateralized debt obligations. *Chau*, 771 F.3d at 129. It was in that very different context that the Second Circuit said that an "insult is not itself fact." *Id.* That has no bearing on this case involving factual, testable statements.

17

Defendants' conclusory assertion that a reader is left to "evaluate" these statements for themself is belied by the Gotham Report's efforts to induce investor panic by comparing Grifols to a bankrupted company (NMC Health) in the same breath as the Challenged Statements that the stock is uninvestable and headed to zero. AC ¶ 134. And Defendants supported these statements with "facts" they knew to be false, so even if anyone understood the Gotham Report to be expressing an opinion, the statements would still be actionable. *See Restis*, 53 F. Supp. 3d at 723.

> ***Statement that Grifols' Definition of EBITDA is Materially Misleading and Incorrect.***
Defendants' statement that "Grifols' 'per credit agreement' definition of EBITDA is materially misleading and incorrect" (AC ¶ 150) conveys that Grifols is, in fact, disclosing a materially incorrect definition of EBITDA. The statement can be proven true or false by comparing the "per credit agreement" EBITDA definition disclosed by Grifols in its Annual Reports to the definition set forth by Grifols' lenders in the Credit Agreement. The definition is either correct or not, an inherently factual matter.

Defendants try to spin this false statement of fact into commentary about which EBITDA definition best represents the "economic substance" of Grifols' business. Mot. at 16. But that is not the statement that Grifols alleges is false. Grifols alleges it is false and defamatory to accuse Grifols of disclosing an EBITDA definition that is "materially misleading and incorrect." AC ¶ 149. Moreover, the overall context of the Gotham Report is to accuse Grifols of financial manipulation to conceal that its stock is worthless, which reinforces the takeaway that Grifols is deliberately using an erroneous EBITDA definition to defraud the market. *See Greenberg v. Spitzer*, 132 N.Y.S.3d 601 (N.Y. Sup. Ct. 2020) (alleging accounting "fraud" is a statement of fact).

> ***Defendants' False Accusation that Grifols "Manipulates" its Leverage Ratio.*** The first sentence in the Gotham Report reads, "[Grifols] manipulates reported debt & EBITDA to

artificially reduce reported leverage[.]" AC ¶ 154. This conveys that Grifols is using unfair or insidious means to falsely portray its reported leverage.[17] This can be proven true or false.

Defendants' contention to the contrary is absurd. Defendants cite *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 381 (N.Y. 1977) for the proposition that "manipulates" is not a statement of fact because that court supposedly found that statements that a judge is "probably corrupt" and "suspiciously lenient" were opinions. Mot. at 12. There are two problems with this. First, *Rinaldi* held the opposite—that this was a factual accusation of criminal activity, *not* mere opinion, and thus was "not constitutionally protected." 42 N.Y.2d at 381–82. Second, the Gotham Report accused Grifols of manipulating its leverage ratio, not that it "probably" did so.

The Gotham Report's overall context reinforces that this is a factual statement. The report includes nine more Challenged Statements to support a "calculation" of Grifols' supposedly "true" leverage ratio. AC ¶¶ 157–58, 169–70. Each of these statements, and the accompanying "calculations," either contain facts that can be proven true or false or distort the facts they cite to. Defendants try to rebut the factual nature of these statements and calculations by dismembering them into incoherent groupings and contending that some of the general legal propositions about statements of opinion discussed above somehow apply. By taking this approach, Defendants contradict themselves and New York law by analyzing each statement in a vacuum, rather than in connection with the tenor of the entire Gotham Report. *Flamm*, 201 F.3d at 153 (2d Cir. 2000) (quoting *Gross v. N. Y. Times Co.*, 82 N.Y.2d 146 (N.Y. 1993) ("[C]ourts consistently focus[] … on the […] 'the ***overall context*** in which the complained-of assertions were made.").

