UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRIFOLS, S.A. and GRIFOLS SHARED SERVICES NORTH AMERICA, INC.,<br><br>                            Plaintiff,<br><br>v.<br><br>DANIEL YU, GOTHAM CITY RESEARCH LLC, GENERAL INDUSTRIAL PARTNERS LLP, and CYRUS DE WECK,<br><br>                            Defendants. | Index No. 1:24-cv-00576-LJL<br><br>**REPLY DECLARATION OF CYRUS DE WECK**<br><br>**IN SUPPORT OF MOTION TO DISMISS AND CROSS-MOTION TO STRIKE PREJUDICIAL MATTER** |

CYRUS DE WECK, affirm as follows under penalty of perjury:

      1.      I am a defendant in the above-captioned case. I make this Reply Declaration in further support of the Defendants' Motion to Dismiss the Amended Complaint ("AC") and in support of Defendants' motion to strike impertinent and prejudicial matter regarding Daniel Yu.

      2.      This declaration provides the Court with information responsive to Plaintiff Grifols, S.A.'s ("Grifols") unsupported, irrelevant and unfairly prejudicial allegations in its AC and in its Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opp. Mem.") Dkt. 27, regarding the Spanish National Securities Market Commission ("CNMV"), and the United States Securities and Exchange Commission ("SEC"). The SEC's "No Action" letter is subject to judicial notice; and it is annexed to this declaration as **Ex. A**.

      3.      I am the founder and principal of General Industrial Partners LLP ("GIP"), which has an affiliate relationship with Gotham City Research LLC, which is owned and managed by defendant Daniel Yu. I act as GIP's portfolio manager and one of the firm's research professionals.

1

4.      I grew up in Zurich, Switzerland and attended the University of Pennsylvania Wharton School of Business before moving to the United Kingdom, where I live today.

5.      I began my financial career in 2002 covering corporate debt in general, specifically distressed debt, at a large financial institution in London, before moving into investment management, eventually heading the London office of QVT Financial and then finally launching my own firm in 2015, which was the precursor to GIP. My experience with distressed companies laid the groundwork for my perspective on the markets.

6.      By the time I launched my own firm in 2015, I had developed a core expertise identifying short opportunities that were driven by apparent financial reporting irregulates, including NMC Health, which was censured and went into bankruptcy proceedings, and Wirecard AG, which went into bankruptcy and was the subject of criminal action.

7.      I met Dan around ten years ago in connection with his work on a German-listed company. Dan had been running Gotham City Research LLC ("Gotham") for a time before that, after attending MIT for undergrad and starting a career in investment management in New York in 2006. Dan moved out of the financial sector to work in tech for a period before transitioning back into finance, specifically short-minded investing.

8.      In early 2013, Dan launched Gotham City Research, publishing his first report on a company called EBIX, which has been written about by other short sellers since and recently filed for bankruptcy. Since then, Gotham has published research on approximately a dozen different companies that trade in markets around the world and has developed an excellent track record and reputation for exposing problems at companies.

9.      For more than a decade now, Dan and I have both been researching and executing short selling strategies focused on exposing companies with misleading financial statements and

unsustainable business models. We joined forces in 2022, combining an investment manager with a short selling research publishing business model.

10.  We are very mindful of the scrutiny that short seller reports receive and our obligation to speak accurately and operate in good faith. We are also mindful of the strategy of many companies that, when faced with short reports, will respond by publicly attacking or suing the author instead of engaging on the substantive issues they have raised. They may, as here, set in motion complaints to various regulatory agencies to further vex and silence their critics. Grifols complaint to the SEC, as noted, went nowhere, but it consumed time and cost to address.

11.  On January 9, 2024, we published our report, "Grifols SA: Scranton and the Undisclosed Debts" (the "Report").

12.  The Report was the culmination of months of research and analysis, which revealed multiple material problems with Grifols financial reporting, most notably with respect to its related party transactions and leverage calculations. We determined that Grifols' obscure financial reporting did not fairly and accurately represent the economic realities of its business.

13.  We were made aware of an inaccuracy in the Report on the same day of publication, Jan. 9, 2024. We promptly corrected that imprecision and republished an updated version of the Report on Jan. 10, 2024.

14.  While we started investigating Grifols in early 2023, our first trade in Grifols was not until November 1, 2023. We did not cover this initial short position on Grifols shares until after publication of the Report. We maintain a substantial short position to this very day in Grifols shares, as we believe Grifols is poorly governed.

15.  We did not write the Report to "avoid massive losses from a 'short squeeze.'" Opp. Mem., 1. Today, Grifols share price is lower than when we covered our short position.

16. On information and belief, after we published the Report, Grifols submitted complaints to the SEC and the CNMV, the regulatory agency overseeing relevant Spanish financial markets to further attack the Report.

17. Grifols' AC and Opp. Mem. make materially false claims and omissions with respect to any regulatory actions against us.

18. We are not aware of any investigation by the Department of Justice regarding the Report, nor have we been contacted regarding an investigation by the Department of Justice.

