# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRIFOLS, S.A., | No. 1:24-cv-00576-LJL-GWG |
| Plaintiff, | |
| v. | |
| DANIEL YU, an individual, GOTHAM CITY RESEARCH LLC, GENERAL INDUSTRIAL PARTNERS LLP, CYRUS DE WECK, an individual, JOHN DOES 1-10, and XYZ CORPORATIONS 1-10. | |
| Defendants. | |

## GRIFOLS, S.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO COMPEL</u>

PROSKAUER ROSE LLP

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com

*Counsel for Plaintiffs Grifols, S.A.*

## <u>TABLE OF CONTENTS</u>

I.  PRELIMINARY STATEMENT ..........................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND .........................................................3

    A.  DEFENDANTS' LIES ABOUT THE SCRANTON LOAN. ...................................3

    B.  DEFENDANTS' MOTION TO DISMISS. .............................................................4

    C.  DEFENDANTS' OBSTRUCTION OF DISCOVERY. ...........................................5

III.  ARGUMENT ....................................................................................................................6

    A.  THE SCOPE OF MALICE DISCOVERY MUST ENCOMPASS EVIDENCE
        CONCERNING DEFENDANTS' KNOWLEDGE, MOTIVES, AND
        CONDUCT REGARDING GRIFOLS AS A WHOLE. .........................................6

        1.  Malice Discovery is not Limited to the Challenged Statements.................7

        2.  Defendants Should Produce Post-Publication Documents .......................10

    B.  EACH OF GRIFOLS' REQUESTS SEEKS RELEVANT EVIDENCE THAT IS
        PROPORTIONAL TO THE NEEDS OF THIS DEFAMATION CASE...............11

        1.  Defendants' Communications (RFPs 1–12, 17).......................................11

        2.  Editorial Process, Materials Considered, and Contributors (RFPs 21–
            22, 26). ....................................................................................................15

        3.  Trading Records and Financials (RFPs 16, 19, 33–34, 38–39). ...............17

        4.  Structure, Contributors, and Interrelationships of the Defendants (RFPs
            20, 31, 32, 35–37). ..................................................................................19

CONCLUSION...........................................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amin v. NBCUniversal Media, LLC*,
  2023 WL 8238975 (S.D. Ga. Nov. 28, 2023) .........................................................................12

*Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*,
  2020 WL 7342724 (S.D.N.Y. Dec. 11, 2020) .........................................................................10

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013).......................................................................................8

*Blankenship v. Fox News Network, LLC*,
  2021 WL 3706683 (S.D. W. Va. Aug. 20, 2021) ....................................................................12

*Bobulinski v. Tarlov*,
  758 F. Supp. 3d 166 (S.D.N.Y. 2024)....................................................................................7, 8

*Celle v. Filipino Reporter Enters.*,
  209 F.3d 163 (2d Cir. 2000)......................................................................................................9

*Christine Asia Co. v. Alibaba Grp. Holding Ltd.*,
  327 F.R.D. 52 (S.D.N.Y. 2018) ................................................................................................6

*Coomer v. Byrne*,
  2025 WL 1222527 (M.D. Fla. Apr. 28, 2025) ........................................................................10

*Dalbec v. Gentleman's Companion, Inc.*,
  828 F.2d 921 (2d Cir. 1987)......................................................................................................7

*Gilmore v. Jones*,
  2021 WL 68684 (W.D. Va. Jan. 8, 2021) ...............................................................................18

*Gottwald v. Geragos*,
  2018 WL 5624349 (Sup. Ct. N.Y. Cnty. Oct. 17, 2018),
  *aff'd sub. nom. Gottwald v. Sebert*, 172 A.D.3d 445 (1st Dep't 2019) .................................14

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989).............................................................................................................7, 15

*Herbert v. Lando*,
  441 U.S. 153 (1979).............................................................................................................8, 15

*Mitchell v. Fishbein*,
  227 F.R.D. 239 (S.D.N.Y. 2005) ............................................................................................11

*Monarch Air Grp., LLC v. Journalism Dev. Network, Inc.,*
  2025 WL 445491 (S.D. Fla. Feb. 10, 2025) ................................................8, 15, 16

*Montgomery v. Prisma Health*,
  2024 WL 5695639 (D.S.C. May 3, 2024)................................................................12

*Palin v. N.Y. Times Co.*,
  940 F.3d 804 (2d Cir. 2019).................................................................................15

*Saroya v. Council on Am.-Islamic Relations Found., Inc.*,
  348 F.R.D. 632 (D. Minn. 2024)..........................................................................12

*Smartmatic USA Corp. v. Fox Corp.*,
  2023 WL 3075267 (Sup. Ct. N.Y. Ctny. Apr. 25, 2023)..................................13, 17

*Smartmatic USA Corp. v. Lindell*,
  2023 WL 6890929 (D. Minn. Oct. 19, 2023) ........................................................17

*Stern v. Cosby*,
  645 F. Supp. 2d 258 (S.D.N.Y. 2009)...............................................................9, 10

*U.S. Dominion, Inc. v. Fox News Network, LLC*,
  293 A.3d 1002 (Del. Super. Ct. 2023) ............................................................17, 21

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(1)...........................................................................................11

Plaintiff Grifols, S.A. ("Grifols") respectfully submits this Memorandum of Law in support of its Motion to Compel Production from Defendants Daniel Yu, Gotham City Research LLC ("Gotham"), Cyrus De Weck, and General Industrial Partners, LLP ("GIP") (collectively, "Defendants") in response to Grifols' Amended Second Set of Requests for Production.

