UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRIFOLS, S.A. and GRIFOLS SHARED SERVICES NORTH AMERICA, INC.,<br><br>                                 Plaintiff,<br><br>-against-<br><br>DANIEL YU, GOTHAM CITY RESEARCH LLC, GENERAL INDUSTRIAL PARTNERS LLP, and CYRUS DE WECK,<br><br>                                 Defendants. | Index No. 1:24-cv-00576-LJL-GG<br><br><br>**DECLARATION OF DAVID S. KORZENIK IN SUPPORT OF DEFENDANTS' CROSS-MOTION FOR PROTECTIVE ORDER ASSERTING THE REPORTERS' PRIVILEGE** |

**David S. Korzenik** affirms the following to be true pursuant to 28 USCA §1746:

1.     I am counsel for defendants Daniel Yu, Gotham City Research LLC, General Industrial Partners LLP and Cyrus De Weck ("Defendants", "Gotham"). I am fully familiar with the facts set forth herein. I make this Declaration in support of Defendants' Cross-Motion for a Protective Order and for Protection under the Reporters Privilege – New York Civil Rights Law § 79-h.

2.     This Declaration a) describes the procedural setting of this Cross-Motion and its relation to Plaintiff's Motion to Compel (see ¶¶ 3-10); b) sets out the requisite two-part foundation for the Gotham Defendants' assertion of the §79-h privilege (see ¶¶ 14-17); c) describes the categories of materials that Gotham seeks to protect under the §79-h privilege per Rule 26(b)(5)(A)(ii) (see ¶¶ 19a, b, c and d below); and d) provides the Meet & Confer Certification (¶ 11).

1

3.  This Cross-Motion is made in conjunction with our Opposition [Dkt. 91] to Plaintiff Grifols' Motion to Compel certain discovery. [Dkt 84-6] The issues on both motions overlap. They seek the same outcome on discovery issues but on *different grounds*. This Cross-Motion asserts the Reporters' Privilege while our Opposition focuses on other grounds, such as Rule 26 and the meaning of actual malice and how it is applied.

4.  Grifols propounded its *Second Omnibus Request for Production* involving about 39 requests. Our dispute pertains to the permissible scope of those discovery requests.

5.  *An Action for Libel:* Plaintiff Grifols action is one for libel, directed against Gothams' published short-report that was critical of Grifols (the "Report"). Grifols' alleged that some 25 statements contained in the Report were libelous. First Amendment protections therefore apply.

6.  *The Motion to Dismiss - Only One of Some Twenty Claims Remain:* Defendants moved to dismiss Grifols' First Amended Complaint. Judge Liman dismissed Grifols' libel claims against *all but one* remaining statement in Gotham's Report. [Dkt. 56] That sole remaining claim relates to a statement in the Report that Grifols had not disclosed a related party loan of $95M to Scranton (a company held by Grifols family). The $95M loan was disclosed in a footnote in Grifols' annual report, but not in its *Corporate Governance Report,* where related party transactions are supposed to be disclosed under Spanish securities regulations.[1]

7.  *The Remaining Claim:* The Report was published by Gotham on January 9, 2024. As soon as Gotham learned of the oversight, it corrected it in less than 24 hours in an updated version of the Report on January 10, 2024. The January 9 statement with its January 10

---

[1] Grifols was later fined by the Spanish regulator, the CNMV, for its failure to disclose the $95M related party loan in its Corporate Governance Report. Grifols was also fined for failing to disclose *larger related party transactions* in its Corporate Governance Report, and other places, and was required among other things to restate its disclosure. It was also required to provide greater detail.

2

correction remain the sole issue in this case. The central remaining issue is whether the Loan Disclosure statement in the Report was published with *actual malice* – i.e. with knowledge of its falsehood or with a high degree of awareness of its probable falsehood.[2] Actual malice is a *subjective* (not objective) disbelief in the truth of the *specific* statement at issue *at the time it was published*. It is not to be confused with common law malice or general animus. Grifols seems to think otherwise.

8. The dispute between the parties turns on differences over the meaning of *actual malice* and what is relevant and appropriate to proving actual malice. Gotham's position is that Grifols discovery requests are unwarranted under Rule 26 and the law of actual malice, and that Grifols seeks broader discovery than is either relevant or *proportionate* to the remaining issues in the case. Gotham objects that Grifols seeks inappropriately expansive discovery a) *to resuscitate claims that were dismissed* as non-actionable by Judge Liman as a matter of law; b) *to fish for new claims* against the Report; and c) *to obtain documents for Grifols' proceeding against Gotham in Spain* – documents that Grifols has failed to obtain in the course of the Spanish proceeding.

