UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRIFOLS, S.A. and GRIFOLS SHARED SERVICES NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> DANIEL YU, GOTHAM CITY RESEARCH LLC, GENERAL INDUSTRIAL PARTNERS LLP, and CYRUS DE WECK, <br><br> Defendant. | Index No. 1:24-cv-00576-LJL-GG |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR A PROTECTIVE ORDER UNDER NY CIV. RIGHTS LAW 79-h

Defendants Daniel Yu, Gotham City Research LLC, General Industrial Partners LLP, and Cyrus de Weck ("Defendants", "Gotham") submit this Memorandum of Law in support of their Cross Motion for a protective order pursuant to the Reporters Privilege. NY Civil Rights Law Section 79-h and F.R.C.P. 26(b)(5)(A)(ii).

Gotham has established the simple two-part foundation[1] for the assertion of the 79-h privilege. The 79-h privilege protects disseminators of news against the kind of overreaching and punitive invasion of the editorial process on unrelated issues that Grifols pushes for here.

---

[1] All that is required under 79-h to set the foundation for that Reporters' Privilege is to show 1) that the Defendants "for gain or livelihood [are] engaged in gathering, preparing, collecting, writing, editing … news intended for … [an] other professional medium … which has as one of its regular functions the processing and researching of news intended for dissemination to the public. 79-h(a)(6). And 2) "news" is defined by 79-h(a)(8) as "written, oral, pictorial, photographic or electronically recorded information or communication concerning local, national, or worldwide events or other matters of public concern or public interest …"

Among other things 79-h protects against disclosure of "unpublished" materials gathered by a reporter; and it provides an absolute privilege against disclosure of any confidential source information (whether information from such a source was used or not, published or not.)

The privilege also protects against disclosure of internal editorial process unless the party seeking discovery can meet the three-pronged "particularized need" test of 79-h(c) with "a clear and specific showing." Again, as to discovery pertaining to the remaining challenged Loan Statement, we do not assert the privilege; but as to unrelated matters concerning Gotham and its Report, we do.

### I. Gotham Has Established Its Foundation for 79-h Privilege

Gotham is a "professional journalist," as it that is broadly and generously defined under 79-h. Gotham acts as a "professional medium or agency which has as one of its regular functions the processing and researching of news intended for dissemination to the public." N.Y. Civ. Rights Law § 79–h(a)(6). **See Declaration of David S. Korzenik dated November 26, 2025** at ¶14-17, establishing the two elements of the Reporters Privilege foundation as defined by the statute.

### II. Gotham's Objections to Grifols' Discovery Demands Are Grounded on the §79-h Definition of "News"

"News" under 79-h, also known as the Shield Law, is defined as "written, oral, pictorial, photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interest or affecting the public welfare." N.Y. Civ. Rights Law § 79–h(a)(8). As courts in the Second Circuit have recognized, "the Shield Law does not narrowly apply only to the specific exchanges where the source conveys 'news.'" *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 479 (S.D.N.Y. 2016).

1

> As the Second Circuit has held, the Shield Law protects journalists from "inquiries into the newsgathering process," as a whole. *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 109 (2d Cir. 2012) (affirming holding that Shield Law applied to "unpublished details of the newsgathering process," such as who made calls and interviewed particular sources, techniques for the reporters' investigation, and the backgrounds of the coauthors and editorial staff).

*Id.* Here, the scope of such "news" encompasses more than unpublished material about Grifols and Scranton; it includes "communications" about such unpublished materials. And this is so, regardless of whether Gotham obtained it ***prior*** to or ***after*** publication of the Report. Courts have held "news" also to encompass "drafts" of the publication at issue and "internal communications" about "reporting processes" of the type Grifols seeks.

For example, in *Trump v. O'Brien*, 958 A.2d 85 (N.J. App. Div. 2008), Donald Trump had sued reporter and author Timothy L. O'Brien for libel. O'Brien asserted the Reporter's Privilege under the New York Shield Law 79-h and its protections for "news" materials. The court protected Defendant O'Brien's reporting materials, including "notes of interviews with confidential and nonconfidential sources, drafts of [O'Brien's] book, and communications concerning news-gathering and editorial processes." *Id.* at 88 n.2; 94.

Elsewhere, in *Green v. Cosby*, No. 16-mc-00099-P1, Dkt. No. 13 (S.D.N.Y. Apr. 26, 2016), Bill Cosby had sought to compel materials from *New York* Magazine related to its 2015 article reporting on 35 women's stories of his assaulting them. *See id.* at 2:10-23. The *Cosby* court held that it was "very clear" the Shield Law privilege applied to "notes that the reporter took" and transcripts or recordings of interviews. It denied Cosby's motion – which he had made in the context of a defamation case to probe for "alterations" or "changes" in his accusers' stories. *Id.* at 6:13-14, 25:17-24. *See also In re Application to Quash Subpoena to Nat'l Broad. Co., Inc.*, 79 F.3d 346 (2d Cir. 1996) ("*NBC*") (quashing subpoena for out-takes of interviews).

