# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GRIFOLS, S.A., | |
| Plaintiff, | No. 1:24-cv-00576-LJL-GWG |
| v. | |
| DANIEL YU, an individual, GOTHAM CITY RESEARCH LLC, GENERAL INDUSTRIAL PARTNERS LLP, CYRUS DE WECK, an individual, JOHN DOES 1-10, and XYZ CORPORATIONS 1-10. | |
| Defendants. | |

## GRIFOLS, S.A.'S REPLY IN FURTHER SUPPORT OF ITS <u>MOTION TO COMPEL</u>

PROSKAUER ROSE LLP

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com

*Counsel for Plaintiffs Grifols, S.A.*

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 4

I.    Malice Discovery Encompasses All Evidence that Could Reflect on Defendants'
      Awareness of Falisty—Not Just Documents Tied to the Scranton Loan Statement........... 4

II.   Defendants Misstate the Malice Standard and Improperly Conflate the Standard for
      Proving Malice with the Standard for Discovery ............................................................. 6

III.  Defendants Cannot Unilaterally Declare Post-Publication Evidence Irrelevant to
      Their Pre-Publication State of Mind ............................................................................. 10

IV.   Grifols' Discovery Requests Are Proportional and Target the Core Evidence of
      Falsity, Malice, and Vicarious Liability ........................................................................ 11

      a.    Defendants' Communications (RFPs 1-12, 17).................................................... 13

      b.    Editorial Process, Materials Considered, and Contributors (RFPs 21–22, 26)..... 15

      c.    Trading Records and Financials (RFPs 16, 19, 33–34, 38–39) ........................... 18

      d.    Revenue Sharing Agreements (RFP 20) ............................................................. 20

CONCLUSION...................................................................................................................... 22

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Amin v. NBCUniversal Media, LLC,*
    2023 WL 8238975 (S.D. Ga. Nov. 28, 2023) ...........................................................................7

*Berisha v. Lawson,*
    973 F.3d 1304 (11th Cir. 2020) .............................................................................................16

*Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.,*
    2020 WL 7342724 (S.D.N.Y. Dec. 11, 2020) .......................................................................10

*Biro v. Conde Nast,*
    963 F. Supp. 2d 255 (S.D.N.Y. 2013) .....................................................................................7

*Biro v. Condé Nast,*
    807 F.3d 541 (2d Cir. 2015) ....................................................................................................9

*Blankenship v. Fox News Network, LLC,*
    2021 WL 3706683 (S.D. W. Va. Aug. 20, 2021) ....................................................................7

*Bobulinski v. Tarlov,*
    758 F. Supp. 3d 166 (S.D.N.Y. 2024) ......................................................................................7

*Brimelow v. N.Y. Times Co.,*
    2021 WL 4901969 (2d Cir. Oct. 21, 2021) ..............................................................................9

*Cassava Scis., Inc. v. Bredt,*
    *2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024)* ..............................................................19, 21

*Celle v. Filipino Reporter Enters. Inc.,*
    209 F.3d 163 (2d Cir. 2000) ....................................................................................................3

*Church of Scientology Int'l v. Behar,*
    238 F.3d 168 (2d Cir. 2001) ....................................................................................................8

*Coomer v. Make Your Life Epic LLC,*
    2023 WL 12134507 (D. Colo. Dec. 7, 2023) ...............................................................19, 20, 21

*Dalbec v. Gentleman's Companion, Inc.,*
    828 F.2d 921 (2d Cir. 1987) ....................................................................................................7

*Dershowitz v. Cable News Network, Inc.,*
    2022 WL 2662352 (S.D. Fla. June 15, 2022) ........................................................................18

*Dobrovolskaya v. Monarch Air Grp., LLC*,
  2025 WL 733258 (S.D.N.Y. Mar. 7, 2025) ....................................................16, 17

*Egiazaryan v. Zalmayev*,
  No. 11-cv-2670 (PKC) (GWG) (S.D.N.Y.) ...........................................................7, 8

*Goldfarb v. Channel One Russia*,
  663 F. Supp. 3d 280 (S.D.N.Y. 2023) .......................................................................9

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989) ..........................................................................4, 9, 13, 16, 17

*Herbert v. Lando*,
  441 U.S. 153 (1979) .................................................................1, 9, 10, 13, 16, 17

*Kilcoyne v. Plain Dealer Publ'g Co.*,
  678 N.E.2d 581 (Ohio Ct. App. 1996) ..................................................................8, 9

*Larweth v. Magellan Health, Inc.*,
  2019 WL 11866498 (M.D. Fla. July 16, 2019) .......................................................11

*Manning v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  2013 WL 1164838 (D.N.J. Mar. 20, 2013).............................................................20

*Med. Props. Tr. v. Viceroy Rsch.*,
  2024 WL 150502 (N.D. Ala. Jan. 12, 2024) .....................................................11, 13

*Monarch Air Grp., LLC v. Journalism Dev. Network, Inc.*,
  2025 WL 445491 (S.D. Fla. Feb. 10, 2025) ..............................................7, 16, 17

*Montgomery v. Prisma Health*,
  2024 WL 5695639 (D.S.C. May 3, 2024)..................................................................7

*Palin v. N.Y. Times Co.*,
  940 F.3d 804 (2d Cir. 2019)...................................................................................16

*Saroya v. C.A.I.R.*,
  348 F.R.D. 632 (D. Minn. 2024)........................................................................7, 13

*Sportvision, Inc. v. MLB Advanced Media, L.P.*,
  2022 WL 2817141 (S.D.N.Y. July 19, 2022) .........................................................20

