# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GRIFOLS, S.A.,<br><br>                               Plaintiff,<br><br>          v.<br><br>DANIEL YU, an individual, GOTHAM CITY RESEARCH LLC, GENERAL INDUSTRIAL PARTNERS LLP, CYRUS DE WECK, an individual, JOHN DOES 1-10, and XYZ CORPORATIONS 1-10.<br><br>                               Defendants. | No. 1:24-cv-00576-LJL-GWG |

## GRIFOLS, S.A.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

PROSKAUER ROSE LLP

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com

*Counsel for Plaintiffs Grifols, S.A.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT.................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND **.**................................................................3

ARGUMENT ........................................................................................................................7

I.     Defendants Are Not Reporters and the Reporter's Privilege Does Not Apply. .............7

II.    Even If the Privilege Applied, Defendants Have Waived It Over Broad

Categories of Documents.....................................................................................11

      A.    Any Documents Shared by Yu or Gotham With De Weck or GIP Do Not
Qualify for the Privilege. ......................................................................11

      B.    The Defendants Waived Production by Producing their Documents to
the SEC. ...............................................................................................12

      C.    The Fairness Doctrine Precludes Defendants' Attempt to Selectively
Produce Only What They Deem Helpful. ................................................14

III.    Grifols Has Met the Standard for Disclosure...................................................16

IV.    Defendants Cannot Unilaterally Insulate Broad Swaths of Material—Their
Privilege Assertions Must Be Tested Document-By-Document................................22

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aequitron Med., Inc. v. CBS, Inc.*,
 1995 WL 406157 (S.D.N.Y. July 10, 1995) ........................................................17

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*,
 232 F.R.D. 191 (S.D.N.Y. 2005) .........................................................................15

*American Savings Bank, FSB v. USB Painewebber, Inc.*,
 2002 WL 31833223 (S.D.N.Y. Dec. 16, 2002) .....................................................8

*Amin v. NBCUniversal Media, LLC*,
 2023 WL 8238975 (S.D. Ga. Nov. 28, 2023) ......................................................19

*Application of Dack*,
 101 Misc. 2d 490 (N.Y. Sup. Ct. Monroe Cty. 1979) ..........................................23

*Baez v. JetBlue Airways*,
 2012 WL 5471229 (E.D.N.Y. 2012) ....................................................................11

*Baker v. Goldman Sachs & Co.*,
 669 F.3d 105 (2d Cir. 2012) ................................................................................15

*Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*,
 2016 WL 3162218 (N.D. Cal. June 7, 2016) ......................................................8-9

*Blankenship v. Fox News Network, LLC*,
 2021 WL 3706683 (S.D. W. Va. Aug. 20, 2021) .................................................19

*Collins v. Troy Pub. Co., Inc.*,
 213 A.D.2d 879 (N.Y. 3d Dep't 1995) .................................................................18

*Compuware Corp. v. Moody's Invs. Servs., Inc.*,
 2004 WL 2186325 (E.D. Mich. Sep. 23, 2004) ...................................................24

*Doe v. Cummings*,
 1994 WL 315640 (N.Y. Sup. Ct. St. Lawrence Cnty. Jan. 18, 1994) ...................21

*Fowler v. Vary*,
 2022 WL 3211638 (S.D.N.Y. Aug. 9, 2022) ..................................................23, 24

*Flynn v. NYP Holdings Inc*,
 235 A.D.2d 907 (N.Y. 3d Dep't 1997) .................................................................20

*Giuffre v. Maxwell*,
    221 F. Supp. 3d 472 (S.D.N.Y. 2016) ............................................................20, 24

*Gonzales v. Nat'l Broad. Co.*,
    194 F.3d 29 (2d Cir. 1999) ........................................................................9

*Green v. Cosby*,
    No. 16-CM-99 (PGG) (S.D.N.Y. Apr. 27, 2016) ..............................................21

*Guice-Mills v. Forbes*,
    12 Misc. 3d 852 (Sup. Ct. N.Y. Cty. 2006) ....................................................11

*Herbert v. Lando*,
    441 U.S. 153 (1979) .................................................................................17

*In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*,
    241 F.R.D. 202 (S.D.N.Y. 2007) ................................................................11

*In re Application of Chevron Corp.*,
    736 F. Supp. 2d 773 (S.D.N.Y. 2010) ........................................................7, 23

*In re Application to Quash Subpoena to Nat'l Broad. Co.*,
    79 F.3d 346 (2d Cir. 1996) ......................................................................9, 21

*In re Dan*,
    80 Misc. 2d 399 (Sup. Ct. Erie Cty. 1975) ...................................................11

*In re Fitch, Inc.*,
    330 F.3d 104 (2d Cir. 2003) ......................................................................8

*In re Krevlin*,
    2025 WL 3228059 (S.D.N.Y. Nov. 19, 2025) ................................................11

*In re Natural Gas Commodity Litig.*,
    235 F.R.D. 199 (S.D.N.Y. 2005) ............................................................20, 22

*In re Petroleum Products Antitrust Litigation*,
    680 F.2d 5 (2d Cir. 1982) .........................................................................17

*In re Steinhardt Partners, L.P.*,
    9 F.3d 230 (2d Cir. 1993) ......................................................................13, 14

*In re Qwest Communications International Inc.*,
    450 F.3d 1179 (10th Cir. 2006) ..................................................................13

*Kashef v. BNP Paribas S.A.*,
    2022 WL 1617489 (S.D.N.Y. 2022) ............................................................13

*Matter of Application of Home Box Office, Inc.*,
   64 Misc. 3d 566 (N.Y. Sup. Ct. N.Y. Cnty. 2019)....................................................21

*Montesa v. Schwartz*,
   2016 WL 3476431 (S.D.N.Y. June 20, 2016) .............................................7, 11, 12

*Nat'l Broad. Co. v. People*,
   238 A.D.2d 618 (N.Y. 2d Dep't. 1997) .....................................................................24

*Novagold Res., Inc. v. JCap Rsch. USA LLC*,
   2024 WL 4250265 (E.D.N.Y. Mar. 29, 2024)............................................................22

*Permian Corp. v. United States*,
   665 F.2d 1214 (D.C. Cir. 1981) .................................................................................13

*Persky v. Yeshiva Univ.*,
   2002 WL 31769704 (S.D.N.Y. Dec. 10, 2002) .......................................................7, 8

*PPM Am., Inc. v. Marriott Corp.*,
   152 F.R.D. 32 (S.D.N.Y. 1993) ..............................................................................7, 8

*Saroya v. C.A.I.R. Found.*,
   348 F.R.D. 632 (D. Minn. 2024).................................................................................19

*Schiller v. City of New York*,
   245 F.R.D. 112 (S.D.N.Y. 2007) ..........................................................................14-15

*Schoolcraft v. City of New York*,
   2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014)........................................................19, 20

*Scott v. Cooper*,
   227 A.D.2d 463 (N.Y. 2d Dep't 1996) ..................................................................20, 22

