## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

GRIFOLS, S.A.,

               Plaintiff,

    v.

DANIEL YU, GOTHAM CITY RESEARCH LLC,
GENERAL INDUSTRIAL PARTNERS LLP, and
CYRUS DE WECK,

               Defendants.

Index No. 1:24-cv-00576-LJL-GWG

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION FOR PROTECTIVE ORDER UNDER N.Y. REPORTERS PRIVILEGE [Dkt. 92]

Miller Korzenik Rayman LLP
David S. Korzenik
Gillian Vernick
1501 Broadway, Suite 2015
New York, NY 10036
212-752-9200

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

ARGUMENT ........................................................................................................................ 2

I.   New York's Reporters Privilege is Broadly Inclusive and More Powerful than the Federal Common Law or Other State Privileges that Grifols Mistakenly Relies On. ..... 2

   A.   Grifols cites abrogated caselaw which relies on § 79-h before its 1981 amendments that broadened the definition of "Professional Journalist." ........................................ 3

   B.   Grifols relies on cases under the less protective federal law and under different state privileges instead of the far stronger N.Y. 79-h privilege. ......................................... 4

II.   Defendants Fall Within Sec. 79-h Broad Protections for Publication of Written Information Concerning Matter of Public Concern for Gain. ........................................... 6

III.   Defendants Did Not Waive Reporters Privilege by Complying with SEC Subpoenas and Documents Demands or by Collaborating with Associated Writers and Researchers While Newsgathering. .............................................................................. 10

   A.   There is no waiver by communicating within a drafting and research group, or to third parties factchecking or sourcing information while reporting. ........................ 11

   B.   Grifols did not voluntarily waive the reporter's privilege by complying with subpoenas from the SEC under legal penalties. ......................................................... 13

   C.   Defendants did not waive the 79-h privilege in the course of efforts to gain court approval of a narrower discovery procedure, one that would not have required disclosure of editorial materials objected to here. ................................................... 14

IV.   Fairness Doctrine is Not Implicated by Assertion of Privilege to Documents Not Used for Any Ruling in this Case. ......................................................................................... 16

V.   Plaintiff Cannot Show Particularized Need nor Meet Three-Pronged Test Required to Overcome § 79-h's Qualified Privilege. ...................................................................... 18

   A.   Grifols fails to prove that editorial material concerning unchallenged and non-actionable speech is highly material and relevant to actual malice of a different statement. .................................................................................................................. 20

   B.   Grifols' Actual Malice burden as to single actionable statement does not rise or fall with editorial material of other unchallenged and protected statements. .................. 21

VI.   Gotham's Reporters Privilege Would Be Violated by Grifols' Request that Each Communication of Internal Editorial Material Be Identified. ..................................... 24

CONCLUSION .................................................................................................................. 27

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aequitron Med., Inc. v. CBS, Inc.*,
No. 93 CIV. 950 (DC), 1995 WL 406157 (S.D.N.Y. July 10, 1995) ........................................... 6

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S. Co.*,
232 F.R.D. 191 (S.D.N.Y. 2005) ................................................................................................ 17

*Am. Sav. Bank, FSB v. UBS Painewebber, Inc.,*
No. M8-85, 2002 WL 31833223 (S.D.N.Y. Dec. 16, 2002) ........................................................ 9

*Amin v. NBCUniversal Media, LLC,*
No. 5:21-CV-56, 2023 WL 8238975 (S.D. Ga. Nov. 28, 2023) ................................................. 23

*Anthony v. Haas*,
243 A.D.3d 1183 (N.Y. App. Div. 2025) ................................................................................... 13

*Baker v. Goldman Sachs & Co.,*
669 F.3d 105 (2d Cir. 2012) ................................................................................... 11, 13, 17, 18

*Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*,
No. 16-MC-80062-JSC, 2016 WL 3162218 (N.D. Cal. June 7, 2016) ………………………….. 6

*Blankenship v. Fox News Network, LLC,*
No. 2:19-CV-00236, 2021 WL 3706683 (S.D.W. Va. Aug. 20, 2021) ...................................... 24

*Branzburg v. Hayes*,
408 U.S. 665 (1972) ................................................................................................................... 21

*Brimelow v. New York Times Co.*,
No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021) ........................................................ 24

*Collins v. Troy Pub. Co. Inc.,*
213 A.D.2d 879 (3rd Dep't 1995) .............................................................................................. 23

*Compuware Corp. v. Moody's Invs. Servs., Inc.,*
222 F.R.D. 124 (E.D. Mich. 2004) ....................................................................................... 10, 27

*Doe v. Cummings*,
No. 91-346, 1994 WL 315640 (N.Y. Sup. Ct. Jan. 18, 1994) ......................................... 20, 22, 24

*Fowler v. Vary*,
No. 20-CV-9586 (LAK), 2022 WL 3211638 (S.D.N.Y. Aug. 9, 2022) ................................... 4, 28

*Giuffre v. Maxwell*,
221 F. Supp. 3d 472 (S.D.N.Y. 2016)................................................................ 3, 6

*Gonzales v. National Broadcasting Co.*,
194 F.3d 29 (2d Cir. 1999)................................................................ 5, 20, 25, 28

*Grifols, S.A. v. Yu*,
No. 24-CV-576 (LJL), 2025 WL 1826611 (S.D.N.Y. July 2, 2025)..................7

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989)................................................................................. 24

*Herbert v. Lando*,
441 U.S. 153 (1979)................................................................................. 21

*Immuno AG. v. Moor-Jankowski*,
77 N.Y.2d 235, 249 (Ct. App. 1991)..................................................................3

*In re Application of Chevron Corp.*,
736 F. Supp. 2d 773, 781 (S.D.N.Y. 2010)........................................................5

*In re Fitch, Inc.*,
330 F.3d 104 (2d Cir. 2003)........................................................................ 9

*In re Nat. Gas Commodity Litig.*,
235 F.R.D. 199 (S.D.N.Y. 2005) .............................................................. 5, 20

*In re Pan Am Corp.*,
161 B.R. 577 (S.D.N.Y. 1993),.................................................................. 7, 21

*In re Petroleum Prods. Antitrust Litig.*,
680 F.2d 5 (2d Cir. 1982)..............................................................................5

*In re Steinhardt Partners, L.P.*,
9 F.3d 230 (2d Cir. 1993)........................................................................ 14

*In re von Bulow*,
828 F.2d 94 (2d Cir. 1987)........................................................................ 17

*Krase v. Graco Children Prods.*,
79 F.3d 346 (2d Cir. 1996)................................................................... 22, 24

*Nat'l Broad. Co. v. People*,
238 A.D.2d 618 (App. Div. 2nd Dep't 1997) ........................................... 27

*Novagold Res., Inc. v. J Cap. Rsch. USA LLC*,
No. 20-CV-2875, 2022 WL 22877690 (E.D.N.Y. Sept. 28, 2022) ........................................ 7, 26

*Novagold Res., Inc. v. JCap Rsch. USA LLC*,
No. 1:20-CV-02875-LDH-PK, 2024 WL 4250265 (E.D.N.Y. Mar. 29, 2024)...................... 26, 27

*NYC Med. Prac., P.C. v. Shokrian*,
No. 19 CV 162, 2020 WL 13882100 (E.D.N.Y. Aug. 25, 2020) .................................................. 7

*People v. LeGrand*,
67 A.D.2d 446 (2nd Dep't 1979) ..............................................................................................3, 4

*Persky v. Yeshiva Univ.*,
No. 01 CIV. 5278 (LMM), 2002 WL 31769704 (S.D.N.Y. Dec. 10, 2002).............................3, 4

