# MILLER KORZENIK RAYMAN LLP

THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

March 13, 2026

**VIA ECF**
Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court for the Southern District of New York
500 Pearl St.
New York, NY 10007-1312

      Re: *Grifols, S.A. v. Yu, et al.*, No. 1:24-cv-00576-LJL-GWG; Ltr re N.Y. CRL § 79-h
          Supplemental Submission Pursuant to Minute Order of March 4, 2026.

Dear Judge Gorenstein,

      We submit this letter on behalf of defendants Daniel Yu, Gotham City Research LLC ("Gotham"), General Industrial Partners LLP ("GIP") and Cyrus De Weck ("Defendants"). We do so in compliance with Your Honor's minute order of March 4 directing submission of a supplemental letter and sworn statements regarding the pending motions.

Accompanying this letter are three declarations:

1. The declaration of *Cyrus de Weck* setting forth the two-part foundation for the assertion of Reporters' Privilege under N.Y. Civil Rights Law § 79-h. Mr. de Weck's declaration also describes the categories of documents for which we seek protection and those that we do not seek to protect in its Section III.

2. The declaration of *Daniel Yu* similarly setting forth the facts and circumstances pertaining to the assertion of the Reporters' Privilege.

3. The declaration of *Michael Asaro*, outside counsel to Defendants who oversaw contacts with the SEC and regulators on behalf of Defendants. His declaration speaks to what matrials were provided to the SEC *voluntarily* and those that were submitted to the SEC regulators *involuntarily and pursuant to subpoenas*.

      The prior declaration of David S. Korzenik dated November 26, 2025 (ECF 93) is superceeded by these, except as to the *procedural history* of the pending motions at ¶¶ 3-13.

**I.**      **Defendants Independently Write and Publish Financial "News" Analyzing Publicly Traded Companies for Their "Livelihood," as Required for Protection Under §79-h.**

      New York's Reporters' Privilege is established upon a two-part foundation: The protected parties must be "professional journalists" as defined by § 79-h(a)(6) and their reporting must be "news" as defined by § 79-h(a)(8).

Once the foundation for the privilege has been laid, then the burden shifts to the party seeking to overcome the privilege. They must meet the demanding "particularized need test" to get disclosure of non-confidential material. As for confidential materials, the protection is *absolute.* No showing can overcome it.

Under § 79-h(a)(6), a "professional journalist" is anyone "who, for gain or livelihood, is engaged in…writing…news intended for a…professional medium…which has as one of its regular functions the processing and researching of news intended for dissemination to the public." *See* N.Y. Civ. Rights Law § 79-h(a)(6). A journalist is "someone performing said function either as a regular employee or as one otherwise professionally affiliated for gain or livelihood with such medium of communication." *Id*.

"News" is defined as "written, oral, pictorial, photographic, or electronically recorded information or communication concerning local, national or worldwide events or other matters of public concern or public interst or affecting the public welfare." *Id*., § 79-h(a)(8).

The Reporters' Privilege provides the following protections:

A journalist disseminating news is **absolutely** protected from coerced disclosure of **confidential** news or sources, defined as "any news obtained or received in confidence or the identity of the source of such news coming into such person's possession in the course of gathering or obtaining news for publication[.]" § 79-h(8)(b).

A journalist diseeminating news is **qualifiedly** protected from coerced disclosure of unpublished **non-confidential newsgathering materials or sources**, defined as "any unpublished news obtained or prepared…in the course of gathering or obtaining news…or the course of any such news, where such news was not obtained or received in confidence" § 79-h(8)(c).

This qualified privilege is not overcome "unless the party seeking such news has made a "clear and specific showing" that the news: (i) is "highly material and relevant;" (ii) is "critical" or necessary to the maintenance of a party's claim, defense or proof of an issue material thereto; and (iii) is not obtainable from any alternative source." *Id*. Under this stringent showing, "[a] court shall order disclosure only of such portion, or portions, of the news sought as to which the above-described showing has been made and shall support such order with clear and specific findings made after a hearing." *Id*. Information is not "critical" unless the case rises or falls on such disclosure. *See generally* Def. Mem. of Law, ECF 92; Reply Mem., ECF 109.

The Declarations of Cyrus de Weck and Dan Yu set forth the foundation of the privilege that they assert. They provide the facts that demonstrate how Defendants are "journalists" "disseminating news" under the Shield Law. *See generally* Declaration of Cyrus de Weck ("de Weck Decl."); Declaration of Daniel Yu ("Yu Decl.").

They are both people who, "for gain or livelihood," are "engaged in writing news intended for a professional medium which has one of its regular functions the processing and reserching of news intended for dissemination to the public." *See* § 79-h(a)(6). Both de Weck

2

and Yu are either regular employees, or professionally affiliated for gain or livelihood in the partnership between GIP and Gotham to identify, write, research and publish on publicly traded companies. *See* De Weck Decl., ¶¶ 8-28; Yu Decl., ¶¶ 2-10.

