Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

March 20, 2026

Peter D. Doyle
Member of the Firm
d +1.212.969.3688
f 212.969.2900
pdoyle@proskauer.com
www.proskauer.com

**Via ECF**
Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court for the Southern District of New York

Re: *Grifols, S.A. v. Yu, et al.*, No. 1:24-cv-00576-LJL-GWG

Dear Judge Gorenstein,

Grifols, S.A. ("Grifols") respectfully submits this response to Defendants' supplemental submission in support of their cross-motion for a protective order under N.Y. Civ. Rights Law § 79-h. As explained below, Defendants' motion should be denied in its entirety.[1]

## I.      Defendants Fail to Meet Their Burden Under § 79-h.

Defendants' supplemental declarations fail to establish that any of them qualifies for protection under § 79-h. The only purported "fact" Yu and de Weck offer is that they "together" researched and published the Gotham Report. That conclusory claim fails to establish that any defendant meets each of the elements under § 79-h. And if the Court finds that even one defendant is not entitled to claim privilege under § 79-h, any privilege that another defendant might otherwise claim is waived given Defendants admitted to commingling documents.

### A.  Yu is not a Professional Journalist and Gotham is Not a Professional News Medium.

Yu has failed to show that Gotham has "as one of its regular functions the processing and researching of news intended for dissemination to the public." § 79-h(6). The only relevant fact Yu's declaration offers—that he publishes reports about public companies through Gotham as part of his "short-minded investing" strategy (ECF 121 ¶¶ 5, 7)—is precisely the type of activity the Second Circuit has found insufficient to confer journalist status under the Shield Law. A financial reporting entity does not qualify under § 79-h when it "covers" companies only in connection with its own financial interests, "[u]nlike a business newspaper or magazine, which would cover any transactions deemed newsworthy." *In re Fitch, Inc.*, 330 F.3d 104, 109–10 (2d Cir. 2003). The same reasoning led the court in *Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.* to conclude that Yu and Gotham are not journalists because they publish only when they have taken a financial position against the target company. 2016 WL 3162218, at *3 (N.D. Cal. June 7, 2016). Yu's declaration here is also far more barebones than the one he submitted in *Beaver County* (*see* ECF 106-8)—yet even that fuller record failed to establish entitlement to the federal journalist's privilege, which is broader than New York's Shield Law with respect to who *qualifies* as a

---

[1] As this Court is aware, there is an ongoing criminal investigation concerning Defendants in Spain. Mr. Yu appeared before the Spanish court on February 26, 2026, and Mr. de Weck appeared on March 5, 2026, where they were questioned by the Spanish judge and prosecutor. Earlier today, Spanish counsel representing Grifols as the victim in the proceeding publicly filed a letter to the Spanish court stating that Defendants' statements in Spain contradict sworn affidavits they have proffered to this Court concerning their supposed status as journalists. We understand that the Spanish court will now decide whether the transcripts from Spain may be released to this Court. If permitted, Grifols will promptly submit the relevant material for Your Honor to consider in connection with the pending motion.

**Proskauer**

March 20, 2026
Page 2

journalist. *See Blum v. Schlegel*, 150 F.R.D. 42, 44 (W.D.N.Y. 1993) (when it comes to who qualifies for the Reporter's Privilege, "the federal privilege appears broader than the protection of the [New York] Shield Law"); *Persky v. Yeshiva Univ.*, 2002 WL 31769704, at *2 n.1 (S.D.N.Y. Dec. 10, 2002) ("The definition of 'journalist' is narrower for purposes of the New York Shield Law than the definition of 'journalist' for purposes of federal privileges." (cleaned up)).

