# MILLER KORZENIK RAYMAN LLP

THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

March 26, 2026

**VIA ECF**
Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

> Re:     *Grifols, S.A. v. Yu, et al.*, No. 1:24-cv-00576; Reply to Grifols' Opposition
> Ltr., Addressing New Claims and New Exhibits, ECF 127-28.

Dear Judge Gorenstein,

We submit this reply letter on behalf of defendants Daniel Yu, Gotham City Research LLC ("Gotham"), General Industrial Partners LLP ("GIP") and Cyrus De Weck ("Defendants"). We do so to address the *new* factual allegations put forth by Grifols S.A. in its supplemental opposition letter, ECF 127, and its accompanying declaration and exhibits, ECF 128.

Accompanying this letter are two declarations:

1. A second declaration of *Michael Asaro*, outside counsel to Defendants who oversaw contacts with regulators on behalf of Defendants. His declaration speaks to the compulsory nature of the disclosures made to the SEC. Among other things, Grifols is mistaken about January document request referenced in the February 1, 2024 letter. That request pertained to a different company and had nothing to do with Grifols.

2. A decaration of *Álvaro Martín Talavera,* one of the Defendants' attorneys in Madrid, Spain. His declaration speaks to the compulsory and confidential character of the Spanish proceedings in which he is acting on the Defendants' behalf.

We write to correct three factual inaccuracies in Griffols' supplemental opposition:

*First*, there has been no waiver because all documents produced to the SEC were compulsory except for the small number of voluntary productions identified in Michael Asaro's first Declaration dated March 13, 2026 ("First Asaro Decl."), ECF 122. As stated in this second Declaration of Michael Asaro ("Second Asaro Decl."), under Section 204 of the Investment Advisors Act, GIP was required to produce *all* records it had in its possession that the SEC requested pursuant to the GIP document request. Second Asaro Decl. ¶ 5. "Records" is defined broadly to include "accounts, correspondence, memorandums …papers, books, and other documents or transcribed information of any type[.]" *Id.*

Grifols' assertion that GIP was only required to produce specific categories of records set forth in Investment Advisers Act Rule 204-2 is incorrect. Rule 204-2 identifies specific categories of records that must be *preserved* by registered investment advisers for potential

inspection by the SEC. While Rule 204-2 also states that advisers must produce these categories of records for inspection "promptly," it does not limit an adviser's obligation under Section 204 to produce *all* records *in its possession* in response to an SEC document request. *Id*. ¶¶ 5-7. Furthermore, all documents were in the joint custody and control of Defendants, and production was compelled by the overlapping subpoenas and demands. *Id*. ¶¶ 8-10.

*Second*, the Jan. 8 requests to GIP referenced in the Feb. 1, 2024 production cover letter *did not relate to Grifols*. Second Asaro Decl. ¶ 11. It is factually inaccurate to conflate it with the document demands that did relate to Grifols. Nevertheless, the Jan. 8 document requests were also compulsory. *Id*. ¶ 12. There were no voluntary productions to the SEC other than the discrete items listed in the First Asaro Declaration. First Asaro Decl. ¶¶ 9-10. All other documents produced to the SEC were compulsory.

*Third*, there is no contradiction between a) GIP's representations to the SEC as a registered investment advisor and b) De Weck's declaration that he is affiliated with Gotham and helped research and write Gotham's January 9, 2024 report on Plaintiff Grifols S.A. (the "Report") with Yu. The Reporters Privilege law is not mutually exclusive, foreclosing an investment advisor outside of their advisor capacity from helping write or research a report for the general public to read. The Report is not investment advice. It disclaims that status on page 1:

> **"Disclaimer:** This report (the 'Report') has been produced by GOTHAM CITY RESEARCH LLC ('GCR'), an affiliate of General Industrial Partners LLP ('GIP')… This Report is for informational purposes only and is not an offer or solicitation to buy or sell any investment product." ECF 115, at 3.

The Report is available for the general public like any other financial reporting in the Wall Street Journal or Financial Times. GIP offers investment advice only to its clients. Its representations to the SEC as an investment advisor are relevant to that relationship alone. Its status as an investment advisor does not foreclose GIP or De Weck from helping write a Report for the general public outside of that investment advisor status. One can be an investor and writer, a lawyer and writer, and so on. One does not preclude the other.

