**Proskauer**>>   Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

April 2, 2026

**Via ECF**

Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court for the Southern District of New York

Peter D. Doyle
Member of the Firm
d +1.212.969.3688
f 212.969.2900
pdoyle@proskauer.com
www.proskauer.com

Re: ***Grifols, S.A. v. Yu, et al.***, No. 1:24-cv-00576-LJL-GWG

Dear Judge Gorenstein,

Defendants' motion should be denied because they have failed at every turn to show that they are entitled to invoke, and did not waive, the Reporter's Privilege. Under N.Y. Civ. Rights Law § 79-h(g), voluntary disclosure to anyone not entitled to claim the privilege waives the privilege. Defendants' submission concedes that they maintained the relevant documents "in the joint custody and control of Defendants."  ECF 133 at 2. This means that, in order to prevail on their motion, Defendants must show that *each Defendant*, and anyone else to whom the documents were disclosed, qualifies for the statutory privilege. Despite the Court's leniency, and having four bites at the apple (including their latest unauthorized submission), Defendants have failed to meet this burden.

While there are various routes the Court can take to deny Defendants' motion, it is as simple as this: Defendants concede that de Weck and others at GIP possessed all the relevant Gotham Report documents, yet they have made no showing that de Weck or GIP *regularly* process and research news intended for dissemination to the public, never mind professionally, as the statute requires. Moreover, Defendants have failed to rebut Grifols' incontestable evidence—GIP's sworn regulatory filings—proving that GIP does not publish news at all.

Alternatively, the Court could deny the motion because (i) as another court has found, Yu and Gotham are not journalists entitled to claim the privilege; (ii) Defendants waived any possible privilege by sharing the documents with another third party, Turtle Ship LLC, that is admittedly not a journalist; or (iii) Defendants waived any possible privilege by voluntarily producing the documents to the SEC. For all of these reasons, or any of them, the Court should deny Defendants' motion.

\*\*\*

***First***, Gotham and Yu are not "professional journalist[s]" under the statutory definition. To qualify for protection under § 79-h, Defendants must show they derive revenue from publishing their reports. *See* § 79-h(a)(6); ECF 127 at 2 (citing *Mueller v. Aris*, 2021 N.Y. Misc. LEXIS 70542, at \*15–16 (Sup. Ct. June 2, 2021)). Defendants do not dispute that Gotham and Yu derive no revenue from publishing their reports and, instead, benefit indirectly via GIP shorting the stock of the targeted company. Defendants ignore this straightforward failure to meet the statute's definition. On this basis alone, the motion should be denied.

Nor do Defendants dispute that Gotham and Yu publish their reports *only* when they have a financial stake in the target company's stock price declining, so they do not *regularly* process

Beijing | Boca Raton | Boston | Chicago | Hong Kong | London | Los Angeles | New Orleans | New York | Paris | São Paulo | Washington, DC

**Proskauer»**

April 2, 2026
Page | 2

and research news *intended for dissemination to the public*. *See* § 79-h(a)(6). This is precisely why the *Beaver County* court found Gotham and Yu were not journalists and could not invoke the materially similar federal privilege. *See* ECF 127 at 1. Under the same reasoning, Gotham and Yu are not "professional journalists" as defined in § 79-h(a)(6).

Moreover, Defendants fail to cite any case holding that § 79-h applies to a "publisher" who releases its report only when it stands to benefit financially from some arrangement with a third-party funder. In contrast, the Second Circuit has explained that § 79-h does *not* apply when a financial publisher only covers a company when they are paid to do so by someone with a financial interest in that company, "[u]nlike a business newspaper or magazine, which would cover any transactions deemed newsworthy . . . ." *In re Fitch, Inc.*, 330 F.3d 104, 109–10 (2d Cir. 2003). That the report's benefactor in *Fitch* was an issuer (who had a financial interest in positive coverage) instead of a short-focused investment adviser like GIP (who had a financial interest in negative coverage) makes no difference to the analysis under the Second Circuit's rationale.

