**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GRIFOLS, S.A.,

                      Plaintiff,

        v.

DANIEL YU, an individual, GOTHAM CITY
RESEARCH LLC, GENERAL INDUSTRIAL
PARTNERS LLP, CYRUS DE WECK, an
individual, JOHN DOES 1-10, and XYZ
CORPORATIONS 1-10.

                      Defendants.

No. 1:24-cv-00576-LJL-GWG

**GRIFOLS, S.A.'S OPPOSITION TO DEFENDANTS'**
**OBJECTION TO MAGISTRATE JUDGE GORENSTEIN'S DENIAL OF DEFENDANTS'**
**CROSS-MOTION FOR A PROTECTIVE ORDER PURSUANT TO**
**<u>NEW YORK'S REPORTER'S PRIVILEGE</u>**

PROSKAUER ROSE LLP

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com

*Counsel for Plaintiffs Grifols, S.A.*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................... 1

PROCEDURAL HISTORY............................................................................................................ 2

LEGAL STANDARD..................................................................................................................... 3

ARGUMENT.................................................................................................................................. 4

I.     JUDGE GORENSTEIN CORRECTLY FOUND THAT DEFENDANTS ARE NOT "PROFESSIONAL JOURNALISTS" UNDER SECTION 79-H ..................................... 4

II.    THE OBJECTION IS MERITLESS AND MISCHARACTERIZES JUDGE GORENSTEIN'S RULING........................................................................................... 5

III.   THE OBJECTION ALSO FAILS ON OTHER INDEPENDENT GROUNDS .............. 10

CONCLUSION.............................................................................................................................. 11

# TABLE OF AUTHORITIES[*]

**Page(s)**

CASES

*Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*,
  2016 WL 3162218 (N.D. Cal. June 7, 2016) ...................................................................8

*Edmonds v. Seavey*,
  2009 WL 2150971 (S.D.N.Y. July 20, 2009) .................................................................3

*Holmes v. Winter*,
  22 N.Y.3d 300 (2013) .....................................................................................................9

*In re Fitch, Inc.*,
  330 F.3d 104 (2d Cir. 2003) ........................................................................................4, 8

*Kumaran v. Vision Fin. Mkts., LLC*,
  2022 WL 17540669 (S.D.N.Y. Dec. 6, 2022) ...............................................................4

*Matter of Application of Home Box Office, Inc.*,
  64 Misc. 3d 566 (Sup. Ct. N.Y. Cnty. 2019) .................................................................9

*Murray Energy Corp. v. Reorg Rsch., Inc.*,
  152 A.D.3d 445 (1st Dep't 2017) .................................................................................5, 6

*Novagold Res., Inc. v. J Cap. Rsch. USA LLC*,
  2025 WL 3218923 (W.D. Tex. Nov. 13, 2025) ............................................................10

*People v. Juarez*,
  31 N.Y.3d 1186 (2018) ...................................................................................................9

*Rodriguez v. Pataki*,
  293 F. Supp. 2d 302 (S.D.N.Y. 2003) ............................................................................4

*Samad Bros., Inc. v. Bokara Rug Co.*,
  2010 WL 5095356 (S.D.N.Y. Dec. 13, 2010) ...............................................................3

*Shoen v. Shoen*,
  5 F.3d 1289 (9th Cir. 1993) ............................................................................................8

*Springwell Corp. v. Falcon Drilling Co.*,
  1998 WL 352533 (S.D.N.Y. July 1, 1998) .....................................................................3

---

[*] All capitalized terms have the meaning given to them in Judge Gorenstein's decision (ECF 141) at issue here. Citations to ECF pages are to the ECF-stamped page.

*Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
    924 F. Supp. 2d 508 (S.D.N.Y. 2013)..................................................................................4, 7

*Tompkins v. R.J. Reynolds Tobacco Co.*,
    92 F. Supp. 2d 70 (N.D.N.Y. 2000)....................................................................................3, 4

*Torah Soft Ltd. v. Drosnin*,
    2001 WL 1425381 (S.D.N.Y. Nov. 14, 2001)........................................................................9

### STATUTES & RULES

N.Y. Civ. Rights Law § 79-h ................................................................................ *passim*

Fed. R. Civ. P 72(a) .....................................................................................................2, 3, 4, 7

L.R. 72.1 ...................................................................................................................................2

