MILLER KORZENIK RAYMAN LLP

THE PARAMOUNT BUILDING • 1501 BROADWAY, SUITE 2015 • NEW YORK, NY 10036
TEL 212-752-9200 • FAX 212-688-3996 • WWW.MKSR.LAW

July 23, 2026

**VIA ECF**
Hon. Gabriel W. Gorenstein, U.S.M.J.
United States District Court for the Southern District of New York

> Re:   ***Grifols, S.A. v. Yu, et al.*, No. 1:24-cv-00576-LJL-GWG;**
>        **In Response to Plaintiff Grifols S.A.'s Letter, ECF 174.**

Dear Judge Gorenstein:

Defendants have not breached any agreement with Plaintiff Grifols S.A. We disagree with the characterization put forth by Plaintiff Grifols S.A.'s July 21, 2026 letter, ECF 174.

Grifols' misunderstanding is evident in the way it explains the heart of the dispute. In its letter, Grifols argues that it seeks intervention from the Court because Defendants' waiver of their privilege to only "the documents they produced to the SEC would improperly preclude *relevant documents*." ECF 174, at 3 (emphasis added). This is in fact what privileges do; they bar discovery of otherwise relevant documents. No party is ever obligated to waive a privilege because the documents might be relevant, responsive to search terms or proportional. A privilege protects all types of otherwise relevant documents from production.

Grifols mischaracterizes what Defendants agreed to by applying a retroactive definition of "relevance" that Defendants did not adopt when they agreed to search the SEC-produced documents. In essence, Grifols argues that because it thinks documents outside of the SEC production are allegedly *relevant*, Defendants retroactively agreed to waive a privilege to them. This is not what Defendants agreed to, and it is not supported by the Parties' joint letters to the Court. ECF 157, 171.

Despite the tangled web Plaintiff presents, this dispute is not complicated. There is nothing for the Court to resolve here. If Defendants do not have a privilege, they have agreed to search and produce documents from the agreed upon repositories Grifols seeks. This is put forth in the Parties' joint letter, where the Parties agreed to positions "should Defendants' objection to the Court's denial of Defendants' Cross-Motion for a Protective Order under New York's Shield Law also be denied[.]" ECF 157. The joint-letter makes clear that the Parties' discussion about repositories was also premised on the objection being denied, as the letter went on to say, these searches were to be "over the agreed upon repositories still being negotiated by the parties[.]" *Id. See also* ECF 171 (agreeing to produce "responsive, *non-privileged* communications").

If Defendants do have a privilege to invoke, Plaintiffs must show more than simply that these documents are relevant and proportional under Rule 26 as articulated in Your Honor's Order, ECF 142. Instead, they must show that the repositories of documents it seeks are

particularly and critically needed, in short, that its case *rises and falls* with the production of these privileged documents. This is the standard under N.Y. CRL § 79-h, the Reporters Privilege. Plaintiff's entitlement to those documents has not been ruled on yet. Judge Liman took oral argument on Defendants' objection on July 22, 2026, and took the issue under advisement.

Instead of waiting to find out whether it is in fact entitled to broader discovery, Grifols seeks for this Court to superimpose a standard of relevance determined by Your Honor on May 19, ECF 142, onto an agreement that Defendants made months earlier, to essentially shoe-horn a mere relevance standard over privileged documents. When the Parties negotiated the search terms, Defendants agreed to those terms because they would be run over a repository of documents that Defendants' believed was already tailored to the facts of this case—the documents produced to the SEC. This is the repository of documents that Defendants specifically waived their privilege to. Defendants never agreed to waive their privilege to any further documents that this Court might have later found to be relevant under Rule 26.

Over a series of months, Grifols has been lobbying for Defendants to search additional documents not produced to the SEC. This includes approximately 20,000 unsolicited and impersonal chats from Bloomberg analysts that Defendants received in bulk, unsolicited and impersonal sell-side analyst email blasts that Defendants received in bulk, documents from 2022 (before Defendants began working in earnest on the Report), and Daniel Yu's personal email (from which he infrequently forwarded a limited number of articles to his work email). The SEC did not require Defendants to produce documents from these repositories when it investigated this same Report. Nevertheless, Grifols has argued that they are relevant, and continued to press Defendants to search them under Your Honor's view of actual malice discovery articulated in the May 19 Order on the Motion to Compel, ECF 142.

