Proskauer Proskauer Rose LLP Eleven Times Square New York, NY 10036-8299

September 2, 2026

Peter D. Doyle
Member of the Firm
d +1.212.969.3688
f 212.969.2900
pdoyle@proskauer.com
www.proskauer.com

**Via ECF**
Hon. Gabriel L. Gorenstein, U.S.M.J.

**Re: *Grifols, S.A. v. Yu, et al.*, No. 1:24-cv-00576-LJL-GLG**

Dear Judge Gorenstein:

Grifols respectfully requests a protective order under Fed. R. Civ. P. 26(c) concerning Defendants' discovery requests, which collectively seek an abusive audit of Grifols' business. Grifols' pending claims concern Defendants' admittedly erroneous assertions that Grifols' public filings did not disclose a $95 million loan to Scranton Enterprises B.V. (the "Scranton Loan Statements"). Judge Liman found that every other challenged statement was protected opinion. ECF 56 at 28–41. Defendants nonetheless demand discovery into the veracity of statements throughout the Gotham Report, as well as Grifols' accounting, leverage, other related-party transactions, and post-publication corporate events—a fishing expedition irrelevant to substantial truth, actual malice, damages, or anti-SLAPP counterclaims.

First, the requested discovery cannot lead to relevant evidence concerning Grifols' claims or Defendants' defenses to those claims. Defendants contend their unpleaded "substantial truth" defense entitles them to explore "the substantial truth of the entire [Gotham] report." That is wrong. Defendants concede they made false statements about the Scranton Loan in their Answer. *See* ECF 55 at 2. Whether statements about other subjects were true cannot make the admittedly false Scranton Loan Statements substantially true. Judge Liman held any such defense must rest on the substantial truth of *the Scranton Loan Statements*. Defendants also cannot use their opinion defense as both a shield and a sword—successfully arguing that these statements are incapable of being proven true or false, only to now demand discovery from Grifols to somehow prove those same statements "true." Actual malice turns on what Defendants knew when they published—not what Defendants might learn from reviewing additional Grifols documents sought via discovery. And Grifols' damages turn on the harm caused by the false Scranton Loan Statements—not the "truth" of Defendants' other opinions.

Second, Defendants contend their anti-SLAPP counterclaims permit discovery into every statement Grifols sued over. But N.Y. Civ. Rights Law § 70-a asks whether the "***action***" was commenced without a substantial basis or for a prohibited purpose—it does not parse each individual claim. Judge Liman already ruled that "the statute speaks to the commencement of the 'action,' not each individual claim." ECF 56 at 49 n.20. Without waiving privilege, Grifols has agreed not to object to discovery concerning its reasons and purpose for commencing the Action, but Defendants are not entitled to merits discovery on claims no longer at issue.

Grifols therefore requests a protective order under Rule 26(c) that it need not supplement its responses to provide discovery (i) to establish the truth of statements in the Gotham Report other than the Scranton Loan Statements, whether characterized as relevant to substantial truth,

actual malice, or damages, or (ii) into the merits of dismissed claims, as distinct from Grifols' reasons and purpose for commencing and continuing the Action.[1]

## I. Background

Since discovery began in July 2025, Defendants have resisted providing materials, arguing discovery should be narrow given the limited remaining claims. *See, e.g.*, ECF 91 at 2 ("There is a focused, law-guided frame in which information can be sought in this narrowed case which attacks a *single statement* in a Report that is otherwise non-actionable."); *id*. at 9 ("One statement is at issue; the rest of the Report has been ruled constitutionally protected speech."). In July 2026, after Your Honor found Defendants could not hide behind New York's Shield Law (ECF 141), Defendants reversed course and served sweeping discovery demands. Ex. A.

Grifols timely responded and objected. Grifols agreed to produce responsive, nonprivileged discovery concerning the Scranton Loan Statements and its claimed damages, and has since amended its responses to narrow its anti-SLAPP objection and to provide discovery concerning its reasons and purpose both for commencing and maintaining this Action, despite the Action surviving Defendants' Motion to Dismiss. Ex. B.

Grifols objects, however, to Defendants' attempt to expand discovery to include the "truth" of the remainder of the Gotham Report in order to litigate dismissed claims. Indeed, Defendants' initial set of requests encompass Grifols' historical dealings with Scranton beyond the Loan; accounting and consolidation of Haema and BPC Plasma; Grifols' EBITDA and leverage; unrelated loans and related-party transactions; communications with regulators and auditors; and pre- and post-publication corporate events. *See* Ex. A. Rather than narrow those demands following the parties' meet-and-confer, Defendants have since expanded them further, including by seeking information via a second set of requests concerning Grifols' relationship and communications with its outside counsel, Osborne Clarke, and pursuing an utterly baseless theory that Grifols somehow had a role in UBS's January 2024 termination of its banking relationship with GIP. *See* Ex. C, RFP Nos. 38–45. These subjects are not discoverable under any of Defendants' theories.

