Proskauer Proskauer Rose LLP Eleven Times Square New York, NY 10036-8299

Peter D. Doyle
Member of the Firm
d +1.212.969.3688
f 212.969.2900
pdoyle@proskauer.com
www.proskauer.com

September 23, 2026

**Via ECF**
Hon. Gabriel W. Gorenstein, U.S.M.J.

**Re: *Grifols, S.A. v. Yu, et al.*, No. 1:24-cv-00576-LJL-GWG**

Dear Judge Gorenstein:

Defendants' opposition does not dispute that to prevail on this application, Grifols need only show there is "at least a close question" whether Christian Cluett and Kristina Caruana are managing agents of GIP, with any remaining doubt resolved in Grifols' favor. The declaration from Defendant Cyrus de Weck fails to rebut that Grifols has met that "modest" burden.

Defendants do not meaningfully address the contemporaneous documents Grifols submitted showing the authority and discretion Mr. Cluett and Ms. Caruana actually exercised in connection with the events leading to this lawsuit. Nor do they submit contemporaneous documents of their own showing otherwise. Instead, their opposition rests principally on Mr. de Weck characterizing both employees as junior subordinates performing work at his and Mr. Yu's direction. But the managing-agent inquiry is fact-specific, and the contemporaneous record—not the labels Defendants place on these witnesses in the midst of litigation—shows that Mr. Cluett worked alongside Mr. Yu and Mr. de Weck in researching, drafting, and finalizing the Gotham Report, while Ms. Caruana exercised operational judgment in administering the Grifols trading through which Defendants sought to profit from its publication. With those facts in mind, the relevant factors all tilt in Grifols' favor—and at a minimum there is at least a close question, satisfying Grifols' burden.

Defendants' remaining arguments do not alter—or even bear on—that conclusion. Their accusations about Grifols' supposed commencing a "retaliation campaign" and failing to diligently conduct discovery are erroneous and plainly designed to distract from the inquiry at hand. Whatever Defendants believe Grifols has done or not done, that has no bearing on the straightforward Rule 30(b)(1) analysis before the Court.

Finally, Defendants' procedural objection is moot. Grifols has now served deposition notices for both witnesses, attached as Exs. N, O. The only question remaining is therefore whether the record satisfies Grifols' modest burden to establish managing-agent status for each individual. As set forth below, it does.

## I. Christian Cluett is a Managing Agent of GIP.

Defendants concede that the second and fifth managing-agent factors favor Grifols—GIP can rely on Mr. Cluett to testify at its request, and he identifies with GIP's interests. ECF 201 at 3.

Proskauer

Hon. Gabriel W. Gorenstein, U.S.M.J.
Page 2

As for the three remaining factors, GIP's regulatory filings and contemporaneous documents rebut Defendants' effort to portray Mr. Cluett as a junior analyst who merely followed instructions.

First, Mr. Cluett exercised judgment and discretion over matters central to the Gotham Report. Defendants now assert that Mr. Cluett merely performed "discrete tasks" at the direction of Mr. Yu and Mr. de Weck, who supposedly retained all discretion over the Report. ECF 201-1 ¶¶ 5–6. GIP's regulatory filings and contemporaneous documents show otherwise.

GIP's UK regulatory filings from the last two years, including its audited financial statements, identify Mr. Cluett as one of just three Members of GIP, a "Person with Significant Control," and describe him as having "the right to exercise, or actually exercises, significant influence over the LLP." Exs. P (OC399737), Q (P10_1_GIP_2024). That contradicts Mr. de Weck's present assertion that Mr. Cluett lacks authority over GIP. *See* ECF 201-1 ¶ 4. In addition, on [redacted] Ex. E (GCR_0045544) at 548. That contradicts Mr. de Weck's present assertion that Mr. Cluett's work on the Gotham Report was limited to "conducting research, preparing data and tables, and performing other discrete tasks." *See* ECF 201-1 ¶ 6.

Defendants' documents produced in this case support what they told regulators, not what Mr. de Weck is telling this Court. In one newly submitted exchange, [redacted] Ex. R (GCR_0049786) at 786. *See also* Ex. S (GCR_0060384) at 385 [redacted] Ex. T (GCR_0047269). This evidence aligns with the record in Grifols' opening submission showing that Mr. Cluett [redacted] Exs. C–F.

Second, the existence of Mr. Yu and Mr. de Weck above Mr. Cluett in GIP's hierarchy does not defeat managing-agent status. Defendants repeatedly emphasize that Mr. Yu and Mr. de Weck possessed ultimate authority over GIP and the Report. ECF 201 at 3–4; ECF 201-1 ¶¶ 2–6. But the managing-agent test asks whether persons of higher authority exist "in the area regarding which the information is sought," not whether the proposed deponent outranks every other knowledgeable employee. *Dubai Islamic Bank v. Citibank, N.A.*, 2002 WL 1159699, at *3 (S.D.N.Y. May 31, 2002). [redacted] (Ex. E at 548), [redacted] Exs. B, D, S. Indeed, GIP has stated that Mr. Cluett has "the right to exercise, or actually exercises, significant influence or control over" GIP's operations (Ex. P), which the record shows includes [redacted] Ex. D (GCR_0052232). The fact that Mr. de Weck and Mr. Yu claim

Proskauer

Hon. Gabriel W. Gorenstein, U.S.M.J.
Page 3

to have retained final authority does not erase the substantial authority and discretion Mr. Cluett exercised. *See Iron Mountain (Nederland) Data Ctr. Germany B.V. v. WSP USA Buildings, Inc.*, 2024 WL 2846607, at *1–2 (S.D.N.Y. May 30, 2024) (finding managing-agent status notwithstanding higher-ranking personnel where employee exercised discretion concerning matters central to litigation).

