**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GRIFOLS, S.A.,

Plaintiff,

-against-

DANIEL YU, GOTHAM CITY RESEARCH LLC, GENERAL INDUSTRIAL PARTNERS LLP, CYRUS DE WECK,

Defendants.

No: 1:24-cv-00576-LJL

# GRIFOLS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER AFFIRMING THE DENIAL OF DEFENDANTS' CROSS-MOTION FOR A PROTECTIVE ORDER UNDER NEW YORK'S SHIELD LAW

Proskauer Rose LLP

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
Peter C. Angelica
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com
pangelica@proskauer.com

*Counsel for Plaintiff Grifols, S.A.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......... 1

PROCEDURAL BACKGROUND .......... 2

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

I. JUDGE LIMAN'S OPINION WAS CORRECT. .......... 5

II. DEFENDANTS' UNFAIRNESS ARGUMENT FALLS FLAT. .......... 7

III. DEFENDANTS' NEW ARGUMENTS FAIL. .......... 9

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*,
684 F.3d 36 (2d Cir. 2012) ... 4, 9

*Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*,
2016 WL 3162218 (N.D. Cal. 2016) ... 6

*Chevron Corp. v. Berlinger*,
629 F.3d 297 (2d Cir. 2011) ... 6

*Corpac v. Rubin & Rothman LLC*,
10 F. Supp. 3d 349 (E.D.N.Y. 2013) ... 9

*Great Am. Ins. Co. v. Zelik*,
439 F. Supp. 3d 284 (S.D.N.Y. 2020) ... 9

*In re Fitch, Inc.*,
330 F.3d 104 (2d Cir. 2003) ... 6, 7

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
729 F.3d 99 (2d Cir. 2013) ... 4

*Major v. Diageo N. Am., Inc.*,
2022 WL 2079756 (S.D.N.Y. 2022) (Liman, J.) ... 9

*Mauro Motors Inc. v. Old Carco LLC*,
420 F. App'x 89 (2d Cir. 2011) ... 8

*Murray Energy Corp. v. Reorg Rsch., Inc.*,
152 A.D.3d 445 (1st Dep't 2017) ... 6

*Persh v. Petersen*,
2016 WL 5793749 (S.D.N.Y. 2016) ... 7

*Power Auth. of N.Y. v. Tug M/V Ellen S. Bouchard*,
433 F. Supp. 3d 477 (S.D.N.Y. 2019) ... 6

*Puddu v. NYGG (Asia) Ltd.*,
2022 WL 2789250 (S.D.N.Y. 2022) ... 4

*Pugh-Ozua v. Springhill Suites*,
2020 WL 6562376 (S.D.N.Y. 2020) .......... 4

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995) .......... 5, 7

*Van Buskirk v. United Grp. of Cos.*,
935 F.3d 49 (2d Cir. 2019) .......... 4

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992) .......... 4

**STATUTE**

N.Y. Civ. Rights Law § 79-h .......... 2, 3, 6, 9, 10

**RULES**

L. Civ. R. 6.3 .......... 4

Fed. R. Civ. P. 72(a) .......... 4

## PRELIMINARY STATEMENT

Defendants have now filed their eighth brief seeking protection under New York's reporter's privilege, yet claim they lacked an opportunity to present evidence. The record refutes that claim. Defendants themselves identified the statute's two "foundational elements" they ultimately failed to meet: (1) that they publish news "for gain or livelihood" and (2) that they are affiliated with an entity that "has as one of its regular functions the processing and researching of news." ECF 93 ¶ 15; ECF 94 at 1 n.1. Because Defendants' initial submission was supported only by an affidavit from their litigation counsel, Judge Gorenstein gave them a second chance to submit "all the facts necessary" to establish the privilege. ECF 117 at 3:4–4:9. Defendants then filed numerous supplemental affidavits, but none showed that anyone pays Yu or de Weck to publish news or that their companies regularly process and research news. ECF 186 at 7. Defendants were not denied an opportunity to present supporting evidence; they simply had none. Indeed, they conceded that they had "no third-party sources of financial support" in connection with their research and publication of the Gotham Report. ECF 109 at 14.

Defendants contend the Court's opinion "affirms on a single ground." ECF 200 at 6. Not so. The opinion expressly rests on ***two*** independent grounds: (1) that Defendants "failed to demonstrate that Yu or De Weck made their gain or livelihood from newsgathering activities," and (2) that Defendants "also have not established that Gotham is an entity 'which has as one of its regular functions the processing and researching of news intended for dissemination to the public.'" ECF 186 at 21, 22–23. Defendants never engage the second ground—a failure fatal to this motion. And as to the first, the record clearly shows that both judges who considered the issue got it right: Defendants submitted no evidence they are paid for their "reporting," they admitted nobody paid them to publish about Grifols, and Grifols submitted substantial evidence that Defendants are *not* paid to report news.

