UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

GRIFOLS, S.A. et al.,

Plaintiffs,

-v.-

YU et al.,

Defendants.

---------------------------------------------------------------x

MEMORANDUM ORDER

24 Civ. 576 (LJL) (GWG)

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

Plaintiff Grifols, S.A. has served notices of deposition for two employees of Defendant, General Industrial Partners LLP ("GIP") pursuant to Fed. R. Civ. P. 30(b)(1). (Docket ## 207/208, Exs. N, O). The employees are Christian Cluett and Kristina Caruana. Plaintiffs assert the notices are proper because Cluett and Caruana are managing agents of GIP (id.; Docket ## 195/196) and defendants argue to the contrary (Docket ## 201). We construe defendants' arguments as an application to strike the notices of deposition. For the reasons stated below, this application is denied.

Under Rule 30(b)(1), a corporate party may be required to produce its "officer, director, or managing agent" for deposition. Dubai Islamic Bank v. Citibank, N.A., 2002 WL 1159699, at *2 (S.D.N.Y. May 31, 2002). In determining whether a witness qualifies as a "managing agent," courts commonly consider the following five factors: "1) whether the individual is invested with general powers allowing him to exercise judgment and discretion in corporate matters; 2) whether the individual can be relied upon to give testimony, at his employer's request, in response to the demands of the examining party; 3) whether any person or persons are employed by the corporate employer in positions of higher authority than the individual designated in the area regarding which the information is sought by the examination; 4) the general responsibilities of the individual respecting the matters involved in the litigation; and 5) whether the individual can be expected to identify with the interests of the corporation." Id. at *3 (quoting Sugarhill Records Ltd. v. Motown Record Corp., 150 F.R.D. 166, 170 (S.D.N.Y. 1985)). Case law is clear that the burden to demonstrate that an individual as a "managing agent" is "modest," id. at *4, and the examining party satisfies its burden when it produces "enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent." United States v. Afram Lines (USA), Ltd., 159 F.R.D. 408, 414 (S.D.N.Y. 1994); accord 7 Moore's Federal Practice, § 30.03[2] (2026) at 30-20 ("when a person's managing agent status is debatable, courts usually resolve doubts in favor of the examining party").

As noted in United States v. Afram Lines (USA), Ltd., 159 F.R.D. 408 (S.D.N.Y. 1994), it "promotes judicial economy to proceed with a deposition by notice" where, as here, "the only pretrial consequence of finding a party to be a managing agent is that the deposition will take place by notice rather than by subpoena," id at 414, or in this case by means of the Hague Convention inasmuch as Cluett and Caruana are located abroad. This is not a situation where the employees at issue have left the employment of the corporate defendant or are otherwise not within the control of that defendant.

Further, as Afram Lines points out, doubts should be resolved in favor of the examining party where, as here, "the examining party has not obtained full discovery from its adversary on the status of the proposed deponent." Id.

We next examine the status of Cluett and Caruana. We note that defendants have conceded that both individuals satisfy the second and fifth of the "managing agent" factors. (Docket # 201 at 3).

I. Christian Cluett

As an initial matter, we give little weight to the fact that GIP's regulatory filings identify Cluett as a "Partner" and an individual with "significant control" who has the "right to exercise, or actually exercises, significant influence over the LLP." (Docket # 195/196 at 1; Docket # 207/208 at 2; Docket # 207-3; Docket # 207-4). Instead, a managing agent must be determined by daily functions and responsibilities rather than mere titles. See generally Stanley Works Israel Ltd. v. 500 Grp., Inc., 2019 WL 5485266, at *3 (D. Conn. Oct. 25, 2019) ("corporate formalities cannot supersede evidence of day-to-day discretionary power and responsibilities regarding the matter at issue"); Copan Italia S.P.A. v. Puritan Med. Prods. Co. LLC, 2019 WL 6179224, at *5 (D. Me. Nov. 20, 2019) (deponent's "title of 'Senior Key Account Manager,' standing alone has little relevance to the [managing agent] inquiry.") (citing Afram, 159 F.R.D. at 413 ("[w]hether a proposed deponent falls into a particular category of employees or agents is . . . less relevant than the individual's specific functions and authority")).

