Proskauer Proskauer Rose LLP Eleven Times Square New York, NY 10036-8299

October 13, 2026

Peter D. Doyle
Member of the Firm
d +1.212.969.3688
f 212.969.2900
pdoyle@proskauer.com
www.proskauer.com

**Via ECF**
Hon. Lewis J. Liman, U.S.D.J.
Hon. Gabriel W. Gorenstein, U.S.M.J.

**Re: *Grifols, S.A. v. Yu, et al.*, No. 1:24-cv-00576-LJL-GWG**

Dear Judge Liman and Judge Gorenstein:

In advance of the October 14 teleconference with the Court (ECF 238), Grifols respectfully submits this response to Defendants' September 30, 2026 and October 9, 2026 letters relating to their forthcoming challenge to this Court's subject matter jurisdiction (ECF 214 & 227).

Grifols will oppose Defendants' anticipated motion to dismiss for lack of subject matter jurisdiction. Based on its pre-suit investigation, Grifols reasonably believed, and therefore alleged, that Daniel Yu was domiciled in New York. Defendants did not dispute that allegation. *See* ECF 55. To the contrary, Mr. Yu affirmatively alleged that "[t]his Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship," *id.* ¶ CC1, and invoked that jurisdiction to pursue a counterclaim Grifols has litigated in this Court for over a year.

Defendants now call their own allegation an unexplained "mistake" and claim they only recently investigated Mr. Yu's domicile. That is not credible. Defendants must have investigated Mr. Yu's domicile given that Grifols alleged he was domiciled in New York and Defendants themselves alleged diversity jurisdiction. Further, Mr. Yu retained two United States law firms who both had obligations to investigate the whereabouts of their client for reasons beyond the pleadings in this case (for example, for Know Your Client-purposes).[1] The notion that Mr. Yu's domicile was just discovered to be outside the United States is implausible.

Defendants' alternative theory—that the dismissal of Grifols Shared Services North America, Inc. ("GSSNA") destroyed diversity—fares no better. Diversity is measured "against the state of facts that existed at the time of filing," *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570–71 (2004), and jurisdiction that exists at commencement "may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991); *accord Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998). GSSNA was not a nominal party in this lawsuit. It is Grifols' primary United States operating entity, which, with its affiliates, employs more than 18,000 people—75% of Grifols' global workforce—and it suffered its own

[1] Defendants' new counsel from Akin Gump appeared in this case on July 6, 2026. But according to Mr. de Weck, Akin Gump has represented Defendants, including Mr. Yu, since early 2024, devoting over 700 hours that year alone to counseling them and producing documents to the SEC. ECF 29-1 ¶ 21 & Ex. A. Akin Gump has also been involved in the discovery process in this case since at least November 2025 despite not filing a notice of appearance until more recently. ECF 80 at 1, n.3.

injury as a guarantor of Grifols' bonds and a party to its Credit Agreement, bearing any increased costs of capital and other harms due to Defendants. ECF 115 ¶¶ 53, 83, 229.

The Court's later Rule 12(b)(6) ruling that those allegations did not state a claim for GSSNA was not a finding that GSSNA was collusively joined. Even so, out of an abundance of caution, on June 10, 2025, Grifols asked Defendants' then-lead counsel, David Korzenik, whether Defendants would contest subject matter jurisdiction in light of the Court's motion to dismiss decision. In response, Mr. Korzenik confirmed that Defendants would not do so.[2] Grifols relied on Defendants' assurance in various respects, including opting not to seek leave to amend or move for reconsideration of the Court's motion to dismiss decision. For this reason and others, Defendants should be estopped from changing their position on jurisdiction midway through this case, and the Court should grant Grifols leeway should it choose to amend its complaint at this juncture.

For more than a year, Defendants have manufactured one reason after another to withhold documents bearing on, among other things, actual malice—first relevance objections that forced Grifols to move to compel, then their claimed reporter's privilege, their objection to Judge Gorenstein's ruling on that issue, and then a meritless motion for reargument of Judge Liman's ruling affirming Judge Gorenstein. Only once those excuses ran out did Defendants suddenly claim that the Court lacked jurisdiction all along—jurisdiction they themselves invoked over a year ago. The Court should reject this ploy and order Defendants to continue participating in merits discovery, including by immediately producing the documents they have been withholding for nearly a year on various improper bases.[3]

In addition, the Court should afford Grifols fair and sufficient jurisdictional discovery concerning Mr. Yu's new claim—over two years into this lawsuit—that he was not domiciled in the United States in January 2024. His forthcoming testimony is entitled to "slight weight." *Shcherbakovskiy v. Seitz*, 2010 WL 1063566, at *3 (S.D.N.Y. Mar. 23, 2010). Documents bearing on Mr. Yu's domicile, and testimony from witnesses who know Mr. Yu and his intentions, are essential to deciding this important issue.

To that end, the parties have been discussing jurisdictional discovery and tried to reach agreement on a joint letter concerning this subject, but were unable to do so. Contrary to Defendants' assertion in ECF 227, Grifols did not refuse to join Defendants' proposed joint letter simply because they would not agree to "multiple jurisdictional discovery depositions." Rather, while Grifols sought an orderly process for addressing Defendants' jurisdictional challenge,

---

[2] On a recent meet-and-confer before he withdrew from this case, Mr. Korzenik acknowledged and did not dispute that representation.

[3] Defendants' new counsel has informed Grifols that Defendants have placed merits discovery on the "back burner" so they can focus on their jurisdictional challenge.

Defendants repeatedly shifted their representations about the evidence they intend to offer and ultimately refused to assure Grifols that it could test the assertions of Defendants' own witnesses.

At the parties' October 6 meet and confer, Defendants represented that they would rely on a declaration from Mr. Yu and supporting documents concerning his purported foreign domicile. Grifols requested those materials so the parties could assess the scope and timing of jurisdictional discovery and propose a briefing schedule. Defendants refused, insisting that Grifols should wait until their October 16 filing to learn what evidence, if any, supports Mr. Yu's newfound position.

Defendants' position then shifted. On October 9, while negotiating a joint letter to the Court, Defendants disclosed for the first time that they might also submit declarations from other Defendants beyond Mr. Yu and potentially each of defendant GIP's members. Grifols therefore requested confirmation that Defendants would make any such declarants available for depositions—an assurance that was particularly important given that Grifols previously had to seek Court intervention to compel GIP to produce its managing agents for merits depositions. ECF 216. Defendants refused and instead demanded that Grifols agree to their proposed letter within the next 44 minutes, which Grifols declined to do.

At any rate, the parties agree that there should be jurisdictional discovery before Grifols responds to Defendants' motion, and that it is premature to set a schedule for briefing or jurisdictional discovery. Once Defendants file their motion, Grifols will promptly meet and confer with Defendants concerning an appropriate jurisdictional discovery and briefing schedule.

We thank the Court for its time and attention and look forward to addressing these issues with the Court tomorrow.

Respectfully submitted,

*/s/ Peter D. Doyle*