For example, Defendants cannot transform their declaration that Grifols "manipulates" its leverage ratio into opinion simply by adding a statement that Defendants "believe" a different ratio

---

[17] *See* https://www.merriam-webster.com/dictionary/manipulate; https://www.merriam-webster.com/dictionary/artificially.

is more accurate. Nor can Defendants rely on citations to Grifols' "own filings" to alter their factual misrepresentation—that Grifols has no claim to the earnings of its subsidiary in those filings—into opinion. This is a factual matter: the IFRS expressly requires Grifols to claim such earnings, as the CNMV has confirmed. AC ¶ 202. The same logic applies to Defendants' argument that its statements concerning Grifols' "true leverage" amounts to mere "disagreement" and "garden variety financial commentary." The fact that the Gotham Report walks the reader through a step-by-step explanation of its "calculations" does not convert the calculations into protected financial commentary. If anything, it reinforces that the calculations are fact-based, and Grifols alleges why the supposed facts underlying the calculations are themselves false. *Id.* ¶¶ 154–191.

When Defendants' statements and "adjusted calculation" concerning Grifols' reported leverage ratio are considered in the context of a report designed to convince the public that Grifols stock was worthless because Grifols is engaged in fraud, a reasonable reader can only conclude that this reporting is a factual explanation of how Grifols supposedly "manipulates" its leverage ratio to deceive the market. The statement is analogous to a defamatory statement in *NovaGold* where the defendant accused the plaintiff of "deliberately mislead[ing] investors with custom metrics designed to deceive[.]" *NovaGold*, 2022 WL 900604, at *9.

Moreover, "[o]pinions based on false facts are actionable … against a defendant who had knowledge of the falsity or probable falsity of the underlying facts." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 114 (2d Cir. 2010). As discussed, these Challenged Statements are premised on knowingly false "facts", so even if any such statements were found to be opinion, they would still be actionable.

***False Statements Regarding Grifols' Consolidation of GDS.*** The Gotham Report states that Grifols' inclusion of its subsidiary, GDS, in Grifols' EBITDA "overstates" Grifols' earnings

power because Grifols "has no claim to" GDS' income. AC ¶ 201. Whether Grifols' earnings power is accurate given the inclusion of GDS in its EBITDA can be proven true or false based on IFRS. Whether Grifols has a claim to GDS' income likewise can be proven true or false based on IFRS. These are factual statements, not opinion. And they are false because, as alleged by Grifols, IFRS requires a majority-owned subsidiary, like GDS, as well as its income, to be included in Grifols' EBITDA. Confirming that these Challenged Statements are factual and false, the CNMV found Grifols' conclusion that it controls GDS and in turn, Grifols' inclusion of GDS' income in its EBITDA, "was in accordance with the IFRS." ECF No.22-4 at 4.[18]

*False Statements About the ImmunoTek Transaction.* The Gotham Report includes six statements asserting that payments Grifols made in connection with its ImmunoTek collaboration were illegitimate. AC ¶ 210. Those statements contain phrases, like "out of line," "unexplained," "unable to reconcile," and "make no sense" to declare to the reader that the payments to ImmunoTek are bogus. Contrary to Defendants' assertion, these statements were not "conditional." Mot. at 10. Whether the payments are legitimate and explained can be proven true or false by reviewing Grifols' collaboration agreement with ImmunoTek. A reasonable reader of the Gotham Report is also likely to understand these statements to constitute yet another nefarious fact about Grifols because Defendants state that the payments to ImmunoTek are "unexplained outflows of cash, just as Grifols' [sic] has demonstrated in other transactions." AC ¶ 210.

Defendants falsely assert that the Gotham Report is "based entirely on *publicly available documents.*" Mot. at 2 (emphasis in original). In fact, three of the Challenged Statements cite only to an unexplained "Gotham City Research Investigation." AC, Ex. 1 at 64. Because a reasonable

---

[18] Defendants try to convert these statements into non-actionable opinion by lumping the statements into their "adjusted EBITDA calculation." Mot. at 12–13. But, as discussed above, Defendants cannot use this "calculation" to seek dismissal of Grifols' claims when Grifols' allegations sufficiently demonstrate the foundation for this calculation is rooted in a misstatement of fact regarding the applicability of the IFRS.

reader could infer that Defendants are aware of undisclosed facts based on their unexplained "research investigation," the Challenged Statements would still be actionable even if found to be opinion. *See Pisani v. Staten Island Univ. Hosp.* 440 F. Supp. 2d 168, 176 (E.D.N.Y. 2006) (denying motion to dismiss because a jury could infer from the defendant's statement that it was aware of undisclosed facts that confirm plaintiff's misconduct); *Jewell v. NYP Holdings., Inc*., 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) ("The actionable element of a 'mixed opinion' is not the false opinion itself, it is the implication that the speaker knows certain facts, unknown to his audience, which support his opinion and are detrimental to the person about whom he is speaking.").