19. On February 12, 2024, we were contacted by the SEC through a document request seeking communications, research, and a wide and expansive range of other materials.

20. The SEC conducted a comprehensive, lengthy investigation, yet decided not to pursue enforcement actions against us from the Report.

21. We went through a thorough investigation by the SEC over a ten-month period, including document production, multiple in-person and virtual meetings, and multiple presentations to the SEC. We provided the SEC with over 65,000 documents including files and electronic communications and over 700 hours from our counsel engaging with the SEC.

22. On November 6, 2024, the SEC sent us a closing letter, annexed to this declaration as **Ex. A**, whereby the SEC indicated its intention to discontinue its investigation and not pursue enforcement actions against us regarding the Report.

23. On January 17, 2024, we were contacted by the CNMV.

24. On February 20, 2024, the CNMV made a single document request for trading data and a two-page series of questions.

25. On March 4, 2024, we responded by producing the responsive trading data and followed up with answers to their limited questions.

26. We did not hear from the CNMV again.

27. On November 6, 2024, we requested the Public Prosecutor meet with our counsel to receive the basic information surrounding the Report. The Public Prosecutor did not respond to the offer to meet with our counsel.

28. After this refusal to meet with our counsel or review basic information surrounding the Report, we were informed on November 18, 2024 that the Public Prosecutor recommended the case be investigated by a separate body, the Audiencia Nacional.

29. We continued to offer full cooperation throughout this time. The CNMV and Public Prosecutor refused our offers.

30. The CNMV and Public Prosecutor also refuse to provide us with key documents they claim served as part of their basis for their recommendation for prosecution. Likely it is all based on Grifols' unsupported, unvetted and as yet uncontested accusations.

31. Grifols is family-owned, and the Grifols family is widely known to be influential in Catalonian politics. Today the Prime Minister of Spain depends on support from the Catalonian government to maintain a majority in Spanish parliament.

32. In contrast to the SEC, the CNMV has recommended a criminal investigation without conducting a similarly comprehensive investigation into the same facts. The CNMV has done so based on a perfunctory investigation in which our substantial engagement was limited to a two-page letter with questions answered in a twelve-page response. This limited and undeveloped "non-investigation" is the basis for all the irrelevant invective and accusation which occupies and decorates much of Grifols' AC and its Opposition Memorandum to our Motion to Dismiss.

33. The fact is, there are no charges against any of the defendants; there are no findings against us. There is no probable cause or equivalent for any charge or claim against us, and we have as yet had little to no opportunity for input or response.

34. The CNMV's recommendation contradicts its own findings. See Def. Ex. B-1 to the Mem. of Law in Support of Motion to Dismiss. Dkt. 26. It validates the Report's core thesis on Grifols. Many of the deficiencies in Grifols' financial reporting that were cited in Gotham's Report were likewise cited in the CNMV's report on Grifols; and Grifols was required to restate some of its financial reporting as a result. Among other things, the CNMV stated that the $95 million loan with Scranton, a related party, should have been reported in Grifols' Corporate Governance section of its reports. That is precisely where Gotham looked for disclosure of the related party loan. It was not there. Grifols responded by acknowledging the deficiency and assured the CNMV that it would in the future report such transactions in its proper place. Specifically, Grifols responded to the CNMV on April 4, 2024 as follows:

> "The company also notes the omissions noted by the Regulator in the report above, dated 21 March 2024, and that in the future, to the extent that they continue to be material, they will be included in the financial information to be reported."

35. The CNMV findings support Gotham's Report on some of the very statements challenged in Grifols' AC. See Defendants' Memorandum of Law, Dkt.25, and the Reply Memorandum of Law that accompanies this Declaration.

36. Regarding the accusations against Daniel Yu which Grifols features in its AC and its Opposition, these are matters that are completely impertinent to the present action: 1) they involve Mr. Yu's dispute with a former employer of many years ago; 2) they have nothing to do with the kind of short research activities that Gotham conducts; 3) they have nothing to do with Grifols or the Report; 4) they have no fair or proper connection with Grifols' claims against

6

defendants; and 5) they have no function beyond a highly improper effort by Grifols to prejudice not just Daniel Yu but all of the Defendants.

37.     Our counsel had earlier asked Grifols counsel, by letter, to remove these impertinent and prejudicial allegations from its first Complaint, but they kept them in the AC and featured them again prominently in their Opposition brief. See Letter at Def. Ex. B-3, Dkt. 26.

**Wherefore**, Defendants respectfully ask the Court for an order 1) directing Plaintiff to strike the prejudicial references to Mr. Yu from their Complaint, their AC and their Opposition papers; 2) dismissing the Grifols' action in its entirety with prejudice (Plaintiffs having been given advance notice of the grounds on which this motion to dismiss would be made and the AC having failed to remedy the defective pleading cited); and 3) granting such further relief as the Court deems just and proper.

Dated: Dec. 20, 2024
London, GB, UK

_/s/ Cyrus De Weck_

CYRUS DE WECK