## I.    PRELIMINARY STATEMENT

This is a defamation case about a short-selling scheme that injured Grifols, a global healthcare company, and its shareholders, and generated massive illicit gains for Defendants. In 2023, Defendants took out a large short position in Grifols' stock. Defendants planned to release a "short report" that would tank the value of Grifols' stock. Over the course of Q4 2023, Grifols' stock value sharply increased for reasons explained in Grifols' Amended Complaint (*see* ECF No. 50, ¶¶ 15–16). Facing a "short squeeze," with no limit on their potential losses, Defendants were in a bind. *See id.* ¶ 17. As a result, when Defendants published their short report on January 9, 2024, they chose to make false allegations about Grifols that they knew would cause market panic.

The crux of this case is Defendants' false statement—referenced in the report's title, "Grifols SA: Scranton and the Undisclosed Debts"—that Grifols concealed a $95 million loan to Scranton Enterprises B.V. ("Scranton"). As Judge Liman explained in his decision on Defendants' motion to dismiss, Grifols plausibly alleged this was a false and defamatory statement of fact made with actual malice. The Scranton loan was disclosed in the very place that Defendants falsely told the public it should have been, but was not, disclosed. To make matters worse, Defendants tried to conceal that they had made this false statement immediately after cashing out their short position. With no public announcement or retraction, in an attempt to cover their tracks, Defendants surreptitiously replaced their report on January 10, 2024 with a revised version that acknowledged Grifols disclosed the loan but insisted (falsely) that it was disclosed inadequately.

Defendants contend that Grifols must show that Defendants' false statements about the Scranton loan were made with "actual malice." A key issue, therefore, is whether Defendants knew their statements were false or at a minimum acted with reckless disregard for the truth. Grifols' discovery requests are predominantly focused on this issue (some requests are also relevant to falsity and vicarious liability). Under Supreme Court and Second Circuit precedent, actual malice is proven through circumstantial evidence viewed in the aggregate and as a mosaic, and relevant factors include the publisher's financial motive, bias, and editorial process. *See* § III.A., *infra*. Grifols has therefore requested five categories of evidence that courts routinely compel in defamation cases: (1) Defendants' communications about Grifols and Scranton; (2) drafts and materials showing how Defendants' short report was crafted and Defendants' due diligence when drafting and editing; (3) documents and communications concerning Defendants' decision to "revise" the January 9 Gotham report and their decision not to publicize that revision; (4) trading and financial records that bear on Defendants' financial motive; and (5) organizational documents showing who directed and benefitted from the scheme.

Defendants initially refused to respond to Grifols' requests, stating they "did not want to write" objections or responses. When pressed (under threat of waiver), they served boilerplate objections that failed to specify what was being withheld or why, and eventually sought a protective order to halt discovery beyond a forthcoming self-selected "summary judgment production." The Court rejected that maneuver, denied Defendants' motion for a protective order, and authorized Grifols to move to compel. Nov. 6, 2025 Hr'g Tr. at 27:15-28:15.

Grifols has attempted to narrow the scope of the parties' disputes, engaging in three meet-and-confer meetings and related follow-up correspondence regarding the disputed requests. While this resulted in agreement on a few requests, and proposed narrowing of others, there is still a

threshold dispute on which the parties remain at impasse. Defendants contend that they only need to produce documents concerning their false statement about the Scranton loan. Defendants' position is wrong because actual malice may be proven in the aggregate and based on circumstantial evidence, as court after court (including this Court) has found. All of Defendants' documents and communications about Grifols are relevant to the actual malice inquiry.

The parties are also at an impasse regarding the relevant period for production. Defendants initially refused to produce *any* post-publication evidence—an untenable position, as courts routinely hold that post-publication materials are relevant in defamation cases because they may bear on the publisher's state of mind at the time of publication. Defendants then switched their position, committing to producing post-publication materials but only if Defendants determine such documents "reflect back" on their state of mind at the time of publication. This is still improper: whether post-publication evidence bears on Defendants' state of mind at the time of publication is a question for the Court or the Jury—not Defendants—to decide. The Court should therefore compel Defendants to produce all responsive documents in full.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  *DEFENDANTS' LIES ABOUT THE SCRANTON LOAN.*

In late 2023, Defendants faced losses on their short position in Grifols. ECF No. 50 ¶¶ 16–17.  To turn those losses into a windfall, they launched a coordinated effort to drive down Grifols' stock price. *Id.* On January 9, 2024, Defendants published a report titled: "Grifols: Scranton and the Undisclosed Debts." *Id.* ¶ 122. The report falsely stated that Grifols had failed to disclose a $95 million loan to Scranton in Grifols' financial filings. *Id.* ¶¶ 137–138. In truth, the loan was

disclosed repeatedly in Grifols' 2018–2022 annual reports. *Id.* ¶¶ 139–140. Indeed, it was disclosed *in the very place* where Defendants said the loan should be disclosed. *See id.*

Defendants widely disseminated their report, triggering an immediate market sell-off and steep decline in Grifols' share price once the report was published. *Id.* ¶¶ 122–27. That same day, Defendants liquidated portions of their short positions for a multi-million dollar profit. *Id.* ¶ 128.