9. Grifols has an unusually expansive and incorrect view of actual malice to justify its requests for information about **unchallenged and dismissed statements** in the Report. Grifols' expansive view of the law of actual malice is unsupported by Supreme Court and other case law. Our opposition to Grifols' motion to compel sets out the reasons for our objections to Grifols inappropriately expansive discovery requests and its faulty understanding of actual malice.

10. *What Gotham Has Committed to Produce:* Gotham will produce all materials related to the specific statement still at issue in the case, i.e., all communications and documents

---

[2] *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

3

regarding the Loan disclosure issue in the Jan 9 Report and all communications and documents pertaining to the Jan 10 revision. These are proper subjects of discovery.

11. *Meet & Confer Certification*: In a series of Meet & Confers with adverse counsel, it became clear where the lines of disagreement could not be reconciled and where the Court was needed. We stated that we would not raise the Reporters Privilege as to any discovery pertaining to the loan disclosure issue, but that if Grifols insisted on discovery beyond that legitimate scope of inquiry, we *would not waive* and would assert our Reporters Privilege.

12. *Reporters Privilege as an Independent Ground for Protection:* This cross-motion asserts Gotham's Reporters Privilege under N.Y. Civ. Rights Law §79-h – a different and distinct ground **independent** of the grounds asserted by Gotham in its Opposition to Grifols' motion to compel.

13. *Absolute and Strict Qualified Privileges*: Sec. 79-h protects professional publishers from disclosing confidential news and source information, non-confidential news and source information, editorial process such as drafts and internal communications, including such information that is unpublished or not solicited from a source by a reporter. Confidential materials are subject to an absolute privilege. §79-h(b). Non-confidential materials are subject to a strict qualified privilege which requires the party seeking disclosure to meet the three pronged "particularized need test." §79-h(c). Under that test, mere relevance is insufficient to overcome privilege. The material at issue must be shown by Grifols to be "critical to the maintenance of its claims." §79-h(c).

14. *To assert the §79-h Privilege, a publisher must do two things*: 1) lay the two-part foundation of the §79-h Privilege; and then 2) describe the nature or classes of materials asserted

4

to be privileged in a manner that will not reveal information which is itself privileged or protected. Rule 26(b)(5)(A)(ii). Both are set out below.

15. *The Two Foundational Elements for Defendants' Assertion of the §79-h Privilege*: All that is required under §79-h to set the foundation for the Reporters' Privilege is to show 1) that the Defendants "for gain or livelihood [are] engaged in gathering, preparing, collecting, writing, editing … news intended for … [an] other professional medium … which has as one of its regular functions the processing and researching of news intended for dissemination to the public." §79-h(a)(6); and 2) that the Report conveys "news" where news is defined by §79-h(a)(8) as "written, oral, pictorial, photographic or electronically recorded information or communication concerning local, national, or worldwide events or other matters of public concern or public interest …".

16. *Status as "Professional Journalist" under the Broad Definition of §79-h(a)(6)*: First, it is manifestly evident from the FAC [Dkt 50], from Defendants' Answer & Anti-SLAPP Counterclaim [Dkt 55], the Report itself [Dkt 22-2] and Judge Liman's ruling [Dkt 56], that Defendants "for gain" are engaged in the activity of researching, writing and editing reports about companies which it regularly disseminates to the public. Gotham is engaged in the regular function of processing and researching news. The disseminator of information must do so for "gain" and must have a financial interest in doing so.

  a. The Report itself states clearly at the outset that Gotham will benefit economically if the shares of Grifols decline in value. Economic "gain" and benefit is the prerequisite of establishing a speaker and publisher as a "professional journalist" as that term is broadly and inclusively defined by §79-h(a)(6).

5

    b. Judge Liman in his ruling recognized that short-seller report publishers like Gotham have "an economic interest in driving down the company's stock price, [and that they] ha[ve] the same right to express opinion and analysis as any other market participant." Dkt. 56, at 23.

    c. The FAC and Defendants' Answer both acknowledge the financial "gain" that the Report will produce if the shares at issue decline in value.