2

### III. Sec. 79–h Protects Gotham's Nonconfidential News Material from Disclosure

Gotham's privilege in nonconfidential "news" material cannot be broken unless Grifols "has made a ***clear and specific*** showing that the news: (i) is ***highly material*** and relevant; (ii) is ***critical*** or necessary to the maintenance of [its] claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source." N.Y. Civ. Rights Law § 79–h(c). (emphasis added). Grifols cannot possibly make any such showing.

### IV. Grifols Cannot Show That Such Materials Are "Highly Material and Relevant"

Under the first prong of the Shield Law test, mere "relevance" is not enough. *See, e.g.*, *Matter of Application of Home Box Office, Inc.*, 64 Misc. 3d 566, 571 (Sup. Ct. N.Y. Cnty. 2019) ("[T]he Shield Law requires a showing not just that the footage is material, but rather that it is 'highly' material.). Nor is speculation as to relevance a "clear and specific showing." *See id.* at 572 ("Since Respondent does not know what is actually contained in the outtakes, she cannot factually assert that the footage is highly material and relevant to her defense.").

Grifols likewise cannot "factually assert" that any of the nonconfidential material it seeks is "highly material and relevant." Accepting arguendo that such material is hypothetically relevant that is hardly *particularized* as "highly material and relevant." N.Y. Civ. Rights Law § 79–h(c)(i).

Every libel plaintiff can and will argue generally that they need all editorial materials because they have to prove "actual malice." If that excuse were sufficient, then the Shield Law privilege would be empty. Grifols problem – evident from the shotgun nature of its 39 "Omnibus" Requests - is that it does not know where to start. So, it needs to embark on a general search of all of Gotham's files to find *something* as yet unknown and unidentifiable that *might*

help them. For the purposes of overcoming the qualified Shield Law privilege, speculation that materials may be "relevant" to a "question" is nowhere near enough. It alone warrants denial.

**V. Grifols Cannot Possibly Show That Nonconfidential Material Is "Critical or Necessary"**

The Second Circuit holds that 79-h's second prong is not merely duplicative of the first:

> We think that "critical or necessary" as used in the statute must mean something more than "useful," particularly since the first statutory factor requires that the material sought must be shown to be "highly material and relevant" in any event. Several courts have held that in order to find unpublished news to be critical or necessary within the meaning of § 79–h, there must be a finding that the claim for which the information is to be used "virtually rises or falls with the admission or exclusion of the proffered evidence."

*NBC*, 79 F.3d at 351 (citations omitted). "The test is not merely that the material be helpful or probative, but whether or not ... the action may be presented without it." *Baker*, 669 F.3d at 108 (citation omitted); *see also Doe v. Cummings*, No. 91-346, 1994 WL 315640, at *1 (N.Y. Sup. Ct. St. Lawrence Cnty. Jan. 18, 1994) (holding that movants who had met the first prong of § 79–h(c) nevertheless failed the second).

In enforcing the Shield Law, one New York state appellate court held that a defamation plaintiff could not obtain from defendants "[a]ll documents relating to any news article mentioning plaintiff," including "research files [and] reporter's notes," where the plaintiff had "simply stated that the materials were 'critical' to his claim without setting forth any analysis in support thereof." *Flynn v. NYP Holdings Inc.*, 235 A.D.2d 907, 908-09 (3d Dep't 1997).

In *Flynn,* the libel defendants produced to the plaintiff "prior newspaper clippings, contending that they were the only documents that [the reporter] relied on in preparing the article" at issue there. *Id.* at 908. However, not only did the *Flynn* court rule that the defendants' nonconfidential research files were protected by the Shield Law; "if the requested

4

documents were deemed confidential, defendants would be afforded unqualified protection from having to divulge such sources or materials." *Id.* (citation omitted).

The bottom line is that relevance is not enough to meet the first "highly material and relevant" prong of the Shield Law. N.Y. Civ. Rights Law § 79–h(c)(i). It does not even begin to meet the "critical or necessary" prong. N.Y. Civ. Rights Law § 79–h(c)(ii).

It is inconceivable that Grifols could possibly meet the second prong of the test, i.e., that its claims "'virtually rise or fall with the admission or exclusion of the proffered evidence.'" *Flynn*, 235 A.D.2d at 908 (citations omitted); *NBC*, 79 F.3d at 351; *Baker*, 669 F.3d at 108. Nothing that Grifols has set out in its Motion to Compel [Dkt. 85-6] even comes close to suggesting that Grifols could meet any part of 79-h's three-pronged particularized need test.

## **CONCLUSION**

Grifols' Motion to Compel should be denied. Nothing beyond what Gotham has committed itself to produce should be permitted. A protective order should issue protecting the classes of materials described in the Declaration of David S. Korzenik dated November 26, 2025 at ¶19 a-d. And the Court should grant such other and further relief as the Court deems just and proper.

Dated: November 26, 2025

        */s/ David S. Korzenik*
        David S. Korzenik
        Gillian Vernick

        **MILLER KORZENIK RAYMAN LLP**
        The Paramount Building
        1501 Broadway, Suite 2015
        New York, New York 10036
        Tel: 212-752-9200
        dkorzenik@mkslex.com
        *Attorneys for Defendants*