*State Farm Mut. Auto. Ins. Co. v. Fayda*,
  2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015),
  *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)...............................................12

*Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*,
  330 F.3d 1110 (9th Cir. 2003) ...............................................................................19

*Tavoulareas v. Piro*,
  817 F.2d 762 (D.C. Cir. 1987) ............................................................................8, 20

**STATUTES & RULES**

N.Y. Civ. Rights Law § 79-h ............................................................................3

Fed. R. Civ. P. 26(b)(1) ............................................................................11, 12

## PRELIMINARY STATEMENT

Defendants admit that, in hopes of profiting from their short position in Grifols, they published a report falsely stating—including in the report's title—that Grifols failed to disclose the Scranton loan. Opp. 3, 29. Their defense is that this was an innocent "drafting oversight." *Id.* at 3. That is not credible and Grifols intends to prove it. Grifols has already plausibly alleged that Defendants published the false statements with actual malice. Now Grifols is entitled to discovery bearing on whether, at the time of publication, Defendants doubted the statements' veracity.

The parties dispute whether documents that do not specifically discuss the Scranton loan are discoverable. Defendants accuse Grifols of overreaching, and pursuing discovery for improper purposes, by casting a discovery net that goes beyond the Scranton loan issue. That is wrong. As Grifols has already explained, all the actual malice discovery that it seeks is relevant to its claims concerning the Scranton loan statements. Indeed, Grifols would seek the same discovery had its complaint consisted of a single paragraph alleging only the Scranton loan falsehoods.

Defendants have taken an extreme position: that documents that bear on their intent are not discoverable *unless they specifically address the Scranton loan*. That is not tenable. Imagine that, in 2023, Defendants Yu and De Weck exchanged messages in which they devised a scheme to short Grifols' stock, publish false statements about Grifols designed to panic the market, and then reap a massive windfall when the stock price plummeted. It is hard to conceive of documents more relevant to this case, yet Defendants' position on the scope of discovery would exclude them because there was no mention of the Scranton loan. And if there are no such smoking gun documents, that is even more reason that actual malice discovery must be broad to allow Grifols to show, through a mosaic of evidence, that Defendants hatched a scheme with intent to lie about Grifols. *See Herbert v. Lando*, 441 U.S. 153, 170 (1979) (explaining the importance of

circumstantial evidence to prove actual malice given the rarity of proof "from the mouth of the defendant himself"). Even if such evidence does not discuss the Scranton loan, it would still bear on whether Defendants published the Scranton loan statements with actual malice.

Similarly, documents concerning Defendants' overall editorial process and preparation of the defamatory report—including portions unrelated to the Scranton loan—will bear on whether it is credible that the false statements about the Scranton loan were a mere "drafting oversight." For example, discovery might show that Defendants spent months scrutinizing Grifols' annual reports to verify other statements in their report. That is highly relevant to whether it is believable that, when it came to the sensational point highlighted in the report's title, Defendants simply missed the repeated disclosure of the Scranton loan in every Grifols annual report since 2018. Yet Defendants refuse to produce that larger set of documents, insisting that Grifols is entitled to see *only* their work relating to the Scranton loan statements, without any of the broader context bearing on whether it is credible for Defendants to declare those false statements an innocent "oversight."

In their effort to cut off Grifols' access to key documents, Defendants invoke pleading, summary-judgment, and post-trial decisions—as though holdings that a particular set of facts did not constitute actual malice somehow could restrict the scope of discovery. For instance, Defendants claim it is "black letter law [that] a financial motive cannot *support* actual malice." Opp. 3 (emphasis added). But the Supreme Court case that Defendants cite merely held that a financial motive, standing alone, does not "suffice" to prove actual malice. *See id.* That, of course, does not mean financial motive is irrelevant to the actual malice inquiry; Grifols' cases show it is and that defamation defendants must produce such documents. *See* Mot. 9, 17–18. Defendants repeat this sleight of hand throughout their Opposition. As another example, Defendants portray a Second Circuit case as holding that evidence of Defendants' ill will toward Grifols is not relevant

(Opp. 8), when the Court merely observed that ill will *alone* does not constitute actual malice (*see id.*). Indeed, the Second Circuit has clearly held that "evidence of ill will combined with other circumstantial evidence indicating that the defendant acted with reckless disregard of the truth or falsity of a defamatory statement may also support a finding of actual malice." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000); *see also* Mot. 9. Defendants cite no case that would preclude Grifols from gathering both direct *and circumstantial* evidence that Defendants published the Scranton loan statements while doubting their veracity.

Defendants' First Amendment arguments fare no better. They repeatedly invoke "free speech" as if it immunizes them from discovery. Yet the Court has already held that the Scranton loan statements are actionable factual statements, not protected opinion. Having chosen to publish them, profit from them, and revise them in secret, Defendants cannot now invoke the First Amendment to avoid producing germane editorial files, communications, and financial records.[1]

Equally absent is any showing of burden. Defendants claim the requests are "overreaching" and "vexatious," yet they have refused to provide basic ESI data that would allow anyone— including the Court—to assess proportionality. At the same time, they suggest their SEC production was "much broader" than what Grifols seeks, effectively conceding that most responsive materials have already been collected and reviewed.

Defendants have produced just three documents in this case—all produced last Friday and all relating to how they supposedly learned the Scranton loan was false.[2] Grifols is entitled to far, far more. The Court should grant the motion to compel in full.

---

[1] Defendants also try to inject their newfound invocation of the Reporters' Privilege, N.Y. Civ. Rights Law Section 79-h, as an additional ground to resist discovery. Grifols will address the impropriety of that position when it opposes Defendants' Motion for a Protective Order. ECF 92.