*Sharon v. Time, Inc.*,
   599 F. Supp. 538 (S.D.N.Y. 1984) .............................................................................18

*Shoen v. Shoen*,
   5 F.3d 1289 (9th Cir. 1993) .....................................................................................8-9

*Torah Soft Ltd. v. Drosnin*,
   2001 WL 1425381 (S.D.N.Y. Nov. 14, 2001).............................................................24

*Trump v. O'Brien*,
   958 A.2d 85 (N.J. Super. Ct. App. Div. 2008)............................................................24

*United States v. Sanusi*,
   813 F. Supp. 149 (E.D.N.Y. 1992) .............................................................................24

iv

*United States v. Whitehead*,
    2024 WL 912039 (S.D.N.Y. Mar. 4, 2024) ................................................................................9

*von Bulow by Auersperg v. von Bulow*,
    828 F.2d 94 (2d Cir. 1987)................................................................................ 14-15

**STATUTES**

N.Y. Civil Rights Law § 79-h ........................................................................................... passim

**OTHER AUTHORITIES**

Rule 26(b)(5)(A) ........................................................................................................................24

Plaintiff Grifols, S.A. ("Grifols") respectfully submits this Memorandum of Law in opposition to Defendants Daniel Yu, Gotham City Research LLC ("Gotham"), Cyrus de Weck, and General Industrial Partners, LLP ("GIP") (collectively, "Defendants")'s Motion for a Protective Order Under NY Civ. Rights Law 79-h (the "Motion"). ECF Nos. 92–94.

## PRELIMINARY STATEMENT

Defendants are not journalists. They are short sellers invoking a statute that does not protect them. Even if any Defendants could establish journalistic status, they waived any applicable protection many times over. And even if those multiple waivers suddenly vanished, their categorical privilege claim and procedurally improper motion would still fail. Each defect is independently fatal.

Defendants' Motion depends entirely on its argument that Gotham, a short-selling activist who publishes reports to influence the stock market and thereby profit from trading positions, may avail itself of privileges meant to protect professional journalists. Another federal court has already rejected that argument. As the court held in *Beaver County Employees' Retirement Fund v. Tile Shop Holdings, Inc.*, "Gotham's intent . . . is to disseminate the information to the public only if [it has taken] a short position," so it is not a journalist and "the ***journalist privilege does not apply***."

That finding—based on Mr. Yu's own sworn testimony about how Gotham operates— applies with full force here. New York federal courts applying § 79-h have repeatedly held that the Shield Law is limited to bona fide "professional journalists," not financial actors who publish content as part of an investment strategy. Defendants are self-described short sellers, not independent reporters gathering news for public dissemination. The Shield Law does not shelter market participants who publish "research" as part of a trading strategy.

Defendants' privilege claim also fails at the threshold because Gotham and Yu waived, many times over, any protection that § 79-h might have afforded them. Gotham and Yu voluntarily disclosed the purportedly privileged materials to non-journalists, including de Weck and GIP, who are SEC-registered investment professionals and therefore not entitled to claim the exemptions under the Shield Law. Disclosure to such third parties automatically waives any privilege. Defendants likewise invoked—and relied on—their regulatory submissions to the SEC as evidence of good faith in their motion-to-dismiss papers, yet now refuse to produce those same documents. That selective reliance also triggers the fairness doctrine, which prohibits a party from disclosing some purportedly privileged information while withholding the rest. And they waived the privilege yet again by failing to assert it during the parties' meet-and-confers. Their last-minute attempt to invoke § 79-h as a categorical shield—only after they saw the strength of Grifols' motion to compel discovery—comes far too late and is procedurally and substantively deficient.

Their motion also reflects an attempt to obstruct core malice discovery in a defamation action. New York and federal courts have made clear that privileges are generally disfavored where the defendant is accused of defamation, and that a defamation plaintiff is entitled to probe editorial processes, drafts, deliberations, and sourcing because those materials go directly to the defendant's state of mind. The discovery Grifols seeks is not peripheral. It is the only evidence of Defendants' knowledge, motive, and verification (or lack thereof) underlying the false Scranton loan statement—the core of the defamation claim. Yet Defendants now seek a sweeping protective order that would bar discovery into the very categories of evidence that courts define as central to actual malice—drafts, internal communications, research files, trading-related documents, and communications with regulators and third-party market participants.

The importance of this discovery is not hypothetical. At the November 6, 2025 hearing, Defendants' counsel read aloud from internal communications between Yu and de Weck about making revisions to the Gotham Report that have never been produced, invoking these communications as evidence of good faith. Defendants cannot selectively deploy their internal documents as a sword to argue lack of malice, while invoking § 79-h as a shield to block Grifols from obtaining the very materials that would test those claims. The Reporter's Privilege does not permit such selectivity.

Defendants' Motion attempts to expand a narrow statutory privilege into an absolute shield against discovery in a defamation case. The Shield Law provides no such sanctuary, particularly for short sellers who are not journalists, who have voluntarily disclosed their materials to third parties, and whose state of mind is an element of the claim. The Motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Defendants' Own Descriptions of their Business Activities Confirm They Are Not Journalists.

Daniel Yu and Gotham are not journalists. The Gotham Report itself disclaims it is published in order to benefit its writers, admitting that Gotham "is not an independent analyst" and Defendants "hold short positions" in the subjects of their so-called "reports" and that its information is being "presented . . . without warranty of any kind" with no "representation . . . as to the accuracy" of the so-called report. Ex. A ("Gotham Report") at 3.[1] By their own admission, Defendants Yu and Cyrus de Weck operate by "researching and executing short selling strategies" and by "focus[ing] on exposing companies with [allegedly] misleading financial statements and unsustainable business models." ECF No. 28-1 ("de Weck Dec.") ¶ 9. Yu has never been employed

---

[1] Page numbers refer to ECF, not internal, pagination.

as a professional journalist by a traditional media company. His only foray into "research publishing" has been through Gotham. *See id.* News coverage describes Yu as a "short seller." Ex. B.

De Weck has also never been a professional journalist. Defendant General Industrial Partners LLP, which de Weck is the founder and principal of, "is a Registered Investment Advisor with the U.S. Securities and Exchange Commission." Gotham Report at 3. GIP's website describes itself as an "alternative asset manager." Ex. C. De Weck "began [his] financial career in 2002 covering corporate debt in general, specifically distressed debt, at a large financial institution in London," de Weck Dec. ¶ 5. He then "mov[ed] into investment management, eventually heading the London office of QVT Financial and then finally launching [his] own firm in 2015, which was the precursor to GIP." *Id.* De Weck describes himself as "an investment manager." *Id.* ¶ 9. News coverage describes de Weck as a "short seller" who led a "high-profile campaign against Grifols." Exs. D & B.