*PPM Am., Inc. v. Marriott Corp.*,
152 F.R.D. 32 (S.D.N.Y. 1993)................................................................................................3, 4

*Saroya v. CAIR Found., Inc.*,
348 F.R.D. 632 (D. Minn. 2024)................................................................................................ 24

*Schiller v. City of New York*,
245 F.R.D. 112 (S.D.N.Y. 2007) .................................................................................... 15, 16, 19

*Schoolcraft v. City of New York*,
No. 10 Civ. 6005, 2014 WL 1621480 (SDNY April 22, 2014)................................... 5, 19, 20, 25

*Sharon v. Time, Inc.*,
599 F. Supp. 538 (S.D.N.Y. 1984)............................................................................................. 23

*Shoen v. Shoen*,
5 F.3d 1289 (9th Cir. 1993) ..........................................................................................................6

*Sines v. Yiannopoulos*,
No. 20 MISC. 241, 2020 WL 6058279 (S.D.N.Y. Oct. 14, 2020) .................................... 9, 11, 16

*Too Much Media, LLC v. Hale*,
206 N.J. 209 (Sup. Ct. N.J. 2011).............................................................................................. 21

*Torah Soft Ltd. v. Drosnin*,
No. 00 CIV. 0676 (JCF), 2001 WL 1425381 (S.D.N.Y. Nov. 14, 2001) ................................ 3, 28

*Trump v. O'Brien*,
403 N.J. Super. 281 (App. Div. 2008) ........................................................................... 3, 6, 24, 25

*United States v. Marcos*,
87 CR. 598, 1990 WL 74521 (S.D.N.Y. June 1, 1990) ............................................................ 22

*United States v. Sanusi*,
813 F. Supp. 149 (E.D.N.Y. 1992) ........................................................................................ 28

*von Bulow v. von Bulow,*
811 F.2d 136 (2d Cir.1987) …………………………………………………………………...12

**Statutes**
N.Y. Civil Rights Law § 79-h (year) .......................................................................... 2, 7, 11, 20

**Other Authorities**
Rule 26(b) ............................................................................................................................ 17, 23

Defendants Cyrus De Weck, Gotham City Research LLC, Daniel Yu and General

Industrial Partners LLC ("Defendants," "Gotham") submit this Memorandum of Law in further

support of their Motion for Protective Order under New York's § 79-h Reporters Privilege.

## <u>OPENING STATEMENT</u>

Despite the fact that 99% of its case has been dismissed, Grifols attempts to reach into

Gotham's editorial materials for discovery on statements Judge Liman already ruled on as non-

actionable and constitutionally protected *as a matter of law*. Grifols also seeks editorial materials

on statements from the Report that it did not even challenge. Grifols rationalizes this overreach

on the specious claim that it cannot prove its case against the lone remaining statement without

evidence regarding speech that it did not challenge and that which is legally nonactionable. If

Grifols cannot prove actual malice as to that *specific* statement–i.e., that Gotham had substantial

doubts about the truth of that specific statement at the time it published, then Grifols has no case.

Grifols' overreach demonstrates once again that this case is a SLAPP suit designed to impose

needless and punitive costs on Gotham to retaliate for its criticism of Grifols.

Grifols has no current New York caselaw to support its proposition that Defendants do

not qualify under the statute's broad ambit. There is no requirement that a speaker fit into some

"traditional" class of media to claim the § 79-h reporters' privilege for editorial material. New

York's reporters' privilege, one of the broadest in the country, protects *anyone* who publishes on

an issue of "*public concern*" for "*public distribution*" and does so "for gain or livelihood." That

editorial materials might be "relevant" to actual malice does not overcome the reporters'

privilege. There are no cases that hold otherwise. The § 79-h privilege is "absolute" as to

"confidential" materials, and it strictly protects "non-confidential" editorial materials by its

demanding three-part "particularized need" test. Grifols strains legal logic and inapplicable case

1

law to suggest that evidence of editorial process surrounding dismissed and unchallenged statements in the Report could possibly be "necessary and critical," and "highly relevant and material" to proving actual malice for a different remaining statement. Even if the Court thought that such editorial materials *might be relevant* to the one remaining claim, it does not follow that Grifols could ever meet § 79-h's particularized need test, which requires far more than that to overcome the privilege as to non-confidential materials.

Grifols also misstates the facts. Gotham had never turned over its editorial materially voluntarily, nor has it relied on that material for any ruling in this case. Grifols fails to carry its heavy burden to overcome New York's qualified reporters' privilege.

Gotham does not assert its § 79-h privilege as to the one remaining statement at issue.[1] Gotham certainly could correctly and properly do so. But those will all be disclosed. Grifols' problem is this—under no set of facts can Grifols show that editorial materials regarding *nonactionable* or *unchallenged* statements in the Report are "necessary and critical" and "highly relevant and material" to proving actual malice as to the alleged falsity of the one *specific* statement remaining. It has failed to do so.

## **ARGUMENT**

I.   **New York's Reporters Privilege § 79-h is Broadly Inclusive and More Powerful than the Federal Common Law or Other State Privileges that Grifols Mistakenly Relies On.**

New York's Reporters Privilege, Civil Rights Law § 79-h, "has its origins in the New York Constitution's free press provision (Art. I, § 8), which provides the broadest possible protection to the sensitive role of gathering and disseminating news of public events." *Giuffre v.*

---

[1] As to *confidential* editorial materials, the privilege is "absolute" and no showing of any kind, particularized need or not, can overcome those protections. Absolute protections as to confidential materials are not waived.

*Maxwell*, 221 F. Supp. 3d 472, 475 (S.D.N.Y. 2016). Moreover, New York's Constitutional protections of free speech are broader and more potent than those of the U.S. First Amendment. *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 249 (Ct. App. 1991) ("the protection afforded by the guarantees of free press and speech in the New York Constitution is often broader than the minimum required by the Federal Constitution").

### A. Grifols cites abrogated caselaw which relies on § 79-h before its 1981 amendments that broadened the definition of "Professional Journalist."

Like many litigators faced with § 79-h privilege assertions, Grifols denies the broad scope of § 79-h's definition of "professional journalist." Specifically, Grifols cites *PPM Am., Inc. v. Marriott Corp*, that parrots a narrower reading of "professional journalist" from *People v. LeGrand*, 67 A.D.2d 446, 451 (2nd Dep't 1979). *LeGrand* was based on § 79-h *before* it was amended to broaden that scope in 1981. *See* Grf. Br. at 7-8 (citing *PPM Am., Inc. v. Marriott Corp.,* 152 F.R.D. 32, 35 (S.D.N.Y. 1993) ("Section 79–h 'evince[s] a clear legislative design to benefit 'professional journalists' and 'newscasters' only. [It] should not by judicial fiat and strained interpretation be deemed to encompass those engaged in a different field of writing and research.' **Le Grand, 415 N.Y.S.2d at 255.**") (emphasis added). *PPM* relied on *LeGrand* without recognizing that *LeGrand* had been repudiated two years later by the 1981 amendment.

It was precisely because of "such cases as *LeGrand*, that the legislature 'broadened the definition of a "professional journalist" so that '[a]ll those persons, ***whatever the job titles, performing a legitimate journalistic function will be protected***." *Torah Soft Ltd. v. Drosnin*, No. 00 CIV. 0676, 2001 WL 1425381, at *6 (S.D.N.Y. Nov. 14, 2001). *See also Trump v. O'Brien*, 403 N.J. Super. 281, 293 (App. Div. 2008) ("legislative amendments to the Shield Law in 1981 were designed to address the court's conclusion, in *People v. LeGrand*, 67 A.D.2d 446, 415 N.Y.S.2d 252 (1979).").