Defendants publish "news." De Weck Decl., ¶¶ 11-12, 29-32; Yu Decl., ¶¶ 2-10. Their reports, as Judge Liman found, "perform a useful function by bringing information that securities are overvalued to the market." ECF 48, at 23. Defendants' Report, "through the percolation of ideas and opinions, both positive and negative," permit the market to "accurately value a security." *Id*. This is "news"—written information concerning matters of public concern, public interest and affecting the public welfare, certainly the welfare of the investing public. *See* § 79-h(a)(8).

Defendants are reporters under § 79-h, and are protected by the confidential and non-confidential privileges of their news, sources, editorial process and newsgathering material.

Section 79-h does not speak of any foundational requirement that "professional journalists" demonstrate independence. Some courts have found that when a publication is commissioned and paid for *by the subject of the article or report*, then it is promotional advertising and is not covered by the privilege.[1] *In re Fitch, Inc*., 330 F.3d 104, 110 (2d Cir. 2003). *Fitch* has no application here because Defendants' reporting is not commissioned.

## II. There is no Waiver Because the Vast Majority of the SEC Production was not "Voluntarily Disclosed" Within Meaning of § 79-h(g).

Under § 79-h(g), waiver only occurs if a reporter "voluntarily discloses or consents to disclosure of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided in this section." Defendants production to the SEC was largely not voluntary; it was in response to document demands and subpoenas issued in an investigation that Grifols instigated. *See* Declaration of Michael Asaro ("Asaro Decl."), ¶¶ 3-6, Exs. A-C.

It is self-evident that "documents produced pursuant to a subpoena are not voluntarily disclosed." *Spears v. First Am. eAppraiseIT*, 75 F. Supp. 3d 208, 212 (D.D.C. 2014) (denying waiver of privilege as to documents provided to Senate subcommittee that were provided pursuant to a subpoena). *See generally Fisher v. United States*, 425 U.S. 391, 409 (1976) ("A subpoena … requiring him to produce [] workpapers in his possession without doubt involves substantial compulsion.").

Defendants production to the SEC was compelled by document demands and subpoenas and therefore, was "not voluntarily disclosed." *See e.g. Spears*, 75 F. Supp. at 212. The Asaro Declaration sets out in detail the facts supporting which document productions to the SEC were voluntary, and which were compelled. *See* Asaro Decl., ¶¶ 3-12. The subpoenas and document demands directed at Gotham were not voluntary; they were issued to Gotham as the subject of an on-going investigation from the SEC Division of Enforcement. Asaro Decl., ¶ 3, Ex. A.

---

[1] Where the subject has undue control over the article or report, then in such unusual circumstances as in *Chevron Corp. v. Berlinger*, 629 F.3d 297, 307 (2d Cir. 2011), the Second Circuit found the privilege may not apply.

For its part, GIP, as a regulated entity, has an obligation to comply with document demands without a subpoena. Asaro Decl., ¶¶ 4-5, Ex. C. There is no doubt that response to the SEC's demands "involved substantial compulsion," *Fisher*, 425 U.S. at 409, and in no way could be construed as voluntary. The Asaro Declaration sets out which documents given to the SEC were voluntarily provided and why. *See* Asaro Decl., ¶¶ 7-10, Ex. D.

Defendants are dissimilar to *Steinhardt*, where the Second Circuit analyzed if voluntary disclosure to the SEC of attorney memorandum waived attorney work product privilege. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 232 (2d Cir. 1993). In *Steinhardt*, the SEC had not brought enforcement action against Steinhardt but merely "asked Steinhardt's counsel to submit memorandum that would address the facts and issues involved in the case, and discuss relevant legal theories." *Id*. Steinhardt voluntarily disclosed this memorandum to the SEC, and there was no evidence the "SEC coerced or required compliance in any way." *Id*., at 234. This stands in contrast to the compulsion under which Defendants made their productions to the SEC. Asaro Decl., ¶¶ 3-5, Exs. A-C.

That is not to mention all the other ways in which *In re Steinhardt* is not analogous. First, it analyzed a voluntary disclosure of attorney work-product, not the Reporters' Privilege, where "additional considerations come into play because of the strong public interest in safeguarding a viable free press." *Brown & Williamson Tobacco Corp. v. Wigand*, No. 101678/96, 1996 WL 350827, at *3 (N.Y. Sup. Ct. Feb. 28, 1996). These privileges are not one to one. Finding waiver of Reporter's Privilege information requires more than waiver in a work product context. Those who seek to get around the Reporters' Privilege frequently, as here, try to treat it as similar to the attorney/client or work product privilege. They are very different in many respects. For example, an attorney/client privilege log would itself constitute a violation of the Reporters' Privilege.