In addition, § 79-h only protects those engaged in gathering and disseminating news "for gain or livelihood" on behalf of a "professional [news] medium." New York courts deny § 79-h protection where a publication lacks the "paid circulation" required by the statute. *Mueller v. Aris*, 2021 N.Y. Misc. LEXIS 70542, at *15–16 (Sup. Ct. June 2, 2021). Yu does not claim Gotham earns revenue when readers consume its content or subscribe to its reporting. Nor does he show, as the statute requires (*see id.* at *16), that he was paid by Gotham to research and publish the report about Grifols. That is because Gotham and Yu earn no revenue from publication itself. Instead, Yu indirectly benefits from his short reports by causing the market to move in GIP's favor. This arrangement "is at odds with the purpose of promoting journalistic independence and integrity furthered by the reporter's privilege." *Novagold Res., Inc. v. J Cap. Rsch. USA LLC*, No. 25-cv-00850, ECF 27 at 2–3 (W.D. Tex. Aug. 12, 2025), *aff'd*, 2025 WL 3218923 (W.D. Tex. Nov. 13, 2025) (interpreting the New York Shield Law and finding it did not apply to communications with short report's funder). Thus, Yu has failed to prove that he is employed by or professionally affiliated with a protected medium of communication for gain or livelihood, and he does not meet the definition of a "professional journalist" in § 79-h(6).

**B. De Weck is Not a Professional Journalist and GIP is not a Professional News Medium.**

Likewise, de Weck fails to show that he qualifies as a "professional journalist" under § 79-h(6). In his original declaration, de Weck described his work as "investment management," with his role at GIP as part of his "financial career." ECF 28-1 ¶¶ 5–6. This tracks what he has told the UK's Financial Conduct Authority ("FCA"). *See* William T. Walsh, Jr. Declaration, Ex. A. In de Weck's new declaration, he doubles down, describing himself as a "portfolio manager." ECF 120 ¶ 3. Those are the functions he identifies under oath—not journalism. In other words, his involvement in the Gotham Report was for the purpose of manipulating the market to benefit his and GIP's investment position, not to prepare or disseminate news.

Further, de Weck cannot show he works for a protected medium of communication, as the statute requires. As discussed below, GIP is not a professional news medium. And even if the Court were to treat Gotham as a professional news medium (it is not, *see supra*), Defendants have represented that Yu is Gotham's only employee. Walsh Dec. Ex. B (Nov. 14, 2025 email from G. Vernick to W. Walsh). To the extent that de Weck is claiming he *individually* assisted Yu or Gotham to prepare the Gotham Report, he has failed to show that he did so in the capacity of someone who is a "regular employee" of or is "otherwise professionally affiliated for gain or livelihood" with a professional medium of communication. § 79-h(6).

Notably, the Gotham Report itself states it was "produced" by Gotham and nowhere identifies GIP as an author or publisher. ECF 115-1 at 2. There is an obvious reason for this. GIP



March 20, 2026
Page 3

is a regulated investment adviser, so if it had been listed as an author, this would trigger requirements for such advisers to disclose the speakers' identity and their financial interests under generally applicable antifraud principles. *See* Section 10(b) of the Exchange Act and Rule 10b-5, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; Regulation (EU) No. 596/2014, art. 20, 2014 O.J. (L 173) 1; Commission Delegated Regulation (EU) 2016/958, arts. 2–6, 2016 O.J. (L 160) 15.[2] Having disclaimed GIP's involvement in preparing or publishing the Gotham Report to avoid regulatory scrutiny, Defendants cannot now backtrack and claim the opposite to avoid discovery.[3]

Moreover, neither Yu nor de Weck even tries to show that GIP itself is a "professional journalist" or "professional medium" under § 79-h. That is because GIP has repeatedly disclaimed either role, including in its sworn SEC filings and FCA filings, and by operating as a registered investment adviser under the Investment Advisers Act of 1940 and under UK law.

For example, in its June 2025 Form ADV filed with the SEC ***under penalty of perjury***, GIP represented that the only advisory services it provides are "portfolio management for pooled investment vehicles." Walsh Dec. Ex. C at 8 (Item 5.G). When asked, it specifically did not identify "publication of periodicals or newsletters" as a service it provides, despite that being an available category. *Id*. Its Form ADV further states that GIP is not "actively engaged in any other business" beyond those disclosed investment-advisory activities. *Id*. at 12 (Item 6). As for compensation, the Form ADV identifies "Performance-based fees" as GIP's sole form of revenue and did not select "Subscription fees (for a newsletter or periodical)" as a revenue source. *Id*. at 8 (Item 5(E)). And GIP's brochure that was appended to the Form ADV is even more direct: "The purpose of [GIP] is to seek to generate good returns for investors by investing its assets in a globally focused short bias strategy." Walsh Dec. Ex. D at 4. It explains that GIP is compensated solely through management and performance-based fees tied to investment returns—not through publishing. *Id*. at 5. In short, GIP told the SEC it is an investment manager, not a news organization, and that it earns revenue from investment activity, not from publishing news.