Defendants, and GIP specifically, have made no misrepresentations—not to the CNMV; not to the SEC; and not to its readers. On page 1 of the Report, the first sentence says "[t]his report has been produced by GOTHAM CITY RESEARCH LLC, *an affiliate of General Industrial Partners LLP*." ECF 115, at 3 (emphasis added). Grifols speculates about what "might have" been said in the Spanish proceeding it triggered against Defendants. ECF 127, fn. 3. This is *pure speculation* about a proceeding concerning completely different offenses, criminal procedure, and evidentiary rules in a foreign jurisdiction. Decl. of Alvaro Martin Talavera, ¶¶ 15-16. There are no parallels. Grifols conflation of the actions is a fallacy meant to distract from the facts at issue in this jurisdiction.

Regardless, the § 79-h definition of "professional journalist" is a *functional* definition. It covers all those who prepare and distribute "news" – broadly defined. Sec. 79-h does not require professional journalists to *publicly list* or disclose themselves as "professional journalists" in order to qualify under the statute. Sec. 79-h does not limit the protected category only to

2

employees of a company. It only requires "*affiliation.*" § 79-h(a)(6). The Report expressly states that it was produced by Gotham, with GIP as "an affiliate." ECF 115, at 3. An "affiliate" includes and protects all participants and contributors to a publication, including freelancers, researchers, collaborators, sources, writers, editors, contributors, kibitzers, or commenters. It does not matter whether their suggestions or comments are used in the publication or not, useful or useless, informed or ill-informed.

Grifols' waiver argument confuses the reporters privilege with the attorney-client privilege. The privileges are not analgous. They have different foundations; different definitions; different scope and nature of their protections; different range of persons protected; and what constitutes waiver are different for each. Waiver of the attorney-client privilege is more easily caused by communication outside of a confined class, usually employees. In contrast, the group of persons protected by § 79-h include sources, interviewees and contributors who may even be hostile to the writer. Professional journalists interview, discuss and verify their ongoing reporting with many third parties. That does not constitute waiver. If it did, basic fact checking or request for comment would be deemed waiver, which would upend the privilege's protections.

Grifols' reliance on *In re Fitch* is ill-placed. *Fitch* involved an analyst who was *paid by the subject of the report* and played an "active role in structuring the transaction" that it rated and reported on. For those reasons, Fitch was not considered to be "independent." In *Novagold*, the New York court found the short reporters to be covered under the Reporters Privilege, but later found that the identity of an associated financial third party was not covered. *See* ECF 109, at 7. Here, there is no such third party, and the analysis is simpler. De Weck and Yu decided to write about Grifols, and then together wrote, researched, edited and published the Report. Both are either employed or professionally *affiliated* with Gotham as the Report's publisher.

Significantly, § 79-h does not speak of "independence" as a requirement of its coverage. There are two judicially made exceptions to § 79-h from *Fitch*, and *Chevron Corp. v. Berlinger,* 629 F.3d 297, 306 (2d Cir. 2011). In *Berlinger*, the **subject** of the documentary **controlled** the documentary under highly unusual circumstances. In *Fitch*, the **subject issuer of securities paid** for the report that Fitch wrote for the subject and helped structure the transaction it rated. Neither exception applies here.[1]

For the reasons put forth, Defendants ask the Court for an order granting its motion for protective order on the basis that the Reporters Privilege applies and has not been overcome.

Respectfully,
*/s/ David S. Korzenik*
David S. Korzenik

*Attorney for Defendants*

---

[1] Judge Liman noted the public value of short reports. He recognized that they provided valueable information to the market. Insiders, i.e. **issuers,** for obvious reasons, face greater restrictions on public presentations about themselves, which Judge Liman noted. *Fitch* involves a publication about a company **paid for by insider/issuers.** In *Fitch*, the rating agency "play[ed] an active role in structuring the transaction" that it rated and reported on. There, the Second Circuit stated it would not "interpret New York law [79-h] beyond the facts of this case." *Fitch*, 330 F3d at 110.