***Second***, GIP and de Weck do not qualify for protection under § 79-h because they are not "professional journalists" either. Defendants concede that, as the *Novagold* court found, "an associated financial third party" is not entitled to invoke the privilege under § 79-h. ECF 133 at 3. This is dispositive of the motion since Defendants admit that GIP is an associated financial third party who profited from the Gotham Report's effect on Grifols' share price. *See* ECF 55 ¶ 112.

Defendants argue that despite being an investment adviser, GIP *could* also act as a professional journalist or news medium—*i.e.*, the two are not mutually exclusive. ECF 133 at 2. That argument ignores that § 79-h limits protection to people who *regularly* and *professionally* publish news intended for public dissemination—not an entity that occasionally does so and only when their investment strategy would benefit. *See In re Fitch, Inc.*, 330 F.3d at 109–10. And even if the law provided otherwise, Defendants would still need to meet *their* burden of showing that GIP in fact regularly and professionally publishes news intended for public dissemination. Yet Defendants have made no such showing. Nor have Defendants made any attempt to rebut Grifols' showing, based on GIP's own regulatory filings, that GIP (i) does not regularly process and research news intended for dissemination to the public, and (ii) derives no revenue from publishing. *See* ECF 127 at 3–4.

GIP's supposed "affiliation" with Gotham does not alter the analysis. As an initial matter, Defendants have not made any evidentiary showing of this supposed affiliation. They have not provided the Court with any affiliation agreement or anything else that articulates the relationship between GIP and Gotham. And any such relationship is glaringly omitted from GIP's SEC filings. Regardless, any such affiliation is legally irrelevant under § 79-h. The "affiliation" language in the statute that Defendants invoke (ECF 133 at 3) is part of the definition of "professional journalist," which on the face of the statute applies to people, not companies. § 79-h(a)(6). To qualify as a professional journalist, a person must report news "either as a regular employee or as one otherwise professionally affiliated for gain or livelihood" with a professional news medium. *Id.* But the statutory definition does not apply to companies that do not regularly process and research news intended for dissemination to the public—no matter with whom they are affiliated. Nor does GIP meet the statutory definition of a newspaper, news agency, or other professional news medium

2

**Proskauer**»

April 2, 2026
Page | 3

protected by the statute. *See* § 79-h(a). Under the plain text of the statute, GIP does not qualify for the privilege.

Nor have Defendants shown that de Weck qualifies as a professional journalist under § 79-h(a)(6). That is because he is not a "regular employee" or "otherwise professionally affiliated for gain or livelihood" with a professional news medium. Again, de Weck's employer, GIP, is not itself a professional news medium. Nor do Defendants dispute that de Weck is not employed by Gotham. And Defendants have made no showing that de Weck's involvement in directing the Gotham Report's narrative was done *professionally*, as the statute requires. Indeed, de Weck's self-described profession is an investment manager. *See* ECF 127 at 2. Thus, Defendants have failed to meet their burden of showing that de Weck or GIP qualifies for protection under § 79-h, and disclosure of Gotham's documents to them waived any privilege that might otherwise have existed.

***Third***, Defendants have failed to show that *other* third parties with access to the documents qualify for protection under § 79-h. Defendants do not dispute that multiple GIP employees beyond de Weck had access to the relevant materials (*see* ECF 127 at 4), yet they have made no attempt to show that any of them qualify as professional journalists under § 79-h(a)(6). Likewise, Defendants ignore that their own submissions reveal that another third party, Turtle Ship LLC, which acts "solely" as a private fund adviser (*i.e.*, not a journalist), had access to the relevant materials. *See id.* at 6. Disclosure of the materials to these non-journalists constitutes clear waiver. Defendants contend that professional journalists can "interview, discuss and verify their ongoing reporting with many third parties" and this "does not constitute waiver." ECF 133 at 3. But the statute itself says the privilege is "waive[d]" upon disclosure to "any person not otherwise entitled to claim the exemptions provided by this section." § 79-h(g). Thus, disclosure to non-journalist employees of GIP, and to Turtle Ship LLC, waived any potential privilege.