## **PRELIMINARY STATEMENT**

Defendants do not dispute that the report they published after shorting Grifols' stock falsely stated that Grifols failed to disclose its loan to Scranton. ECF 91 at 5. They dispute only whether they made those statements with actual malice. *Id.* To prove actual malice, Grifols is entitled to broad discovery of Defendants' files and communications relating to Grifols. Defendants have refused to produce these documents, so Grifols moved to compel. Judge Gorenstein rejected Defendants' position that actual malice discovery should be confined to documents specifically mentioning the Scranton loan statements (ECF 142), and Defendants do not contest that ruling. All that remains is their objection to Judge Gorenstein's separate ruling (ECF 141) that they may not hide behind New York's Reporter's Shield Law.

Defendants—investment managers who publish negative reports about companies they are shorting—claim they should be deemed "professional journalists" entitled to shield their documents and sources. After extensive briefing and multiple opportunities to supplement the record, Judge Gorenstein correctly rejected Defendants' attempt to stretch the Reporter's Privilege beyond what the New York legislature intended. His conclusion that Defendants failed to show they are "professional journalists" under Section 79-h was neither clearly erroneous nor contrary to law. Analyzing the statutory text, legislative history, factual record, and controlling precedent, he concluded that Defendants failed to connect their purported journalism to their "gain or livelihood," as the statute requires. The record showed only that Defendants hoped to profit from their short positions if publication moved the market. That is not a livelihood earned through journalism.

In their objection, Defendants mischaracterize the ruling and rely on cases involving undisputed journalists. None of that is a basis to overturn the ruling. Moreover, Defendants'

objection separately fails for reasons Judge Gorenstein had no need to reach: Defendants waived any privilege many times over, the fairness doctrine compels disclosure, and Grifols is entitled to disclosure of any privileged materials under § 79-h(c). The objection should be overruled.

## PROCEDURAL HISTORY

Discovery in this case opened on July 22, 2025. ECF 62. Grifols served discovery requests on August 22, 2025. To date, Defendants have produced three documents.

On November 14, 2025, Grifols moved to compel production in response to 28 requests. ECF 85. On November 26, 2025, Defendants opposed and simultaneously cross-moved for a protective order under the Shield Law. Briefing on the motion to compel was completed on December 8, 2025, and briefing on the cross-motion continued through January 22, 2026.

Judge Gorenstein held a hearing on March 4, 2026. He explained that Defendants had not supported the claimed foundation for the Reporter's Privilege with evidence from any witness with personal knowledge and offered them another opportunity to file an affidavit from someone with personal knowledge (rather than their counsel). Mar. 4, 2026 Tr. at 3:9–15. Defendants then filed supplemental declarations (ECFs 120–123), to which Grifols responded (ECF 127), and additional letter briefing followed (ECFs 133, 135, 137, 138).[1] Defendants claim the briefing "focused largely on whether the Report was 'news.'" ECF 156 at 3 n.4. That is false. The briefing focused on whether Defendants meet the definition of "professional journalists" under the statute.

Judge Gorenstein denied Defendants' cross-motion for a protective order, finding that Defendants do not meet that definition. ECF 141. He also rejected Defendants' argument that

---

[1] This included two unauthorized letters from Defendants. *See* ECFs 133, 137. Before Defendants seek to engage in the same tactic here, Grifols reminds them that neither Fed. R. Civ. P 72(a) nor L.R. 72.1 permits a reply in support of an objection to a magistrate judge's nondispositive order.

discovery should be limited to statements specifically mentioning the Scranton loan. ECF 142. Defendants have objected only to the former ruling. ECF 156.

It is not apparent what Defendants are objecting to here beyond their abstract disagreement with Judge Gorenstein's reading of the Shield Law. Defendants say they "are not asserting the Reporters Privilege as to any documents that pertain to the remaining Scranton loan issue." ECF 156 at 2 n.2. But that is the *only* issue in the case. *See* ECF 91 at 8, 12. And Judge Gorenstein already found—in his separate uncontested ruling—that the discovery Grifols moved to compel pertains to the Scranton loan statements. *See* ECF 142 § II.A. Thus, for all the discovery Grifols seeks, Defendants have waived any possible Reporter's Privilege (and not for the first time, *see infra* at pp. 10–11).