Defendants consistently maintained for months that they would not search these documents, and that the SEC-produced repository was what it was agreeing to search with the agreed upon search terms. *After* Your Honor's May 19 Order, ECF 142, Defendants read and understood the broad view of discovery that the Order appeared to be articulating. Because Your Honor had ordered the Parties to resolve their outstanding differences under the Court's view of Rule 26 discovery, on July 2, Defendants agreed to search the disputed repositories of documents based on the articulated scope of actual malice discovery and produce non-privileged documents. Defendants did not agree retroactively to a reading of relevance that this Court determined on May 19 to categorically expand their selective waiver past the SEC documents and moot the outstanding privilege objection to the extent those documents overlap.

Grifols' chart ignores the overlap between the documents that Defendants invoked a privilege to on November 26, 2025 in their Motion for Protective Order, and the documents Grifols claims Defendants then subsequently waived that privilege to, based on Grifols' definition of relevance and search terms negotiated to apply to the SEC production.

2

| Documents Grifols is Demanding Now | Documents to Be Protected in § 79-h Appeal |
|---|---|
| Two weeks of communications between Defendants without search terms | - Communications, drafts and editorial process for both dismissed and unchallenged statements, |
| Defendants' emails, cell phones and instant message communications from 2022 (before they began researching the Report) | - All source-related communications (confidential and non-confidential), |
| Unsolicited bulk emails to Defendants from Bloomberg analysts providing impersonal trading advice | - Broader deliberative materials relating to Grifols or Scranton. (ECF 93). |
| Unsolicited sell-side analyst email blasts to Defendants providing impersonal trading advice | |
| Daniel Yu's personal email (used regarding the Report only in sporadic instances of forwarding articles from his personal email to his work email) | |

Now Grifols is taking Defendants agreement on what documents would be relevant under Rule 26 discovery and conflating it with Defendants agreement to produce the documents pertaining to the Scranton Loan. This ignores that Defendants have consistently represented that the relevant documents *are* the documents produced to the SEC. To redefine that scope based on relevance under Rule 26 is not what Defendants agreed to. This would moot large portions of Defendants privilege invocation under N.Y. CRL § 79-h, which has been appealed, based on the negotiation of search terms to be applied over the SEC production.

The Parties' July 2 agreement to search these repositories did not prejudice Defendants' outstanding objection to the denial of their Reporters Privilege, decided on May 19, ECF 141. In their Motion for Protective Order, Defendants asserted a privilege to:
- Communications, drafts and editorial process for both dismissed and unchallenged statements,
- All source-related communications (confidential and non-confidential), and
- Broader deliberative materials relating to Grifols or Scranton. (ECF 93).

To the extent that Grifols argues it is prejudiced by the invocation of the privilege in this way—it is not. Defendants did not invoke the privilege as to every single document demand. Defendants agreed to provide financial information and business/organizational documents, encompassed in RFP 31, 33, 36 and 38, as well as RFP 19, and RFP 20. Defendants also agree that they will produce documents responsive to RFP 7, 8 and 11 as far as foreign law permits, based on a forthcoming affidavit from counsel in Spain. In addition, Defendants did produce the

3

agreed upon search terms—a very broad list of over 50 terms—as applied to the SEC-produced documents, resulting in approximately 2,800 documents.

In short, Defendants are willing to go beyond the SEC production if they do not have a Reporters' Privilege to invoke. Their agreement to produce documents from further repositories, based on Grifols argument that they are relevant under Your Honor's Ruling on May 19, did not moot or waive Defendants' Reporters Privilege objection.

If Defendants have protection under the Reporters' Privilege, Grifols is not entitled to documents just because they are allegedly "relevant." If Defendants do have a Reporters Privilege, Plaintiff must show that their case *rises and falls with* the documents it seeks— thousands of blast emails Defendants said they did not rely on, documents from a time period they were not working on the Report, Mr. Yu's personal email where he did not communicate about the Report, and communcations without any search terms. Grifols has not made this showing, nor could it.

Throughout the discovery process, Grifols has manifested a sense of entitlement to documents it has not yet proven it to be entitled to. This is a mistaken presumption common among commerciai litigators; an irate disbelief that a civil statute, like Shield Law, could protect allegedly relevant documents. They imagine that only Rule 26 applies. But this is what privileges do—protect discovery of otherwise relevant documents. Grifols does not get to re-define that scope before the privileged has even been ruled on as final by arguing for its own unilateral determination of relevance, based on search terms the Parties' negotiated to apply to a limited universe of documents months ago.

Respectfully,

David S. Korzenik

*Attorney for Defendants*

4