## II. Defendants Cannot Obtain Discovery Into Unrelated Statements And Transactions Addressed Elsewhere In The Gotham Report.

Defendants contend "the substantial truth of the entire [Gotham] report" is relevant to the "gist" or "sting" of the false Scranton Loan Statements. Aug. 13, 2026 email from G. Vernick. That theory would convert surviving claims about a $95 million loan into an audit of virtually

[1] Grifols respectfully submits this letter pursuant to Paragraph 2.A of Your Honor's Individual Practices. The parties met and conferred regarding these disputes but were unable to reach resolution. To the extent the Court believes it would be helpful, Grifols respectfully requests permission to submit a formal motion addressing these issues.

every transaction criticized in a 65-page report. Neither Judge Liman's ruling, New York law, nor Rule 26 condone that overreach.

Judge Liman already rejected expanding any substantial truth defense beyond the Scranton Loan Statements. Defendants argued the statements were substantially true because the CNMV later found Grifols failed to "break down" the Loan in a related-party table. ECF 28 at 14. Judge Liman held that "without merit" because failing to "disaggregate and break down the Scranton Loan" has a "different effect on the mind of the reader" than asserting it was never disclosed. ECF 56 at 42 n.18. If even aggregation of the Scranton Loan itself cannot render Defendants' statement substantially true, unrelated opinions about distinct issues like EBITDA or leverage plainly cannot.

New York law forecloses using separate statements, even if appearing in the same publication and even if they relate to the same subject matter, to establish substantial truth of a particular defamatory statement. *See Greenberg v. Spitzer*, 155 A.D.3d 27, 46–50 (2d Dep't 2017) (analyzing challenged statements individually and holding a false statement actionable notwithstanding an accurate statement earlier in the same interview concerning the same underlying fact); *Mitre Sports Int'l Ltd. v. Home Box Off., Inc.*, 2010 WL 1507792, at *2–3 (S.D.N.Y. Apr. 15, 2010) (rejecting as "too broad" reliance on misconduct in China to establish substantial truth of statements about India and Pakistan); *Manzo v. Westchester Rockland Newspapers, Inc.*, 106 A.D.2d 492, 493 (2d Dep't 1984) (striking interrogatories seeking to prove "the truth of an independent and unconnected defamatory charge"); *see also Sharon v. Time, Inc.*, 103 F.R.D. 86, 92–93 (S.D.N.Y. 1984); *Giuffre v. Dershowitz*, 2021 WL 5233551, at *4–5 (S.D.N.Y. Nov. 10, 2021).

Defendants' requests disregard those limitations. RFP Nos. 1(b)–(j), 3–4, 13–15, 28, Interrogatory Nos. 1–9, and RFA Nos. 16–26 seek discovery on other loans, guarantees, and financial arrangements. RFP Nos. 8, 11 probe consolidation and accounting for Haema and BPC. RFP Nos. 6–9, 20, 24–25 seek information on Grifols' EBITDA, leverage, transactions with ImmunoTek, SRAAS, and plasma-center economics. None of this can change whether stating the Scranton Loan was undisclosed had the same effect on readers as the truth that it was disclosed.

More fundamentally, Defendants seek discovery about statements Judge Liman held to be opinion: of six categories Grifols challenged, "only" the Scranton Loan Statements conveyed facts, and "only assertions of fact are capable of being proven false." ECF 56 at 18, 21–28. Defendants argued the Report's assessments of EBITDA, leverage, Haema/BPC consolidation, and ImmunoTek were "***objectively incapable of 'proof or disproof***,'" ECF 25 at 9, and Judge Liman agreed—EBITDA, for instance, "is not a fact that can be proven true or false." ECF 56 at 29–30.

When confronted with this argument during the parties' meet-and-confer, Defendants' counsel responded that while opinions themselves might not be testable, opinions can be based on facts, and those underlying facts can be proven true or false. But Grifols never alleged that any of those underlying facts in the Gotham Report were false. Other than with respect to the Scranton Loan, Grifols did not accuse Defendants of falsifying the contents of its public filings; it challenged

the conclusions and characterizations Defendants drew from them.[2] Judge Liman ultimately held those conclusions to be protected opinion. Thus, discovery concerning Grifols' EBITDA will shed no light on whether Defendants' opinions of how the EBITDA should be stated differently was "true," nor whether Defendants subjectively believed their opinion was correct.

Nor did Defendants plead truth or substantial truth as an affirmative defense, as Rule 8(c) requires. *Garcia v. Puccio*, 17 A.D.3d 199, 201 (1st Dep't 2005); *see Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 245–47 (2d Cir. 2017). Notably, that failure waived the defense. *Fregoe v. Fregoe*, 33 A.D.3d 1182, 1182–83 (3d Dep't 2006), and it cannot now be expanded into a license for plenary discovery into subjects Defendants never pleaded.