Defendants' cases underscore the distinction. In *Cambridge Capital LLC v. Ruby Has LLC*, the record did not establish what the proposed deponent's role entailed and showed that he referred the relevant negotiations upward rather than participating in them alongside the ultimate decisionmakers. 2022 WL 889143, at *2 (S.D.N.Y. Mar. 24, 2022). And *MF Global Holdings* involved employees who worked under more senior audit-team members rather than exercising judgment alongside them on the matters at issue. 232 F. Supp. 3d 558, 574 (S.D.N.Y. 2017). Here, the contemporaneous documents show the opposite: Mr. Cluett worked alongside Mr. Yu and Mr. de Weck to analyze, draft, revise, and finalize the Gotham Report, including the portions directly relevant to this litigation.

Third, Mr. Cluett's involvement continued throughout drafting the Report: [redacted] Ex. U (GCR_0059810) at 812 [redacted] Those responsibilities go directly to the subject of Grifols' surviving claim—Defendants' research, analysis, and publication of the Scranton Loan Statements—and belie any suggestion that his involvement was merely incidental. *See Iron Mountain*, 2024 WL 2846607, at *1–2 (responsibilities supported managing-agent status where employee investigated and coordinated issues "at the crux" of the litigation); *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 96–97 (S.D.N.Y. 1968) (employees qualified based on responsibility for specific tasks concerning the relevant investigation).

Given the factual record, Defendants' junior-associate analogy is inapplicable. Whatever label Defendants now place on Mr. Cluett, he was one of three GIP Members who could influence GIP's operations, one of three identified drafters of the Gotham Report, and a substantive participant in researching and drafting the Report's discussion of Scranton-related issues. He is also disclosed in Defendants' Initial Disclosures as being a knowledgeable witness. At minimum, Grifols has met its modest burden to establish a "close question" as to managing-agent status, with any remaining doubt resolved in Grifols' favor. *Dubai Islamic Bank*, 2002 WL 1159699, at *4; *see also DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 2022 WL 2162992, at *5 (S.D.N.Y. May 31, 2022) (employees were managing agents where they were identified as potential witnesses in initial disclosures, designated as document review custodians, and listed as Portfolio Managers on the company's website); *Rubin v. Gen. Tire & Rubber Co.*, 18 F.R.D. 51, 56 (S.D.N.Y. 1955) (employees who negotiated certain agreements, were responsible for the delivery of certain goods and participated in conferences concerning the claims at issue were managing agents).

Proskauer



## II. Kristina Caruana is a Managing Agent of GIP.

Defendants' argument that Ms. Caruana cannot qualify as a managing agent because she performs supposedly "ministerial" back-office functions is foreclosed by the functional nature of the managing-agent inquiry. *Stanley Works Israel Ltd. v. 500 Grp., Inc.*, 2019 WL 5485266, at *3 (D. Conn. Oct. 25, 2019), is particularly instructive. There, the employer likewise characterized an employee's responsibilities as "exclusively 'ministerial,'" and its formal delegation-of-authority document did not give her authority over the transaction at issue. *Id*. The court nevertheless found her a managing agent because her actual responsibilities exceeded her formally delegated authority: she was identified as having authorized the relevant wire transfer, corresponded with outside parties concerning the disputed payment, and exercised judgment in doing so. *Id*. The court therefore held that "corporate formalities cannot supersede evidence of day-to-day discretionary power and responsibilities regarding the matter at issue." *Id*.

The evidence concerning Ms. Caruana is stronger. Like the employee in *Stanley Works*, Ms. Caruana communicated directly with outside institutions and exercised judgment concerning the transactions at issue. But unlike that employee, the record contains numerous contemporaneous examples documenting that authority during the critical trading period. Defendants cannot avoid that evidence by labeling her responsibilities "back-office, trade-processing, and settlement-administrative functions," ECF 201-1 ¶¶ 9–10, any more than the employer in *Stanley Works* could transform discretionary responsibilities into ministerial ones through its own characterization of the employee's formal role.

For example, on January 3, 2024, Ms. Caruana [redacted] Ex. V (GCR_0045633). That action is consistent with the broader contemporaneous record Grifols submitted with its opening letter which showed that Ms. Caruana—during the critical period surrounding publication—[redacted] Exs. G–M. Those are precisely the type of "day-to-day discretionary power and responsibilities regarding the matter at issue" that *Stanley Works* held cannot be displaced by an employer's characterization of an employee's role as ministerial. 2019 WL 5485266, at *3.

Nor does Defendants' observation that Ms. Caruana was "on a leave of absence from GIP until approximately one week before the Gotham Report's publication" undermine that showing. ECF 201-1 ¶ 9. That is just another way of saying she was working at GIP during the most critical period at issue in this lawsuit. Indeed, she returned in time to administer GIP's Grifols short position immediately prior to publication—the very trading activity through which Defendants sought to profit from the Report. And Defendants themselves agreed on November 10, 2025, to

Proskauer



amend their Initial Disclosures to identify Ms. Caruana, confirming that she possesses relevant knowledge concerning the matters at issue. See ECF 195 at 4; *see also DoubleLine Cap. LP*, 2022 WL 2162992, at *4–5. As with Mr. Cluett, the existence of more senior personnel does not negate the authority and judgment Ms. Caruana actually exercised.

***

Respectfully submitted,

*/s/ Peter D. Doyle*