Defendants also attack strawmen. They argue that "[t]he Shield Law and the First Amendment do not withdraw protection from a publisher simply because it also holds a financial stake in the outcome of its reporting on a matter of public concern." ECF 200 at 4. But Grifols

never made that argument, the Court did not adopt it, and the First Amendment is not at issue. Nor does § 79-h provide a "public interest" basis for the privilege. The statute has discrete elements that the Court correctly found Defendants failed to meet. Disagreement with that outcome is not grounds for reconsideration.

After eight briefs, seven affidavits, and two hearings, the conclusion is clear: Defendants are not professional journalists under § 79-h. Their motion should be denied.

## PROCEDURAL BACKGROUND

On November 26, 2025, Defendants filed their 79-h Motion, arguing that § 79-h shielded relevant and responsive documents. ECF 92. Their own supporting affidavit identified the two "Foundational Elements" the Court later found lacking: a person must be engaged "for gain or livelihood" in gathering or preparing news for a professional medium, and that medium must "ha[ve] as one of its regular functions the processing and researching of news." ECF 93 at 4–5. The affidavit asserted "gain" only in conclusory fashion without first-hand evidence.

Grifols opposed on December 17, 2025, arguing Defendants were not professional journalists and could not invoke New York's reporter's privilege. ECF 105 at 7, 8, 13, 14. In reply, Defendants conceded they had "no third-party sources of financial support" in connection with their research and publication of the Gotham Report. ECF 109 at 14.

On March 4, 2026, Judge Gorenstein held a telephone conference on Defendants' motion. ECF 117. There, Defendants' counsel claimed his affidavit provided facts for the "foundation" of the reporter's privilege. *Id.* at 7:12. Judge Gorenstein disagreed and provided Defendants another opportunity to submit evidence on the "foundational questions," specifically requesting "all the facts necessary for me to find in their favor on the reporters privilege." *Id.* at 4:3–5, 8:25.

Defendants then submitted declarations from Cyrus de Weck and Daniel Yu. ECF 119–122. De Weck stated that Defendants "publish our reports for 'gain and livelihood,'" but explained only that Defendants "short the stocks on which we report and hope to benefit in doing so." ECF 120 ¶ 19. Yu said nothing about "gain or livelihood." Neither addressed whether Gotham publishes

based on newsworthiness, as the second statutory element requires. ECF 186 at 7.

Grifols responded on March 20, 2026, emphasizing that Defendants still failed to meet the "gain or livelihood" and "regular" processing of news requirements. ECF 127. Grifols also submitted contradictory evidence showing Defendants cannot meet these requirements—for example, in regulatory filings Defendants had *disclaimed* receiving any revenue from publishing. *See id.* and exhibits.

Via unauthorized sur-reply, Defendants pivoted and offered a new argument that § 79-h's definition of professional journalist was a "functional definition" rather than addressing the statutory elements. ECF 133. Grifols responded, again arguing that Defendants had not met the statutory elements. ECF 135 at 3.

Judge Gorenstein denied the 79-h Motion on May 19, 2026, holding that Defendants did not qualify as professional journalists. ECF 141 at 7–8. He found that Defendants had offered no evidence that anybody pays Yu or de Weck for reports, and that "[n]othing in the record reflects <u>any</u> direct connection between Yu and De Weck's production of reports and their 'gain or livelihood.'" *Id.* at 10–11 (emphasis in original).

Defendants objected on June 10, 2026, and the parties again briefed the "gain or livelihood" issue. ECF 156; ECF 161; ECF 164. The Court heard oral argument on Defendants' objection on July 22, 2026. Defendants' counsel claimed de Weck's declaration showed they are compensated for journalism, but when pressed, could not identify the supporting paragraph. ECF 180 at 45:6–23. When the Court directly asked where "in the record before Judge Gorenstein" there was evidence of the claimed non-contingent monthly fees, counsel conceded there was none and "[w]e just stated we earned money on the contingent earnings." *Id.* at 46:5–9.