Nonetheless, as defendants themselves conceded in another context, Cluett is the only person other than the two individual defendants — Daniel Yu, head of defendant Gotham City Research and Cyrus De Weck, head of GIP — who was involved in preparing the Report that contained the defamatory statements and that is at the center of this case. See Docket # 195-5 at *6. As De Weck explains, Cluett conducted "research and analysis" for defendants, even it was at De Weck and Yu's "direction." Declaration of Cyrus De Weck, dated September 14, 2026 (Docket # 201-1) ("De Weck Decl."), ¶ 4. Defendants do not contest plaintiff's assertion that Cluett developed "substantive themes," "personally drafted" the report at issue, and "extensively revised the report." (Docket # 201 at 3).

We accept De Weck's assertion that Cluett does not have "general powers" to exercise judgment or discretion over defendant Gotham's "corporate affairs" and that he does not set or

direct GIP's "management policies, business strategy, or investment decisions." De Weck Decl. ¶ 4. But the managing agent analysis does not ask us to determine what Cluett's role is generally with respect to corporate affairs. What we address instead is the "evidence of day-to-day discretionary power and responsibilities regarding the matter at issue." Stanley Works, 2019 WL 5485266, at *3 (emphasis added).

One "matter at issue" with respect to the deposition testimony sought here is whether the defendants acted with "actual malice": that is, whether the defendants had "knowledge" that the statement in the Report about the Scranton loan was false or engaged in "reckless disregard as to [its] falsity" in the process of drafting the Report that was ultimately issued. Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015). Activities at the heart of the actual malice analysis here will therefore include the initial research and drafting of the Report. As a result, the person responsible for initially researching the Scranton loan (and other aspects of Grifols operation) and creating a draft of the Report describing Grifols' situation necessarily has significant power and responsibilities over the issue of research and drafting.

De Weck tells us, rather conclusorily, that he and Yu "direct[ed]" Cluett's "research activities." De Weck Decl. ¶ 2. But De Weck's declaration does not suggest that Cluett's research about the Scranton loan and other aspects of Grifols operations was cabined by some specific directives from his superiors; rather De Weck's declaration is consistent with the conclusion that Cluett had significant (and perhaps even unchecked) power and responsibility to conduct the initial research and subsequent drafting as he saw fit. De Weck further asserts, again conclusorily, that he and Yu had "complete authority and control over the content, analysis [and] conclusions" of the Report, De Weck Decl. ¶ 5, and describes Cluett's research as a "discrete task[]." id. ¶ 6. Again, these statements simply do not address the issue of whether there was any limitation or control over Cluett in his day-to-day activities of conducting the initial research and writing or exploring the various avenues such work entails — the nature of which are critical to the issue of "actual malice." Nor does it matter that De Weck and Yu had sole "discretion" and "control" as to what ultimately made it into the final Report, id., given that one critical area of discovery in this case centers on the process of the initial researching and drafting. We ultimately have no concrete evidence that these critical tasks were outside the discretion and control of Cluett himself.

On the question of whether there were persons of "higher authority" regarding this process of research and drafting, we accept that Yu and De Weck made the final decisions regarding the content of the Report. But, as noted, we do not have evidence that they were involved in the researching or writing that initially committed to text the false statements regarding the Scranton loan. Thus we cannot say that Yu and De Weck were of higher authority than Cluett "in the area regarding which the information is sought by the examination." Dubai Islamic Bank, 2002 WL 1159699, at *2.

As to Cluett's "general responsibilities," id, we have already explained his responsibilities with respect to the critical areas of researching and writing. We accept that, as defendant vociferously argues, De Weck and Yu had ultimate responsibility for approving the

language in the report – in the same way that a law firm partner is responsible for a brief as filed even if a junior associate did research on it, to use defendants' analogy (Docket # 201 at 3). But the law of defamation is unusual in that the very act of researching and making editorial choices prior to publication is properly at the center of a defamation plaintiff's case.

Finally, unlike situations where it is unclear whether the deponent would be "willing to appear for sworn testimony," and whether the deponent could "identify with the interests" of the corporate defendant, Cambridge Capital LLC v. Ruby Has LLC, 2022 WL 889143, at *2 (S.D.N.Y. Mar. 24, 2022), defendants concede that these two factors favor plaintiffs. (Docket # 201 at 3).