### b. Grifols Has Sufficiently Alleged that Defendants Published Each Challenged Statement With Actual Malice.

Grifols has met the third element of defamation by libel per se by alleging Defendants published each of the Challenged Statements with actual malice. Actual malice is the "knowledge that the statements were false or [made] with reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). The Supreme Court explained that, while "the concept of 'reckless disregard' cannot be fully encompassed in one infallible definition, we have made clear that the defendant must have made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication." *Harte-Hanks Commc'ns. Inc. v. Connaughton*. 491 U.S. 657, 667 (1989).

The Amended Complaint is replete with allegations that Defendants made each of the Challenged Statements in the Gotham Report "deliberately" indifferent to the truth and while "knowingly" ignoring readily-available contradictory facts (AC ¶¶ 26, 30, 140, 153, 165, 180, 191, 200, 208, 216, 234) in order to "cause a market panic," and "drive down Grifols' share price" (*id.* ¶¶ 4, 27, 44, 51, 102, 126, 194) which, in turn, "ensure[d] the success of [Defendants'] short-and-

distort scheme" and allowed Defendants to avoid suffering "massive losses" based on "an impending short squeeze" (*id*. ¶¶ 16, 17, 119–120, 129–130). Grifols painstakingly alleged a sequence of events that shows Defendants acted with actual malice. *See* p. 3, *supra*.

Further, Grifols alleged facts showing Defendants knew the specific Challenged Statements to be false based on Defendants' consideration of public documents cited in the Gotham Report, or that Defendants recklessly disregarded the truth:

- *Scranton Loan Disclosure.* When falsely stating that Grifols failed to disclose its $95 million loan to Scranton in Grifols' Annual Reports, Defendants' actual malice is demonstrated by Defendants' discussion of the contents of the Annual Reports throughout the Gotham Report, while simultaneously ignoring that Grifols' loan to Scranton was disclosed in the same Annual Reports. AC ¶¶ 140, 148. Defendants' malice is also shown by their failure to alert the public to their "correction" of this false statement. *Id.* ¶¶ 145–146.

- *Value of Grifols Shares.* Defendants never believed that Grifols' shares are "uninvestable," "worthless," "worth zero," and that its "debt is unsustainable." *Id.* ¶ 200. Defendants showed that they knew these statements were false by cashing out their short position immediately (before Grifols could address Defendants' lies), as opposed to waiting until the shares reached the supposed value (zero) claimed in the Gotham Report. *Id.*

- *Credit Agreement EBITDA Definition.* The Challenged Statement that "Grifols' 'per credit agreement' definition of EBITDA is materially misleading and incorrect" was made with actual malice given Defendants say they reviewed the Credit Agreement, yet ignore that the agreement's definition of EBITDA tracks the definition disclosed by Grifols in its Annual Reports. *Id.* ¶153.

- *False Calculation of Grifols' Leverage Ratio.* Defendants' statements that Grifols "manipulates" its EBITDA, debt and leverage ratio, as well as Defendants' inherently false "calculation" of Grifols' leverage ratio were made with blatant disregard for both applicable accounting rules and the Credit Agreement's definition of "Consolidated Adjusted EBITDA." This establishes Defendants' actual malice with respect to those Challenged Statements. *Id.* ¶¶ 173, 180, 191.

- *Consolidation of GDS.* Defendants' statements that the inclusion of GDS "overstates" Grifols' earnings power, and that Grifols has no claim to GDS' income, deliberately disregarded portions of Grifols' Annual Reports and IFRS accounting standards that prove the opposite. *Id.* ¶ 208.

- **_ImmunoTek._** Defendants' failure to reach out to Grifols to inquire about details concerning Grifols' payments to ImmunoTek, before impugning the propriety of those payments, confirms Defendants' lack of desire to present the truth and in turn, that they acted with actual malice. _Id._ ¶¶ 215–16.

In the short-seller context, _NovaGold_ held that allegations like Grifols' are sufficient to establish actual malice at the pleading stage. There, the court found the plaintiff's allegations gave rise "to a plausible inference that [the short seller defendants] published the Report with reckless disregard for the truth." _NovaGold_, 2022 WL 900604 at *9. The court noted the defendant created and published the short report at issue "with 'an incendiary tapestry of inaccuracies, misstatements, and falsehoods ... all for the purpose of manipulating the price of [the plaintiff's] stock downward and causing panic." _Id._ at 9. _NovaGold_ also held that the short report at issue was "deliberately indifferent to the truth, time and time again" given "the claims made in the [short report were] readily contradicted by public documents, including [those] cited in the Report." _Id._ at *9 (citing _Palin_, 940 F.3d at 815 (allegation that Defendant included a hyperlink to contradictory information in its publication supported a finding of actual malice)). The actual malice allegations in _NovaGold_ track Grifols' actual malice allegations to a tee.

Defendants' arguments to the contrary are unavailing. First, Defendants generally assert that the Amended Complaint's malice allegations amount to "buzzwords." Mot. at 26. But Defendants fail to explain how that is so. _See id._ And Defendants are wrong. The Amended Complaint explains how Defendants' motive for publishing the Gotham Report—to avoid an impending "short squeeze"—establishes actual malice by Defendants. The very case Defendants cite for their conclusory "buzzword" proposition confirms that a defendant having a motive for defaming the plaintiff is probative of actual malice. _See Biro v. Conde_ Nast, 963 F. Supp. 2d 255, 277 (S.D.N.Y) (citing _Kipper v. NYP Holdings Co., Inc_., 12 N.Y.3d 348, 355 n. 4 (2009) ("intent to injure plaintiff" is relevant to the actual malice inquiry)). _Biro_ also confirms that "malice is not

a matter that requires particularity in pleading." *Schatz v. Republican State Leadership Comm*., 669 F.3d 50, 58 (1st Cir. 2012)). Instead, a plaintiff need only "lay out enough facts from which malice might reasonably be inferred." *Id.* Grifols has done that and more by both pleading factual allegations showing that Defendants set out to harm Grifols and making specific allegations about why each Challenge Statement was made with actual malice.

Second, Defendants contend their "correction" of their lie about Grifols' disclosure of its $95 million loan to Scranton demonstrates a *lack* of malice. That is absurd. Defendants grossly mischaracterize the nature of their "correction" and the case law they cite. To be clear, there was no "correction" here. Rather, Defendants, after dumping their short position, quietly replaced the Gotham Report on their website with a modified version that removed the false accusation that Grifols never disclosed the Scranton loan. AC ¶¶ 142–44. Defendants never alerted the public to this change. It was made known only by Grifols' Complaint. The damage to Grifols had long been done by then. Defendants' failure to alert the investing public about the revision confirms their goal was not to "correct" the Gotham Report, but to cover their tracks. *Id.* ¶ 145. Defendants' actual malice is also punctuated by the fact that even the revised Gotham Report still lies about where Grifols disclosed the Scranton loan. *Id.* ¶ 147.

Defendants cite two cases for the proposition that a "willingness" to correct a misstatement evidences a lack of malice. Mot. at 27. Neither supports Defendants' position. In *DiLorenzo v. N.Y. News, Inc*., 78 A.D.2d 669, 673 (1980), which was decided at the summary judgment stage, the court addressed a retraction of a newspaper story accusing a politician of perjury. The case did not deal with a party waiting to retract a lie until a pecuniary gain was realized, and trying to cover their tracks, as Defendants did here. *Id.* Similarly, the *Palin* decision cited by Defendants confirms that their actions do not amount to a "correction" sufficient to rebut actual malice allegations.

25

There, the Court held that "[w]hile a defendant's willingness [...] to quickly **acknowledge** and correct its error ordinarily weighs against a finding of actual malice [...] it was 'plausible that the correction was issued after a calculus that standing by the editorial was not worth the cost of the public backlash.'" *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 222 (S.D.N.Y.), *modified*, 510 F. Supp. 3d 21 (S.D.N.Y. 2020). Defendants did not acknowledge they revised the Gotham Report; it would have gone unnoticed unless Grifols uncovered it. Thus, the "correction" has no exculpatory value, and instead supports Grifols' allegations that Defendants acted with actual malice to deceive the market and maximize harm to Grifols.

Third, Defendants argue their failure to investigate, or to verify the accuracy of the Gotham Repot, *alone* does not establish actual malice. Mot. at 27–28. That misses the point. Grifols alleges that Defendants *knew* their statement about the Scranton loan was false, and knew that the disclosure was made multiple times, yet made the false statement precisely because they wanted to "destroy Grifols' reputation and misinform the public." AC ¶ 140. Grifols makes similar allegations about Defendants' knowledge that the other Challenged Statements were false. *Id.* ¶¶ 15153, 165, 191, 200, 208, 215–16. These factual allegations "paint a plausible picture of [] actual malice[.]" *Palin*, 940 F.3d at 815 (reversing dismissal of defamation complaint because the pleadings alleged defendant had a "'pre-determined' argument he wanted to make in the editorial," which "led him to publish a statement about [the plaintiff] that he either knew to be false, or at least was reckless as to whether it was false").

Finally, Defendants argue Grifols cannot establish actual malice based solely on Defendants' financial motive or their short position. Mot. at 28–29. The cases Defendants cite are inapposite because, as explained above, Grifols does not allege that Defendants' financial goals or

their short position, in a vacuum, demonstrates actual malice.[19] Again, the sequence of Defendants'

actions, and the fact that they made the Challenged Statements *knowing* they were false,

demonstrates actual malice. Grifols' allegations are analogous to multiple short-seller defamation

cases where courts found the plaintiff sufficiently alleged actual malice. *See NovaGold*, 2022 WL

900604, at *27; *Amira* at 61:14-15; *see also Palin*, 940 F.3d at 815.

### c. Grifols Has Sufficiently Alleged the Falsity of Each of Challenged Statement.

Grifols has met the fourth element of defamation by libel per se by alleging the falsity of

the Challenged Statements. Defendants contend that "Grifols must *prove* each Statement false"

(Mot. at 22), but the case they cite for this proposition is a Second Circuit case addressing an appeal

of a jury verdict. *See Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 301 (2d Cir. 1986). At this

stage, because Grifols' factual allegations are accepted as true for purposes of a motion to dismiss,

the Court must assume that each Challenged Statement is false. *Treppel v. Biovail Corp.*, No. 03-

3002 (PKL), 2005 WL 2086339, at *8 (S.D.N.Y. Aug. 30, 2005).

Defendants argue eight of the 28 Challenged Statements are "substantially true" and thus

non-actionable. Mot. at 22–24.[20] To prevail on a motion to dismiss on this ground, a plaintiff "must

plead facts that, if proven, would establish that the defendant's statements were not substantially

true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). "[A]

statement is substantially true if the statement would not have a different effect on the mind of the

reader from that which the pleaded truth would have produced." *Id.* at 242.

---

[19] *St. Amant v. Thompson*, 390 U.S. 727 (1968) fails to say anything about assertions of personal gain, but
rather simply cites the general standard for actual malice.

[20] The Motion also argues substantial truth for two other statements in the Gotham Report related to "Non-
Controlling Interests" that Grifols is not challenging. *Id.* at 24–25. While irrelevant, Defendants' argument
as to these statements includes the same impermissible leap present in the rest of their "substantial truth"
arguments. Just because the CNMV found Grifols should have "broken down" certain financial figures
relating to BPC and Haema does not render substantially true Defendants' statements that Grifols failed to
"provide ***any*** explanation" as to how Grifols consolidates those non-controlling interests. *Id.* at 25.

The only purported support Defendants offer for their "substantial truth" argument is the CNMV Report from March 2024. Defendants contend that the CNMV Report validated "many"— but not all—of the Challenged Statements. Mot. at 22. Defendants' arguments misstate the CNMV Report's findings. While the CNMV found that, for better investor transparency, Grifols should have provided an additional calculation of its leverage ratio that excluded results attributable to non-controlling interests, and provided more information so an investor could conduct their own calculation, the CNMV did not take issue with the leverage ratio in Grifols' financial reports. *Id.* Further, the CNMV did not find identify any deficiencies by Grifols related to whether: (i) Grifols *disclosed* the $95 million loan to Scranton in Grifols' Annual Reports;[21] (ii) Grifols shares are "uninvestable" or "worthless"; (iii) Grifols' EBITDA definition is misleading; (iv) Grifols manipulates its debt and EBITDA to reduce its leverage ratio; (v) GDS' income is appropriately consolidated into Grifols' EBITDA; and (vi) Grifols' payments to ImmunoTek are "unexplained." *See* ECF No. 22-4.

Defendants' substantial truth argument about the $95 million Scranton loan is wildly wrong. The CNMV found the Gotham Report's statement that the Scranton loan was not disclosed was "not true," and identified Grifols' annual reports that disclosed the loan. *Id.*, at 6, n.1. Bizarrely, Defendants point to a statement by the CNMV about a totally different transaction (which was a payment, not a loan) in the amount of $200 million. Mot. at 25. Grifols disclosed that transaction too, although the CNMV noted that Grifols did not break down the chain of events that culminated in the $200 million payment. Of course, whether the $200 million transaction was adequately explained has no bearing on the truth of the Challenged Statement that the $95 million "is

---

[21] While the CNMV noted that the $95 million loan to Scranton was not "broken down" in Grifols' 2018 Annual Report, the CNMV confirmed that the loan was disclosed in a "narrative manner" and through "disaggreg[ation]" in the 2018 Annual Report. ECF No. 22-4 at 6. The CNMV also confirmed that Grifols disclosed this loan in each Annual Report from 2019 to 2022. *Id.*

undisclosed in Grifols' filings, only appearing in Scranton filings." AC ¶ 138. As the CNMV found, Defendants' statements that Grifols failed to disclose this loan were false.

The same logic applies to Defendants' arguments concerning the Challenged Statements that "Grifols['] 'per credit agreement' definition of EBITDA [is] materially misleading and incorrect" and that Grifols "manipulates reported debt & EBITDA." Mot. at 24. As mentioned, the CNMV requested that Grifols reduce the number of EBITDA formulas it provides to investors, as well as provide additional information with Grifols' future EBITDA presentations. ECF No. 22-4. Defendants try to distort this, contending that because an investor's ability to understand Grifols' financial situation may have been "hindered," it is now substantially true that Grifols' definition of EBITDA is "materially misleading and incorrect." Mot. at 24. Not so. Defendants selectively omit the phrase "per credit agreement" from the Challenged Statement when trying to link it the CNMV Report's conclusion. *Id.* The CNMV's requested reduction to the number of EBITDA formulas Grifols provides to investors does not change the fact that Grifols' previously reported "per Credit Agreement" definition of EBITDA was not and cannot be "materially misleading and incorrect." Similarly, it is not "substantially true" that Grifols "manipulates its reported debt and EBITDA." Providing investors with multiple ways to calculate debt and EBITDA does not mean that Grifols "manipulates" the numbers. Moreover, the word "manipulates" conveys that Grifols deliberately and deceitfully falsified its financials (*see* n. 17, *supra*), yet the CNMV did not find that any shortcomings were intended to deceive.

Finally, Defendants are incorrect that the CNMV Report confirms that the "gist" of the Challenged Statements concerning the Gotham Report's made-up leverage ratio calculation are substantially true. *Id.* at 23–24. Indeed, despite the same formula being applied to the competing figures, there is still a €400 million difference between Grifols' recently reported "per Credit

Agreement" consolidated EBITDA and Defendants' "true" EBITDA set forth in the Gotham Report. *Compare* AC ¶ 170 and Mot. Ex. B-2 at 3. This significant gap demonstrates no correlation can be drawn from the CNMV Report that would permit Defendants' EBITDA calculation for Grifols to be deemed substantially true.

### d.   Grifols Has Sufficiently Alleged Libel by Implication in the Alternative.

A "defamatory implication may be based on a combination of individual statements which in themselves may not be defamatory, but which might lead the reader to draw an inference that is damaging to the plaintiff." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 463–64 (S.D.N.Y. 2012) (quotations and citations omitted). The Challenged Statements concern Grifols' business activities and finances, and they falsely imply that Grifols is a fraud that fails to disclose transactions and "manipulates" its financials. AC ¶¶ 135, 241–242. Thus, Grifols meets the requisite elements of libel by implication.

## II.    GRIFOLS HAS ALLEGED A VIABLE TORTIOUS INTERFERENCE CLAIM.

 "A claim for tortious interference with business relations requires that a plaintiff show that (1) the plaintiff had business relations with a third party; (2) the defendant had interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means, and (4) the defendant's acts injured the relationship." *Mi-Kyung Cho v. Young Bin Café*, 42 F. Supp. 3d 495, 509 (S.D.N.Y. 2013) (internal quotation marks and citations omitted). The Amended Complaint satisfies each of these elements. AC ¶¶ 255–66.

Defendants contend that Grifols fails to allege a specific "business relation" beyond general relationships that Defendants tortiously interfered with. Mot. at 30. That is wrong. Grifols specifically alleged an instance where a company it controls had its lender decline to renew the company's credit facility due to the lender's desire to avoid association with the negative media attention Grifols and its affiliates have received due to the Gotham Report. AC ¶ 228. Likewise,

30

Defendants contend that Grifols has failed to allege that Defendants acted with a wrongful purpose because Defendants were acting in their "economic self-interest." Mot. at 30. This is also wrong. A claim for tortious interference under New York law requires Grifols show only that "the defendant's conduct ... amount[ed] to a crime or an independent tort[.]" *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004). Grifols has met this element by alleging that Defendants engaged in the underlying tort of defamation by libel, or in the alternative, market manipulation. AC ¶ 258. And as noted, Gotham is now being criminally investigated in Spain by the Audiencia Nacional for such conduct based upon specific findings by the CNMV.

## III.    GRIFOLS HAS ALLEGED VIABLE AIDING AND ABETTING CLAIMS AGAINST DE WECK AND GIP.

De Weck and GIP do not challenge the sufficiency of Grifols' allegations related to aiding and abetting, but instead contend that dismissal of these claims is warranted if the underlying torts against Yu and Gotham are dismissed. Mot. at 31. But as discussed, those claims are adequately alleged, so this argument fails for the same reasons.

## IV.    GRIFOLS HAS ALLEGED A VIABLE CLAIM FOR UNJUST ENRICHMENT.

"The basic elements of an unjust enrichment claim in New York require proof that (1) [the] defendant was enriched, (2) at [the] plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what [the] plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Defendants do not dispute Grifols has met these elements, but instead argue this claim must be dismissed because it is duplicative of Grifols' tort claims. Mot. at 31–32. This argument ignores Grifols' allegations setting forth an alternative theory for unjust enrichment separate from the facts supporting Grifols' claims for defamation by libel and tortious interference. This separate theory is based on criminal statutory trading abuses and criminal statutory market manipulation related to Grifols' stock that is currently

being investigated by the Department of Justice, Audiencia Nacional and other regulatory bodies. AC ¶ 278; *id.*, Ex. 1. Thus, Grifols has adequately alleged unjust enrichment.

## V.    GSSNA IS AN APPROPRIATE PLAINTIFF.

To satisfy constitutional standing requirements, a plaintiff must plead: (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) that the injury is likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). GSSNA has been and continues to be injured due Defendants' defamatory statements. AC ¶ 228. GSSNA has also been directly harmed by Defendants' acts given it guarantees the indebtedness for the bonds issued by Grifols S.A. and is a creditor on the Credit Agreement. *Id.* ¶ 229. When Grifols' debt must be refinanced, the increased cost to do so—a result of the Defendants' lies that Grifols is a risky borrower—equally impacts GSSNA as a guarantor of the bonds. *Id.* The increased cost of financing also impacts GSSNA's operations, which is funded by Grifols S.A.'s indebtedness. *Id.* A favorable decision against Defendants will enable GSSNA to recover its reputational and operational losses caused by Defendants, as well as those tied to its guarantor role.

## CONCLUSION

For the above reasons, Grifols respectfully submits Defendants' Motion to Dismiss should be denied in full. In the alternative, Grifols requests leave to amend, including to add new allegations relating to the CNMV's latest statements and the pending criminal investigation of Defendants.

Dated:    December 9, 2024

**PROSKAUER ROSE LLP**

By:    */s/ Peter D. Doyle*

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com

*Counsel for Plaintiffs Grifols,*
*S.A. and Grifols Shared Services*
*North America, Inc.*