The next day, once the damage to Grifols was done and Defendants had locked in their illicit gains, Defendants quietly uploaded a revised report to their website, which modified the statement about the Scranton loan to say it was undisclosed in Grifols' "corporate governance filings" and the disclosure was "buried" in a footnote. *Id.* ¶¶ 143–145. These statements were also false. *Id.* Defendants also maintained the report's title: "Grifols SA: Scranton and the Undisclosed Debts." Defendants never publicly retracted the initial report, have not corrected media articles that repeat the initial report's lies, and have stood by their false statements in the revised report.

### B. DEFENDANTS' MOTION TO DISMISS.

On May 29, 2025, the Court found that Grifols plausibly alleged both falsity and actual malice with respect to Defendants' lies about the Scranton loan. ECF No. 56. In doing so, the Court found it "plausible to infer that [Defendants] knew at the time [they] published the original report that the loan had been disclosed but simply chose to report the opposite," and that their January 10 "revision" was "not a good-faith correction but an attempt to cover up or soften the consequences of the initial falsehood." *Id.* at 43–44.[1]

---

[1] The Court granted Defendants' motion to dismiss other challenged statements solely on the ground that they were non-actionable opinion. Grifols anticipates that discovery will show that Defendants strategically slathered their report with opinion buzzwords to try to avoid liability.

### C. *DEFENDANTS' OBSTRUCTION OF DISCOVERY.*

Pursuant to the Court's July 22, 2025 Scheduling Order (ECF No. 62), Grifols served Defendants on August 22, 2025 with its Requests for Production on Defendants ("RFPs") at issue in this motion. ECF No. 68-1. Defendants initially refused to respond at all, stating that they "did not want to write" objections or responses. ECF No. 68-2. When pressed, Defendants served boilerplate, non-substantive objections that failed to identify what was being withheld or why. ECF No. 68-4. They also refused to negotiate an ESI protocol or identify custodians, effectively stonewalling discovery.

Defendants then moved for a protective order, asking the Court to halt discovery until they filed a partial motion for summary judgment based on a self-selected set of documents they would provide with the motion. ECF No. 68. This proposal sought to invert both Rules 26 and 56, forcing Grifols to oppose summary judgment before obtaining the discovery necessary to rebut it. *Id.*

On October 22, 2025, the Court scheduled a hearing on Defendants' motion and directed the parties to meet and confer beforehand to narrow the issues. ECF No. 71. Grifols engaged in that process in good faith. The parties' discussions were largely unproductive, though, because Defendants insisted that they would produce only a *curated* set of materials for use in their premature summary judgment motion and would otherwise limit discovery to pre-publication communications and documents about the Scranton loan *alone*. Ex. B. In addition, Defendants insisted they would redact "irrelevant" portions of documents they would produce.

At the hearing, the Court denied Defendants' motion for a protective order. Nov. 6, 2025 Hr'g Tr. at 27:15–16.[2] The Court authorized Grifols to move to compel production and encouraged

---

[2] Grifols is not submitting with this motion the transcript of the November 6, 2025 conference before Judge Liman because it is not yet publicly available on the docket and Defendants may

the parties to try to further narrow the scope of the disputes. *Id.* at 28:7–15. Consistent with that instruction, and in the interest of compromise, Grifols proposed more revisions to its RFPs on November 10, 2025. Grifols narrowed or withdrew several requests and offered to withdraw others if Defendants provided specified information or stipulations. Ex. A. The parties met and conferred again on November 13. Those discussions led to Defendants agreeing to produce documents in response to Grifols' RFPs 23, 24, and 27 (subject to the time-period dispute noted above). Defendants also confirmed, in lieu of producing documents in response to RFP 32, that they understood Daniel Yu to be the only employee of Gotham and that they would promptly alert Grifols if their understanding changed. Likewise, in lieu of producing documents in response to RFP 37, Defendants identified each of GIP's employees. The parties remain at an impasse on the matters addressed by this motion.[3]

## III.    ARGUMENT

### A.    THE SCOPE OF MALICE DISCOVERY MUST ENCOMPASS EVIDENCE CONCERNING DEFENDANTS' KNOWLEDGE, MOTIVES, AND CONDUCT REGARDING GRIFOLS AS A WHOLE.

The threshold dispute before the Court concerns the proper scope of malice discovery. Defendants contend that discovery should be limited to materials directly addressing only the defamatory statements in the Gotham Report about the Scranton loan. Ex. B. That cramped view ignores the fundamental nature of the actual malice inquiry and the realities of how it is proven in defamation cases. To determine whether Defendants acted with actual malice—whether they knew

---

wish to seek redactions. Grifols will, of course, promptly provide a copy at the Court's request should that be necessary.

[3] Grifols initially believed the parties were at impasse on Defendants' stated intent to redact documents based on "irrelevance." On November 13, Defendants said that they were not presently aware of any discovery material that would be redacted based on relevance (while reserving the right to apply such redactions). Grifols maintains that any such redactions would be improper. *See, e.g.*, *Christine Asia Co. v. Alibaba Grp. Holding* Ltd., 327 F.R.D. 52, 54 (S.D.N.Y. 2018).

their statements were false or acted with reckless disregard for the truth—Grifols must be permitted to explore what Defendants knew, believed, and communicated about **Grifols as a company**, not merely the Scranton loan's disclosure. Defendants' broader narrative about Grifols—how they perceived the company, how they analyzed and discussed Grifols' financial reporting and disclosures, and what preconceptions or biases informed their reporting—bears directly on whether their false statement about the loan was made knowingly or recklessly. In addition, Defendants should not be permitted to unilaterally decide which post-publication documents bear on their state of mind at the time of publication.

### 1. *Malice Discovery is not Limited to the Challenged Statements.*

Courts have long recognized that actual malice discovery must encompass a comprehensive evidentiary record that reveals how a defendant's knowledge, motives, and actions coalesced into a false publication. A defamation plaintiff must be allowed to trace, including through circumstantial evidence, why the defendant targeted the plaintiff, what the defendant knew (or ignored) when they published their report, and how they arrived at their conclusions. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668, 692–93 (1989) (actual malice may be proven circumstantially; affirming verdict where defendant "purposefully avoided the truth" by ignoring readily available sources and departing from standard journalistic practices); *Dalbec v. Gentleman's Companion, Inc*., 828 F.2d 921, 927 (2d Cir. 1987) ("Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted.").

The standard is a subjective one, focusing on "the state of mind of the publisher ... at the time of publication," and the body of facts, context, and motivations informing that mindset, not just an isolated statement. *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 179 (S.D.N.Y. 2024). The

inquiry therefore extends beyond the literal words at issue to the broader course of conduct that illuminates whether the speaker "entertained serious doubts as to the truth" or acted despite "obvious reasons to doubt the veracity" of the claims being made. *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 277–78 (S.D.N.Y. 2013) (actual malice "may be proved through inference and circumstantial evidence" drawn from, among other factors, a defendant's reliance on dubious sources, failure to verify, financial motive, or conduct before and after publication) (cleaned up).

During the parties' meet-and-confer meetings, when repeatedly pressed for any authority supporting their position that discovery can be limited to the challenged statement(s), the only cases that Defendants ever offered were *Bobulinski* and *Biro*, which actually *support* Grifols' position. Defendants focused on the requirement to allege, and ultimately prove, that "the statement *at issue*" was made with actual malice, *Bobulinski*, 758 F. Supp. 3d at 179 (emphasis added), but that simply means that a plaintiff must demonstrate each challenged statement was made with actual malice. It does not mean that only documents regarding the challenged statement(s) are relevant to actual malice. *Bobulinski* and *Biro* do not say that; they contradict this notion because they, along with other cases discussed herein, establish that actual malice may be proven in the aggregate and based on circumstantial evidence. *See also, e.g.*, *Monarch Air Grp., LLC v. Journalism Dev. Network, Inc.*, 2025 WL 445491, at *10–11 (S.D. Fla. Feb. 10, 2025) (rejecting the same position Defendants advance here and holding that "[e]ven if such decisions and discussions do not directly implicate the specific statements Plaintiff alleges are false, Defendant's deliberations on how to present, frame, and emphasize much of the article's content is relevant to Defendant's state of mind[.]").

As the Supreme Court explained in *Herbert v. Lando*, discovery into a publisher's editorial process and mental impressions is essential to the proof of actual malice, and any restriction on

that discovery "would constitute a substantial interference with the ability of a defamation plaintiff to establish the ingredients of malice." 441 U.S. 153, 170 (1979). That principle has guided courts to authorize discovery into the full range of information that bears on intent, motive, and bias, including a defendant's internal and external communications, drafts and research materials, and financial interests connected to the publication. *See Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 183 (2d Cir. 2000) (an "accumulation" of evidence of "negligence, motive and intent" along with "appropriate inferences supports the existence of actual malice") (citation omitted). This Court has echoed this point in addressing a discovery dispute, acknowledging that "motive, intent can be relevant," and observing—citing *Celle*—that "evidence of ill will combined with other circumstantial evidence could go to [whether] the defendant acted with reckless disregard as to the truth or falsity." *Egiazaryan v. Zalmayev*, No. 11-cv-2670 (PKC) (GWG), ECF No. 103 (Hr'g Tr. 25:22–26:6) (S.D.N.Y. Feb. 24, 2012).

Against this legal backdrop, Grifols' discovery requests appropriately target the core evidence essential to proving actual malice. As explained on a request-by-request basis below in Section B, communications about Grifols will reveal Defendants' views, biases, and intentions toward Grifols; drafts and research materials will show how Defendants' selected, omitted, or distorted information to fit a preconceived narrative; and trading records will illuminate their motive and financial self-interest. Courts assess this mosaic of evidence collectively, not piecemeal, because "Plaintiffs are entitled to an aggregate consideration of all their evidence to determine if their burden has been met." *Stern v. Cosby*, 645 F. Supp. 2d 258, 278 (S.D.N.Y. 2009) (cleaned up). Restricting discovery to documents that discuss the Scranton loan would unfairly prejudice Grifols' ability to compile the evidentiary record necessary to establish that Defendants acted knowingly or recklessly in publishing falsehoods.

## 2. *Defendants Should Produce Post-Publication Documents*

Defendants previously refused to produce *any* post-publication documents. This position was improper since "there is no bright line rule holding that discovery of post-publication materials cannot shed light on what a defendant knew at the time of publication. Indeed, many federal courts have found post-publication evidence relevant in defamation cases." *Coomer v. Byrne*, 2025 WL 1222527, at *3 (M.D. Fla. Apr. 28, 2025) (citing cases, including *Stern*, 645 F. Supp. at 279–80, and allowing discovery on items one year post-dating the complaint).

Defendants then changed their position, stating that they will produce some post-publication materials, but only those that they unilaterally deem to "reflect back" on their state of mind at the time of publication. That limitation is improper: Defendants should not be permitted to restrict production based on their unilateral determination of whether a document or communication bears on their state of mind at the time of publication. *See Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, 2020 WL 7342724, at *12 (S.D.N.Y. Dec. 11, 2020) (rejecting "unilateral [relevance] determinations by individuals in whose interest it is to seek to withhold the production of documents that may lead to the discovery of admissible evidence") (citation omitted). Thus, the Court should require Defendants to produce responsive documents for the entire period.[4]

---

[4] The parties' dispute over the relevant period for production applies to all the RFPs discussed below in Section B. In addition, while Defendants agreed to produce documents responsive to RFPs 23, 24, and 27 (as amended), the parties still dispute as to those RFPs whether Defendants may withhold post-publication documents based on their view that those documents do not bear on their state of mind at the time of publication.

### B. EACH OF GRIFOLS' REQUESTS SEEKS RELEVANT EVIDENCE THAT IS PROPORTIONAL TO THE NEEDS OF THIS DEFAMATION CASE.

Discovery under Rule 26(b)(1) permits production of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance is construed broadly. *Mitchell v. Fishbein*, 227 F.R.D. 239, 248 (S.D.N.Y. 2005). This standard amply supports the scope of each of Grifols' RFPs.

#### 1. Defendants' Communications (RFPs 1–12, 17).

Grifols seeks the production of Defendants' internal and external communications about Grifols, Scranton, and this litigation. These materials go to the heart of the actual malice inquiry because they reveal what Defendants knew or said about Grifols and when, what information they possessed that contradicted their defamatory statements, and any preexisting bias or false narrative they sought to advance.

Defendants seek to unilaterally limit their production to communications "concerning Grifols as to the Loan Statement thesis" and "presently object to anything more." Ex. B. They repeat this limitation across nearly all relevant requests—including communications among themselves, with journalists,[5] with Grifols employees, and with government bodies—and even refuse to produce communications "concerning this Action" (Ex. A, RFP 5), claiming such documents "could have no bearing on the state of mind of the publisher." Ex. B.

Defendants' limitation is improper. Malice discovery is not confined to a single sentence or statement, but extends broadly to communications about the plaintiff generally, which illuminate motive, bias, and the selective treatment of information. *See Smartmatic USA Corp., et*

---

[5] Defendants admitted to providing copies of the initial Gotham Report to two unidentified journalists prior to publication. ECF No. 70-1.

*al. v. Fox Corp., et al.*, No. 151136/2021, NYSCEF Doc. No. 1171[6] (Sup. Ct. N.Y. Cnty. Feb. 22, 2023) (ordering defamation defendants to produce documents "relating to [Plaintiff]" from 51 custodians); *Amin v. NBCUniversal Media, LLC*, 2023 WL 8238975, at *8 (S.D. Ga. Nov. 28, 2023) (holding that communications "about [plaintiff] . . . would certainly bear on [malice], regardless of whether . . . expressly about the Challenged News Reports"); *Saroya v. Council on Am.-Islamic Relations Found., Inc*., 348 F.R.D. 632, 643 (D. Minn. 2024) ("Communications about [plaintiff generally] are well within the scope of discovery because they bear directly on [defendant's] . . . state of mind [at the time of publication]."); *Montgomery v. Prisma Health*, 2024 WL 5695639, at *6–7 (D.S.C. May 3, 2024) (compelling production of all text messages "about Plaintiff or facts relevant to [the] case"); *Blankenship v. Fox News Network, LLC*, 2021 WL 3706683, at *6 (S.D.W. Va. Aug. 20, 2021) (ordering production of internal communications among 37 custodians "concerning the plaintiff" due to their relevance to malice and motive).

Each sub-category of communications that follows—internal exchanges, third-party correspondence, regulator submissions, and social-media activity—captures a distinct but interrelated dimension of Defendants' state of mind and is independently discoverable.

**RFPs 1–4** seek Defendants' communications about Grifols, including internal exchanges among Defendants and correspondence with any third parties. Ex. A. These materials are quintessential malice evidence: they may reveal personal animus, motive, or knowledge of contrary facts, and thus speak directly to Defendants' subjective state of mind—including bias, preconceived narratives, and awareness of contradictory information. *See, e.g.*, *Amin*, 2023 WL 8238975, at *8; *Saroya*, 348 F.R.D. at 643; *Blankenship*, 2021 WL 3706683, at *6.

---

[6] We note that the title of this order appears to be in error. While it is titled as an order "Denying Plaintiffs' Requests for Discovery," we note that the order actually *grants* a broad swath of plaintiffs' discovery requests.

*RFP 5* seeks Defendants' communications concerning this Action. Ex. A. Such materials are relevant because they may reveal Defendants' post-publication recognition of falsity, their efforts to conceal or rationalize errors, or other statements inconsistent with good faith. To minimize burden and privilege concerns, Grifols has proposed to limit this request to communications predating Defendants' appearance in this case. *Id.*

*RFPs 6 and 12* seek Defendants' communications about Grifols and Scranton with journalists to whom they provided copies of the January 9, 2024 Gotham Report before publication, and with the London-based research firm "The Analyst" whose information Defendants claim informed their investigation. These materials are relevant for the same reasons as Defendants' broader communications about Grifols: they reveal knowledge, bias, and narrative-building—core to the actual malice inquiry.

Moreover, pre-publication exchanges with journalists are especially probative because they show how Defendants coordinated a campaign to spread their false claims and amplify market impact. Seeding advance copies of the Gotham Report with journalists reflects a calculated effort to publicize the defamatory statements and influence investor sentiment—classic motive and intent evidence. Communications with "The Analyst" (and any other sources) are relevant because they concern a source whose credibility and input bear directly on Defendants' research and editorial process. Courts treat such source materials as central to the malice analysis because reliance on biased or selectively used information supports a finding of reckless disregard. *See Smartmatic USA Corp. v. Fox Corp.*, 2023 WL 3075267, at *1–4 (Sup. Ct. N.Y. Cnty. Apr. 25, 2023) (ordering defendants "to provide any documents related to the credibility of the sources on which they relied and/or considered in publishing statements about plaintiffs").

*RFPs 7–11* seek Defendants' communications with regulatory bodies—including the SEC, CNMV, and DOJ—concerning Grifols or Scranton. Ex. A. Defendants themselves placed these materials at issue by citing the "over 65,000 documents" and "multiple presentations" provided to the SEC in the De Weck Affidavit they filed with this Court in an attempt at exculpation. ECF No. 28-1 ¶¶ 21, 25. Defendants cannot rely on the existence of these regulator submissions to claim good faith while simultaneously refusing to produce them to Grifols. These communications are uniquely probative of malice because they reflect what Defendants told regulators under a duty of accuracy and candor—and may show that they omitted or contradicted those same facts in their public report. When a defendant presents one version of events to authorities and another to investors, that inconsistency is powerful circumstantial evidence of knowing falsity or reckless disregard for the truth. Nor can Defendants credibly claim burden or unavailability: having already produced these materials to regulators, producing them here will be straightforward.

*RFP 17* seeks identification of all social media and online accounts used by Defendants to communicate or post about Grifols or Scranton. Ex. A.[7] Courts authorize social media discovery where it bears on a defendant's knowledge, bias, and dissemination of defamatory statements. *Gottwald v. Geragos*, 2018 WL 5624349, at *14–15 (Sup. Ct. N.Y. Cnty. Oct. 17, 2018) (compelling production of communications and social-media materials "mentioning the plaintiff," and rejecting overbreadth objections), *aff'd sub nom. Gottwald v. Sebert*, 172 A.D.3d 445 (1st Dep't 2019). Here, Defendants used social media to promote their reports, prime the market to react to their short positions, and amplify their accusations to ensure the success of their short

---

[7] To be clear, this request is in addition to Grifols' other requests for relevant communications, which would include communications via social media. This request seeks identification of Defendants' social media accounts because it may be necessary to pursue discovery relating to those accounts from third parties.

attack. ECF No. 50 ¶¶ 124, 193. Moreover, Defendants claim they were alerted to the alleged falsity of their Scranton loan statements via social media posts from anonymous third parties, making it imperative that Grifols obtain the complete record of those communications to test that assertion.[8]

### 2. Editorial Process, Materials Considered, and Contributors (RFPs 21–22, 26).

Grifols seeks discovery into Defendants' editorial process—specifically, all drafts of the Gotham Reports, materials considered in their preparation and documents identifying the individuals who contributed to the reports. Ex. A (RFPs 21–22, 26). Defendants seek to limit their production to drafts and materials "concerning the Loan Statement thesis." Ex. B. This limitation is inconsistent with settled law.

Drafts and editorial deliberations are among the most probative forms of malice evidence, as they reflect Defendants' subjective state of mind—their biases, motives, and awareness of contrary facts. *See Herbert*, 441 U.S. at 160 (inquiry into editorial processes "essential" to proving malice); *Harte-Hanks Commc'ns, Inc.*, 491 U.S. at 668, 693 (failure to investigate or consult obvious sources evidences reckless disregard); *Palin v. N.Y. Times Co.*, 940 F.3d 804, 814–15 (2d Cir. 2019) (retraction practices and editorial deliberations probative of malice). As recently found in *Monarch Air Group*:

> "[E]diting decisions, deliberations, and internal communications regarding the Article are the types of discovery that go to the core of the case and that are likely to reflect Defendant's state of mind. *Even if such decisions and discussions do not directly implicate the specific statements Plaintiff alleges are false*, Defendant's deliberations on how to present, frame, and emphasize much of the article's content is relevant to Defendant's state of mind …."

---

[8] Counsel for Defendants made this representation to counsel for Grifols in a November 10 email. Grifols will provide a copy of the correspondence should the Court wish to review it.

*Monarch Air Grp.*, 2025 WL 445491, at *3 (emphasis added). The same reasoning applies here: the full drafting and editorial record—including earlier drafts and sections unrelated to the Scranton loan—will reveal how Defendants conceived, corroborated, and refined their narrative about Grifols, and whether their treatment of other disclosures belies their claim of innocent error.

**RFPs 21 and 22** seek production of all drafts of the Gotham Reports and all materials considered in their preparation, including the "Gotham City Research Investigation" referenced in the defamatory report. Ex. A. Full production is necessary to understand how Defendants' narrative about Grifols took shape—including how and why they chose to name their report after the Scranton loan disclosure, and how their interpretation of Grifols' financial disclosures evolved during drafting. Earlier drafts and materials will show whether, how many times, and to what degree Defendants reviewed the very Grifols filings they falsely stated "[do] not disclose" (January 9 report) or "buried" (January 10 report) information about the Scranton loan. Such documents will also illuminate why Defendants cited with precision to other minutiae in those same Grifols filings while disregarding the loan's clear disclosure. That selective treatment of facts—scrutinizing Grifols' filings in detail but then claiming that disclosures do not exist—is powerful circumstantial evidence of knowing falsity or reckless disregard.

This discovery is also directly relevant to another defamation element: falsity. The Court found that Grifols stated a defamation claim regarding Defendants' post-revision statement that Grifols failed to disclose the $95 million loan in its "corporate governance filings" and "buried" the disclosure in a single footnote. ECF No. 50 ¶ 146; ECF No. 56 at 44. Given the parties' dispute over what constitutes Grifols' "corporate governance filings"—it is Grifols' position that its annual reports that disclosed the Scranton loan constitute a "corporate governance filing"—the drafts and

16

materials considered will illuminate how Defendants understood that term, what Grifols filings they reviewed, and whether they deliberately or recklessly mischaracterized those documents.

*RFP 26* seeks documents sufficient to identify any person who contributed to the Gotham Reports. Ex. A. This information is necessary to determine whose knowledge and intent can be imputed to Defendants (and may also identify John Doe defendants). Courts routinely compel such information because identifying contributors allows plaintiffs to assess the credibility, bias, and role of those involved in creating and editing the defamatory publication. *See Smartmatic USA Corp.*, 2023 WL 3075267 at *3–4 (ordering production from additional custodians, including Fox executives who "participated in the editorial process in general and attended editorial meetings," finding that such individuals "have, or may have, relevant information . . . [and that] adding additional custodians to the discovery exchange is warranted").

### 3.  *Trading Records and Financials (RFPs 16, 19, 33–34, 38–39).*

Grifols seeks discovery into Defendants' trading activity and financial records, including Defendants' transactions in Grifols' stock (RFP 19), Defendants' bank accounts (RFP 16), and the financial statements and tax records of Gotham and GIP (RFPs 33–34, 38–39). *See* Ex. A. These materials go to the core of the actual malice inquiry, and vicarious liability, because they will establish who was involved in, and benefited from, publishing the Gotham Reports. *See Smartmatic USA Corp*., 2023 WL 3075267 at *3–4 (compelling production of "motive" evidence, including ratings and financial-performance documents, finding they were relevant to plaintiffs' claim that defendants' defamatory broadcasts were financially motivated); *U.S. Dominion, Inc. v. Fox News Network, LLC*, 293 A.3d 1002, 1047–48 (Del. Super. Ct. 2023) (identifying "financial motive" as a hallmark of actual malice and recognizing profit-based incentives as circumstantial evidence of knowing falsity); *Smartmatic USA Corp. v. Lindell*, 2023 WL 6890929, at *5 (D. Minn. Oct. 19, 2023) ("Mr. Lindell's financial status is relevant to Smartmatic's claim of actual malice.");

*Gilmore v. Jones*, 2021 WL 68684, at *8 (W.D. Va. Jan. 8, 2021) (holding that discovery into defendants' "specific profit motive to publish stories about plaintiff" was "relevant to, even if not sufficient to prove, actual malice").

**RFP 19** properly seeks "all documents and communications concerning any financial transaction involving Grifols' stock." Ex. A. These records will provide the necessary context to evaluate the relationship between Defendants' trading and publication activities—showing the timing, scope, and sequencing of their short positions and whether they sought to and did exploit market panic in reaction to their defamatory statements. A complete trading picture is essential to understanding motive and intent. Viewed in the aggregate with other evidence, trading data can support the finding that Defendants acted recklessly or purposefully in spreading false information about the Scranton loan's disclosure to amplify their short positions. For example, if Defendants expanded their short positions as they drafted and disseminated the report, or liquidated soon after publication despite internal awareness of contrary facts, such facts—taken together—would be probative of actual malice. Indeed, this is precisely why the Court found Grifols plausibly alleged Defendants acted with malice in the first place. ECF No. 56 at 42–44.

Defendants say they will limit RFP 19 to "documents sufficient to show timing of the trades … immediately before and after the Jan. 9/10 publications." Ex. B. But De Weck claimed in his affidavit that Gotham began investigating Grifols in early 2023, first shorted Grifols shares on November 1, 2023, and did not cover this initial short position until after publication of the Report. ECF No. 28-1 ¶ 14. He further asserted that Defendants "did not write the Report to 'avoid massive losses from a short squeeze.'" *Id.* ¶ 15. Thus, Defendants' trading activity was ongoing throughout the period leading up to the report's publication *and beyond*—meaning that discovery limited to a narrow window around January 9 to 10, 2024 would omit crucial context about Defendants'

18

financial incentives, risk exposure, and trading strategy and inhibit Grifols' ability to test the veracity of De Weck's claims. The aggregate circumstantial evidence standard that courts apply requires that discovery encompass the full sequence of Defendants' trading activities.

*RFPs 16, 33, 34, 38, and 39* seek the financial statements, tax records, and bank account information of Gotham and GIP—materials necessary to trace profits, assess Defendants' financial condition, and determine who benefitted from their defamatory campaign. These records will contextualize Defendants' financial health, revealing whether they were financially constrained or reliant on short-driven reports to generate returns, and how those incentives shaped their conduct. Although De Weck denies that Defendants acted to avoid a "short squeeze," his acknowledgment that Gotham held substantial short positions against Grifols (during a time in which the company's share price was surging) highlights the importance of understanding the scope, performance, and impact of those investments. This information will allow Grifols to test De Weck's claim and show whether Defendants' financial exposure or liquidity pressures incentivized them to publish and then stand by a false report despite knowing of contrary facts. Financial tracing will also reveal whether GIP or other affiliated entities shared in profits or coordinated activity, providing further support for Grifols' aiding-and-abetting claim.

### 4. Structure, Contributors, and Interrelationships of the Defendants (RFPs 20, 31, 32, 35–37).

Grifols also seeks discovery about who controlled, contributed to, and financially coordinated the defamatory short-and-distort scheme—specifically, the organizational structure and relationships among Gotham and GIP, and any agreements governing shared revenues from short positions on Grifols stock. *See* Ex. A (RFPs 20, 31, 32, 35–37). These materials are essential to understanding Defendants' collective intent, corporate coordination, and financial interdependence, all of which bear directly on actual malice, aiding-and-abetting liability, and the

identification of potential John Doe defendants who may have funded, directed, or profited from, or contributed to, the Gotham Reports.

*RFP 20* seeks "[a]ll Documents and Communications concerning any agreements between any Defendant and any person, entity, or other Defendant related to the sharing of any revenue derived from a financial transaction involving Grifols' stock." Ex. A. These agreements are vital to uncovering motive and coordination—specifically, whether Defendants (and anyone else) jointly benefited from their short-selling activity and publication of the Gotham Reports. Any profit-sharing or compensation arrangements would reveal that Defendants acted in concert to profit from the market reaction their false statements caused, directly supporting both the inference of actual malice and Grifols' aiding-and-abetting claim.

*RFPs 31, 35, and 36* seek documents and communications concerning the registration, organization, and affiliation between Gotham and GIP—specifically, to identify who controlled, financed, and operated these entities, and to determine whether they functioned jointly in publishing the Gotham Reports. Ex. A.[9] These materials will show whether GIP funded Gotham's activities, shared in trading profits, or directed Gotham's short-selling and publication strategy. Such information is critical to establishing collective intent and coordination—both probative of malice and necessary to support aiding-and-abetting liability. Courts recognize that identifying who conceived, financed, and benefitted from a defamatory publication is proper malice discovery, as it sheds light on the defendant's bias, financial motive, and control structure.

---

[9] Defendants refused to produce any documents in response to RFP 35, which seeks all documents and communications concerning the affiliation between Gotham and GIP. Ex. B. As Defendants are aware, Grifols would withdraw this request if Gotham and GIP stipulate to joint and several liability.

Courts recognize that identifying who conceived, financed, and benefitted from a defamatory publication is proper malice discovery, as it sheds light on the defendant's bias, financial motive, and control structure. *See U.S. Dominion*, 293 A.3d at 1043–48 (finding evidence of corporate "financial motive" to publish the defamatory statements, its control structure and decision-making hierarchy, and executive participation in publication all probative of actual malice).

## <u>CONCLUSION</u>

For the foregoing reasons, Grifols respectfully requests that the Court grant its motion and compel Defendants to produce all of the requested documents in full.

Dated:    November 14, 2025

**PROSKAUER ROSE LLP**

By:    */s/ Peter D. Doyle*
_____

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com

*Counsel for Plaintiff Grifols, S.A.*