17. *Status as News Under the Broad Definition of §79-h(a)(8):* Second, Gotham's Reports are unquestionably "news" as that term is defined by §79-h (a)(8). That is evident from the subject matter of its reports and from the subject matter of the Report at issue here: Defendants research, write, process, and edit information concerning worldwide events on matters of obvious public concern – namely publicly traded companies – with the clear intention of disseminating that information in the form of their series of reports to the public.

    a. Judge Liman recognized the strong public interest served by short-seller reports such as Gotham's:

> Short-seller reports "perform a useful function by bringing information that securities are overvalued to the market." *Long Miao*, 442 F. Supp. 3d at 801 (quoting *In re Longtop*, 910 F. Supp. 2d at 577). It is through the percolation of ideas and opinions, both positive and negative, that the market can accurately value a security. Dkt 48 at p. 23.

Plainly the Report is "news" under §79-h(a)(8) and Gotham's activity is the dissemination of "news" to the public.

18. Gotham was not commissioned by any third-party to prepare or publish its Report. Its reports are written by its own internal team whom we have identified. The Report itself states transparently what its analysis was based on.

6

19.   *The Description and Categories of Documents and Information for Which Privilege is Asserted*: There a several categories or groups of documents for which Privilege is claimed.

    a.  Grifols seeks discovery of communications, drafts and editorial process *concerning statements which Judge Liman dismissed and ruled nonactionable* as a matter of law. *See* Dkt 56, at 18-21 ("The Court largely agrees with Defendants…[a]lmost all of the statements challenged by Plaintiffs are protected opinion."). These materials are all protected by §79-h. To obtain them Grifols must meet the demanding three-pronged "particularized need test." Under that test, it is not sufficient to claim that the materials are or might be "relevant." *See* accompanying Def. Mem. of Law. These materials involving *dismissed claims* are not relevant to actual malice. But significantly, Grifols could never make the requisite showing that such materials are "***critical***" to Grifols' claims – a showing far more demanding than relevance.

    b.  Grifols seeks discovery of communications, draft and editorial process *concerning statements which Grifols' never challenged in its FAC.* These materials are all protected by §79-h. To obtain them Grifols, must meet the demanding three-pronged "particularized need test." Under that test, it is not sufficient to claim that the materials are or might be "relevant." *See* accompanying Def. Mem. of Law. These materials involving *unchallenged claims* are not relevant to actual malice. But significantly, Grifols could never make the requisite showing that such materials are **"*critical*"** to Grifols' claims – a showing far more demanding than relevance.

7

c. Gotham objects to any discovery that pertains to any *confidential sources.* Gotham had no confidential sources that pertained to the remaining loan disclosure claim. But to the extent that it had confidential communications with third parties that related to *unchallenged or dismissed statements* in the Report or which related to *unpublished information*, those materials would be absolutely privileged under §79-h(b). They would not be subject to disclosure even under the three-pronged test. They are *absolutely* barred from disclosure.

d. Gotham objects to producing any non-confidential sources or third-party communications that do not relate to any of the actionable claims. Again, these materials are all protected by §79-h. To obtain them Grifols, must meet the demanding three-pronged "particularized need test." Under that test, is not sufficient to claim that the materials are or might be "relevant." *See* accompanying Def. Mem. of Law. These materials involve *unpublished matters*, *unmade/potentially new claims*, and *unchallenged claims*. Significantly, Grifols could never make the requisite showing that such materials are ***"critical"*** to Grifols' claims – a showing far more demanding than relevance. And it is inconceivable that Grifols could even particularize these demands in a way that would even begin to address the "particularized need test" – which requires that Grifols make a "clear and specific showing" of each prong of that test. 79-h(c).

e. Gotham objects to other production of any documents or materials that simply pertain to Grifols or Scranton generally or to broad, unfocused and *unparticularized* requests for production, those too would be barred from discovery under §79-h. Virtually all of Grifols RFP's reviewed in Gotham's

8

Opposition to the motion to compel are broad, un-particularized, shotgun requests.

Wherefore, Defendants' request that the Court grant them a protective order under the N.Y. Reporters Privilege barring disclosure of any of the categories and classes of information described above, together with such other and further relief as the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 26, 2025
New York, N.Y.

                                  *//s//David S. Korzenik*

                                  David S. Korzenik

                                  Miller Korzenik Rayman LLP