[2] Contrary to Defendants' assertion that they were alerted to the falsity of the Scranton loan statements by "anonymous readers online" (Opp. 3–4), these documents reveal that at least two of

# ARGUMENT

**I.**      ***Malice Discovery Encompasses All Evidence that Could Reflect on Defendants' Awareness of Falsity—Not Just Documents Tied to the Scranton Loan Statement.***

Grifols recognizes that actual malice requires proof that Defendants made the Scranton Loan statements "with a 'high degree of awareness of . . . probable falsity,'" i.e., a subjective belief at the time of publication that those statements were likely false. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (citation omitted). The dispute here is not over that standard, but over Defendants' attempt to collapse the scope of discovery available to meet it. The law does not confine malice discovery to documents that exclusively address the precise subject matter of the challenged statement. Defendants cite no case to support that untenable position. Rather, because knowledge and recklessness are ordinarily proven through circumstantial facts, malice discovery necessarily reaches any information that may illuminate Defendants' awareness of falsity—including what they read, said, and heard about Grifols, their motives for targeting the company, the editorial processes through which they shaped their report, and how they handled information contradicting their thesis. Mot. 11-15.

Against that backdrop, the relevance of the discovery Grifols seeks is clear. If, for example, Defendants' documents reveal that (i) they formed a plan—internally and/or with third parties— to damage Grifols by crafting a misleading portrayal of the company to the market to ensure the success of their short bet; (ii) scrutinized Grifols' financial filings in granular detail to prepare the Gotham Report; and (iii) then quietly revised the report without openly correcting the core falsehood about the Scranton Loan, a reasonable jury could conclude that Defendants necessarily knew the loan was disclosed and chose to publish the opposite. Not every one of those documents

---

the "readers" were not anonymous. In fact, Defendants redacted their names and email addresses, claiming Grifols cannot see this information because of the EU's GDPR.

would need to reference the "Scranton loan" to be probative; what matters is that, viewed collectively, they show a high degree of awareness of probable falsity. That is precisely the type of circumstantial evidence Rule 26 permits—and precisely the type Defendants seek to block.

Defendants' misplaced argument that Grifols is seeking discovery on "dismissed claims" does not change this analysis. To be clear, Grifols is not seeking discovery into dismissed statements; it seeks discovery into Defendants' state of mind, motives, and process surrounding the overall publication that contained the defamatory lies the Court sustained. What Defendants call "dismissed-claim discovery" is simply standard malice discovery. Rule 26 asks whether requested material is relevant to the surviving claim—not whether the document happens to *also* correspond to a claim the Court dismissed. And Defendants' suggestion that any inquiry into their use of "opinion" language revives dismissed claims (Opp. 1, n.1) misunderstands the point. If discovery shows that Defendants deliberately inserted "opinion" phrasing elsewhere in the Gotham Report hoping to shield assertions they knew were false, that conduct is probative of malice and may be considered with other circumstantial evidence. Defendants cannot wall off evidence of bias, motive, source selection, or selective editing merely because those facts also touch parts of the report not independently actionable.

Nor does the Court's Motion to Dismiss Opinion impose any artificial perimeter on what Grifols may discover as to malice. Defendants insist the Court supplied a "roadmap" limiting discovery to the specific examples it identified at the pleading stage, but that misapprehends the purpose of Rule 12. Opp. 4. At that stage, however, the Court accepted the allegations as true and identified sample circumstances that, if proven, could support an inference of actual malice, finding they sufficed to state a defamation claim. Those examples were illustrative, not exhaustive. Once a claim survives dismissal, a plaintiff may discover the full range of evidence relevant to

falsity and malice. Under Defendants' theory, even a document showing that they planned, prior to doing any "research," to falsely portray Grifols in a way that would panic the market—without mentioning the Scranton loan—would be off-limits unless the Court had already described that scenario in its Rule 12 analysis. No rule, precedent, or logic supports that result.

Finally, Defendants contend that discovery must be limited because "only one sentence" remains in the case. Opp. 6, 10, 12. But the surviving claims do not concern a single isolated sentence; they challenge Defendants' repeated and reformulated assertions that Grifols hid the Scranton Loan—first "undisclosed," then "undisclosed in corporate-governance filings," then "buried" and "appearing nowhere else." Defendants structured the title, theme, and central thesis of their report around that accusation. Because the publication as a whole was built around this core factual claim, discovery into malice necessarily reaches the broader narrative surrounding it: how Defendants selected Grifols as a target, how they reviewed and characterized its filings, how they drafted and revised the report, and how they presented it to the market. That broader context is not ancillary; it is the evidentiary foundation for proving actual malice.

## II. Defendants Misstate the Malice Standard and Improperly Conflate the Standard for Proving Malice with the Standard for Discovery.

Defendants' core error is that they conflate two distinct questions: what is sufficient to prove actual malice, and what is discoverable under Rule 26 to allow a plaintiff to prove it. Opp. 7. Grifols is not trying to "import" a "negligence standard" into the malice inquiry. *Id.* Nor does it dispute that actual malice is a subjective standard requiring proof that Defendants knew or seriously doubted the truth of their Scranton loan statements. But that does not mean Grifols may prove this using only documents that discuss the Scranton loan statements. That is not the law. As Grifols' cases demonstrate, courts hold that malice is proven through the cumulative weight of

circumstantial evidence, and Rule 26 entitles a plaintiff to discover those circumstantial facts in the first place. Mot. 7–9, 11–12.[3]

Defendants fail to distinguish this authority, resorting to fabricating quotes and facts that appear nowhere in the opinions. *Amin v. NBCUniversal Media, LLC* undercuts their argument—it compelled production of draft scripts and broader editorial materials, limiting production only for custodians who never reviewed the broadcasts, which is the opposite of Defendants' position here given their five-person operation and single report. 2023 WL 8238975, at *8 (S.D. Ga. Nov. 28, 2023). Defendants' treatment of *Saroya v. C.A.I.R.*, is even worse: the quotation they attribute to that case appears nowhere in the opinion, and the court expressly held that "[c]ommunications about [the plaintiff] are clearly relevant to malice as they reflect . . . indications of ill will . . . and what [defendant] knew . . . at the time [it] published the press release." 348 F.R.D. 632, 643 (D. Minn. 2024). *Blankenship v. Fox News Network, LLC*, was cited solely for relevance—not proportionality—and actually confirms that communications among senior personnel are discoverable. 2021 WL 3706683, at *6 (S.D. W. Va. Aug. 20, 2021). And *Montgomery v. Prisma Health*, merely compelled production of texts "that relate to th[e] case," which supports Grifols'

---

[3] Contrary to Defendants' assertion, Grifols does not cite *Dalbec*, *Bobulinski*, *Biro*, or *Egiazaryan* to "fuzz" the actual-malice standard. Opp. 10–11. It cites each because they affirm the core principle that actual malice may be proven through circumstantial evidence, not just through documents that repeat the precise defamatory statement. *See* Mot. 7–9. And not one of these decisions suggests such a limited scope for malice discovery. *Dalbec v. Gentleman's Companion, Inc.,* 828 F.2d 921, 927 (2d Cir. 1987) ("Malice may be proved inferentially because it is a matter of the defendant's subjective mental state, revolves around facts usually within the defendant's knowledge and control, and rarely is admitted."); *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 179 (S.D.N.Y. 2024) (motion to dismiss decision that did not consider evidence and simply rejected malice allegations unsupported by concrete facts); *Biro v. Conde Nast,* 963 F. Supp. 2d 255, 277–78 (S.D.N.Y. 2013) (actual malice "may be proved through inference, and circumstantial evidence" (citation omitted)); *Egiazaryan v. Zalmayev,* No. 11-cv-2670 (PKC) (GWG), ECF No. 103 (Hr'g Tr. 25:22–26:6) (S.D.N.Y. Feb. 24, 2012) (ordering financial-records discovery because those materials bore on the speaker's knowledge, despite not restating the defamatory allegation).

position, not Defendants'. 2024 WL 5695639, at *6–7 (D.S.C. May 3, 2024). None of these decisions suggests that malice discovery is confined to documents parroting the challenged words; each reaffirms that circumstantial evidence bearing on motive, knowledge, and state of mind is squarely discoverable.

Defendants' authorities do not impose the constrained discovery standard they urge. In fact, in the entire section of Defendants' brief that argues for limiting discovery to pre-publication documents about the "loan statement," they cite **no *discovery* decisions** in support. *See* Opp. 6–14.[4] That itself is telling as to the weakness of their position.

Defendants rely on *Church of Scientology International v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001), to suggest that only a "correlative circumstance" tied to the specific statement can be probative. But *Behar*—decided after full discovery—supports Grifols. There, the Second Circuit acknowledged that bias or hostility "***would be relevant*** to show a purposeful avoidance of the truth ***if it were coupled with*** evidence of an extreme departure from standard investigative techniques." *Id.* (emphasis added). That is precisely the kind of combined showing Grifols seeks to make.

The same is true of *Tavoulareas v. Piro*, 817 F.2d 762 (D.C. Cir. 1987), and *Kilcoyne v. Plain Dealer Publishing Co*., 678 N.E.2d 581 (Ohio Ct. App. 1996). Both were post-discovery merits decisions and did not limit the scope of discovery. *Tavoulareas* rejected reliance on an internal editor's memo because the defendant never used it—not because circumstantial evidence is per se improper. 817 F.2d at 793–94. And *Kilcoyne*, addressing opinion commentary about judicial proceedings, held only that bias and failure to investigate did not show malice in that

---

[4] The only discovery decision that Defendants even discuss is this Court's decision in *Egiazaryan*, which Defendants only address in a failed attempt to distinguish the case. *See* n.3, *supra*.

context; it nowhere suggests limiting discovery where a plaintiff alleges a provably false factual statement, as Grifols has done here. 678 N.E.2d at 586.

Similarly, *Biro v. Condé Nast*—a Rule 12(b)(6) decision—held only that a plaintiff cannot plausibly allege actual malice from post-publication conduct unrelated to the challenged statement, or from highlighting "controversial" material. 807 F.3d 541, 546 (2d Cir. 2015). Those tenuous allegations bear no resemblance to the publication-connected facts pled by Grifols—facts this Court has already held plausibly allege actual malice. ECF 56 at 43–44.

Next, Defendants' reliance on *Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280 (S.D.N.Y. 2023), is inexplicable given *Goldfarb* did not restrict malice evidence; it denied summary judgment for a libel defendant because "a reasonable factfinder could consider all the types of circumstantial evidence present in the record" and conclude that the "accumulation of the evidence and appropriate inferences supports the existence of actual malice." *Id*. at 312. The court relied on motive, bias, inherently improbable accusations, and "obvious reasons to doubt" the informant—the same types of contextual evidence Grifols seeks, none of which were limited to documents narrowly focused on the challenged words. *Id.* at 311.

Defendants' claim that Grifols "misreads" *Harte-Hanks* and *Herbert v. Lando* fares no better. Opp. 11–12. *Harte-Hanks* expressly endorses circumstantial malice proof, finding actual malice from the "cumulative force" of motive, investigative choices, and purposeful avoidance of the truth—not any single fact. 491 U.S. at 668–69, 692–93. And *Brimelow v. New York Times Co*., 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) does not assist Defendants: the Second Circuit held there only that the plaintiff offered no publication-linked facts suggesting subjective doubt, contrasting those threadbare allegations with the robust circumstantial record in *Harte-Hanks*. *Brimelow* never questions *Harte-Hanks*' recognition that circumstantial evidence is central to

proving malice. Finally, *Herbert* squarely permits discovery into internal deliberations and editorial processes where, as here, a knowingly or recklessly false publication is alleged. 441 U.S. at 157 n.2, 174.

### III.    *Defendants Cannot Unilaterally Declare Post-Publication Evidence Irrelevant to Their Pre-Publication State of Mind.*

Defendants devote pages to reciting uncontroversial law: actual malice must ultimately be proven as of the time of publication. Opp. 13–15. That is not in dispute. The question is whether Defendants may unilaterally decide which post-publication documents "reflect back" on their state of mind at the time of publication and withhold all others. Grifols' moving brief deconstructed that position (Mot. 10) and Defendants do not resuscitate it, let alone respond, to it.

Defendants' silence is telling. They first refused to produce *any* post-publication documents. After Grifols provided Defendants with authority rejecting a "bright-line rule" against such discovery, they shifted to producing only those materials they, in their sole discretion, deem sufficiently probative of their pre-publication state of mind. *Id.* That is impermissible. Parties cannot make such unilateral relevance judgments, especially where the individuals making those judgments are the ones whose state of mind is at issue. *Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.,* 2020 WL 7342724, at *12 (S.D.N.Y. Dec. 11, 2020).

Defendants also distort Grifols' statement that post-publication materials "may reveal Defendants' post-publication recognition of falsity." Opp. 14. That does not suggest later recognition alone proves malice; it reflects the reality that post-publication communications often reference pre-publication doubts, discussions, or inconsistencies—exactly the type of circumstantial proof bearing on whether Defendants doubted the veracity of the Scranton loan statements when they published them. For example, Defendants may have ongoing discussions about how and why they published false statements about Grifols given they are currently being

criminally investigated in Spain over this very issue. While those documents would post-date the report, they absolutely could shed light on Defendants' intent at the time of publication. Of course, the Court already found Defendants' surreptitious revision to the Gotham Report, post-publication, is, on its own, relevant to malice. ECF 56 at 43–44. That too warrants discovery into their post-publication knowledge, including why they "corrected" their statement.

Equally baseless is Defendants' claim that the relevant time period is "unclear." Opp. 14 n.5. Grifols' RFPs expressly defined it: January 1, 2021 to the present, unless otherwise noted. ECF 68-1 at 4; *see also* ECF 86-1. Grifols believes this is a reasonable period to investigate for a report released in January 2024 that made false statements about Grifols' disclosures going back to 2018. Defendants refuse to provide even basic search-term hit counts to demonstrate when their communications began mentioning Grifols. Regardless, the requested period is consistent with other defamation cases authorizing multi-year temporal scopes to ensure that all relevant circumstantial evidence is captured—not merely the documents Defendants elect to acknowledge. *See Med. Props. Tr. v. Viceroy Rsch.*, 2024 WL 150502, at *5 (N.D. Ala. Jan. 12, 2024) (information requested in defamation case was "proportional to the needs of the case, as it only requests correspondence within the past three years"); *Larweth v. Magellan Health, Inc*., 2019 WL 11866498, at *12 (M.D. Fla. July 16, 2019) (modifying temporal scope of subpoena in defamation action to "December 2017 to the present," a period of time that encompassed at least one year after allegedly defamatory statements were made).

## IV. *Grifols' Discovery Requests Are Proportional and Target the Core Evidence of Falsity, Malice, and Vicarious Liability.*

Defendants' effort to shift the proportionality burden to Grifols fails. Rule 26 does not require the requesting party to address every proportionality factor. Fed. R. Civ. P. 26(b)(1) Advisory Comm. Note (2015). It is the resisting party's obligation to show undue burden or

disproportionality—and Defendants have shown neither. *State Farm Mut. Auto. Ins. Co. v. Fayda*, 2015 WL 7871037, at *7 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016).

While Defendants call Grifols' requests "disproportionate, overreaching and vexatious" (Opp. 16), they offer no explanation—let alone support—showing how any specific request imposes a burden that outweighs its relevance. Defendants' conclusory labels are not a proportionality analysis. Rule 26(b)(1) requires courts to consider concrete factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden . . . outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). When those factors are applied, Grifols' requests easily satisfy proportionality.

The amount in controversy alone confirms proportionality. Defendants are believed to have earned tens of millions of dollars from their short position, while their false statements erased approximately $3 billion in market value from Grifols in days—not counting Grifols' reputational damage. Access to information likewise favors discovery: Defendants alone possess the documents revealing their incentives, motives, editorial deliberations, investigative steps, and internal and external discussions, and they have acknowledged—through Mr. de Weck's affidavit—that they have already collected responsive materials for the SEC. ECF 29-1, ¶ 21.

The importance of the requested discovery is decisive. As discussed, actual malice is rarely proven through direct admissions "from the mouth of the defendant himself," which is why the Supreme Court repeatedly stresses that a plaintiff is "entitled to prove the defendant's state of mind

through circumstantial evidence." *Herbert*, 441 U.S. at 170; *Harte-Hanks*, 491 U.S. at 668. Grifols'
RFPs seeking these circumstantial building blocks are indispensable to proving Grifols' claims.

 For example, in an analogous short-seller defamation case, the court compelled production
of nearly the same categories of documents at issue here—hedge-fund financing and profit-sharing
arrangements, communications with regulators (***including the SEC***), and documents relating to
past regulatory or litigation matters involving false statements—because they bore directly on
motive, knowledge, and malice, and were obtainable only from the defendants. *Med. Props. Tr.*,
2024 WL 150502, at *4–8. Some requests there were broader than Grifols' yet still deemed
proportional because they illuminated the short-seller's research practices, incentives, and state of
mind. *Id.*; *See also Saroya*, 348 F.R.D. at 643 ("Broad discovery . . . is proportionate to the needs
of this case. This discovery is highly important to resolving issues in this case concerning the truth
of [the] statements . . . and [defendant's] malice (or lack thereof) in issuing it. [Defendant] is
uniquely positioned to access relevant information [and] has not shown that the burden or expense
of the proposed discovery outweighs its likely benefit, or that it unwarrantedly taxes its
resources.").

 Taken together, the Rule 26 factors confirm that each discovery category in dispute is
relevant, proportional, and necessary to resolving the core issues of malice, falsity, and vicarious
liability.

### a. Defendants' Communications (RFPs 1-12, 17).

 Defendants' objections to ***RFPs 1–4*** (Opp. 16–18) simply recycle their incorrect premise
that malice discovery is confined to communications expressly referencing the Scranton loan. It is
not. Limiting discovery in that way would produce the absurd result of shielding core malice
evidence merely because it does not mention the defamatory statements. Defendants'

proportionality objections are equally hollow: they identify no volume, no burden, and no reason why materials already collected and produced to the SEC cannot be produced here. And Defendants' stipulation to "bias and motive" (Opp. 18), does not eliminate the relevance of these documents; those same communications may show knowledge or reckless disregard. Defendants again seek to recast the rule that no single factor proves malice into a false notion that such factors cannot even be discovered. Their invocation of "free speech" principles likewise lacks any legal foundation—none overrides a defamation plaintiff's right to obtain evidence necessary to hold a defendant accountable.

Defendants' remaining objections to **RFPs 5–12 and 17** fare no better. Their proposed "10-day" cutoff for RFP 5 is wrong—they misdate their own publication by a year and ten days—and ignores Grifols' reasonable, privilege-sensitive proposal tied to Defendants' appearance in the case. Mot. 13. Their objection to **RFP 6** sidesteps the obvious: advance sharing of the report with journalists directly bears on Defendants' plan to amplify their accusations and influence the market. Their arguments against **RFPs 7 and 8** misstate the requests, which were narrowed to communications with government bodies or third parties concerning Grifols or Scranton (ECF 86-1). Pointing to the Court's refusal to consider SEC materials that Defendants offered at the pleadings stage is irrelevant; Rule 12 typically bars consideration of extrinsic materials, and the issue now is what Defendants told and provided regulators—not the purported outcome of any investigation.[5]

Defendants' objections to **RFPs 9–11** are similarly misplaced. The SEC materials are readily producible because Defendants already collected and reviewed them; their claim that civil

---

[5] Defendants also continue to misconstrue the SEC's lack of action against them (Opp. 20), selectively omitting the SEC's express statement that their "no action" letter "'must in no way be

production imposes some novel burden beyond a regulatory production is nonsense. And the fact that certain submissions post-date publication does not make them irrelevant; such communications often reflect pre-publication facts, doubts, or rationalizations bearing directly on malice. Their insinuations about the Spanish investigation are equally baseless; the Court rejected the argument (ECF 88), and any such materials will be governed by the confidentiality order. As for *RFP 12*, Defendants cannot satisfy their obligations by providing an unattributed screenshot. They must produce any materials or communications exchanged with "The Analyst" (or any third party) about Grifols, to the extent they exist. Their objection to *RFP 17* also fails: social-media platforms host private communications. Defendants Yu and de Weck maintain personal[6]—and possibly pseudonymous—accounts, and must identify and produce communications that identify *all* such accounts used to discuss Grifols or Scranton. Also, despite Defendants' claim that "the Loan Statement was not published on social media," there is a deleted post in a chain promoting the Gotham Report that Grifols suspects discussed the Scranton loan. Ex. A.

### b. Editorial Process, Materials Considered, and Contributors (RFPs 21–22, 26).

*RFP 21* squarely targets core malice evidence: drafts of the Gotham Reports and all materials Defendants "considered in their preparation," including the referenced "Gotham City Research Investigation." Defendants again rest their objections on the same incorrect premise that malice discovery is confined to materials expressly referencing the Scranton Loan. *See* Opp. 25–27. It is not. Drafts, deliberations, and unpublished materials routinely reveal how the challenged statement was conceived, how contrary facts were treated, and whether Defendants departed from

---

construed as indicating that [Gotham or GIP] has been exonerated or that no action may ultimately result from the staff's investigation.'" ECF 29-2.

[6] X.com/LongShortTrader (Yu); X.com/CyrusdeWeck (de Weck).

their ordinary investigative process—the very circumstantial evidence the Supreme Court identifies as essential to proving malice. *Herbert*, 441 U.S. at 160; *Harte-Hanks*, 491 U.S. at 668, 693; *see also Palin v. N.Y. Times Co.*, 940 F.3d 804, 814–15 (2d Cir. 2019); *Monarch Air Grp., LLC v. Journalism Dev. Network, Inc.,* 2025 WL 445491, at *3–4 (S.D. Fla. Feb. 10, 2025).

For example, if Defendants carefully scrutinized Grifols' annual reports for months to generate the Gotham Report, a jury easily could find it is not credible for Defendants to excuse their false statements about the Scranton loan's supposed lack of disclosure in the annual reports as an innocent "drafting oversight." Documents that show how Defendants went about investigating Grifols and drafting their report—beyond the portion about the Scranton loan—will provide vital context on this core issue and, therefore, are highly relevant and important to Grifols' case.

Defendants' proportionality objections offer rhetoric, not facts. The universe of drafts and considered materials is necessarily finite; yet Defendants provide no burden estimate, no hit counts, no custodian information, and no concrete showing of disproportionality. Their reliance on *Berisha v. Lawson,* 973 F.3d 1304 (11th Cir. 2020) is also misplaced. Nothing in *Berisha* held that drafts are irrelevant; to the contrary, drafts were produced and reviewed in that case. The Eleventh Circuit merely concluded that two immaterial discrepancies—unrelated to the challenged allegation—did not show subjective doubt. Here, by contrast, drafts showing how Defendants framed, revised, and repeatedly emphasized their "undisclosed loan" narrative go directly to whether they knew that narrative was false.

Defendants' attempt to distinguish *Monarch Air Group*—which held that editorial process materials are relevant "[e]ven if such decisions and discussions do not directly implicate the specific statements Plaintiff alleges are false," 2025 WL 445491, at *3—likewise fails. The portion

16

of the decision that Grifols relied on involved ordinary Rule 26 discovery, not shield-law privilege, and compelled production of precisely the categories of editorial-process materials Defendants resist because such materials illuminate motive, knowledge, and malice. *See id.* at *3–4. Meanwhile, the ancillary litigation in *Dobrovolskaya v. Monarch Air Group, LLC*, 2025 WL 733258, at *1 (S.D.N.Y. Mar. 7, 2025) adds nothing; it dealt with New York's absolute privilege for confidential sources, *not drafts or editorial deliberations*, and certainly did not hold that editorial materials may be shielded in a malice case. And Defendants' First Amendment argument is wrong as a matter of law: there is no constitutional bar to editorial-process discovery where actual malice is alleged. *Herbert*, 441 U.S. at 160.

*RFP 22*—which seeks all materials Defendants considered in preparing, drafting, publishing, or disseminating the January 9 and 10 reports—stands on the same footing. Opp. 27. There is nothing "punitive" about seeking the full evidentiary record where the law allows a plaintiff to build a cumulative circumstantial case. Malice is assessed from the totality of the circumstances, not a single line. Materials showing how Defendants reviewed Grifols' filings, why they chose to feature the Scranton loan as their report's title, what information they weighed or discarded, and whether their treatment of other disclosures diverged from their treatment of the loan bear directly on knowing or reckless falsity. Defendants' claim that unpublished materials have "nothing to do" with what they published contradicts *Harte-Hanks* and the basic principle that what a defendant knew, considered, avoided, or selectively omitted is all probative of malice.

Finally, Defendants' response to *RFP 26*—that they have "already identified every person who contributed" and that "nothing further is called for"—is simply wrong. Opp. 28. They have only listed who is employed by Gotham or GIP, while admitting uncertainty about even that ("We do not believe there are any other employees . . . but will alert you if we receive information

otherwise"). That is not identification of contributors and it does not reveal who researched particular topics, who drafted or edited which sections, or who approved the inclusion of the challenged statements. RFP 26 seeks documents sufficient to determine exactly who contributed to, shaped, and approved the January 9 and 10 reports—information necessary to assess whose knowledge and intent may be imputed to Defendants and to test credibility and bias. And the Court's statement that the report relied on public filings does not answer who gathered, interpreted, and incorporated those filings into the defamatory narrative, nor does it preclude the possibility that Defendants also had non-public sources not disclosed in the report.[7] That information is plainly discoverable.

### c. *Trading Records and Financials (RFPs 16, 19, 33–34, 38–39).*[8]

*RFPs 16, 19, 33–34, 38–39* seek Defendants' trading and financial records because they show who funded, coordinated, and profited from the Gotham Reports**,** and they illuminate Defendants' incentives, risk exposure, and conduct as they built and promoted the undisclosed loan narrative. This information goes directly to motive, knowledge, coordination, and reckless disregard—the very categories of circumstantial evidence courts rely on when assessing actual malice. *See Dershowitz v. Cable News Network, Inc*., 2022 WL 2662352, at *3 (S.D. Fla. June 15, 2022) ("evidence of increased income" from the challenged publication is relevant and proportional). Defendants' objections about time limits or subject-matter scope are baseless: the

---

[7] It is odd that Defendants insist in their Opposition that the report relied on public sources (Opp. 28), while they have simultaneously moved for a protective to protect purported source material (ECF 92).

[8] Defendants list **RFPs 31 and 36**—which seek corporate registration documents for both Gotham and GIP—in their discussion about Trading Records and Financials, despite them being relevant to Grifols' requests concerning Defendants' "Structure, Contributors, and Interrelationships of the Defendants." Mot. 20-21. However, Defendants do not specifically explain why these requests are objectionable. Grifols submits the Court should grant its motion with respect to these requests for the reasons set forth in its Moving Brief. *Id.*

amended RFPs clearly define both, and malice discovery is not confined to documents that expressly mention the Scranton loan. Opp. 28-30.

Grifols has never argued that financial motive alone establishes malice; it is one factor among many that, taken together, can show knowing or reckless falsity. Defendants' reliance on *Cassava Scis., Inc. v. Bredt*, 2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024) ignores that it was a pleading-stage decision that says nothing about the breadth of discovery necessary to build a circumstantial malice record. And Defendants' offer to "stipulate" to motive merely concedes that they held a short position. That does not reveal the scale of their exposure, whether they expanded or hedged their position while drafting the report, the extent to which they were under financial strain, or what pressures they faced to generate a market-moving publication. That is why Courts require malice defendants to produce information concerning "profit motives for publishing statements that specifically concern" the plaintiff. *Coomer v. Make Your Life Epic LLC*, 2023 WL 12134507, at *6 (D. Colo. Dec. 7, 2023) ("Defendants' financial information is relevant [because] Plaintiff has a compelling need . . . to marshal evidence to support [] 'actual malice' element of the defamation claim. Though this is circumstantial evidence, Plaintiff is unlikely to prove 'awareness of falsehood from the mouth of [Defendants].'")

The surrounding facts matter because financial pressure—especially pressure to produce a high-impact, price-moving report—can support malice when combined with other evidence. *See Suzuki Motor Corp. v. Consumers Union of U.S., Inc.,* 330 F.3d 1110, 1135–36 (9th Cir. 2003) (explaining that evidence publisher "was financially overextended" before releasing allegedly defamatory report and "needed a blockbuster story to raise [its] profile and increase funding revenues," as well as evidence that it used the story to solicit funds, were relevant to the actual

malice inquiry on summary judgment); *Tavoulareas*, 817 F.2d at 796–97 (pressure to produce "sensationalistic or high-impact stories" regardless of accuracy is probative of malice).

That is also why Defendants' attempt to restrict trading discovery to January 9–10, 2024 is indefensible. Their assertion that the Court "limited the relevant time period" is flatly incorrect; the Motion to Dismiss Opinion imposed no temporal limit and merely summarized the pleadings. A two-day window would arbitrarily exclude the buildup, maintenance, and unwinding of Defendants' short positions—the very period required to test motive, timing, and the credibility of Mr. de Weck's assertions. If, for instance, financial records reveal that Defendants engaged in naked short selling,[9] that conduct could expose them to significant regulatory or criminal risk and create powerful incentives to manufacture a precipitous price decline. Such pressure is quintessential circumstantial evidence of malice.

Nor does *Sportvision, Inc. v. MLB Advanced Media, L.P.* have any application here. 2022 WL 2817141, at *3 (S.D.N.Y. July 19, 2022). That case concerned patent-damages discovery where the requesting party already possessed financial information sufficient for its analysis. *Id.* at *3. Here, no financial or trading materials have been produced, and the discovery sought goes to motive, coordination, including aiding and abetting, and reckless disregard—not damages.

### d. *Revenue Sharing Agreements (RFP 20).*[10]

*RFP 20* seeks agreements or communications reflecting any revenue-sharing tied to Defendants' financial transactions in Grifols stock—the same short-selling activity that created the

---

[9] "[N]aked short-selling' occurs when traders sell shares they do not own or borrow, or ever intend to own, and never deliver the 'borrowed' securities that they sell." *Manning v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2013 WL 1164838, at *1 (D.N.J. Mar. 20, 2013) (citation omitted).

[10] Grifols also moved to compel with respect to *RFP 35*—which seeks all documents and communications concerning the affiliation between Gotham and GIP—unless Gotham and GIP stipulated to joint and several liability. Mot. 20, n. 9. Given Defendants' silence on this request in their Opposition, as well as concerning Grifols' proposal to moot the request, Grifols respectfully

incentive structure behind their publication strategy. Such agreements bear directly on motive, coordination, and financial interdependence, well-recognized forms of circumstantial malice evidence, and are independently relevant to Grifols' aiding-and-abetting claim.

Defendants' objections rehash the same boilerplate—asserting "no time limitation" or "no subject-matter scope"—but the amended RFPs clearly set the temporal window, and the subject matter could not be narrower: revenue-sharing agreements relating to transactions in Grifols stock. Opp. 24–25. Their argument that the request is improper because no agreement would "reference the Loan Statement" is perhaps the most revealing misapplication of their incorrect malice discovery thesis. Naturally, a revenue-sharing agreement would not mention the Scranton loan because such agreements concern shared profits from the short sale, not the subject matter of the false statements Defendants used to make the short succeed. That does not make the agreement any less relevant to the question of whether Defendants, jointly or with third parties, agreed to share profits generated by the market drop they intended to trigger with their false statements.

Equally unavailing is Defendants' attempt to defeat discovery by merely asserting, without verification, that "no revenue sharing agreement exists." RFP 20 is necessary precisely so Grifols can test the accuracy of that representation through transparent collection, search-term analysis, and production. Defendants' continued reliance on *Cassava* remains misplaced. *See* p. 20, *supra*. And their suggestion that a financial motive cannot support malice simply repeats their broader error—conflating the rule that motive alone is not *sufficient* to prove actual malice with a supposed rule (that does not exist) that evidence of motive is *irrelevant*. Malice is proven in the aggregate, and motive is a recognized component of that cumulative showing.

---

submits that the Court should compel Defendants' compliance with this request for the reasons set forth in its Moving Brief. *Id.* at 20.

## **CONCLUSION**

For the foregoing reasons, and for those set forth in its Moving Brief, Grifols respectfully requests that the Court grant its motion and compel Defendants to produce all of the requested documents in full.

Dated:    December 8, 2025

**PROSKAUER ROSE LLP**

By:    */s/ Peter D. Doyle*

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com

*Counsel for Plaintiff Grifols, S.A.*