As part of their business strategy, Defendants took a substantial short position in Grifols' stock. However, in late 2023, Defendants faced losses on their short position in Grifols due to its steadily climbing share price. ECF No. 50 ¶¶ 16–17. To turn those losses into a windfall, they launched a coordinated effort to drive down Grifols' stock price. *Id.* On January 9, 2024, Defendants published a report titled: "Grifols SA: Scranton and the Undisclosed Debts." *Id.* ¶ 122. As the report's title indicates, Defendants claimed therein that Grifols failed to disclose a $95 million loan to Scranton in Grifols' financial filings. *Id.* ¶¶ 137–138. Defendants have since admitted that was false. *See* ECF No. 91 at 5–6 Defendants widely disseminated their report, triggering an immediate market sell-off and steep decline in Grifols' share price once the report was published. ECF No. 50 ¶¶ 122–27. That same day, Defendants liquidated portions of their

short positions for a multimillion-dollar profit. *Id.* ¶ 128. After publication, Defendants quietly revised their Scranton statement without alerting readers to the correction or acknowledging that the original version was inaccurate. *Id.* ¶¶ 21, 144. This type of undisclosed, substantive revision—especially to a central claim driving significant market impact—is a marked departure from basic journalistic standards of transparency and correction, further undermining Defendants' attempt to cloak their conduct in the protections afforded to the press. In short, the Gotham Report was a fraudulent trading operation, not journalism.

**B. Defendants' Belated Attempt to Invoke the Reporter's Privilege.**

Consistent with the Court's Scheduling Order (ECF No. 62), on August 22, 2025, Grifols served document requests on Defendants (the "RFPs"). ECF No. 68-1. On October 16, 2025, Defendants' served responses and objections ("R&Os") to the RFPs. ECF No. 68-4. Defendants' R&O's, which were largely conclusory and boilerplate, asserted the "Reporters [*sic*] Privilege" *only* in response to RFP 6 (request seeking Defendants' communication with third-party journalists pre-publication of the Gotham Report) and RFPs 19–22 (requests seeking Defendants' trading activity and revenue sharing concerning Grifols' stock and drafts of the Gotham Report and the materials considered when preparing the same). *Id.* That same day, Defendants also moved for a protective order seeking to avoid responding to the RFPs and instead, produce a curated production of documents that it would use to support their anticipated motion for summary judgment as to Grifols' claims. ECF No. 68.[2]

On October 22, 2025, the Court scheduled a hearing to address Defendants' motion, but first required that the parties attempt to narrow the issues before submitting them to the Court.

---

[2] Defendants claimed they would make this production by December 15. Grifols still has not received it.

During the parties' October 23, 2025 meet and confer, Defendants stated they would not assert the Reporter's Privilege over their forthcoming production of documents in support of their motion for summary judgment. Doyle Dec.. ¶ 10. In line with this statement, in a November 5, 2025 email wherein Defendants listed which of Grifols' RFPs it agreed to produce documents to (albeit limited by their unilateral relevancy scope), Defendants did not invoke the Reporter's Privilege as to *any* of Grifols' requests, *including RFPs 6 and 19–22*, with respect to the documents they agreed to produce. Ex. E.

On November 6, 2025, the Court denied Defendants' motion for a protective order and permitted Grifols to file a motion to compel Defendants to comply with Grifols' RFPs in full. ECF No. 95 ("Hr'g Tr.") 27:11–28:16. That motion is pending before the Court. ECF Nos. 84–86; 91; 99–100. Prior to filing that motion, however, the Court also ordered the parties to meet and confer again over the scope of Grifols' RFPs and attempt to resolve any dispute prior to Grifols' Motion being filed. Hr'g Tr. 28:13–15. On November 11, 2025, in an effort to further narrow the scope of the parties' dispute, Grifols served an amended, narrowed set of RFPs. ECF No. 86-1. After Grifols provided the amended RFPs, counsel for Defendants (albeit in the context of negotiating the parties' Confidentiality Order) again confirmed that they would not assert the "reporters [*sic*] privilege" over the documents that they agreed to produce. Ex. F ("[W]e reserve the right to . . . . designate AEO for any reporters' privilege protected source material that we otherwise were not going to assert a reporters privilege over.")

Despite this representation, on November 26, 2025, after filing their opposition to Grifols' motion to compel (ECF No. 91), Defendants filed a surprise cross-motion for a protective order, seeking, for the first time, to invoke the Reporter's Privilege in sweeping, categorical fashion.[3]

---

[3] Defendants' Motion also violated paragraph 2.A. of the Court's Individual Practices. Defendants

## ARGUMENT

I. <u>**Defendants Are Not Reporters and the Reporter's Privilege Does Not Apply.**</u>

As the parties invoking § 79-h, Defendants bear the burden of establishing every element of the privilege. *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 781 n.32 (S.D.N.Y. 2010). This means establishing that each and every Defendant is entitled to assert the privilege, as one Defendant cannot invoke the Reporter's Privilege to protect documents held by another Defendant who is not entitled to invoke the privilege. *See Montesa v. Schwartz*, 2016 WL 3476431, at *14 (S.D.N.Y. June 20, 2016) (one party protected by Reporter's Privilege could not block production of documents held by non-journalist). None of the Defendants have met their burden.

By its very terms, the protections afforded under N.Y. Civil Rights Law § 79-h ("§ 79-h" or the "Shield Law") apply only to "professional journalists." § 79-h(a)(6). As such, and contrary to Defendants' claim that what it means to be a "professional journalist" is defined "broadly and generously," ECF No. 94 at 2, courts in this district have recognized that "the New York Shield Law explicitly limits the qualified privilege to professional journalists or newscasters." *Persky v. Yeshiva Univ.*, 2002 WL 31769704, at *2 n.1 (S.D.N.Y. Dec. 10, 2002). Indeed, "Section 79-h evinces a clear legislative design to benefit 'professional journalists' and 'newscasters' only" and "should not by judicial fiat and strained interpretation be deemed to encompass those engaged in a different field of writing and research." *PPM Am., Inc. v. Marriott Corp.*, 152 F.R.D. 32, 35 (S.D.N.Y. 1993) (brackets and internal citations omitted). To that end, New York's definition of a

---

failed to meet and confer with Grifols about their intent to file this motion and assert this privilege in sweeping fashion. Defendants also failed to follow the Court's pre-motion letter requirement, which may have alleviated the need for this formal, extended briefing. It is ironic that Defendants accuse *Grifols* of trying to "run up Gotham's costs" by seeking discovery it requires to prove its case (ECF No. 91 at 18) when Defendants, by choosing to ignore the Court's rules, have forced both parties to incur substantial attorneys' fees submitting formal briefs on an issue the parties never even met and conferred about.

professional journalist "is narrower . . . than the definition of 'journalist' for purposes of federal privileges." *PPM Am.*, 152 F.R.D. at 35. These rulings foreclose Defendants' attempt to stretch § 79-h beyond its intended scope.

Courts reject privilege claims where the claimant's "reporting" is tied to private engagements or financial arrangements rather than independent newsgathering for public dissemination. *In re Fitch, Inc.*, 330 F.3d 104, 109–10 (2d Cir. 2003) (explaining that, unlike a news outlet, Fitch "only 'covers' its own clients," which weighs against treating it as a journalist). Similarly, the privilege is unavailable where purported reporting is performed "based on a private . . . agreement" and backed by specific financial incentives; in such circumstances, courts have found claimants "not entitled to the protections afforded by the journalist privilege." *See, e.g.*, *American Savings Bank, FSB v. USB Painewebber, Inc.*, 2002 WL 31833223, at *3 (S.D.N.Y. Dec. 16, 2002) (holding the privilege inapplicable to financial-analyst "reports"). And district courts applying § 79-h consistently confine the privilege to those who fit the statute's professional-journalist rubric. *See Persky*, 2002 WL 31769704, at *2; *PPM Am.*, 152 F.R.D. at 35.

That principle applies with full force here—and the point is not merely a hypothetical comparison. Another federal court has already answered the very question before this Court and held, in no uncertain terms, ***that Yu and Gotham are not journalists and cannot invoke any reporter's privilege***. In *Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, the court rejected Yu and Gotham's attempt to assert the federal Reporter's Privilege, finding that because "the primary motivation for Gotham's publication is to disseminate the negative information so that it can profit on its short position . . . Gotham does not have the intent at the inception of its newsgathering process 'to use material—sought, gathered or received—to disseminate information to the public.'" 2016 WL 3162218, at *3 (N.D. Cal. June 7, 2016) (quoting *Shoen v.*

8

*Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993)). Instead, the court found that "Gotham's intent, as attested to by Mr. Yu, is to disseminate the information to the public only if 'a company's reported financial information or business information is materially misleading' and Gotham has taken a short position in the company." *Beaver Cnty.* at *3 (quoting affidavit submitted by Yu, attached hereto as Exhibit H). The Court therefore found "that Gotham has not and would not publish a report about a company in which it does not have a financial interest" and that therefore "***the journalist privilege does not apply***" to Gotham or Yu. *Id.* (emphasis added).[4]

The same conclusion should be reached here. Yu and Gotham are not engaged in journalism. They are short sellers who published a trading thesis designed to move the market to benefit their own positions. Mr. de Weck's affidavit even described Yu as focusing not on journalism, but on "short-minded investing" and stated that both he and Yu are focused on "researching and executing short selling strategies." de Weck Dec. ¶¶ 7, 9. This contradicts, rather than supports, Defendants' claim that Yu and Gotham can invoke § 79-h.

And Defendants' attempt to extend the privilege to de Weck and GIP fares no better. Separately and independently, de Weck and GIP are, by their own admissions and the Gotham Report's disclosures, non-journalists acting as financial advisors and market participants. *See* de Weck Dec. ¶¶ 5, 9 (calling himself an "investment manager"); Gotham Report at 3 (identifying

---

[4] To the extent that Defendants argue that the analysis of the Reporter's Privilege under § 79-h should be different from the analysis under federal law applied to Gotham in *Beaver Ctny.*, that argument should be rejected. Setting aside that Defendants do not seek to invoke the federal journalist privilege, the Second Circuit has made clear that "the contours of the privilege under federal law"—that is, how it is applied, and whether the qualified privilege has been overcome— "***are 'identical'*** to those under the applicable New York statute." *See Gonzales v. Nat'l Broad. Co.*, 194 F.3d 29, 34 (2d Cir. 1999) (emphasis added); *see also In re Application to Quash Subpoena to Nat'l Broad. Co.*, 79 F.3d 346 (2d Cir. 1996); *United States v. Whitehead*, 2024 WL 912039, at *2 n.3 (S.D.N.Y. Mar. 4, 2024). Furthermore, as noted above, while the application of the test may be identical (*e.g.*, the *Petroleum Products* test, *see* § III, *infra*) the definition of a "journalist" is ***narrower*** for the purposes of § 79-h than it is under the federal journalist privilege.

GIP as an "Investment Advisor"). That conclusion is reinforced by the Gotham Report's disclosure of de Weck and GIP as registered financial actors advising or participating in the short thesis. Gotham Report at 3 (Defendants "hold short positions in" Grifols and "may take additional positions in the issuer (both long and short) at a future date"). Indeed, De Weck's name does not appear *at all* in the Gotham Report, as an author or otherwise. *See generally* Gotham Report. And de Weck does not describe himself as a journalist; instead, he describes his work as "investment management," with his role as principal as GIP as a chapter in his "***financial*** career." *See* de Weck Dec. ¶¶ 5–6. GIP's own website calls itself an "alternative asset manager" and news outlets similarly call de Weck a "short seller." Exs. C & D. The evidentiary record uniformly reflects that de Weck and GIP are not journalists and cannot be bootstrapped into the privilege. Therefore, Defendants de Weck or GIP do not qualify for the protections under § 79-h and under no circumstances should they be permitted to rely on the statute to resist their production obligations.

It is telling that not one Defendant has submitted a declaration under penalty of perjury that would support their Motion's claim that they are all journalists. As noted, the only sworn declaration submitted in this action by any Defendant thus far, from de Weck months ago to support his motion to dismiss, reflects the opposite. Instead, Defendants hide behind a declaration from their *attorney*, which offers argument in place of evidence. ECF 93.[5] Thus, Defendants have offered no evidence to meet their burden of showing that they are entitled to invoke § 79-h.

---

[5] While Mr. Korzenik claims to be "fully familiar with the facts set forth herein" (ECF No. 93 ¶ 1), he does not claim to be anything other than Defendants' outside counsel retained for this lawsuit, and does not set forth any foundation for his purported knowledge about Defendants' business and internal operations. To give just one example, he states that "Gotham was not commissioned by any third-party to prepare or publish its Report. Its reports are written by its own internal team whom we have identified." *Id.* ¶ 18. Grifols seriously doubts that Mr. Korzenik is suggesting that he has firsthand knowledge about these matters, as that would make him a relevant witness in this action.

## II. **Even If the Privilege Applied, Defendants Have Waived It Over Broad Categories of Documents.**

Even if Yu and Gotham did qualify for the protections afforded by § 79-h, they have waived the right to assert that privilege many times over.

### A. **Any Documents Shared by Yu or Gotham With De Weck or GIP Do Not Qualify for the Privilege.**

Any information or documents shared by Yu and/or Gotham with de Weck and/or GIP, who are non-journalists, results in a waiver of the Reporter's Privilege. "[A] person entitled to claim the exemption . . . waives such exemption if such person voluntarily discloses or consents to disclosure of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided by this section." § 79-h(g). To that end, "[t]he Shield Law privilege is waived when a journalist voluntarily discloses information to 'any person not otherwise entitled to claim the exemptions provided by this section.'" *Baez v. JetBlue Airways*, 2012 WL 5471229, at * 2 (E.D.N.Y. 2012) (quoting § 79-h and finding its privileges waived). Courts routinely find waiver where purportedly privileged materials are disclosed beyond the circle of privilege. *See, e.g.*, *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, 241 F.R.D. 202, 204 (S.D.N.Y. 2007) (finding waiver); *In re Krevlin*, 2025 WL 3228059, at *6 (S.D.N.Y. Nov. 19, 2025) (same); *Guice-Mills v. Forbes*, 12 Misc. 3d 852, 856–57, (Sup. Ct. N.Y. Cty. 2006) (same); *In re Dan*, 80 Misc. 2d 399, 401–02, (Sup. Ct. Erie Cty. 1975) (same). And where materials are sought from a non-journalist source, the privilege does not attach at all. *See Montesa v. Schwartz*, 2016 WL 3476431, at *14 (S.D.N.Y. June 20, 2016) (privilege inapplicable where party sought documents from an available non-journalist source).

That rule controls here: Defendants cannot assert the Reporter's Privilege over any documents disclosed to de Weck or GIP. Defendants have admitted that GIP served as the financial backer and funder for Gotham's activities. GIP's role was not editorial or journalistic; it was

financial—providing capital to support the trading strategy tied to Gotham's publications. By sharing purportedly privileged materials with the very funder whose economic stake would be advanced by publication, Gotham and Yu voluntarily disclosed those materials to individuals and entities far outside the protected journalistic sphere, thereby waiving any privilege under § 79-h. Since they do not qualify for the privilege, disclosure of any documents or sources to those two Defendants defeats any protections that § 79-h might otherwise afford.[6]

### B. The Defendants Waived Production by Producing their Documents to the SEC.

Defendants have separately waived any Reporter's Privilege over their documents by producing them to the SEC in response to what de Weck describes as a February 12, 2024 "document request." de Weck Decl. ¶ 19. Section 79-h(g) states that a privilege-holder "waives such exemption" when it "voluntarily discloses" the relevant information to "any person not otherwise entitled" to claim the privilege. Defendants admit that they produced over 65,000 documents, including files and electronic communications concerning Grifols, to the SEC. de Weck Decl. ¶ 21; Ex. G. Nothing in the de Weck declaration or the Korzenik declaration indicates this disclosure was anything but voluntary. Accordingly, Defendants' voluntary disclosure to a third party not entitled to claim the Reporter's Privilege constitutes waiver under § 79-h(g).

Courts applying analogous privilege doctrines have consistently held that providing documents to an adversarial regulator waives any privilege in subsequent civil litigation. In *Kashef*

---

[6] To the extent de Weck or GIP hold responsive documents—which their counsel has said they do (*see* Ex. G (identifying de Weck as a custodian)) and de Weck himself admitted (*see* de Weck Dec. ¶¶ 19–21 (testifying he produced in response to a request from the SEC))—they must produce them. Sharing counsel does not entitle Defendants to behave as a single "journalist" or transform them into a unitary journalistic actor. Each Defendant's custodial obligations stand on their own, and one Defendants' asserted privilege cannot be used to bar discovery from another Defendant who is not entitled to invoke § 79-h. *Cf. Montesa*, 2016 WL 3476431, at *14 (finding Reporter's Privilege did not apply to non-journalist party and ordering production).

*v. BNP Paribas S.A.*, the court compelled production of documents previously provided to Department of Justice, holding that such disclosures waived both attorney–client and work-product protection. 2022 WL 1617489, at *4–5 (S.D.N.Y. 2022). That ruling rests on the Second Circuit's decision in *In re Steinhardt Partners, L.P.*, which explains that cooperation with the SEC remains adversarial in nature and that "voluntary disclosure of work product to an adversary waives the privilege as to other parties." 9 F.3d 230, 234–35 (2d Cir. 1993). Defendants have identified no "common interest" arrangement or explicit non-waiver agreement of the type *Steinhardt* suggests could preserve privilege.

Nor can Defendants salvage their position by invoking the discredited doctrine of selective waiver. Courts reject the idea that a party may disclose materials to a regulator yet retain privilege against private litigants. In *In re Qwest Communications International Inc.*, the Tenth Circuit rejected selective waiver where the defendant voluntarily disclosed over 220,000 pages to the SEC and DOJ—while related civil litigation was ongoing and those same documents were sought therein—because such conduct is inconsistent with any reasonable expectation of preserved privilege. 450 F.3d 1179, 1193 (10th Cir. 2006). *Steinhardt* likewise refused to credit the appropriateness of a selective-waiver theory—like Defendants seek to invoke here—stating that parties "cannot be permitted to pick and choose among [their] opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for [their] own benefit." *In re Steinhardt Partners, L.P.,* 9 F.3d at 235 (citing *Permian Corp. v. United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981)).

The same reasoning applies here with even greater force: Defendants produced tens of thousands of documents to the SEC months *after* this case was filed on January 26, 2024. ECF 1;

De Weck Decl. ¶¶ 19, 21. "[T]hat a party facing a federal investigation and the prospect of a civil [] suit must make difficult choices is insufficient justification for carving a substantial exception to the waiver doctrine." *In re Steinhardt Partners, L.P.,* 9 F.3d at 236. Nothing in the record suggests Defendants took steps to preserve any privilege when producing their documents concerning Grifols to the SEC, and the law does not permit them to reclaim it now.

### C. The Fairness Doctrine Precludes Defendants' Attempt to Selectively Produce Only What They Deem Helpful.

Another waiver by Defendants is triggered by their overarching discovery strategy, which seeks to limit production to the narrow universe of materials they believe support their narrative, while withholding all other responsive documents bearing on knowledge, motive, sourcing, and malice. Defendants' own brief makes this explicit: they urge that "[n]othing beyond what Gotham has committed itself to produce should be permitted" and that a protective order should insulate categories of materials they have unilaterally defined. ECF No. 94 at 6 (citing ECF No. 93 ¶ 19(a)–(d)).

Setting aside that Defendants' position completely disregards the Rule 26(b) relevance standard, as well as the appropriate scope of discovery relevant to Grifols' malice claims, Defendants' position is textbook selective disclosure and is prohibited by the "fairness doctrine." A litigant cannot weaponize privilege to produce a curated, self-serving subset of information while suppressing the surrounding context that would allow the factfinder to understand what actually happened.

The fairness doctrine exists to prevent exactly that. It "prevents prejudice to a party and distortion of the judicial process that may be caused by the privilege-holder's selective disclosure during litigation of otherwise privileged information." *Schiller v. City of New York*, 245 F.R.D. 112, 120 (S.D.N.Y. 2007) (cleaned up; Reporter's Privilege case) (*citing von Bulow by Auersperg*

14

*v. von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (also a Reporter's Privilege case)). Accordingly, "[u]nder the fairness doctrine, a party that discloses some privileged information cannot thereafter rely on the privilege to withhold related information necessary to gain a complete picture of the facts." *Schiller*, 245 F.R.D. at 120; *see also Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*, 232 F.R.D. 191, 199 (S.D.N.Y. 2005) (assessing waiver of absolute attorney-client privilege).[7]

As noted, Defendants' SEC production is a clear example of why the fairness doctrine applies. Defendants cannot refuse to produce documents they already voluntarily disclosed to a federal regulator—particularly while claiming, implausibly, that these same materials are "not readily produced" (ECF No. 91 at 24) even though they have already produced them to the SEC. Nor can they insist these documents "ha[ve] not been placed at issue," *id*. at 20, when Defendants themselves repeatedly invoked the SEC submissions and the resulting "no-action letter" to argue their good faith. *See* ECF No. 28 at 5 n.1; ECF No. 28-1 ¶¶ 19–22; ECF No. 28-2; ECF No. 29-1 ¶¶ 19–22; ECF No. 29-2; ECF No. 55 ¶¶ CC14–16.[8]

Having relied on these materials to defend themselves, Defendants cannot now wield privilege to block the very disclosures necessary for Grifols to test their assertions. The fairness

---

[7] A similar result is required by the rule of completeness, which requires that "one cannot introduce only the favorable portion of a document without the adversary successfully demanding production of the entire writing." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 111 (2d Cir. 2012). As mentioned in Grifols' Motion to Compel, Defendants have indicated that—while they are currently not aware of any applicable documents—they would redact what they deem to be "irrelevant" information from otherwise responsive documents. ECF No. 85 at 10 n. 3. They have further threatened to file a summary judgment motion based on a self-selected group of materials, which would also almost certainly violate the fairness doctrine and the rule of completeness. *See* Hr'g Tr. 18:9–23.

[8] Defendants misconstrue the SEC's "no action" letter as an exoneration. *See, e.g.*, ECF No. 28 at 5 n.1; ECF No. 28-1 ¶¶ 19–22; ECF No. 28-2; ECF No. 29-1 ¶¶ 19–22. Yet the "no action" letter stated that it "must in no way be construed as indicating that [Gotham or GIP] has been exonerated or that no action may ultimately result from the staff's investigation." ECF 29-2.

doctrine prohibits using selective disclosure as both a sword and a shield. Defendants' refusal to produce the remainder of their communications—whether with the SEC, with investors, or among themselves—while affirmatively relying on selected excerpts and regulator reactions, squarely triggers waiver.

### III.    **Grifols Has Met the Standard for Disclosure.**

Even assuming, contrary to the record, that any privilege applies and was not waived, Defendants still cannot avoid disclosure because Grifols easily satisfies all three requirements for compelled production under § 79-h(c).

Defendants seek to withhold five sweeping categories of materials under the Shield Law:

> (1) all communications, drafts, and editorial materials concerning statements in the Gotham Report that the Court dismissed as nonactionable opinion (ECF No. 93 ¶ 19(a));

> (2) all such materials concerning statements in the Gotham Report that Grifols did not challenge in its Complaint (*id.* ¶ 19(b));

> (3) all purportedly confidential-source communications relating to unchallenged, dismissed, or unpublished material relating to the Gotham Report (*id.* ¶ 19(c));

> (4) all non-confidential third-party communications not tied to the surviving claim (*id.* ¶ 19(d)); and

> (5) all documents "pertain[ing] to Grifols or Scranton generally," which Defendants characterize as "broad" or "*unparticularized*" (*id.* ¶ 19(e) (emphasis in original)).

In other words, Defendants seek to cordon off nearly the entire universe of their internal and external communications, drafts, sourcing files, and deliberative materials—even though those are the very documents that bear directly on knowledge of falsity, reckless disregard, motive, and bias. *See* ECF No. 85 at 19–21; ECF No. 99 at 20–23.

Under the test established by *In re Petroleum Products Antitrust Litigation*, a defamation plaintiff is entitled to compelled disclosure upon a "clear and specific showing" that the

information is (1) "highly material and relevant," (2) "necessary or critical" to the claim, and (3) "not obtainable from other available sources." As shown below, each category of documents that Defendants seeks to withhold meets all three requirements, and none can be shielded under § 79-h(c). 680 F.2d 5, 7–8 (2d Cir. 1982).

*First*, the requested materials are "highly material and relevant." The Supreme Court has squarely held that discovery into a defamation defendant's editorial processes—its internal deliberations, fact-checking, and knowledge of contrary information—is constitutionally permitted because prohibiting such discovery "would constitute a substantial interference with the ability of a defamation plaintiff to establish the ingredients of malice." *Herbert v. Lando*, 441 U.S. 153, 154 (1979). Courts in this District likewise recognize that privileges are "generally disfavored," particularly when invoked by a defamation defendant. *Aequitron Med., Inc. v. CBS, Inc.*, 1995 WL 406157, at *3 (S.D.N.Y. July 10, 1995). Indeed, "the privilege is not as strictly enforced when the news entity is a defendant in a defamation or libel case." *Id.*

Here, the materials sought—Defendants' internal drafting history, sourcing files, deliberations, corrections, and knowledge of falsity—go to the core of the actual malice inquiry. This includes the very categories Defendants seek to withhold: drafts and editorial processes for both dismissed and unchallenged statements (ECF No. 93 ¶ 19(a)–(b)), all source-related communications (*id.* ¶ 19(c)–(d)), and broader deliberative materials relating to Grifols or Scranton (*id.* ¶ 19(e)). These documents will reveal what Defendants reviewed, what contrary facts they ignored, how they crafted and edited the Gotham Reports, and whether their shifting explanations (including regarding the Scranton loan) were pretextual. Far from "unfocused and *unparticularized*" (*id.* ¶ 19(e) (emphasis in original)), these requests seek exactly the type of malice evidence *Herbert* contemplated and courts routinely order produced in defamation cases.

**Second**, the requested materials are "necessary or critical" to proving actual malice. Courts do not allow a defamation defendant to weaponize the Shield Law by invoking confidential sources or internal research as evidence of good faith while simultaneously blocking inquiry into those same sources and internal communications. *See Sharon v. Time, Inc.*, 599 F. Supp. 538, 583 (S.D.N.Y. 1984) (a defendant may not "insulate" state of mind by claiming reliance on confidential sources—plaintiff must be able to probe whether the source existed, what was said, and whether reliance was reasonable); *Collins v. Troy Pub. Co., Inc.*, 213 A.D.2d 879, 881 (N.Y. 3d Dep't 1995) ("By attempting to rely on their confidential sources to prove that they acted without malice, defendants deprive plaintiff access to valuable material evidence that comprises a critical element of plaintiff's cause of action.").

Defendants do precisely this here: they repeatedly invoke unidentified "due diligence," "research," and undisclosed "communications" to argue good faith while refusing to produce the underlying documents essential to test those claims. That includes their attempt to block all materials relating to dismissed or unchallenged statements (ECF No. 93 ¶ 19(a)–(b)), despite those materials directly bearing on motive, animus, and preconceived narratives; their attempt to withhold all purported "confidential" and "non-confidential" source communications (*id.* ¶ 19(c)–(d)), even though they previously relied on the apparent lack of such sources to argue good faith;[9] and their attempt to exclude broader internal communications about Grifols or Scranton (ECF No. 93 ¶ 19(e)), which bear directly on their knowledge of falsity and subjective awareness of contrary information. Their own brief even asserts that their false statements were an innocent "drafting

---

[9] ECF No. 25 at 7 (The Gotham Report "is based entirely on *publicly available documents*[.]") (emphasis in original); ECF No. 91 at 30 ("Defendants relied on public source documents for the Report.").

oversight" (ECF No. 91 at 5)—a claim that can be evaluated only by examining the drafts and communications they refuse to produce.

And Defendants have already argued actual-malice issues by selectively quoting internal communications that they have not produced. *See* Hr'g Tr. 7:14–8:10 (Defendants' counsel quoting text message exchange between Yu and De Weck to argue lack of malice). It is precisely because malice turns on subjective state of mind—including motive, animus, preconceived narratives, and knowledge of contrary facts—that courts order production on such items. *See, e.g.*, *Amin v. NBCUniversal Media, LLC*, 2023 WL 8238975, at *8 (S.D. Ga. Nov. 28, 2023); *Saroya v. C.A.I.R. Found.*, 348 F.R.D. 632, 643 (D. Minn. 2024); *Blankenship v. Fox News Network, LLC*, 2021 WL 3706683, at *6–7 (S.D. W. Va. Aug. 20, 2021).

Moreover, while they expressly do not admit their existence, Defendants now claim that they apparently must invoke the journalist privilege to shield discovery into their reliance on "confidential sources" with respect to other aspects of the Gotham Report, beyond the Scranton Loan statements. ECF No. 93 ¶ 19(c). This about-face flatly contradicts their earlier representation that their Report was based solely on the 125 citations of public documents and otherwise contained no undisclosed facts. *See* ECF No. 25 at 16–27. This reversal alone demonstrates why probing these materials is "critical" within the meaning of § 79-h(c).

***Third***, the requested materials are "not obtainable from other available sources." Courts routinely order disclosure where the putative journalist defendant is the only source of materials relevant to malice. *See Schoolcraft v. City of New York*, 2014 WL 1621480, at *8 (S.D.N.Y. Apr. 22, 2014) (ordering disclosure because the journalist "is the only individual who has a copy of these documents" and the materials were "central" to the claims). New York courts likewise enforce disclosure in defamation cases where the defendant journalist exclusively possesses the

requested documents. *See Scott v. Cooper*, 227 A.D.2d 463 (N.Y. 2d Dep't 1996). And courts in market-manipulation contexts have overruled privilege claims where the documents bear directly on liability and are unavailable elsewhere. *In re Natural Gas Commodity Litig.*, 235 F.R.D. 199, 214–16 (S.D.N.Y. 2005).

Here, every category Defendants seek to withhold—drafts, editorial materials, source communications (confidential or not), internal discussions of dismissed or unchallenged statements, and broader communications about Grifols or Scranton (ECF No. 93 ¶ 19(a)–(e))—exists solely in Defendants' possession. No third party possesses these materials, and Defendants' admission that the SEC production was "much broader" than what Grifols now seeks only confirms that Defendants already possess the relevant documents and that they reside exclusively in Defendants' files. *See Schoolcraft*, 2014 WL 1621480, at *8. Without these materials, Grifols cannot reconstruct Defendants' knowledge, motives, or intent at the time of publication—all core to proving actual malice. This alone satisfies *Petroleum Products*' third requirement.

The cases Defendants cite underscore why their privilege claim fails. Indeed, the cases are particularly inapposite given their status as a party in this action whose state of mind is central to the defamation claim.[10] *Giuffre*, *Cosby*, *Home Box Office*, and *Cummings* each involved non-party, traditional journalists resisting subpoenas for non-central, non-malice-related materials, often based on confidential sources, and where numerous alternative sources existed. *See Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 474 (S.D.N.Y. 2016) (non-party newspaper journalist did not

---

[10] Given the in-depth explanations as to why Grifols is seeking the requested discovery, *Flynn v. NYP Holdings Inc.* is a particularly inapposite citation for Defendants. There, the court denied the requested production because the plaintiff "simply stated that the materials were 'critical' to his claim without setting forth any analysis in support thereof"—a sharp contrast to Grifols' thorough briefing on its requested discovery, both here and in its pending motion to compel. 235 A.D.2d 907 (N.Y. 3d Dep't 1997).

have to testify about identity of confidential source, drafting process was not central to the claim, and numerous alternative sources for drafting information existed); *Green v. Cosby*, No. 16-CM-99 (PGG) (S.D.N.Y. Apr. 27, 2016) ECF No. 13 , 21:14–21 (non-malice evidence sought from non-party print journalist; motion denied in part because Cosby did not seek production from parties to the case); *Matter of Application of Home Box Office, Inc.*, 64 Misc. 3d 566 (N.Y. Sup. Ct. N.Y. Cnty. 2019) (non-party documentary filmmaker did not have to produce outtakes for non-defamation case where outtakes were available from alternative sources); *In re Application to Quash Subpoena to Nat'l Broad. Co., Inc.*, 79 F.3d 346 (2d Cir. 1996) (non-party newscast did not have to produce in products liability case); *Doe v. Cummings*, 1994 WL 315640, at *1 (N.Y. Sup. Ct. St. Lawrence Cnty. Jan. 18, 1994) (non-party newscaster).[11]

Here, Defendants are not non-party journalists; they are defamation defendants whose own state of mind is a required element of the tort, and the materials they seek to withhold—drafts, internal communications, research, trading data, regulator presentations—are the only evidence of their knowledge, intent, or reckless disregard. Defendants have identified no confidential sources, have voluntarily disclosed materials to third parties, and have themselves put their editorial process and analysis "at issue." The Shield Law does not permit a defamation defendant to shield the very evidence necessary to test its claimed good faith.

In short, this is the precise circumstance in which courts compel disclosure notwithstanding § 79-h: the materials are central to the actual-malice inquiry, indispensable to testing Defendants' claims of good faith, and available from no one else. Courts applying *Petroleum Products* routinely order production in these circumstances, including in defamation and market-manipulation

---

[11] The *Cummings* decision contains little-to-no analysis of § 79-h and merely states its conclusions that the elements of disclosure have not been met. Given its brevity and lack of analysis, it offers little, if any, guidance to this Court.

contexts. *See Scott*, 227 A.D.2d at 463; *In re Natural Gas Commodity Litig.*, 235 F.R.D. at 214–16.

## IV. <u>Defendants Cannot Unilaterally Insulate Broad Swaths of Material—Their Privilege Assertions Must Be Tested Document-By-Document.</u>

Defendants' Motion fails for the additional reason that they have not identified even a single document subject to the claimed privilege, in contravention of Rule 26(b)(5)(A). Their Motion suggests that documents can wholesale be withheld simply on a self-serving allegation of privilege. Not so. Even where § 79-h applies, courts uniformly reject blanket or categorical invocations of the privilege. The statute requires a document-by-document showing to permit adversarial and judicial evaluation.

Contrary to Defendants' claims, a party asserting the Reporter's Privilege must "provide[] a description of the information that it appears to be withholding," including any sources requesting anonymity, "which [would] enable[] the Court to assess [a party's] claim of privilege." *Novagold Res., Inc. v. JCap Rsch. USA LLC*, 2024 WL 4250265, at *3 (E.D.N.Y. Mar. 29, 2024). Indeed, that court chastised the defendant, represented by Defendants' counsel, for "persistent evasiveness about exactly what information it is seeking to protect, and indeed whether such information even exists." *Id.* Yet Defendants here are taking the same improper approach as in *Novagold*.[12]

*In re Application of Chevron Corp.* makes a similar point. There, the court rejected the "blanket claim that every responsive document [the journalist] has and everything he saw and heard while working on this documentary is privileged *and that a subpoena therefore should not issue*," as doing so "would transform what the Second Circuit repeatedly has made clear is a

---

[12] That court also held that report funders—which, in this case, would likely include de Weck and GIP—are not protected by § 79-h. *Novagold*, 2024 WL 4250265, at *6.

qualified privilege into an absolute privilege for any and all information [the journalist] may possess." 736 F. Supp. 2d 773, 782 (S.D.N.Y. 2010) (emphasis in original). Calling such a claim "extraordinary," the court required the party "to claim privilege . . . in the same manner as any other litigant" and to provide a privilege log "enumerating the documents as to which privilege is claimed and including as to each such information as may be necessary to make out his claim of qualified journalist privilege." *Id.*[13]

The court in *Fowler v. Vary* came to an identical conclusion. There, the court rejected an attempt to rely on "a conclusory declaration" which "contain[ed] no specific facts" and was "entirely devoid of information," finding such a declaration to be "insufficient and unpersuasive" to invoke § 79-h. *Fowler v. Vary*, 2022 WL 3211638, at *11 (S.D.N.Y. Aug. 9, 2022). Critically, "[t]he declaration…[was] entirely devoid of information suggesting the scope, timing, or contours of the purported [confidentiality] promises . . . ." *Id.*

Similarly, *Application of Dack* rejected invocation of § 79-h(b) because "[a]ll that is presented is a bare statement that these two witnesses preferred to remain anonymous . . . there is totally absent any direct evidence of the mutuality of such agreement." 101 Misc. 2d 490, 502 (N.Y. Sup. Ct. Monroe Cty. 1979).

Even *Trump v. O'Brien*, relied on by Defendants, reflects that a court must assess the "totality of the evidence" to determine if Reporter's Privilege applies; there, the court considered affidavits submitted by the journalist in question describing his journalistic process and promises

---

[13] Defendants seem to take the view that the Reporter's Privilege is somehow more sweeping than attorney-client privilege—putting the burden on the party seeking discovery—despite the Reporter's Privilege is a *qualified* one, rather than an absolute one like the attorney-client privilege. *Cf. In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 783–84 (S.D.N.Y. 2010) (comparing attorney-client and Reporter's privileges and requiring those claiming the Reporter's Privilege to provide enough information so the *Petroleum Products* factors could be tested).

made to his three sources. 958 A.2d 85, 97 (N.J. Super. Ct. App. Div. 2008).

Simply put, if Defendants want to invoke the Reporter's Privilege, they must provide sufficient information for Grifols and the Court to assess the veracity of their claims. *See* Rule 26(b)(5)(A) (requiring a privilege proponent to describe the nature of each withheld document so that the opposing party and the Court may assess the privilege). This would entail describing the nature of the documents they are claiming broad privilege over, quantifying the number of, and describing, their alleged "confidential sources," and substantiating their claim that these alleged "confidential sources" intended to remain anonymous. Yet Defendants' supporting Declaration lacks any factual declarations; it is authored not by any of the parties, but by *counsel*, who obviously had no part in "investigating" or drafting the Gotham Report. That declaration simply states in conclusory, self-serving fashion that entire swaths of materials are "all protected by § 79-h." ECF No. 93 ¶ 19. That is woefully insufficient under the cases cited above, and Defendants cite no case endorsing this approach.

Finally, when § 79-h is invoked, courts routinely order *in camera* review of documents in order to test assertions of the privilege. *See, e.g.*, *Fowler*, 2022 WL 3211638, at *3–4; *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 479 (S.D.N.Y. 2016) (relied on extensively by Defendants; redacted opinion); *Torah Soft Ltd. v. Drosnin*, 2001 WL 1425381, at *6 (S.D.N.Y. Nov. 14, 2001); *United States v. Sanusi*, 813 F. Supp. 149, 151–52 (E.D.N.Y. 1992) (overruling invocation of Reporter's Privilege); *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 2004 WL 2186325, at *1 (E.D. Mich. Sep. 23, 2004) (assessing invocation of § 79-h); *Nat'l Broad. Co. v. People*, 238 A.D.2d 618, 619 (N.Y. 2d Dep't. 1997). As such, to the extent that the Court does not reject Defendants' privilege assertion outright for the many independent reasons discussed above, any materials over which Defendants maintain a colorable privilege claim should be submitted for *in camera* review.

Taken together, these authorities foreclose Defendants' attempt to designate entire swaths of responsive material as categorically off-limits. Assuming *arguendo* that it even applies here—it does not—the Shield Law requires particularity from whoever is invoking the privilege, not self-serving generalities from their attorney. Defendants may assert privilege only on a document-by-document basis, supported by a privilege log that describes each document sufficiently to allow the Court to determine (1) whether the privilege applies, (2) whether it is absolute or qualified, and (3) whether any asserted confidentiality has been waived by disclosure to third parties—including, as here, GIP, de Weck, market contacts, and other third parties. Defendants' refusal to provide any such log—and their effort to seal off whole classes of material without analysis—violates § 79-h, Rule 26(b)(5), and binding precedent. The Court should reject Defendants' improper categorical approach and compel document-by-document adjudication of any privilege claims.

## CONCLUSION

Grifols respectfully requests that the Court deny Defendants' Motion for a Protective Order in full. As demonstrated above:

- Defendants have failed to establish that they are each journalists;

- Even if Gotham and Yu could be treated as journalists (a contention that another federal court has rejected), they waived any privilege by disclosing documents to GIP and de Weck;

- Defendants have also waived privilege over any documents voluntarily produced to the SEC;

- Defendants have further waived any privilege over those same SEC submissions by repeatedly invoking them and the resulting "no-action letter" to argue their good faith;

25

- Defendants further waived the privilege by failing to assert it in response to Grifols' RFPs and throughout the meet-and-confer process;

- Documents central to actual malice cannot be withheld, as Grifols has satisfied the requirements for overcoming the qualified Reporter's Privilege; and

- Defendants identify no specific documents they intend to withhold.

Each of these independent reasons warrants denying the Motion.

Dated:    December 17, 2025              **PROSKAUER ROSE LLP**

                                         By:    */s/ Peter D. Doyle*

                                         Peter D. Doyle
                                         Jeff Warshafsky
                                         William T. Walsh, Jr.
                                         Michael Guggenheim
                                         PROSKAUER ROSE LLP
                                         Eleven Times Square
                                         New York, NY 10036
                                         Telephone: (212) 969-3000
                                         pdoyle@proskauer.com
                                         jwarshafsky@proskauer.com
                                         wwalsh@proskauer.com
                                         mguggenheim@proskauer.com

                                         *Counsel for Plaintiff Grifols, S.A.*