3

Grifols citations to *PPM Am. Inc,*. which relies on *LeGrand,* and to *Persky v. Yeshiva Univ.*, which relies solely on *PPM Am.*, are infected with the same incorrect reading of § 79-h abrogated by the 1981 amendment. *See Persky v. Yeshiva Univ.*, No. 01 CIV. 5278 (LMM), 2002 WL 31769704, at fn 1 (S.D.N.Y. Dec. 10, 2002).While these cases continued to rely on *Le Grand* and the pre-amendment definition, they do so incorrectly, and Grifols is wishfully doing the same thing. Grf. Br., at 7-8. This narrow reading is not what the statute does anymore. Its language was amended to reach "[a]ll those persons, ***whatever the job titles, performing a legitimate journalistic function [as] protected***," *Torah*, 2001 WL 1425381, at *6, and the statute can no longer be read the way those cases, and Grifols, suggests that it should.

### B. Grifols relies on cases under the less protective federal law and under different state privileges instead of the far stronger N.Y. 79-h privilege.

Federal Rule of Evidence 501 provides that federal common law privileges apply to federal causes of action, "[b]ut in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." F.R.E. 501. Ours is a libel case in which New York state law supplies the rule of decision. This is an important distinction because "the relevant protections supplied by the New York reporter's shield are inclusive of and broader than those supplied by the federal privilege[.]" *Fowler v. Vary*, No. 20-CV-9586 (LAK), 2022 WL 3211638, at *7 (S.D.N.Y. Aug. 9, 2022).

Grifols footnote 4 stating that the federal and New York state privileges are "identical" is mistaken. Grf. Br., at 9, fn 4. While this was true pre-*Gonzales*, the Second Circuit in "*Gonzales*, however, upended that symmetry by narrowing the federal privilege." *Fowler*, 2022 WL 3211638, at *7 (citing *Gonzales v. Nat'l Broad. Co*., 194 F.3d 29, 36 (2d Cir. 1999)). In *Gonzales*, "the Circuit retethered the federal privilege to a 'less demanding' standard, one that asks only whether the materials at issue are (1) of 'likely relevance to a significant issue in the

case' and (2) 'not reasonably obtainable from other available sources.'" *Id*. "Accordingly, [] the protections afforded by the New York statute are in all respects broader than those potentially applicable here through the federal privilege[.]" *Id.*

 Plaintiffs like Grifols who oppose § 79-h often misleadingly rely on *Gonzalez*-type cases. They provide no limiting authority for the Motion before this Court. This includes the vast majority of the cases Grifols relies upon including *In re Application of Chevron Corp.,* 736 F. Supp. 2d 773, 781 (S.D.N.Y. 2010) (applying *Gonzales*); *In re Petroleum Prods. Antitrust Litig.,* 680 F.2d 5, 7 (2d Cir. 1982); *Montesa v. Schwartz*, 2016 WL 3476431, at *14 (S.D.N.Y. June 20, 2016) (applying *Gonzales*); *In re Krevlin*, No. 25-MC-00376 (MMG), 2025 WL 3228059, at *4 (S.D.N.Y. Nov. 19, 2025) (applying *Gonzales*), *Schoolcraft v. City of New York*, No. 10 CIV. 6005 RWS, 2014 WL 1621480, at *4 (S.D.N.Y. Apr. 22, 2014) (applying "federal articulation of the privilege"); *In re Nat. Gas Commodity Litig.*, 235 F.R.D. 199, 208 (S.D.N.Y. 2005) (applying federal privilege).

 The Court must therefore be circumspect about relying on Grifols' citations to *federal* privilege cases applying the federal standard articulated in *Gonzalez.* If a federal privilege case protects a journalist's assertion of privilege, then § 79-h would protect also. But if any of the federal privilege cases ***do not*** protect a reporters' privilege, it does not follow that § 79-h would do the same. As a stronger privilege, § 79-h would very likely do otherwise. It does not follow that § 79-h would support or approve of *In re Chevron* because the "Second Circuit …qualified privilege" that Grifols points to is not the operative standard here. Grf. Br., at 22. It is a different reporters' privilege, with different scope and lesser protections.

 The Court should apply similar caution where Grifols relies on the privileges of ***other states***. State reporters' privilege laws are quite different in language, scope and applicability than

New York's. That includes *Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc*., No. 16-MC-80062-JSC, 2016 WL 3162218, at *3 (N.D. Cal. June 7, 2016), which applied Ninth Circuit qualified privilege from *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993), and not § 79-h. Additionally, Grifols cites, *Aequitron Med., Inc. v. CBS, Inc.*, which does not apply § 79-h either. There the court found the *Minnesota* privilege inapplicable because it "protects only unpublished information that might identify confidential sources." *Aequitron Med., Inc. v. CBS, Inc*., No. 93 CIV. 950 (DC), 1995 WL 406157, at *3 (S.D.N.Y. July 10, 1995). New York's statute is far more protective, shielding "important interests beyond confidentiality…by the reporter's qualified privilege, including editorial processes and the press's independence in selection of material for publication[.]" *Giufffre*, 221 F.Supp.3d at 477.

Sec. 79-h is unique. It is the most protective of all reporters' privilege statutes in the country. Grifols provides no authority that *actually applies § 79-h* to support its position.

## II.  Defendants Fall Within Sec. 79-h Broad Protections for Publication of Written Information Concerning Matter of Public Concern for Gain.

Sec. 79-h(a)(6) defines "professional journalist" as including "professional medium or agency which has as one of its regular functions the processing and researching of news intended for dissemination to the public." Contrary to Grifols' contention, this language expressly "protect[s] the journalistic process *wherever* that process is being professionally undertaken." *Torah*, 2001 WL 1425381, at *6 (emphasis added). The § 79-h privilege is not exclusive to any traditional class of journalist in a colloquial Walter Cronkite sense, nor does a person need to have the formal job title of Professional Journalist as described by some third party. According to New York state assemblyman Steven Sanders, the broad definition of "professional journalist" encompasses "[a]ll those persons, *whatever their job titles*, performing a legitimate journalistic function will be protected." *Trump*, 403 N.J. Super. at 294 (emphasis added).

Courts have found a broad variety of actors to qualify as journalists, including an Instagram account posting reviews of the plastic surgery industry, *NYC Med. Prac., P.C. v. Shokrian*, No. 19 CV 162, 2020 WL 13882100, at *3 (E.D.N.Y. Aug. 25, 2020), the S&P credit rating agency, *In re Pan Am Corp.*, 161 B.R. 577, 584 (S.D.N.Y. 1993), and short reporters writing a financial analyst report on a public company, like Gotham. *See Novagold Res., Inc. v. J Cap. Rsch. USA LLC*, No. 20-CV-2875, 2022 WL 22877690, at *1 (E.D.N.Y. Sept. 28, 2022) ("the Report constitutes news, [] the reporter's privilege applies[.]").

Yu and de Weck work in a "professional medium communicating news to the public" for purposes of the reporter's privilege.[2] § 79-h(a)(6). First, they "serv[e] [an] informative function akin to that of the press" through their research and publication educating the investing public on what they believe is an over-valued company on the public stock market. *See NYC Med. Prac.*, 2020 WL 13882100, at *3. Judge Liman in his ruling recognized the public interest value of short reports: "short-seller reports perform a useful function…through the percolation of ideas and opinions, both positive and negative, that the market can accurately value a security." *Grifols, S.A. v. Yu*, No. 24-CV-576 (LJL), 2025 WL 1826611, at *11 (S.D.N.Y. July 2, 2025).

As de Weck provides, "[t]he Report was the culmination of months of research and analysis, which revealed multiple material problems with Grifols financial reporting[.]" Aff. of Cyrus de Weck, Dkt. 28-1, at ¶ 12. This was done through "research… based upon publicly obtainable information, field research, inferences and deductions through our due diligence and analytical process." Report, Dkt. 1-1, at 1. Based on this research, Defendants "determined that Grifols' obscure financial reporting did not fairly and accurately represent the economic realities of its business." De Weck Aff., ¶ 12. This conclusion resulted in an exhaustively reported 65-

---

[2] Grifols does not challenge that the Report qualifies as "news" under § 79-h(a)(8). Correctly so, because the Report easily fits into the definition of "news" as "information or communication concerning…matters of public concern."

7

page publication, complete with an eight-page appendix and five pages of end notes screenshotting and citing Grifols' public financial disclosures directly. Report, at 3. Defendants published this report online, making it available for market participants to download and read, as well as publicizing it on Gotham City Research's twitter.

Grifols at no time disputes that the Report was written for public distribution, nor could it. As de Weck, Gotham's partner, swore, "Gotham has published research on approximately a dozen different companies that trade in markets around the world," de Weck Aff., ¶ 8, all published for public consumption on Gotham's website. This Report is a continuation of Yu and de Weck's ongoing publications to "expos[e] companies with misleading financial statements and unsustainable business models" to the market "for decades." De Weck Aff., ¶ 12.

Furthermore, Gotham was acting as "independent press" in generating these editorial materials. Grifols does not provide any evidence to support its accusation that Gotham was involved in some "private engagement or financial arrangement" in its publication of the Report.[3] Grf. Br., at 8. That Defendants have *their own interests* does not put them outside of the privilege. *See Sines v. Yiannopoulos*, No. 20 MISC. 241, 2020 WL 6058279, at *5 (S.D.N.Y. Oct. 14, 2020) ("the touchstone is not ... whether the journalistic enterprise was 'unbiased'; by that standard, few, if any, daily newspapers could assert the privilege"). Rather, "the test is whether the enterprise intended to express its views publicly, or merely to engage in private lobbying." *Id.* Defendants have never represented themselves as anything but independent editorially and have no third-party sources of financial support or insider information. Dkt. 93,

---

[3] Grifols' citation to Gotham's disclaimer stating it is "not an independent analyst" is taken out of content. That language disclaims any status as an investment advisor under E.U. securities regulations. Report, at 1 ("GCR is not an independent analyst nor an investment firm nor a credit institution and its main business is not to produce investment recommendations within the meaning of Regulation (EU) No 596/2014 of the European Parliament and of the Council of 16 April 2014 on market abuse").

Aff. of David S. Korzenik, ¶ 18 ("Gotham was not commissioned by any third-party to prepare or publish its Report. Its reports are written by its own internal team whom we have identified.").[4]

*In re Fitch* is not analogous. In *Fitch*, the Second Circuit found that the financial ratings agency was not entitled to § 79-h's protections because it only rated companies when it was *paid and commissioned by those companies* to do so; and when those companies played an active role in structuring these arrangements to rate the company. *In re Fitch, Inc.*, 330 F.3d 104, 109–10 (2d Cir. 2003); *Am. Sav. Bank, FSB v. UBS Painewebber, Inc.,* No. M8-85, 2002 WL 31833223, at *3 (S.D.N.Y. Dec. 16, 2002) (same). What stands out about *Fitch* is that the **subjects** of the publications *paid for and controlled* the publications at issue. Here, Grifols was the subject of the publication. It goes without saying that neither Grifols, not anyone else, paid, solicited or commissioned Defendants to write the Report, and there was no inducement nor arrangement, financial or otherwise. Korzenik Aff., ¶ 18.

Unlike *Fitch*, Defendants' Report represents "[o]ur research expresses our opinions…our due diligence and analytical process." Dkt. 1-1, Report, at 1. Grifols has not alleged that Gotham *at all* "stepped outside newsgathering activities" by involvement with the subject of its reporting, or any third party for that matter. *See Compuware Corp. v. Moody's Invs. Servs., Inc.*, 222 F.R.D. 124, 131 (E.D. Mich. 2004) (distinguishing Moody's Investor Services credit rating agency § 79-h eligibility from *In Re Fitch* based on editorial independence). Moody's was not paid or commissioned to write about its subject. But *Fitch*, in contrast, was paid and commissioned by the subject of its reporting. Fitch's report was advertising for its sponsor.

---

[4] Perhaps because facts contrary to its narrative are inconvenient, Grifols decides to "seriously doubt[] that Mr. Korzenik is suggesting he has firsthand knowledge" about its client and regarding the matters which Gotham's counsel has been litigating for over a year now. Grf. Br., at fn 5. To support its doubt, Grifols offers no facts to displace the sworn assertions in Mr. Korzenik's affidavit.

That Gotham has its *own interest* in publishing does not make it analogous to *Fitch*, where Fitch was not independent of the companies it was ranking. Most publications in the United States and elsewhere publish for gain and profit; they seek attention and money for what they publish. Indeed, to partake of the § 79-h privilege they *must* do so "for gain," § 79-h(6), and as long as they are *not commissioned, paid for or sponsored by their subjects,* they are entitled to its protections. All libel plaintiffs insist that the publisher was out to "make money," "biased and out to get them," and to "get attention." That does not defeat defendants' status as professional journalists, nor their "right to express opinions and analysis as any other market participant." *Grifols*, 2025 WL 1826611, at *11 ("short-seller reports perform a useful function," despite "an obvious motive to exaggerate the infirmities of the securities…that support their views").

Just because Grifols does not like or respect Gotham's "editorial vision or the merits of the content that it publishes" does not mean Gotham "primarily engage[s] in private lobbying" such that it is not independent for purposes of the privilege. *See Sines*, 2020 WL 6058279, at *5 ("Breitbart does not primarily engage in private lobbying, regardless of its editorial vision or the merits of the content that it publishes."). Though Gotham's "style of disseminating information may be confrontational and biased, [] it is not wholly without journalistic content[.]" *Id.*, at *6. Protecting Gotham's financial analysis protects the "public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters." *Baker v. Goldman Sachs & Co.,* 669 F.3d 105, 109 (2d Cir. 2012).

III.    **Defendants Did Not Waive the Reporters Privilege by Complying with SEC Subpoenas and Documents Demands or by Collaborating with Associated Writers and Researchers While Newsgathering.**

Sec. 79-h(g) provides that the reporters privilege is waived if a person "voluntarily discloses or consents to disclosure of the specific information sought to be disclosed to any

person not otherwise entitled to claim the exemptions provided by this section." § 79-h(g). Contrary to Grifols' argument, compliance with subpoenas in a regulatory investigation does not constitute a "*voluntary*" waiver of the privilege.

Neither does editorial collaboration on research and investigation in association with different people on a Report constitute a waiver under the statute. Many news reports are generated by the collaboration of different freelancers, news and research groups. The privilege protects all who participate in the *editorial process* that generates the articles. It is not just limited to those within a single corporate entity that distributes the report. All of the defendants in this case participated in the drafting of the Report at issue in this case—Gotham, GIP, etc.

*The New York Times* does not lose or waive any § 79-h privilege because it collaborated with freelancers or another group in the preparation of an article. It is the *editorial process* that is protected. It is not limited to employees within a corporate entity that distributed a report.

### A. There is no waiver by communicating within a drafting and research group, or to third parties factchecking or sourcing information while reporting.

Defendants did not waive the reporter's privilege by working together on drafts and exchanging editorial materials with the entire internal drafting group, or for communicating internally or with third parties for fact checking or other information review. Grifols now without support contends that Mr. de Weck was only a "financial backer and funder," and that "GIP's role was not editorial or journalistic[.]". Grf. Br., at 11. This is contrary to all of the evidence and admissions in this case, including Grifols' own pleadings. Grifols' own Complaint upon which this action moved forward states that *together Defendants* authored, published and disseminated the report. Now Grifols backs away from its previous representation to the Court to argue that any documents shared among the Defendants are not privileged. But *Grifols alleged that all the Defendants* engaged in a collaborative "partnership" and acted "in coordination" to "publish

research reports." Grf. Br., at 11-12. It is evident that the Defendants were all engaged in the preparation of the Report and the specific statements at issue in this case. Grifols seeks communications and drafts shared by them in the course of their editorial process. Sec. 79-h's privilege covers all who participate in the editorial process of generating a report.

Grifols stated in its amended and redacted complaint, Dkt. 50, that Yu and Gotham are in "a partnership [] formed with defendant Cyrus De Weck, " Cmpl., ¶ 13, and that all Defendants acted in concert. Together "Defendants published a [] report" on Grifols, ¶ 17, Defendants "modified their report on January 10," ¶ 21, and that allegedly harm will occur "if Defendants are not permanently enjoined from issuing additional reports…about Grifols." ¶ 50. In a redacted portion of the Complaint Grifols was ordered to strike but can be found at Dkt. 22, Grifols states "Defendants…authored, published and disseminated a [] report[.]" Dkt. 22, ¶ 52.

As Defendants stated in their initial disclosures, de Weck, Yu and their employees have been consistently identified as persons internal to the GIP/Gotham partnership who works together to identify over-valued companies, researching and analyzing public financial disclosures, and drafting the research reports published under the Gotham City Research header. *See e.g.* Ex. A to Dec. of David S. Korzenik, Def. Resp. to Pl. Initial Request for Production and Interrogs., June 26, 2024 (identifying "Defendants' internal personnel, employees and officers" in response to Request No. 1, as only persons who exchanged documents and communications prior to the publication of the Report, including those who analyzed, drafted or revised); de Weck Aff., at ¶ 12 ("Report was the culmination of months of research and analysis").

Since inception, the relationship between Yu, de Weck, and its internal employees has been working together with "the intent to disseminate the information to the public garnered from that relationship." *von Bulow v. von Bulow,* 811 F.2d 136, 145 (2d Cir.1987). The reporters

privilege applies to that internal newsgathering group, "such as who made calls and interviewed particular sources, techniques for the reporters' investigation, and the backgrounds of the coauthors and editorial staff." *Baker,* 669 F.3d at 109 (affirming holding that Shield Law applies to "unpublished details of the newsgathering process"). There is no waiver of § 79-h by working with an internal drafting, editing or research group that collaborates on a report with the intent to distribute, as Defendants did here. *See e.g. Anthony v. Haas*, 243 A.D.3d 1183 (N.Y. App. Div. 2025) (editor may invoke § 79-h "despite not authoring the article himself").

### B. Grifols did not voluntarily waive the reporter's privilege by complying with subpoenas from the SEC under legal penalties.

Defendants did not waive the reporters' privilege by complying with SEC subpoenas and document demands during a regulatory investigation. Under § 79-h(g), waiver only occurs if a person "voluntarily discloses or consents to disclosure of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided in this section." With no support, Grifols proposes that Gotham's production to the SEC was "*voluntary.*" Grf. Br., at 12-13. That is false. Any documents sought by Grifols that was produced to the SEC was the result of Defendants' compliance with subpoenas and document demands. *In re Steinhardt Partners, L.P.* and its progeny are inapplicable because in *Steinhardt,* "disclosure was voluntary" and there was no evidence that the "SEC coerced or required compliance in any way." *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 234 (2d Cir. 1993).

Significantly, in making its production to the SEC under subpoena, Gotham's lawyers retained privilege in explicit terms. In each production letter to the SEC, Gotham stated that "[t]he information and documents provided hereunder are being made available without prejudice to any privileges that the Related Entities may have," and "that confidential treatment be afforded to…each of the enclosed documents, and any additional materials produced…by the

Related Entities, or any of its employees, agents, and/or affiliates" under all reasons "permitted by law," including exemptions under the Freedom of Information Act shielding documents requests. Defendants made this explicit retention of their privileges in each and every production letter to the SEC. *See* Ex. B to Korzenik Decl., Feb. 1, 2024 SEC Cover Letter.

Second, Grifols requests a universe of documents *different* than that produced to the SEC, different in years, terms and subject matter.[5] The SEC subpoenas were addressed to securities issues such as market manipulation. This case is a libel case involving First Amendment issues, not a securities case. The Grifols demands and the SEC subpoena are *not congruent* demands.

Third, even if the SEC production were to be treated as not "confidential," despite being expressly made "confidential," Grifols must still meet the "particularized need" test to overcome the § 79-h privilege protecting non-confidential editorial materials. § 79-h(b). To meet the three-pronged particularized need test, Grifols must first know and identify what *particular* document it is looking for and then show how that *particular* document is *critical* to its case. Blanket assertions of relevance will not suffice. *See Schoolcraft*, 2014 WL 1621480, at *6. The particularized need test, a strict obstacle to disclosure, is designed to prevent Grifols from "sifting through" editorial materials to see if there might be something relevant to the case. *Id.*

### C. Defendants did not waive § 79-h in the course of efforts to gain court approval of a narrower discovery procedure, one that would not have required disclosure of editorial materials objected to here.

While "delay in assertion of a privilege may result in its forfeiture," Defendant did not delay asserting the Reporters privilege. *See Schiller v. City of New York,* 245 F.R.D. 112, 118 (S.D.N.Y. 2007) (no waiver of privilege despite non-assertion at initial discovery demands or

---

[5] Grifols cannot rely on this waiver argument for any document it seeks outside of the universe of documents produced to the SEC. Nor is it true that "Defendants produced tens of thousands of documents to the SEC months after this case was filed on January 26, 2024." Grf. Br., at 13. In fact, the Summons and Complaint was not properly served until April 5, 2024. The SEC subpoenas and demands were served Jan. 8, 2024 and Jan. 26, 2024. *See* Ex. B.

privilege log when there was no prolonged delay, no bad faith and no prejudice). The Gotham Defendants have raised this privilege since its first response to Grifols discovery demands on June 26, 2024. *See* Ex. A ("The production of editorial materials would be an imposition upon…the statutory and common law of New York (see, e.g., N.Y. Civ. Rights Law § 79-h)").

Gotham does not assert the Reporters Privilege regarding the only remaining actionable statement regarding the $ 95M loan. But Defendants' position as to broader discovery of the kind Grifols now seeks to compel remains as it always has been. Gotham has opposed, and continues to oppose, efforts to overcome § 79-h to those overreaching demands. Grifols cites Gotham's position that it would not assert the Reporters Privilege when the parties were contemplating a far narrower discovery procedure in which the demands would be tailored to the one alleged defamatory statement in this case. But discovery did not ultimately go forward on that narrower subject-matter scope. When that narrower path (part of a partial motion for summary judgment procedure) was not adopted by the Court, the parties were consigned to the discovery dispute that is now the subject of Grifols' Motion to Compel, and this Motion for Protective Order.

There are no grounds for finding forfeiture of the privilege here. *Schiller*, 245 F.R.D. at 118 (whether waiver of privilege is warranted depends on length of delay, willfulness of transgression, and harm to other parties). There was no delay in asserting this privilege once it was clear that the parties would not work out their differences on the scope of discovery. This posture is much like in *Sines*, where the parties were in contact regarding a subpoena, negotiated a narrowed scope, and then respondent asserted the privilege "less than a month after the revised response date." *See Sines*, 2020 WL 6058279, at *4.

Here, Grifols moved to compel on November 14, 2025 following a set of Meet & Confers and amended discovery which followed, ECF 84. Less than two weeks later on November 26,

2025, Gotham moved for a protective order under the reporter's privilege. ECF 92. No waiver

can result from Gotham's attempt to work out the dispute "during the parties' meet-and-confers,"

Grf. Br., at 2.  Nor was two weeks an improper delay after it became clear that the parties would

not work out their differences. *See Sines*, 2020 WL 6058279, at *4

      Further, there was no willfulness—Defendants genuinely worked with Grifols over

multiple hours-long meet and confers to work out their differences. *See id.* Despite that, such

talks were unfruitful and necessitated Defendants assertion of its privilege to Grifols'

overreaching demands. Finally, there is no harm—the parties are here now, briefing this

privilege's applicability before document production has begun in earnest. Grifols itself has

produced *no documents* to date. Gotham produced some limited discovery at the outset in

response to some limited discovery requests. There is no evidence of bad faith nor prejudice to

Grifols. None of the forfeiture factors are met.

## IV.   Fairness Doctrine is Not Implicated by Assertion of Privilege to Documents Not Used for Any Ruling in this Case.

      Grifols' "Fairness Doctrine" has no place in this dispute. It only applies to "selective

disclosure" of privileged statements that have been "placed at issue during the litigation." *In re*

*von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987). First, contrary to Grifols' misrepresentation, no

document has been used as a basis for any ruling in this case and Gotham has never relied on

them to "defend themselves." Grf. Br., at 15. Judge Liman dismissed Grifols' claims *as a matter*

*of law* on motion to dismiss, not based on any document. *See Grifols*, 2025 WL 1826611, at *9.

There has been no analogous use like those in the cases Grifols cites where the court found

documents were put at issue. *See Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Alcoa S.S.*

*Co.*, 232 F.R.D. 191, 199 (S.D.N.Y. 2005) (fairness dictated waiver when party "relied on those

documents in conducting depositions"). Grifols acknowledges that only one such document has

been referenced to the Court when it made note of the SEC's no action letter to show "good faith," not as evidence for its defense. Grf. Br., at 15. Gotham has never voluntarily disclosed its reporters' privilege material, nor produced, let alone relied upon, its editorial materials here. *See generally,* Ex. B, SEC Production Ltr.

Gotham has two entirely different bases for its opposition to Grifols' motion to compel: (1) Gotham has a reporter's privilege, which protects "all inquiries into the newsgathering process[.]" *Baker,* 669 F.3d at 109. And (2) Gotham's Rule 26(b) proportionality objections, that the bulk of Grifols' demands are disproportionate to the scope of this action—one remaining single claim after Judge Liman's ruling dismissing all but one alleged defamatory statement. Op. & Order, ECF 56, at 44 (finding Grifols "pled a defamation claim ***based solely*** on the statement regarding the Scranton Loan.") (emphasis added). All "editorial materials" that Grifols seeks are privileged. *See Baker,* 669 F.3d at 109. And the editorial material that Grifols seeks about dismissed claims, non-actionable speech, and unchallenged aspects of the Report are not only privileged but also radically disproportionate under Rule 26. *See* Def. Opp. Br., ECF 91, at 15.

The one claim left in this case concerns Grifols' disclosure of a related party $95M loan to Scranton and Gotham's prompt correction. Gotham committed to waiving its reporters' privilege as to the documents surrounding the loan statement. Def. Opp. Br., at 10. ("Grifols' discovery must be correlated to the one-sentence publication left in this case—the Loan Statement"). That is not a "curated, self-serving subset of information [that] suppress[es] the surrounding context," Grf. Br., at 14, that is ***the context of the only claim*** in this case. Grifols seeks to reach into the context of ***other statements***—admittedly non-actionable and unchallenged statements. That is improper.

None of this presents any fairness problem of the kind in cases Grifols cites because Gotham has already committed to producing the entirety of the Loan Statement documents to Grifols. Def. Opp. Br., at 4 ("Gotham committed to producing all evidence related to the plausible inferences permitted on a motion to dismiss to infer actual malice as to the Loan Statement"). This is consistent with the court's holding in *von Bulow*, where the fairness doctrine required sharing the entire contents of the conversations which were excerpted. *von Bulow II*, 828 F.2d at 101 ("disclosure of a portion of a privileged conversation entitles an adversary to discovery of the matters discussed in the remainder of the conversation"). Unlike *von Bulow*, Gotham is not using "privileged information as a sword in public, and then as a shield in the courtroom." *See id.* Gotham has never disclosed editorial material regarding non-actionable, protected speech, and will not.

There is no justification for broadening Gotham's waiver of its privilege to the Loan Statement to all other non-actionable and constitutionally protected editorial material. The court did not allow this in *von Bulow*, where it found a waiver as to information no longer confidential, but not "insofar as the district court broadened petitioner's waiver to include related conversations on the same subject[.]" *Id.* at 103. The court did not rule on this in *Schiller*, so its analytical value is nil. *See Schiller*, 245 F.R.D. at 120 ("unnecessary to develop the record further at this time in order to determine the applicability of the fairness doctrine since the privilege has, in any event, been overcome.").

## V.    Plaintiff Cannot Show Particularized Need nor Meet Three-Pronged Test Required to Overcome § 79-h's Qualified Privilege.

Grifols cannot and does not overcome the "stringent" qualified privilege "that imposes a 'very heavy burden' on any party seeking to overcome it." *See In re Am. Broad. Companies, Inc.*, 189 Misc.2d 805, 808 (N.Y. Sup. Ct. 2001).

First and foremost, Grifols demands "do not describe with any particular detail as to what documents [Grifols] seeks." *Schoolcraft v. City of New York*, No. 10 Civ. 6005, 2014 WL 1621480, at *6, (SDNY April 22, 2014) (quashing subpoenas on privilege grounds for requests seeking "any written account" of events). Broad demands lacking in the required *particularity* will not suffice. While they may be acceptable in non-reporters' privilege cases, they cannot overcome, and do not even begin to address, the burden that § 79-h places on such demands.

Grifols' demands, including those broadly seeking "all documents and communications concerning Grifols" between any person or entity (RFP 1-4), "any document" concerning Grifols/Scranton with a confidential source (RFP 12), "all drafts" concerning Grifols in general (RFP 21), and "all materials considered in preparing, drafting, revising, publishing, and disseminating" the Report (RFP 22), amongst others, are impermissibly "made without particularity and essentially seek widespread access to all of [Gotham's] files." *See Schoolcraft*, 2014 WL 1621480, at *6. This "wholesale exposure of press files to litigation scrutiny is an impermissible burden[.]" *Id*. Gotham's protective order should be granted on that basis alone.

Secondly, Grifols must prove *each* prong of the test under § 79-h(c) with a "clear and specific showing." *See Doe v. Cummings*, No. 91-346, 1994 WL 315640, at *1 (N.Y. Sup. Ct. Jan. 18, 1994) ("person seeking the disclosure must prove that the information sought satisfies each of the three prongs of the statutory test."). Even if Gotham is the only party holding its editorial material, Grifols still does not overcome the qualified privilege because it fails to show how editorial material surrounding *other statements* are highly material and relevant, and necessary and critical to its case. § 79-h(c).

Grifols cites no case where the court weakens New York's privilege based on identity of a party in the case. Instead, Grifols cites a case that shows when § 79-h requires information be

"highly material and relevant," courts are not shy to limit overreaching demands. *In re Nat. Gas Commodity Litig.*, 235 F.R.D. 199, 214 (S.D.N.Y. 2005) (quashing subpoena and placing "significant limitation" to only information on matters that "would be of most immediate impact"). Grifols other case, *Scott v. Cooper*, 227 A.D.2d 463, 463 (1996), merely re-states the legal standard. It offers no analytical support for Grifols' contention that it has actually met its § 79-h burden here.

### A. Grifols fails to prove that editorial material concerning unchallenged and non-actionable speech is highly material and relevant to actual malice of a different statement.

Grifols cites no cases to support its proposition that editorial material of (1) statements not challenged, and (2) statements not actionable as libel as a matter of law, could be "highly material and relevant" to proving another, different statement was made with knowledge it was false or reckless disregard for its falsity. Instead, it cites a Supreme Court case that rejected a finding of absolute constitutional privilege protecting questioning a reporter about interviewees sources of the allegedly defamatory broadcast. *Herbert v. Lando*, 441 U.S. 153, 169 (1979).

But *Herbert* does not bar application of a state privilege. *See Branzburg v. Hayes*, 408 U.S. 665, 707 (1972) ("merit in leaving state legislatures free, within First Amendment limits, to fashion their own standards."). *See also Too Much Media, LLC v. Hale*, 206 N.J. 209, 228, (Sup. Ct. N.J. 2011) ("no independent federal source governs this case. At issue is whether defendant can avail herself of a state statutory privilege not to identify her sources"). New York provides a qualified privilege for "unpublished resource material," a privilege which is triggered by Grifols' demands here. *See Pan Am Corp.*, 161 B.R. at 582 ("The journalist's privilege does not cover only that information which a journalist actually intends to publish. It extends to protect *unpublished* resource material as well.") (emphasis added).

20

Nor does *Herbert* support intrusion into the editorial process of unchallenged and constitutionally protected speech. *Herbert*, 441 U.S. at 172 (under federal privilege, discovery into editorial process only permissible "where there is a specific claim of injury arising from a publication that is alleged to have been knowingly or recklessly false."). Here, Grifols seeks to intrude into the editorial process of statements that are either constitutionally protected as a matter of law or unchallenged. It is obvious that there is no "specific claim of injury arising from the publication" of unchallenged statements or constitutionally protected, non-actionable speech, thus *Herbert* provides no cover for Grifols. *See id*.; *Grifols*, 2025 WL 1826611, at *9 ("Plaintiffs have adequately pled a defamation claim ***based solely*** on Defendants' statements regarding the Scranton Loan.") (emphasis added).

### B. Grifols' Actual Malice burden as to single actionable statement does not rise or fall with editorial material of other unchallenged and protected statements.

Grifols cannot overcome Gotham's 79-h privilege merely by showing that the editorial materials on dismissed claims and unchallenged claims are "probative" or relevant to actual malice. What Grifols must do and fails to do show is that these editorial materials are "of critical significance" and necessary to proving Defendants made the Loan Statement and its revision knowing they were false, i.e. with actual malice. *See United States v. Marcos*, 87 CR. 598, 1990 WL 74521, at *4 (S.D.N.Y. June 1, 1990) (finding "probative" circumstantial evidence was not "of critical significance" to proving case). The "critical or necessary" prong of § 79-h requires a showing that the plaintiff's case "virtually rises or falls with the admission or exclusion of the proffered evidence." *Krase v. Graco Children Prods*., 79 F.3d 346, 351(2d Cir. 1996) (citing cases). "The test is not merely that the material be helpful or probative, but whether or not the defense of the action may be presented without it." *Doe*, 1994 WL 315640, at *1. That showing

cannot be made generally, but must be made as to a *particular* identified document. That is what the "particularized need test" requires. It is a difficult test to meet, but it is supposed to be so.

Grifols makes no showing that its claim that Gotham made the Loan Statement with knowledge of its falsity or reckless disregard "virtually rises or falls" on the admission of circumstantial evidence *of other statements*, especially those that are non-actionable speech, dismissed claims, or unchallenged statements. *See Krase*, 79 F.3d at 351. Grifols cites <u>no cases</u> to stand for the proposition that it is impossible to argue actual malice to one statement without editorial material, internal conversations and source communications *about entirely different statements* not challenged and not actionable. It requires a sizeable leap to find Grifols' case rises or falls on the admission or exclusion on evidence about *other non-actionable speech and statements not complained about.*

The cases Grifols does cite analyze the evidence specific to *the complained-of statement*, specifically those where a reporter relied completely on a confidential source as defense of actual malice. *See Sharon v. Time, Inc.*, 599 F. Supp. 538, 583 (S.D.N.Y. 1984) (in case where reporter relied solely on confidential source, plaintiff must be able to probe whether reporter had source for information and adequate basis for reliability, but reporter need not identify source nor even be required to answer those questions under § 79-h); *Collins v. Troy Pub. Co. Inc.,* 213 A.D.2d 879, 881 (3rd Dep't 1995) (precluded newspaper from using evidence of complete reliance on confidential source to establish lack of malice as sword and shield issue). These cases are unpersuasive because they do not analyze the critical or necessary nature of evidence regarding *other unchallenged and non-actionable statements*. They are tied directly to the challenged statement. Further, they concern cases where the reporter relied solely on a confidential source to defend from actual malice, which is not the case here. Gotham has always represented that it

relied upon public financial disclosures when making the Loan Statement and did not have any confidential sources for it. Def. Opp. Br. in MTC, ECF 91, at 19 ("one claim remaining, a single, discrete sentence about financial disclosure that relied on public documents.").

Grifols cites other case where a court compelled production of "motive, animus, and preconceived narratives" documents under Rule 26. But § 79-h's "necessary and critical" is a much more stringent burden than Rule 26 relevance.[6] *See Amin v. NBCUniversal Media, LLC,* No. 5:21-CV-56, 2023 WL 8238975, at *8 (S.D. Ga. Nov. 28, 2023) (compelling production under Rule 26 of communications that "would certainly bear on Plaintiff's claims in this action"); *Saroya v. CAIR Found., Inc.,* 348 F.R.D. 632, 641 (D. Minn. 2024) (permitting discovery under Rule 26 into "any matter that bears on" knowledge of truth); *Blankenship v. Fox News Network, LLC,* No. 2:19-CV-00236, 2021 WL 3706683, at *8 (S.D.W. Va. Aug. 20, 2021) (affirming discovery under Rule 26 of communications that "may be useful" or "might shed light on" knowledge). A document "bearing on" or being "useful" to a plaintiff's claim is light years away from Grifols' burden that its case "virtually rises or falls with the admission," and "defense of the action cannot be presented without it." *See Krase*, 79 F.3d at 351; *Doe*, 1994 WL 315640, *1. Even in the Rule 26 cases, there is a nexus between the materials sought and the contested statements at issue. There is no such nexus here.

Furthermore, courts are cautiously reluctant to place too much reliance on circumstantial evidence of "motive, animus, and preconceived narratives," Grf. Br., at 18, to show defendant's state of mind. *See e.g. Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657,

---

[6] For that reason, Grifols' "thorough briefing" supporting its Motion to Compel under Rule 26 has no place here. Its reference to that filing in its footnote 10 should be disregarded. That is not to mention the tandem proportionality burden that Grifols also fails to meet on its document demands under Rule 26(b)(1). *See generally* Def. Opp. Br. MTC, ECF 91.

668 (1989) ("courts must be careful not to place too much reliance on" circumstantial evidence to show state of mind)). Now Grifols seeks to stretch this already thin evidentiary basis *further* by arguing for the necessity of circumstantial evidence *of other non-actionable and unchallenged statements.* Sec. 79-h does not allow this unnecessary and uncritical intrusion into the editorial process of protected speech.

## VI.    Gotham's Reporters Privilege Would Be Violated by Grifols' Request that Each Communication of Internal Editorial Material Be Identified.

Grifols completely misunderstands the privilege in its request that Gotham "identify" documents to which it asserts the reporter's privilege to. Grf. Br., at 22. It is *Grifols* that must identify what it seeks with particularity. *Trump*, 403 N.J. Super. at 300 ("a qualified privilege to nonconfidential news that can be overcome only by a '***clear and specific' showing***") (emphasis added); *Schoolcraft*, 2014 WL 1621480, at *5 (denying "requests [that] do not describe[] with any particular detail as to what documents the City seeks").

It is not Gotham's role to identify its internal editorial material by date, subject-matter or otherwise. That is precisely the information that is protected by the privilege. To provide such a list would permit an inquiring party to inappropriately "sift through press files in search of information supporting their claims," *Gonzales*, 194 F.3d at 35, or anything of possible interest to them. Grifols has admitted that it is seeking to re-open claims into these non-actionable statements dismissed as a matter of law. Grf. Mot. to Compel, Mem. of Law, at fn 1, ECF 85 ("The Court granted Defendants' motion to dismiss other challenged statements…Grifols anticipates that discovery will show that Defendants strategically slathered their report with opinion buzzwords to try to avoid liability.") Grifols' suggestion that indications of opinion, if proven to be "slathered," can then be removed from the Report for purposes of the Court's ruling is nonsense.

In this case, Grifols' document requests by their own terms constitute demands for protected newsgathering material. *See* Grf. Second Omnibus RfP, ECF 86-1 at 7-9 ("[a]ll documents and communications exchanged between any two or more Defendants concerning Grifols" (RFP 2); "all documents and communications exchanged between Defendant" and third-party source (RFP 12); "all drafts of any publication concerning Grifols" (RFP 21); "all materials considered in preparing, drafting, revising, publishing, and disseminating" the Report and revision (RFP 22). Hence, the *demands themselves* provide the foundation for the assertion of the Reporter's Privilege.

Grifols misstates not only the facts but also the findings of *NovaGold*. In *NovaGold*, the magistrate judge ***denied*** the plaintiff's requests that defendant reporters make a privilege log, as the NovaGold's demands as written "map[ped] directly onto what is covered by the privilege," and logging the documents would reveal the exact information that was privileged. *Novagold Res., Inc. v. JCap Rsch. USA LLC*, No. 1:20-CV-02875, ECF 70, Tra. 8/11/21 Oral Arg., at 55: 11-18 ("the document request #15, which is editorial. And I've already stated my view that it is completely covered by reporter's privilege because it's editorial. **So to go into details as to what the editorial process is would not be necessary** because … the question itself maps directly onto what is covered by the privilege."); 1/19/22 Order ("Plaintiff's request for a **privilege log is denied**.") (emphasis added).

So too here—Grifols' demands seeking all documents exchanged between Defendants regarding Grifols, all documents exchanged with a third-party source, all drafts of the publication, all materials considered in preparing the report, considered in drafting the report, considered in publishing the report and considered in disseminating the report *are editorial*. To

go into "what the editorial process would be is not necessary" because Grifols' demands "map directly onto what is covered by the privilege." *Id.,* 8/11/21 Oral Arg., at 55: 11-18.

The opinion Grifols' cites shows that the magistrate judge found defendant reporters *did* sufficiently describe the protected material and did not require a privilege log to do so. *Novagold Res., Inc. v. JCap Rsch. USA LLC*, No. 1:20-CV-02875-LDH-PK, 2024 WL 4250265, at *3 (E.D.N.Y. Mar. 29, 2024) ("JCap has now provided **a description of the information** that it appears to be withholding…which enables NovaGold and the Court to assess JCap's claim of privilege.") (emphasis added). Gotham has provided a description of what it seeks to protect, summarized succinctly by Grifols in a bulleted list. Grf. Br., at 16. This "description of the information," *NovaGold*, 2024 WL 4250265, at *3, along with Grifols' own demands, clearly have enabled Grifols to "assess [Gotham's] claim of privilege." *See id.*

Significantly, a log would entail the disclosure of information about editorial material and reporting that the privilege is precisely designed to protect. This too the magistrate judge in *NovaGold* ruled—a reporter does not need to tell an adversary what communications it has, or even *if they exist at all. Id.*, 8/11/21 Oral Arg., at 59: 1- 4 ("[E]ven if there were such communication, I don't know that they need to tell you that they exist.").

In all events, Grifols' demands are also so expansive and lacking in reasonable specificity that no log could be reasonably prepared to address them. It is abusive to frame demands so expansively as "all documents and communications concerning Grifols," RFP 1, and then demand a log. Not only would a log be a violation of privilege, but the demands are framed such that preparation of a would be log unreasonably costly, time consuming and wasteful.

As a last-ditch effort, Grifols prematurely asks for *in camera* review to test Gotham's privilege assertions. Grf. Br., at 24. Before Grifols can even ask for any *in camera* review, it

must "make [a] particularized showing" of what it needs, *Trump*, 403 N.J. Super. at 301, not just "all documents and communications." Otherwise, is it not clear what that review would be comprised of. *See Nat'l Broad. Co. v. People*, 238 A.D.2d 618, 619 (App. Div. 2nd Dep't 1997) (ordering in camera review *after* § 79-h(c) clear and specific showing has been made to determine *whether any portions of footage did not meet three prongs*).

The cases Grifols cites for in camera review contained significantly more particularized demands and less intrusive reviews. *See e.g. Compuware Corp.*, 2004 WL 2186325, at *1 (in camera review for three categories containing less than 100 documents); *Torah*, 2001 WL 1425381, at *5 (in camera review of two demanded documents); *United States v. Sanusi*, 813 F. Supp. 149, 151 (E.D.N.Y. 1992) (defendant consented to in camera review of single video tape). Defendants have delineated five clear categories to which it invokes the privilege to, which Grifols understands clearly in its bulleted list. Grf. Br., at 16. This is far from the "fail[ure] to articulate a basis on which the Court might assess the nexus between the documents withheld and the protections invoked" which led the Court in *Fowler* to order in camera review. *See Fowler*, 2022 WL 3211638, at *3. Grifols request for "wholesale exposure of press files" to the Court with no particularity almost certainly would violate the privilege as well. *See Gonzales*, 194 F.3d at 35 (inappropriate to allow "sift[ing] through press files").

## <u>CONCLUSION</u>

For the reasons stated, Defendants respectfully request the Court find the Reporter's Privilege applicable to Defendants, that it has not been waived, and that Grifols has failed to make its clear and specific showing under § 79-h(c) to overcome the qualified privilege to the categories of documents Defendants describe:

1.  All communications, drafts and editorial materials concerning statements in the Report that the Court dismissed as non-actionable, and therefore, constitutionally protected;

27

2. All such editorial materials concerning statements in the Report that Grifols did not challenge;

3. All confidential source communications relating to the unchallenged, dismissed or unpublished materials of the Report;

4. All non-confidential third-party communications not tied to the one surviving claim; and

5. All documents pertaining to Grifols or Scranton generally in a broad and unparticularized fashion.

Respectfully Submitted,

By: //s// *David S. Korzenik*

Miller Korzenik Rayman LLP
David S. Korzenik
Gillian Vernick
1501 Broadway, Suite 2015
New York, NY 10036
212-752-9200

*Attorneys for Defendants*

28