For work-product waiver, "voluntary disclosure of work product to an adversary waives the privilege as to other parties." *Steinhardt*, 9 F.3d at 235. In the Reporters Privilege context, courts analyze disclosure narrowly, requiring actual *publication* of the information to find voluntary disclosure for waiver. *See People v. Wolf*, 69 Misc. 2d 256, 261, 329 N.Y.S.2d 291, 297 (Sup. Ct.), aff'd, 39 A.D.2d 864, 333 N.Y.S.2d 299 (1972) ("**Publication of the article** constituted a voluntary disclosure."); *Brown*, 1996 WL 350827, at *6 ("CBS waived its protection **only to what was published** by that newspaper"). Finding waiver of Defendants' reporters privilege due to compelled production under subpoenas and document demands makes no sense because that information was never published publicly by the SEC. Defendants' private internal deliberations, drafts, edits and conversations remain private. The "common sense" that counseled waiver in *Steinhardt* refects does not call for the same here.

Further, the cost/benefit exchange in voluntary cooperation that *Steinhardt* found weighed in favor of waiver is not present here. *Steinhardt*, 9 F.3d at 236. Defendants were not "incentivize[d]" to share with the SEC. *See id*. They produced documents in response to subpoenas and document demands *triggered by Plaintiff's complaints*. *See* Asaro Decl., ¶¶3-6.

Finally, finding waiver here is an outcome to be rejected "as a policy matter[.]" *Byrnes v. IDS Realty Tr.*, 85 F.R.D. 679, 688 (S.D.N.Y. 1980) (no waiver based on voluntary disclosure to SEC). *See also In re Grand Jury Subpoena Dated July 13, 1979*, 478 F. Supp. 368, 373 (E.D.

4

Wis. 1979) (no waiver based on voluntary cooperation with SEC as "such cooperation should be encouraged"). Permitting waiver in this enviornment enables a public company like Grifols to essentially weaponize the SEC, or any government regulator, as a privilege-breaking arm, knowing that the regulator will likely in due diligence reasonably seek documents. With that knowledge, the complaining company can then handicap its victim by claiming waiver, as Grifols does here. "To hold otherwise would have the effect of thwarting" righteous actors like Defendants from full cooperation with regulators. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1977) (no waiver of attorney-client privilege of material surrended to SEC in non-public investigation).

### III. Rule 26 Balancing Requires Granting Protective Order as to Demands Seeking to Probe Constituiontally Protected and Unchalleneged Speech.

Even if waiver were found, the Court should deny Grifols' demands seeking unpublished, unchallenged and constitutional protected newsgathering and source material that has a "distinctly social value" as opposed to Grifols' "purey private interests." *See Baez v. JetBlue Airways*, No. 09 CV 596 ENV RML, 2012 WL 5471229, at *2 (E.D.N.Y. Nov. 9, 2012).

Under Rule 26(c), the Court may, "for good cause, issue an order to protect a party or person from ... undue burden or expense." F.R.C.P. 26(c)(1)(C). Under this analysis, "a court is required to compare the potential hardship to the party against whom discovery is sought, if discovery is granted, with that to the party seeking discovery if it is denied." *Solarex Corp. v. Arco Solar, Inc.,* 121 F.R.D. 163, 169 (E.D.N.Y. 1988). "In balancing conflicting interests, 'courts are admonished not only to consider the nature and magnitude of the competing hardships, **but also to 'give more weight to interests that have a distinctively social value than to purely private interests.'**" *Baez*, 2012 WL 5471229, at *2 (emphasis added) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 726 F.2d 1150, 1159 (7th Cir.1984)).

There is no question that upholding protection of Defendants' Reporters Privilege outweighs Grifols' private interest in this case. Judge Liman has already recognized the "useful function" that Defendants' perform for the public square in bringing ideas to the market. ECF 56, at 23. When "obvious First Amenedment concerns [are] at play," those outweigh Grifols' "purely private interest" in pumping up its stock price. *See Baez*, 2012 WL 5471229, at *2 (protecting reporters' information under Rule 26(c) despite finding waiver). Grifols has no interest of "critical importance" to vindicate a constitutional protection or state interest in its case. *See Brown*, 1996 WL 350827, at *5. Grifols' stock promoting SLAPP action "does not rise to that level." *See id*. Gotham's unpublished materials that have no bearing on any remaining actionable claim in this case cannot possibly rise to that level.

For the reasons put forth, Defendants ask the Court for an order granting its motion for protective order on the basis that the Reporters Privilege applies and has not been overcome.

Respectfully,

David S. Korzenik
*Attorney for Defendants*

5