Similarly, GIP's filings with the FCA reflect that it is authorized *only* for investment-related activity. Walsh Dec. Ex. E at 5 ("The firm is only permitted to carry on the activities specified in FUND 1.4.3R (1) to (6) or any successor provision"); *id.* at 7–12 (listing GIP's "Activities" and "Other Activities" as involving investment-related activity and failing to mention anything relating to journalism or publishing news). And de Weck's roles are limited to

---

[2]  *See*, *e.g.*, Complaint, *SEC v. Left*, No. 2:24-cv-06311 (C.D. Cal. July 26, 2024), https://www.sec.gov/files/litigation/complaints/2024/comp-pr2024-89.pdf, ¶¶ 83–85, 223–24 (alleging that public reports or statements about a security can be misleading under the antifraud provisions if they omit material information about the speaker's financial interests or trading intentions).

[3] The Spanish Comisión Nacional del Mercado de Valores ("CNMV") raised this issue and asked Gotham to explain why the Gotham Report was not an investment recommendation subject to the EU Market Abuse Regulation and Commission Delegated Regulation 2016/958 ("EU rules"). ECF 123-4 at 6 (Question No. 12). Defendants provided the Court with the CNMV's question but not Gotham's answer. Gotham might have responded that it is not a regulated investment adviser, so it is not subject to the EU rules. But GIP is subject to the EU rules, so if it authored the Gotham Report—which is not what the report says—it needed to disclose its conflict of interest and failed to do so, thereby violating EU law.



March 20, 2026
Page 4

management and client dealing, with no mention of anything approaching § 79-h(6)'s "gathering, preparing, collecting, writing, editing, filming, taping or photographing of news." *See id.* at 13; *see also* Walsh Dec. Ex. A (FCA registration for de Weck). GIP's FCA registration also identifies two other currently registered individuals—both listed in Defendants' initial disclosures as possessing discoverable information—neither of whom performs any role remotely approaching journalism. *See* Walsh Dec. Ex. E at 13.[4]

GIP's sworn regulatory disclosures preclude it from claiming that it has "as one of its regular functions the processing and researching of news intended for dissemination to the public," as required to satisfy § 79-h. If publishing were truly one of GIP's regular business functions, GIP was required to disclose that fact to the SEC, the FCA, and its investors—and doing so likely would have resulted in serious regulatory scrutiny, if not worse. Intentional misstatements or omissions in a Form ADV can carry serious federal consequences, including penalties under 18 U.S.C. § 1001 and 15 U.S.C. § 80b-17.[5] Thus, either GIP has misrepresented the nature of its business to the SEC, the FCA, and investors, or Defendants are now misrepresenting it to this Court. Under either scenario, the Court should find that GIP and de Weck may not invoke the privilege afforded by § 79-h. And because Defendants concede that GIP and its employees had equal access to and possession of the relevant documents (ECF 120 ¶¶ 13–16), any privilege that Yu or Gotham could possibly claim was waived.

## II.     Even If Defendants Qualified Under § 79-h, They Waived the Privilege.

To the extent that any defendant could invoke the Reporter's Privilege, they have waived it many times over by "voluntarily disclos[ing] or consent[ing] to disclosure of the specific information sought to be disclosed to any person not otherwise entitled to claim the exemptions provided by this section." § 79-h(g).

*First*, despite their previous insistence that "[t]he SEC production was not voluntary,"[6] Defendants now concede the opposite. Indeed, Defendants admit they made *multiple* voluntary disclosures to the SEC and made no attempt to preserve the Reporter's Privilege when doing so, including: (i) Gotham's June 3, 2024 production in connection with its response to written questions from the CNMV (ECF 122 ¶ 9); and (ii) materials provided to the SEC on July 25, 2024 in connection with Defendants' counsel's presentation (*id.* ¶ 10). There can be no dispute that these voluntarily disclosed materials must be produced.[7]

---

[4] The FCA's Notice of Requirement (Ex. E to the Asaro Declaration) similarly reflects that the FCA treated GIP as an investment firm, not a journalist or publisher.

[5] *See* Form ADV Instructions, https://www.sec.gov/files/formadv-instructions.pdf at 12.

[6] ECF 112; *see also* ECF 109 at 13 ("Grifols proposes that Gotham's production to the SEC was 'voluntary . . . That is false.").

[7] While irrelevant, Defendants' claim that Grifols "weaponize[d]" the SEC to break privilege (ECF 119 at 5) is absurd and wrong. Defendants' own letter admits that the SEC began investigating them even before the Gotham Report was published. *See* ECF 110-2 (stating that the SEC's first outreach was on January 8, 2024). Moreover,



March 20, 2026
Page 5

And while Defendants now claim GIP did not produce documents until after the February 12, 2024 voluntary document request (ECF 122 ¶¶ 7–9), their own prior submission tells a different story. A production cover letter dated *February 1, 2024* states that "General Industrial Partners LLP, Turtle Ship LLC, and Gotham City Research LLC" jointly produced materials "in response to the subpoenas *and document request issued on January 8, 2024 and January 26, 2024*." ECF 110-2 (emphasis added). This demonstrates there was another voluntary production in response to a "document request" not accounted for in the Asaro Declaration, and thus another indisputable waiver.

*Second*, Defendants' remaining argument—that GIP's February 12, 2024 production in response to the SEC's document request was not voluntary—fails under governing waiver law and the plain text of the Investment Advisers Act rules they invoke. Although they concede the SEC proceeded by voluntary document request rather than subpoena, Defendants nevertheless claim GIP had no choice but to comply. ECF 119 at 4. In support, Defendants point to broad language from Form 1661 appended to those requests and suggest that investment advisers must make records available for examination. ECF 122 ¶ 5. But the only language in that notice that is relevant to GIP is the reference to "Section 204 of the Investment Advisers Act of 1940 and rules thereunder." ECF 123-3 at 17. Section 204 authorizes the SEC to require registered advisers to maintain and make available specified books and records; Rule 204-2 implements that requirement by identifying the categories of records advisers must preserve. Those categories consist of traditional adviser records such as financial ledgers, transaction records, trade confirmations, financial statements, and internal memoranda relating to advice provided to clients—not materials regarding public-facing short reports. *See* 17 C.F.R. § 275.204-2.

The SEC's request here, however, swept far beyond those mandatory records and sought broad categories such as "All Documents Concerning Grifols." ECF 123-3 at 5.[8] Communications about Grifols, as well as research reports, drafts of research reports, internal analyses, and documents collected for purposes of researching Grifols, do not fall within the mandatory records identified in Rule 204-2. That is especially true here, where GIP told the SEC in its own Form ADV that publishing is not part of its advisory business (Walsh Dec. Ex. C) and the Gotham Report expressly disclaims serving as a "particular investment proposal" or "investment strategy." ECF 115-1 at 2; *compare* 17 C.F.R. § 275.204-2(a)(7)(i) ("Every investment adviser . . . shall . . . keep true, accurate . . . records relating to . . . [a]ny recommendation made or proposed to be made and any advice given or proposed to be given[.]"). And Form 1661 says exactly what follows from that distinction: "The production of information other than the records and documents described in paragraph B.1 above is *voluntary*." ECF 123-3 at 18 (emphasis added).

---

nobody forced GIP to respond *voluntarily* to the SEC's document requests. If GIP was concerned about waiving the Reporter's Privilege, it could have asserted it and insisted on producing documents only if compelled by subpoena.

[8] Defendants have confirmed that they produced all such documents, withholding documents only based on attorney-client privilege. *See* Walsh Dec. ¶ 2.



March 20, 2026
Page 6

Defendants cannot have this both ways. If the Gotham Report materials are mandatory adviser records subject to Rule 204-2, then the report is investment advisory activity (not journalism) and no privilege applies under § 79-h. If the Gotham Report is journalism (not investment advisory activity), then the materials are not mandatory adviser records and production to the SEC was voluntary, waiving any purported privilege.[9]

**Third**, Defendants' claim that they "worked together" to prepare and publish the Gotham Report does not preserve the privilege; it confirms waiver because materials were shared across entities that do not qualify under § 79-h. This is underscored by the fact that when Defendants produced materials to the SEC, they pooled them and produced them on behalf of both Gotham and GIP. *See* ECF 110-2. Worse yet, the cover letter says that the production was also made on behalf of Turtle Ship LLC (*see id.*), and Defendants have made no attempt whatsoever to show that this entity qualifies under § 79-h. Having chosen to combine and jointly produce documents across multiple entities, Defendants cannot now segregate those same materials to preserve privilege. Disclosure to non-journalist entities like GIP (and Turtle Ship[10]) waives any protection under § 79-h(g). *See Montesa v. Schwartz*, 2016 WL 3476431, at *14 (S.D.N.Y. June 20, 2016).

**Finally,** Defendants' attempt to distinguish *Steinhardt* only underscores why waiver applies here. Defendants argue that, unlike *Steinhardt*, their SEC productions were "compelled" because they were made in response to subpoenas or regulatory demands. ECF 119 at 4. But that framing ignores the dispositive point: Defendants concede they made multiple voluntary disclosures to the SEC outside any subpoena process. Under *Steinhardt*, such voluntary disclosure waives protection, and nothing in that decision suggests that separate compelled productions negate waiver as to voluntarily produced materials—particularly where, as here, Defendants commingled and jointly produced documents across entities. Nor does their attempt to distinguish work-product waiver from § 79-h help. *People v. Wolf*, 69 Misc. 2d 256, 261 (Sup. Ct.), *aff'd*, 39 A.D.2d 864 (1st Dep't 1972), and *Brown & Williamson Tobacco Corp. v. Wigand*, 1996 WL 350827 (Sup. Ct. Feb. 28, 1996), do not require public disclosure to effect waiver. They merely recognize publication as just one example of voluntary disclosure, not the exclusive means of waiver. *See, e.g.*, *Guice-Mills v. Forbes*, 12 Misc. 3d 852, 857 (Sup. Ct. 2006) (private disclosure by reporter waived the privilege).

Defendants' remaining policy argument likewise fails. The cases they cite—*Byrnes, Diversified Industries,* and *In re Grand Jury Subpoena*—arise under different law and different privilege doctrines and do not reflect controlling New York law. *Byrnes*, in particular, turned on the court's interpretation of Eighth Circuit precedent. *Byrnes v. IDS Realty Trust*, 85 F.R.D. 679, 689 (S.D.N.Y. 1980). New York law points the other way: voluntary disclosure to the SEC waives

---

[9] Defendants' claim that they had a "proper purpose" for disclosing GIP's documents to the SEC also does not avoid waiver. Indeed, this Court has made clear that "waiver will be found even if the disclosure took place in a forum other than the lawsuit in which the waiver issue is raised, and ***even if the disclosure was made for a proper purpose***." *Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993) (emphasis added).

[10] Turtle Ship LLC's Form ADV states that it acts "solely as an adviser to private funds." Walsh Dec. Ex. F.

Proskauer»

March 20, 2026
Page 7

privilege. *See, e.g., In re Penn Cent. Com. Paper Litig*., 61 F.R.D. 453, 463–64 (S.D.N.Y. 1973). Even the SEC's own Enforcement Manual confirms that "[v]oluntary disclosure of work product to the SEC generally constitutes a waiver for all purposes as to the disclosed document or information." *SEC Enf't Manual*, 2016 WL 1566546, at *59 (Jan. 1, 2016).

And if the Court is to resolve this issue as a matter of policy, the fairness doctrine confirms Grifols has the better argument. *See* ECF 105 at 14–16. Defendants seek to rely on selected SEC submissions and related materials to argue good faith while withholding the underlying documents that would allow Grifols to test those claims—and indeed, even cite those materials in their most recent briefing. *See* ECF 120 ¶ 22 (once again relying on the "no action" letter). That is precisely the sword-and-shield conduct the fairness doctrine forbids. *See Schiller v. City of New York*, 245 F.R.D. 112, 120 (S.D.N.Y. 2007).

The problem is especially acute because Defendants' characterization of the SEC's investigation is misleading. The SEC expressly cautioned that its "no action" letter "must in no way be construed as indicating that [Gotham or GIP] has been exonerated or that no action may ultimately result." ECF 29-2. Having nonetheless invoked that letter to imply they have been vindicated, Defendants have opened the door to scrutiny of what they presented to the SEC and how the agency responded. Fairness does not permit them to make that argument while withholding the very materials necessary to evaluate it.

### III.    Defendants Have Not Demonstrated Any Basis to Claim Absolute Privilege for Confidential Source Material.

Section 79-h(b) limits absolute privilege to communications with confidential *sources*. Defendants have long maintained that the Gotham Report was based entirely on public materials. ECF 25 at 16–27.[11] Now de Weck asserts that "[s]ome materials that we have regarding Grifols and the Report are communications with persons to whom we have promised anonymity and confidentiality." ECF 120 ¶ 13. But he still does not aver that those persons were "sources" for the publication (nor does Yu), which would contradict Defendants' prior representations to the Court. And a communication with a third party who was promised confidentiality is not protected under § 79-h unless that person was a source for the Gotham Report. *See* § 79-h(b) (providing absolute privilege only for confidential sources if such sources were used "in the course of gathering or obtaining news for publication"). Defendants have therefore failed to meet their burden of showing they had any confidential sources here.[12]

---

[11] *See also* ECF 28 at 6 ("Gotham relies on Grifols own public reporting, all fully available for the reader"); ECF 91 at 28 ("Defendants relied on public source documents for the Report").

[12] The CNMV specifically inquired whether Gotham relied on any "non-public source" in connection with preparing the Gotham Report. ECF 123-4 at 6 (Question No. 11). Defendants provided the Court only with the CNMV's question, but not their answer. *See id.* To the extent that Defendants failed to identify any non-public source to the CNMV, they should be precluded from claiming otherwise before this Court.



March 20, 2026
Page 8

**IV.    Defendants' New Rule 26 Argument Is Improper and Does Not Overcome Grifols' Demonstrated Need for the Materials.**

Defendants' eleventh-hour Rule 26(c) argument should be rejected out of hand. ECF 119 at 5. It is a new theory never raised in their original motion or even their reply. *See* ECF 94, 109. Even if the Court were inclined to consider this new argument, however, *Baez v. JetBlue Airways* does not support Defendants' position. That case involved a non-party journalist, a single deposition subpoena, and a record showing only limited probative value from the discovery sought. 2012 WL 5471229, at *1–2 (E.D.N.Y. Nov. 9, 2012). Here, by contrast, Defendants are parties, their state of mind is central to the surviving defamation claim, and the five categories of materials they seek to shield are the core evidence of actual malice—drafts, internal communications, sourcing, corrections, and related deliberative materials. ECF 105 at 16. Nor is Grifols asserting some abstract "private interest." Grifols has shown that its ability to prove falsity, knowledge, motive, and reckless disregard depends on the very evidence Defendants seek to withhold, which outweighs any continued attempt to invoke a privilege they have not established and have already waived. *Id.* at 16–22.

Indeed, even if the Court were to find § 79-h applies and no waiver has occurred, Grifols has already shown that the withheld materials are highly material, critical, and unavailable elsewhere. *Id.* Defendants are not non-party reporters resisting peripheral discovery; they are defamation defendants seeking to cordon off nearly the entire editorial and sourcing record surrounding the Report while simultaneously claiming good faith. Those materials go directly to what Defendants knew, what contrary facts they ignored, how they drafted and revised the Report, and whether their explanations are pretextual. They are uniquely in Defendants' possession.

Thus, even under Defendants' newly minted Rule 26 framing, the balance favors disclosure, not protection. Defendants' attempt to shield evidence that Grifols has shown it is entitled to obtain to prove falsity and actual malice, while offering only broad assertions about "social value" untethered to the actual record in this case, should be rejected.

***

Grifols respectfully requests that the Court deny Defendants' Motion for Protective Order. In the alternative, Grifols respectfully requests that the Court conduct an in camera review to assess whether the claimed privilege applies to and was not waived for particular documents.

Respectfully Submitted,

*/s/ Peter D. Doyle*

Peter D. Doyle