***Fourth***, Defendants' Section 204 argument fails and further confirms waiver. To start, it is yet another admission that GIP—a non-qualifying entity—possessed materials, which Defendants themselves describe as Gotham's editorial records, unrelated to GIP's investment advisory role. *See* ECF 133 at 3 (stating the report "was produced by Gotham . . ."). That concession alone confirms that Defendants waived any privilege by commingling Gotham's work with GIP and then producing the documents through GIP.

Separate from that admission, Defendants' reading of Section 204 is incorrect. Mr. Asaro, Defendants' SEC counsel, selectively quotes the statute by emphasizing that "all records" are subject to SEC examination, while omitting the operative language that limits the obligation to records tied to an adviser's business—namely that "[e]very investment adviser who makes use of the mails or of any means or instrumentality of interstate commerce ***in connection with his or its business as an investment adviser*** … shall make and keep . . . such records . . . [and] furnish such copies thereof . . . for the protection of investors." 15 U.S.C. § 80b-4(a) (emphasis added). Gotham's editorial materials—despite being in GIP's possession—do not meet that standard. As Grifols has shown, the SEC's request for "all documents concerning Grifols" went far beyond any mandatory adviser records, and Form 1661 confirms that such production is "voluntary." ECF 123-3 at 8, 18. Defendants cannot have it both ways: if the materials are adviser records, § 79-h

3

**Proskauer»**

April 2, 2026
Page | 4

does not apply; if they are journalistic documents, production was voluntary and privilege waived. Either way, the documents are discoverable in this litigation.

*Finally*, Defendants' discussion of the Spanish criminal proceedings against Defendants is irrelevant and misleading. Grifols referenced those proceedings for a limited purpose: to inform the Court that Defendants made statements in Spain that contradict their positions here, which bears on credibility and judicial estoppel. ECF 127 at 1, n.1. Defendants responded by submitting a declaration from their Spanish counsel regarding Spanish procedure to argue that anything said there was "confidential" and "non-voluntary." ECF 133-1 ¶¶ 2–9.

While irrelevant, the latter premise is also wrong. While Defendants were required to appear before the Spanish criminal court, their own counsel concedes they "may choose how to exercise their defense rights—including whether to answer particular questions . . . ." ECF 133-1 ¶ 8. In other words, answering was voluntary. Defendants could have declined to respond to questions but instead chose to answer the Spanish Judge and Prosecutor. It is those voluntary statements—not their compelled appearance—that Grifols identified as relevant and contradictory to Defendants' statements to this Court. Defendants' attempt to collapse that distinction misstates Spanish law and does not undermine Grifols' point. This position is also at odds with Defendants' public statements, where a representative for Gotham and GIP told Reuters, "We welcome the opportunity to provide all the necessary information and to bring clarity to this investigation,"[1] only for Defendants to oppose production of their Spanish testimony in this proceeding.[2]

\*\*\*

Defendants still have not shown that any of them qualifies for the protections under § 79-h, and their own theory of pooled, selective, financially motivated conduct confirms both that the privilege does not apply and that any such privilege was repeatedly waived. The motion should be denied.

Respectfully Submitted,

*/s/ Peter D. Doyle*

Peter D. Doyle

---

[1] Reuters, *Spanish court summons Gotham City founder in Grifols share price probe* (Oct. 9, 2025). https://www.reuters.com/legal/litigation/spanish-court-summons-gotham-city-founder-grifols-share-price-probe-2025-10-09/

[2] While declining to authorize release of Defendants' Spanish criminal testimony based on Grifols' written request, the Spanish court indicated that such materials may be obtained through international judicial assistance mechanisms. If the Court is inclined to consider Defendants' contradictory statements made in the Spanish proceedings, Grifols will seek the appropriate relief to obtain those materials promptly.