As explained below, the Court should deny Defendants' objection.

## LEGAL STANDARD

Defendants face an especially high bar. A nondispositive discovery ruling concerning privilege is reviewed under Rule 72(a)'s highly deferential standard and may be modified only if "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a); *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000) (privilege determinations reviewed under Rule 72(a)); *accord Springwell Corp. v. Falcon Drilling Co.*, 1998 WL 352533, at *1 (S.D.N.Y. July 1, 1998) (Sotomayor, J.). The party challenging such a ruling "carries a heavy burden," *Samad Bros., Inc. v. Bokara Rug Co.*, 2010 WL 5095356, at *1 (S.D.N.Y. Dec. 13, 2010), and the mere fact that "reasonable minds may differ" is not enough, *Edmonds v. Seavey*, 2009 WL 2150971, at *2 (S.D.N.Y. July 20, 2009).

Although the meaning of "professional journalist" under Section 79-h(a)(6) presents a legal question, an order is not "contrary to law" merely because the magistrate judge adopted one

3

permissible reading over the one Defendants prefer; the question is whether the statutory text, legislative history, and precedent support his ruling. *Tompkins*, 92 F. Supp. 2d at 79; *see Rodriguez v. Pataki*, 293 F. Supp. 2d 302, 303 (S.D.N.Y. 2003) (affirming determination that a statutory privilege applied based on legislative history). Judge Gorenstein's application of that standard to the record is reviewed only for clear error. Rule 72(a) does not permit Defendants to take "a second bite of the apple," *Kumaran v. Vision Financial Markets, LLC*, 2022 WL 17540669, at *6 (S.D.N.Y. Dec. 6, 2022), or to rely on new factual assertions, *Thai Lao Lignite (Thailand) Co. v. Government of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013).

## **ARGUMENT**

### I.    **JUDGE GORENSTEIN CORRECTLY FOUND THAT DEFENDANTS ARE NOT "PROFESSIONAL JOURNALISTS" UNDER SECTION 79-H.**

Judge Gorenstein correctly rejected Defendants' attempt to invoke the Shield Law. The dispositive question was whether Defendants make their "gain or livelihood" from journalism—a phrase the statute uses twice—such that their activities reflect the "newsgathering activities of a professional journalist." ECF 141 at 10–13; N.Y. Civ. Rights Law § 79-h(a)(6).

Defendants failed to meet the definition of "professional journalist" because "[n]othing in the record reflects any direct connection between Yu and De Weck's production of reports and their 'gain or livelihood.'" ECF 141 at 11. No report was commissioned, sold, or supported by advertising, and Defendants "admit that they have no 'third-party sources of financial support.'" *Id.* at 10–11 (quoting ECF 109 at 14). The only identified benefit was the possibility that Defendants' short positions would profit if the market reacted to their report. *Id.* at 11–12.

That accords with *In re Fitch, Inc.*, which recognized that Section 79-h does not reach publications undertaken to advance a separate financial interest rather than to disseminate news as a journalistic enterprise. 330 F.3d 104, 109–11 (2d Cir. 2003). As Judge Gorenstein put it, "it

4

would be far more accurate to say that what they make their 'gain or livelihood' from is short-selling, not producing reports." ECF 141 at 12.

Judge Gorenstein found that the legislative history supports this outcome. The 1970 and 1981 amendments expanded the categories of covered journalists and outlets but never abandoned the requirement that the claimant make his "gain or livelihood" from journalism, and "nothing in the legislative history or the text of the statute suggests an intention to broaden § 79-h's protection beyond individuals who are being paid, or expect to be paid, specifically for their journalistic efforts." *Id.* at 13–15.

## II.    THE OBJECTION IS MERITLESS AND MISCHARACTERIZES JUDGE GORENSTEIN'S RULING.

Defendants identify no basis to conclude that Judge Gorenstein's ruling was clearly erroneous or contrary to law. Their objections amount largely to a disagreement with Judge Gorenstein's interpretation of Section 79-h, coupled with an improper attempt to distort the factual record. Judge Gorenstein's conclusion is firmly grounded in the statutory text, legislative history, and governing precedent, and Defendants' criticisms largely mischaracterize both the ruling and the authorities on which it relied.

*First*, Defendants contend that Judge Gorenstein invented a novel "regular gains" requirement (ECF 156 at 2, 8) and then conducted a "fact-intensive inquiry" into their business model that *Murray Energy Corp. v. Reorg Research, Inc.*, 152 A.D.3d 445, 447 (1st Dep't 2017), forbids (ECF 156 at 2, 7). That mischaracterizes the ruling. Judge Gorenstein did not hold that journalists must be profitable, earn a salary, or receive subscription or advertising revenue. He held that the statute requires the claimant's "gain or livelihood" to derive from journalism itself (whether by "traditional avenues" or not), not from a separate business that may benefit indirectly from publication. ECF 141 at 10–15.

5

That reading gives effect to the statutory text rather than adding to it. The phrase "gain or livelihood" appears twice in the definition of "professional journalist," which covers one who, "for gain or livelihood," gathers and disseminates news "either as a regular employee or as one otherwise professionally affiliated for gain or livelihood with such medium of communication." N.Y. Civ. Rights Law § 79-h(a)(6).[2] Defendants' contention that "regular" modifies only the medium's "regular functions," not the claimant's earnings, misses the point: Judge Gorenstein required only that gain be tied to journalism itself, as the twice-repeated phrase requires.

*Murray* does not aid Defendants. That court rejected a graduated inquiry into a publication's subscriber base, subscription fees, and dissemination restrictions in determining whether a *concededly compensated* publisher qualified for protection. *Murray*, 152 A.D.3d at 446–47. The publisher there was paid for its news product; the inquiry concerned how much and on what terms. Judge Gorenstein engaged in no such inquiry. He addressed the antecedent, threshold question *Murray* presupposed but did not reach: whether Defendants are compensated for their journalism at all. That is a categorical question of statutory eligibility under Section 79-h(a)(6), not the graduated business-model comparison *Murray* forbids.

On that threshold question, no evidence shows that anyone pays Defendants for their reports. Their assertion that Gotham's sole function is to publish reports (ECF 156 at 3) does not alter the analysis or demonstrate clear error. Although Defendants claim they "are . . . compensated for their functions as writers [and] publishers" (*id.*), the record establishes no salary, advertising revenue, subscription fees, or any compensation tied to their reporting—unlike the documentary

---

[2] Defendants chide Judge Gorenstein for supposedly reaching past the text of the statute (ECF 156 at 5–6), while simultaneously beseeching this court to examine legislative intent (*id.* at 11). Such efforts are ironic given Defendants ask the Court to ignore Section 79-h's "for gain or livelihood" requirement entirely.

filmmakers they invoke, whose contingent earnings remain tied to compensation for journalistic work. The economic benefit derives from GIP's short selling. *Id.*

Defendants baselessly accuse Judge Gorenstein of making a "factual error" because they now claim—for the first time—that they receive a "monthly fee" from investors for their "news dissemination function," which they analogize to a "subscription fee." *Id*. This belies their representation to Judge Gorenstein (ECF 109 at 14), which he accepted (ECF 141 at 11), that Defendants' "have no third-party sources of financial support." Nor did Defendants ever argue below that they receive anything akin to a subscription fee (*see* ECF 92–94, 109–10, 119–23, 133, 137), even though Grifols squarely raised the issue, arguing that Gotham and Yu "derive no revenue from publishing their reports" and benefit only indirectly through GIP's short selling (ECF 127 at 2–3; ECF 135 at 1–2). Rule 72(a) does not permit Defendants to reinvent the record after the magistrate judge has ruled. *See Thai Lao Lignite*, 924 F. Supp. 2d at 512.

And even now—despite being admonished for advancing unsubstantiated factual assertions through counsel (Mar. 4 Tr. at 4:5–9)—Defendants *still* cite no record evidence that they are compensated for their reports. They cannot. Their own sworn SEC filings confirm they earn fees from investing activity, not creating journalistic content. For example, GIP's Form ADV states it is paid *solely* "Performance-based fees," despite "Subscription fees" being an available option on the form. ECF 128-3 at 9; *see* ECF 141 at 12 n.4. Judge Gorenstein thus correctly found that "[n]othing in the record reflects any direct connection between Yu and De Weck's production of reports and their 'gain or livelihood'" (ECF 141 at 11), and that Defendants do not qualify for the Reporter's Privilege.

**Second**, Judge Gorenstein's ruling is supported by Second Circuit precedent. Defendants contend that he misapplied *Fitch* and that it should be confined to its facts. ECF 156 at 6–7. But

Judge Gorenstein did not rely on *Fitch* to create a "regular gains" requirement. He accurately cited it for the proposition that the inquiry turns on "whether the information at issue was 'gathered pursuant to the newsgathering activities of a professional journalist.'" ECF 141 at 10 (quoting *Fitch*, 330 F.3d at 111). *Fitch* establishes that publications undertaken to advance a separate financial interest differ from traditional journalistic enterprises. 330 F.3d at 109–10. Under this standard, Defendants' publication of their report in furtherance of a short-selling strategy— precisely the sort of "lack of independence" in reporting that Defendants concede falls outside the Shield Law's protections (ECF 156 at 6)—does not make them "professional journalists."[3]

**Third**, Defendants argue that Judge Gorenstein improperly focused on the individual defendants rather than Gotham and GIP, mischaracterizing that analysis as an "escape hatch." ECF 156 at 5. But the statute protects a "professional journalist" and only then extends derivative protection to associated organizations. *See* N.Y. Civ. Rights Law § 79-h(f) (extending the privilege to organizations to the extent they employ or have authority over a covered person). Judge Gorenstein thus properly began by determining whether Yu and De Weck qualified as "professional journalist[s]." ECF 141 at 8–10.

**Fourth**, Defendants contend that Judge Gorenstein both "gloss[ed]" over the legislative history and interpreted it contrary to its purpose. ECF 156 at 5–10. Neither criticism has merit. Judge Gorenstein devoted substantial portions of his decision to the text and legislative history, including the 1970 enactment and subsequent amendments. ECF 141 at 13–15. He acknowledged the Legislature's efforts to expand the categories of protected journalists but concluded that it

---

[3] Judge Gorenstein's conclusion is bolstered by another federal court's finding that, on Yu's own sworn testimony about how Gotham operates, the journalist privilege does not apply because Defendants' intent is to disseminate their reports only after taking a short position. *See Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 3162218, at *3 (N.D. Cal. June 7, 2016) (quoting *Shoen v. Shoen*, 5 F.3d 1289, 1293 (9th Cir. 1993)).

consistently retained the requirement that a "professional journalist" engage in journalism "for gain or livelihood." *Id*. Defendants identify no language suggesting the Legislature intended to soften that requirement, much less anything inconsistent with Judge Gorenstein's conclusion that the statute protects those who receive, or expect to receive, gain directly from journalism.[4]

*Fifth*, Defendants offer a parade of horribles, claiming the ruling jeopardizes documentary filmmakers, bloggers, independent journalists, and even the press's independence from the "administration." ECF 156 at 2, 8–10. Not so. Nothing in the Order suggests that journalists lose protection merely because their work is unprofitable, speculative, published for free, or supported by emerging business models. Journalists remain protected when they pursue compensation from their works, whether through subscriptions, advertising, licensing, book sales, film distribution, page views, or otherwise. Judge Gorenstein did not hold that journalists must earn a profit; he held that Section 79-h protects those who receive—or seek to receive—gain directly from the consumption of news, not investment managers who publish news hoping to profit from subsequent market activity. ECF 141 at 10–15.

---

[4] None of the cases Defendants cite on this point remotely suggest that Judge Gorenstein misread the legislative history. *Holmes v. Winter*, 22 N.Y.3d 300 (2013), merely stands for the proposition—which Judge Gorenstein acknowledged (ECF 141 at 8)—that Section 79-h should be construed broadly; it did not address the definition of "professional journalist." *Torah Soft Ltd. v. Drosnin*, 2001 WL 1425381 (S.D.N.Y. Nov. 14, 2001) and *Matter of Application of Home Box Office, Inc.*, 64 Misc. 3d 566 (Sup. Ct. N.Y. Cnty. 2019) both involved traditional journalists, an investigative journalist and writer, and a documentary filmmaker, respectively, who derived their living from journalism; neither case suggests that the Legislature abandoned the requirement that the claimant engage in journalism "for gain or livelihood." Defendants' quotation from *People v. Juarez*, 31 N.Y.3d 1186 (2018)—that Section 79-h has "always" been amended to "strengthen[]" its protections—comes not from the majority opinion, but from the dissent (*id*. at 1204–05 (Rivera, J., dissenting), and the statement addressed protections for a *New York Times* reporter resisting a subpoena, not the issue of who qualifies as a "professional journalist."

### III.    THE OBJECTION ALSO FAILS ON OTHER INDEPENDENT GROUNDS.

Because Judge Gorenstein correctly concluded that Defendants are not "professional journalists," he had no need to reach the separate grounds on which their motion fails, which Grifols briefed in its prior submissions.

*First*, Defendants never established that all recipients of the allegedly privileged materials qualify for protection under Section 79-h, nor did they overcome the resulting waiver issues. Defendants admit the documents were maintained in the "joint custody and control" of multiple Defendants. ECF 133 at 2. Thus, even if Yu and Gotham could invoke Section 79-h, Defendants had to establish that the privilege extends to others with whom the materials were shared but never did. *See* ECF 135 at 2–3. Most notably, Defendants concede that de Weck and GIP possessed the materials yet made no showing that either regularly processes news for public dissemination. To the contrary, GIP's sworn regulatory filings describe it as an investment adviser that disclaims journalism, and Defendants' own submissions describe GIP as Gotham's financial backer and trading vehicle, not a journalistic enterprise. ECF 127 at 2–4. A court recently declined to extend Section 79-h to precisely such a financial backer. *See Novagold Res., Inc. v. J Cap. Rsch. USA LLC*, 2025 WL 3218923 (W.D. Tex. Nov. 13, 2025) (applying New York's Shield Law). Under Section 79-h(g), disclosure to de Weck, GIP, Turtle Ship LLC—another admittedly non-journalist entity to which Defendants concede they disclosed their documents—or any other person "not otherwise entitled" to invoke the privilege waived it. ECF 127 at 4–7.

Defendants further waived any privilege by producing more than 65,000 documents concerning Grifols to the SEC. *Id.*; *see also* ECF 28-1, ¶ 21. Their contention that those disclosures were compelled fails because Defendants bore the burden of showing each was involuntary, yet their own counsel acknowledges the SEC proceeded against GIP by voluntary document requests

10

as well as subpoenas. ECF 127 at 5–6. At a minimum, those voluntary productions waived the privilege.

***Second***, even if the privilege applied and was not waived, the materials remain discoverable under the fairness doctrine. ECF 105 at 20–22. Defendants cannot rely on purported research, due diligence, communications with regulators, sourcing, and internal deliberations to argue good faith while withholding materials that may belie those assertions. *Id*.

***Third***, to the extent the materials are unpublished news not obtained or received in confidence, they are subject only to the qualified privilege and must be produced on the showing Section 79-h(c) requires. *See* ECF 141 at 6. The documents bear directly on actual malice—Defendants' knowledge, motives, sourcing, and state of mind. ECF 105 at 22–28. Those issues are central to the remaining claims, and the documents exist uniquely within Defendants' files, making them highly material to Grifols' defamation claim and unavailable elsewhere. They must be produced even if the privilege applies.

## **CONCLUSION**

For the foregoing reasons, Defendants' objection to Judge Gorenstein's May 19, 2026 Order denying Defendants' Cross-Motion for a Protective Order under New York's "Shield Law" should be overruled.

11

Dated:    June 24, 2026                    **PROSKAUER ROSE LLP**

                                          By:    */s/ Peter D. Doyle*

                                          Peter D. Doyle
                                          Jeff Warshafsky
                                          William T. Walsh, Jr.
                                          Michael Guggenheim
                                          PROSKAUER ROSE LLP
                                          Eleven Times Square
                                          New York, NY 10036
                                          Telephone: (212) 969-3000
                                          pdoyle@proskauer.com
                                          jwarshafsky@proskauer.com
                                          wwalsh@proskauer.com
                                          mguggenheim@proskauer.com

                                          *Counsel for Plaintiff Grifols, S.A.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing memorandum complies with the applicable word-count limitation. The memorandum contains 3,388 words, as calculated by the word-count function of Microsoft Word, excluding the caption, any index, table of contents, table of authorities, signature block, and required certificates, and including material contained in footnotes and endnotes.

Dated:    June 24, 2026                                   **PROSKAUER ROSE LLP**

By:    */s/ Peter D. Doyle*

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com

*Counsel for Plaintiff Grifols, S.A.*

13