Defendants argue that Grifols may not seek discovery into Defendants' editorial process beyond the Scranton Loan Statements, while refusing to provide discovery into Grifols' documents beyond Grifols' public disclosure of the Scranton Loan. Not so. Actual malice concerns Defendants' state of mind, and their process for selecting, interpreting, and presenting information that amounts to circumstantial evidence of their state of mind, including why they chose to feature the Scranton Loan Statements as the Report's headline, and whether they disregarded information inconsistent with the Scranton Loan Statements. *See* ECF 142 at 4–8. The relevant evidence concerns what Defendants knew when publishing. No discovery from Grifols can possibly bear on that subject.

Defendants' attempt to rebut Grifols' damages theory does not justify this broad discovery either. Grifols must prove the Scranton Loan Statements caused its harm, and Defendants may test causation. But that inquiry does not turn on the "truth" of Defendants' other opinions. Evidence of what caused the harm does not require adjudicating nonactionable, dismissed opinions.

Finally, the burden of producing this discovery is disproportionate given these requests have no bearing on the truth of the Scranton Loan Statements, Defendants' state of mind, or causation of damages. *See Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 424 (S.D.N.Y. 2019) ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken."). Rule 26(c) exists to prevent this. *See* Fed. R. Civ. P. 26(b)(1), (c)(1). Indeed, Defendants argued discovery beyond the Scranton Loan Statements would be "disproportionate to the scope of this action—one remaining single claim." ECF 109 at 17.

[2] Judge Liman found that the Report described its opinions as based on "publicly obtainable information," and its "Bases" consisted of "specific pieces of financial information drawn from public filings.") *S*ee ECF 56 at 4, 24. Specifically, as to EBITDA, debt, and consolidation—the subjects of much of Defendants' requested discovery—Defendants' criticisms "all start[ed] with undisputed facts" concerning Grifols' reporting, after which Defendants expressed their own views about what those facts meant*.* *Id*. at 30.

Proskauer



**III. Section 70-a Does Not Permit Defendants to Seek Discovery Beyond Grifols' Purpose For Commencing and Maintaining this Action.**

Defendants contend § 70-a entitles them to discovery concerning "the entire Complaint and the Amended Complaint" because the dismissed claims were part of the Action when commenced. But that conflates the statutory inquiry into whether Grifols had a substantial basis to commence the Action with a claim-by-claim inquiry the statute does not require.

The statutory text is clear. Subsection (1)(a) permits recovery upon finding "the action" was "commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a(1)(a). To the extent that Defendants intend to argue that they can recover under § 70-a on a claim-by-claim basis, that is wrong. Judge Liman rejected Defendants' claim-by-claim construction: "the statute speaks to the commencement of the 'action,' not each individual claim." ECF 56 at 49 n.20. *See also LoanStreet, Inc. v. Troia*, 2023 WL 5836237, at *7 (S.D.N.Y. Sept. 8, 2023) (looking to surviving claims in concluding "the action" had a substantial basis).

What remains relevant is Grifols' purpose for bringing and maintaining the Action. Subsections (b) and (c) require additional proof "the action" was commenced or continued for the purpose—or "sole purpose"—of harassing, intimidating, punishing, or otherwise maliciously inhibiting protected activity. *Id.* § 70-a(1)(b)–(c). Those inquiries concern why Grifols sued—not whether dismissed statements were viable—and why it has maintained this Action. And Grifols has committed to providing such discovery. In response to RFP No. 5, Grifols will produce documents concerning its reasons for commencing and maintaining this Action; it made the same commitment for governmental communications under RFP No. 16; and under Interrogatory No. 10 it agreed to identify decision-makers who discussed those reasons.

What Defendants may not do is transform that inquiry into plenary merits discovery for dismissed claims. Discovery on Haema/BPC consolidation, EBITDA, leverage, ImmunoTek, SRAAS, and unrelated Scranton transactions does not become relevant merely because Grifols previously challenged statements on those subjects. Judge Liman dismissed those statements as protected opinion—not susceptible to proof—so discovery cannot show they were "true." ECF 56 at 28–41. Nor would proving their supposed truth establish Grifols' purpose for suing.

The same applies to requests concerning post-Report corporate events, including executive departures, investigators, and other matters untethered to Grifols' reasons for suing. *See, e.g.*, Ex. A; RFP Nos. 17, 19, 21–23; Interrogatory Nos. 11–15; Ex. C. To the extent such information bears on Grifols' reasons for commencing or maintaining the Action, Grifols will provide responsive, nonprivileged discovery. But a subject's appearance in the original pleadings does not make its underlying merits independently discoverable under § 70-a.

Respectfully submitted,
*/s/ Peter D. Doyle*
Peter D. Doyle