On August 20, 2026, the Court issued a 23-page opinion affirming Judge Gorenstein's denial of the 79-h Motion. ECF 186. That opinion affirmed Judge Gorenstein on two independent grounds. First, the Court found that "Defendants have failed to demonstrate that Yu or De Weck made their gain or livelihood from newsgathering activities." ECF 186 at 21. Second, the Court held that Defendants "also have not established that Gotham is an entity 'which has as one of its

regular functions the processing and researching of news intended for dissemination to the public.'" *Id.* at 22–23. In doing so, the Court specifically addressed Defendants' belated assertion that they received a "management fee" and held that a district judge "is bound to the factual record presented in the first instance" and that, "[r]egardless, the new fact would not change the Court's conclusion, because Defendants still do not assert that this salary funds the production and dissemination of news, as opposed to the production of reports whose purpose are only to augment Defendants' trading activities." *Id.* at 22–23 n.10.

The Court extended Defendants' deadline to seek reconsideration, and Defendants filed this motion. ECF 187, 189, 200.

**LEGAL STANDARD**

A motion for reconsideration is an "extraordinary request" granted only in "rare circumstances." *Van Buskirk v. United Grp. of Cos.*, 935 F.3d 49, 54 (2d Cir. 2019). The decision to grant or deny a motion for reconsideration rests within the "sound discretion of the district court." *Puddu v. NYGG (Asia) Ltd.*, 2022 WL 2789250, at *1 (S.D.N.Y. 2022).[1] The standard for granting a motion for reconsideration is "strict." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)); *see also* L. Civ. R. 6.3. Motions for reconsideration are "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52.

[1] Defendants' underlying motion to the Court was made under Fed. R. Civ. P. 72(a), where the "standard of review is highly deferential, and magistrate judges are afforded broad discretion in resolving nondispositive disputes" and therefore "reversal is appropriate only if their discretion is abused." ECF 186 at 9 (quoting *Pugh-Ozua v. Springhill Suites*, 2020 WL 6562376, at *3 (S.D.N.Y. 2020) (cleaned up)).

## ARGUMENT

A motion for reconsideration cannot succeed when the movant mischaracterizes the very decision it seeks to revisit and proffers new arguments never made in the underlying motion. This motion is a last-gasp effort to delay producing materials that this Court has already deemed relevant and that Defendants have been withholding for nearly a year.

### I. JUDGE LIMAN'S OPINION WAS CORRECT.

Defendants fundamentally mischaracterize the Court's opinion by claiming it "affirms on a single ground." ECF 200 at 6. In fact, the decision expressly rests on ***two*** independent bases. ***First***, the Court held that Defendants' motion "fails because, even if they make their livelihood through Gotham or GIP, they fail to show that they are paid for their reporting activities." ECF 186 at 22. ***Second***, the Court found "Defendants *also* have not established that Gotham is an entity 'which has as one of its regular functions the processing and researching of news intended for dissemination to the public.'" *Id.* at 22–23 (emphasis added). Critically, Defendants' motion ignores this second ground. Where a decision rests on multiple independent grounds, a party seeking reconsideration must challenge each one. Failure to do so is fatal to the motion. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that … might reasonably be expected to alter the conclusion reached by the court.").

Moreover, the Court correctly held that Defendants are not professional journalists and therefore not entitled to the reporter's privilege. Defendants try to read the statutory requirements out of the analysis by framing their burden as simply "whether the publisher gathered information with the intent to disseminate it to the public and exercised independent editorial judgment." ECF 200 at 6. But as Defendants know, that is not the statutory test. The statute imposes specific prerequisites to qualify as a *professional* journalist: "gain or livelihood" from journalism *and* affiliation with an entity that regularly functions to process and research news. ECF 93 ¶ 15; ECF 94 at 1 n.1. The Court correctly found *both* these statutory requirements were not satisfied here. As the Court explained, "to earn the protection of the Shield Law, a person must show more than

that he or she, for gain or livelihood, gathers information that would be of public interest or concern and that will be publicly disseminated"—otherwise "[v]irtually all factual information, presented in the right form and in the right context, could be considered 'news' ... and the person who writes it up for money therefore considered a 'professional journalist.'" ECF 186 at 17. Applying that standard, the Court found that Defendants "fail to differentiate themselves from the stock promoter or the ad man." *Id.* at 22 (citing *Beaver Cnty. Emps. Ret. Fund v. Tile Shop Holdings, Inc.*, 2016 WL 3162218, at *4 (N.D. Cal. 2016)). That reasoning is faithful to both the statutory text and the legislative purpose.

Defendants' central contention—that the Court "overlooked controlling and persuasive authority"—is refuted by the opinion itself. ECF 200 at 5. The Court did not "overlook" *In re Fitch, Inc.*, 330 F.3d 104 (2d Cir. 2003); it analyzed *Fitch* at length, including the Second Circuit's distinction between Fitch and S&P. ECF 186 at 18–20. Nor did it overlook *Murray Energy Corp. v. Reorg Rsch.*, Inc., 152 A.D.3d 445 (1st Dep't 2017); it addressed that decision twice and explained why it does not foreclose the inquiry Defendants resist. *Id.* at 13 n.6, 20. Disagreement with a court's conclusions is not a basis for reconsideration. *Power Auth. of N.Y. v. Tug M/V Ellen S. Bouchard*, 433 F. Supp. 3d 477, 479 (S.D.N.Y. 2019).

Defendants' reliance on *Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011), fares no better. Although Defendants' own motion (and unauthorized reply) did not cite *Chevron* (*see* ECF 156 and 164)—appropriately so, since the case did not involve § 79-h—Defendants' counsel relied on the case extensively at argument (ECF 180), and the Court addressed it head on. Quoting *Chevron*, the Court explained that "[w]hile freedom of speech and of the press belongs to virtually anyone who intends to publish anything ... all those who intend to publish do not share an equal entitlement to the press privilege from compelled disclosure." ECF 186 at 18 (quoting *Chevron*, 629 F.3d at 307–08).[2] Defendants suggest that because a publisher with a "point of view" can

[2] This conclusion applies even more forcefully in the context of § 79-h, rather than the broader federal privilege at issue in *Chevron*, since New York limits the privilege to *professional* journalists.

qualify for the privilege, their financial interests should not matter. But the Court expressly rejected that argument: "[I]t is not enough that the reports contain meaningful information about public companies and that they require extensive work. The same assertions could have been made about the reports generated by *Fitch*." *Id.* at 23. Reconsideration is available for matters a court overlooked—not for holdings a movant disputes. *Shrader*, 70 F.3d at 257.

The Court also specifically addressed Defendants' belated "management fees" argument and found it unavailing, noting that "the new fact would not change the Court's conclusion, because Defendants still do not assert that this salary funds the production and dissemination of news, as opposed to the production of reports whose purpose are only to augment Defendants' trading activities." ECF 186 at 22 n.10. What the Court's opinion makes clear is that it is not enough to profit from trading *after* publishing: Defendants' claim fails because they "fail to show that they are paid for their reporting activities" and because "they fail to differentiate themselves from the stock promoter or the ad man—putting information out into the world not because of the exercise of judgment regarding its newsworthiness, but exclusively to enhance the value of property that they hold." *Id.* at 22. Reconsideration is not proper when a party "reiterates the same arguments made in support of [a prior] motion." *Persh v. Petersen*, 2016 WL 5793749, at *2 (S.D.N.Y. 2016).

## II. DEFENDANTS' UNFAIRNESS ARGUMENT FALLS FLAT.

Defendants argue they deserve reconsideration or yet another chance to offer evidence because they lacked an adequate opportunity to do so. ECF 200 at 10–11. Not so. The Korzenik affidavit accompanying Defendants' original motion identified both statutory requirements: (1) working "for gain or livelihood" in journalism, and (2) affiliation with an entity that "has as one of its regular functions the processing and researching of news." ECF 93 ¶ 15; ECF 94 at 1 n.1. Having identified these requirements, Defendants are to blame for failing to submit any purported evidence. Judge Gorenstein could have denied their motion then and there.

Nevertheless, Judge Gorenstein generously offered Defendants a chance to supplement

their motion, and he expressly asked them to provide "all the facts necessary for me to find in their favor on the reporters privilege." ECF 117 at 4:3–5. Defendants therefore had every opportunity to provide the Court with a factual basis to support their claim of privilege. They did not do so because they could not do so. What Defendants characterize as "unfair surprise" is simply the consequence of their failure to submit evidence going to the statutory elements—an evidentiary gap that Grifols repeatedly pointed to (along with submitting contradictory evidence) throughout the lengthy briefing process. Where, as here, a party had notice of the governing standard and a full opportunity to address it—indeed, where that party *defined* that standard in its own papers—reconsideration is unwarranted. *Mauro Motors Inc. v. Old Carco LLC*, 420 F. App'x 89 (2d Cir. 2011) ("A motion to reconsider a judgment must be rejected if 'there was an opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action.'").

Defendants' assertion that "[t]he proceedings below briefed whether the Report was 'news' and whether Defendants earned 'gain or livelihood' from journalism in the general sense" (ECF 200 at 5) is false. The proceedings briefed exactly what the Court decided: whether Defendants satisfied the statutory requirements for the reporter's privilege—including whether they made their "gain or livelihood" from *journalism* rather than from short-selling. Grifols' briefing was explicit on this point: "Yu does not claim Gotham earns revenue when readers consume its content or subscribe to its reporting. Nor does he show, as the statute requires, that he was paid by Gotham to research and publish the report about Grifols. That is because Gotham and Yu earn no revenue from publication itself. Instead, Yu indirectly benefits from his short reports by causing the market to move in GIP's favor." ECF 127 at 2; *see id.* at 3–4 (addressing GIP and de Weck).

Defendants' claim that they were required to "allocate compensation between reporting and trading with accounting precision" (ECF 200 at 11) or "prove a particular temporal sequence" (*id.*) mischaracterizes the Court's ruling. The Court did not impose an accounting test; it applied the statute's requirement that gain or livelihood be derived from journalism, and that reporting be pursued based on newsworthiness, not exclusively due to a short position. ECF 186 at 21–23. That is precisely what Grifols argued and precisely what Defendants failed to show. Reconsideration is

not the proper vehicle for "examining a decision and then plugging the gaps of a lost motion with additional matters." *Great Am. Ins. Co. v. Zelik*, 439 F. Supp. 3d 284, 286 (S.D.N.Y. 2020). Manifest injustice requires an error that is "direct, obvious, and observable"—none has been asserted or exists here. *Corpac v. Rubin & Rothman LLC*, 10 F. Supp. 3d 349, 354 (E.D.N.Y. 2013).

Defendants' alternative request—leave to supplement the record with "targeted evidence" about their compensation and Gotham's subject-selection process (ECF 200 at 10–11)—fails for the same reasons. Defendants made that identical request at oral argument, proffering that Yu and de Weck "receive[] fees monthly for the work that they do" and asking to "be permitted to put that affidavit in." ECF 180 at 47–48. The Court considered and rejected it. ECF 186 at 22 n.10. Reconsideration is not an occasion to renew a request the Court has already denied. *Analytical Surveys*, 684 F.3d at 52.

## III. DEFENDANTS' NEW ARGUMENTS FAIL.

Defendants raise for the first time a new "public interest" argument, contending they are entitled to the privilege because their reporting serves the public interest. ECF 200 at 4, 8–9. This argument fails. First, new arguments cannot be raised on reconsideration absent novel developments in case law, and none has been shown here. *Major v. Diageo N. Am., Inc.*, 2022 WL 2079756, at *3 (S.D.N.Y. 2022) (Liman, J.). Second, this argument ignores the statutory requirements of the Shield Law; merely establishing that one publishes news does not make them a professional journalist. *See* § 79-h; ECF 186.

Defendants contend that "[t]he Shield Law and the First Amendment do not withdraw protection from a publisher simply because it also holds a financial stake in the outcome of its reporting on a matter of public concern." ECF 200 at 4. But that is not what Grifols argued, and it is not what either court held. Neither decision addressed whether a financial stake alone disqualifies a claimant. To the contrary, the Court expressly acknowledged that "having a 'bias' or 'point of view' does not disqualify a claimant from the privilege's protections" and that "[a]

person can write a negative report about a company and still be entitled to the privilege." ECF 186 at 14. The dispositive issue—as Grifols argued throughout and as both judges to consider this issue held—is that Defendants' *compensation* comes from trading, not professional journalism as § 79-h(a)(6) requires.

At bottom, Defendants' attempt to reframe the issue as one of "public interest" or "financial stake" is an effort to avoid the statutory text they cannot satisfy. The statute they invoked to claim privilege has specific statutory elements. They failed to meet them.

## CONCLUSION

For the reasons stated above, and for any others the Court deems proper, Defendants' motion for reconsideration should be denied.

Dated: September 28, 2026

**PROSKAUER ROSE LLP**

*/s/ Peter D. Doyle*

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
Peter C. Angelica
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com
pangelica@proskauer.com
*Counsel for Plaintiff Grifols, S.A.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing memorandum complies with the applicable word-count limitation. The memorandum contains 3,489 words, as calculated by the word-count function of Microsoft Word, excluding the caption, any index, table of contents, table of authorities, signature block, and required certificates, and including material contained in footnotes and endnotes.

Dated: September 28, 2026

**PROSKAUER ROSE LLP**

*/s/ Peter D. Doyle*

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
Peter C. Angelica
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com
pangelica@proskauer.com
*Counsel for Plaintiff Grifols, S.A.*