We agree with Judge Tenney that "the term 'managing agent' should not be given too literal an interpretation but rather should depend largely on whether the interests of the individual involved are identified with those of his principal and on the nature of his 'functions, responsibilities and authority * * * *respecting the subject matter of the litigation*." Tomingas v. Douglas Aircraft Co., 45 F.R.D. 94, 96 (S.D.N.Y 1968) (quoting Kolb v. A.H. Bull Steamship Co., 31 F.R.D. 252, 254 (E.D.N.Y. 1962)) (emphasis in original). That is certainly the case here. Further, it is of no moment that Cluett himself does not actually "manage" any lower level employees. In Tomingas, the "managing agents" were engineers inspecting the site of an airplane crash and there was no suggestion that they managed anybody. Tomingas, 45 F.R.D. at 96; see generally Sugarhill Records Ltd. v. Motown Rec. Corp., 105 F.R.D. 166, 170 (S.D.N.Y. 1985) (court found person responsible for "obtaining . . . clearances" for corporate defendant to be managing agent without noting any evidence that the employee supervised others).

"[I]t is not required that all factors work in favor of finding the proposed deponent to be a managing agent." Botell v. United States, 2013 WL 360410, at *5 (E.D. Cal. Jan. 29, 2013). On balance, there is at least a "close question" as to Cluett's status as a "managing agent" with respect to the initial researching and drafting of the Report. Even though he "may not be [a] 'managing agent[]' in the course of his everyday duties for the defendant corporation, [he is a] 'managing agent[]' for the purpose of giving testimony regarding" the relevant aspects of this litigation. Tomingas, 45 F.R.D. at 96–97. Thus, Cluett is properly subject to a notice of deposition under Fed. R. Civ. P. 30(b)(1).

II. Kristina Caruana

As reflected in emails sent by Caruana, Caruana identified trading issues, instructed brokers, and reached out to outside entities to execute the defendants' short selling of the Grifols stock. (Docket #195-7, 8, 9, 10, 11). Defendants concede that she "handle[d] day-to-day back-office operational matters for GIP, including trade processing, settlement administration and related ministerial tasks." De Weck Decl. ¶ 9.

Defendants center their argument that Caruana cannot be considered a managing agent on their assertion that her actions are "ministerial" in nature. (Docket #201 at 4-5). We do not find the term "ministerial" to be particularly helpful in determining Caruana's relationship to the

corporate defendant, however, for purposes of conducting the "managing agent" analysis. Once again, the issue we must address is not simply the nature of Caruana's duties generally, but, more importantly, what her role in the corporation is in relation to those duties. De Weck offers only the conclusory assertion that Caruana operates under the "direction" of him and Mr. Yu, id. ¶¶ 9, 10; he gives no indication of what that direction involved. For all we can tell Caruana had significant discretion and authority over the mechanics of how to execute the short selling strategy even if at some point she took "direction" from Yu and De Weck or operated pursuant to "standing instructions and firm policies." Id. ¶ 9. In the end, Caruana appears to have been the decisionmaker with respect to how trades should be allocated, split, corrected and settled and would also communicate with the institutions responsible for implementing the trades. (Docket #195/196 at 5; Docket #207/208 at 4). We have no evidence of any other individual at GIP providing authorization or directing such actions.

Turning to the other factors, it is conceded that Caruana can be relied upon to give testimony at defendants' request and that she can be expected to identify with the interests of the corporation. (Docket # 201 at 3). While De Weck and Yu had ultimate authority over the implementation of the short selling, there is no indication that they exercised that authority with respect to Caruana's activities as to Grifols. Defendants do not contest that the mechanics of that implementation represent an important area of inquiry in this lawsuit. Accordingly, we conclude that it is at least a "close question" as to whether Caruana was a managing agent on the issue of the execution of the short selling strategy. As noted, a "close question" requires that we conclude that Caruana fits the designation of "managing agent."

Conclusion

Grifols has properly noticed the depositions of Cluett and Caruana pursuant to Rule 30(b)(1). Accordingly, defendants' request (as we have construed defendants' papers) to strike those notices is denied.

SO ORDERED.

Dated: September 30, 2026
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge