**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GRIFOLS, S.A.,<br>Plaintiff,<br><br>v.<br><br>DANIEL YU, GOTHAM CITY RESEARCH LLC, GENERAL INDUSTRIAL PARTNERS LLP, and CYRUS DE WECK,<br><br>Defendants. | Index No. 1:24-cv-00576-LJL |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY MERITS DISCOVERY

AKIN GUMP STRAUSS HAUER & FELD LLP

Uri A. Itkin
Michael A. Asaro
John C. Murphy

One Bryant Park
New York, NY 10036

*Counsel for Defendants Daniel Yu, Gotham City Research LLC, General Industrial Partners LLP, and Cyrus de Weck*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .....1

RELEVANT FACTS .....2
- I. Mr. Yu Has Been Domiciled in [redacted] Since Before 2020 .....4
- II. Mr. Yu Is the Sole Member of Gotham .....6
- III. GSSNA Was Not a Proper Plaintiff .....6
- IV. Procedural Posture .....7

ARGUMENT .....8
- I. Defendants Are Likely To Succeed On The Merits of Their Dismissal Motion .....9
  - A. Mr. Yu's [redacted] Domicile Destroyed Diversity from the Outset .....11
    - 1. U.S. Citizens Domiciled Abroad Are Stateless and Not Diverse .....11
    - 2. Mr. Yu is a U.S. Citizen Domiciled in [redacted] and is Therefore Stateless and Not Diverse .....12
    - 3. Mr. Yu's [redacted] Domicile Renders Gotham Stateless and Not Diverse .....14
    - 4. The Presence of Stateless Parties—Mr. Yu and Gotham—Irreparably Destroyed Diversity from the Outset .....15
  - B. GSSNA Could Not Have Been the Basis for Diversity .....16
    - 1. GSSNA Was a Nominal Party with No Real or Substantial Interest in This Case .....16
    - 2. GSSNA's Dismissal Further Destroyed Diversity .....17
  - C. That Defendants Did Not Raise Subject Matter Jurisdiction Earlier Does Not Affect the Analysis .....19
- II. Proceeding with Merits Discovery Would Impose a Substantial Burden on Defendants .....19
- III. Plaintiff Faces No Undue Prejudice from Pausing Merits Discovery .....22

CONCLUSION .....23

**TABLE OF AUTHORITIES**

**CASES**

*Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857 (2d Cir. 1995)................................ 17

*Barnes v. Fort Hamilton Family Homes*, 524 F. Supp. 3d 40 (E.D.N.Y. 2021)........................... 15

*Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42 (2d Cir. 2012) ................. 14

*Boelter v. Hearst Commc'ns*, No. 15-cv-3934, 2016 WL 361554 (S.D.N.Y. Jan. 28, 2016).... 8, 20

*Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996)................................................................................... 18

*Chenming Holdings (Hong Kong) Ltd. v. Sklarov*, No. 24-cv-935, 2025 WL 2695281 (S.D.N.Y. Sept. 22, 2025)............................................................................................ 11, 12, 15

*Cohen v. United States*, No. 21-cv-10774, 2022 WL 2181457 (S.D.N.Y. June 16, 2022) ...... 9, 23

*Conolly v. Taylor*, 27 U.S. 556 (1829) ............................................................................................ 10

*Core VCT PLC v. Hensley*, 89 F. Supp. 3d 104 (D.D.C. 2015) ............................................. 13, 14

*Cota v. Art Brand Studios, LLC*, No. 21-CV-1519 (LJL), 2022 WL 767110 (S.D.N.Y. Mar. 14, 2022) ........................................................................................................................ 8, 9, 22

*Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79 (2d Cir. 2000)................. 15

*Cresswell v. Sullivan & Cromwell*, 922 F.2d 60 (2d Cir. 1990) ........................................ 1, 11, 15

*Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75 (S.D.N.Y. 2020) ................................................. 20

*Feher v. Dimension Grp. LLC*, No. 25-CV-00039 (LDH) (CHK), 2026 WL 177740 (E.D.N.Y. Jan. 15, 2026).................................................................................................. 12, 13, 14, 15

*Fellows v. Universal Servs. of Am., LP*, 25-CV-10659 (GHW) (BCM), 2026 WL 2085727 (S.D.N.Y. July 20, 2026)................................................................................................. 23

*Freidrich v. Davis*, 767 F.3d 374 (3d Cir. 2014) ........................................................................... 13

*Growth Fund v. Morgan Stanley & Co. Int'l*, No. 97 Civ. 2583, 1998 WL 375201 (S.D.N.Y. July 2, 1998) .......................................................................................................................... 19

*Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567 (2004).................................... 10, 17, 18

*Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315 (2d Cir. 2001)................................................ 10

*Hong Leong Fin. Ltd. v. Pinnacle Performance Ltd.*, 297 F.R.D. 69 (S.D.N.Y. 2013) ........... 8, 21

*In re Term Commodities Cotton Futures Litig.*, No. 12 Civ. 5126 (ALC) (KNF), 2013 WL 1907738 (S.D.N.Y. May 8, 2013) ........ 22, 23

*Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433 (S.D.N.Y. 2002) ........ 19

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ........ 10

*Merrill Lynch & Co. v. Allegheny Ener., Inc.*, 500 F.3d 171 (2d Cir. 2007) ........ 18

*Nat'l Artists Mgmt. Co. v. Weaving,* 769 F. Supp. 1224 (S.D.N.Y. 1991) ........ 13

*Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980) ........ 17

*Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) ........ 10, 11, 17

*NML Capital, Ltd. v. Republic of Argentina*, No. 09 Civ. 7013 (TPG), 2011 WL 524433 (S.D.N.Y. Feb. 15, 2011) ........ 15

*O'Sullivan v. Deutsche Bank AG*, No. 17 Civ. 8709 (LTS) (GWG), 2018 WL 1989585 (S.D.N.Y. Apr. 26, 2018) ........ 22

*Okin v. Jiminy Peak, Inc.*, No. CV-94-4330, 1995 WL 116277 (E.D.N.Y. Feb. 24, 1995) ........ 23

*Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978) ........ 18

*Palazzo v. Corio*, 232 F.3d 38 (2d Cir. 2000) ........ 12

*Renois v. WVMF Funding*, *LLC*, No. 20-CV-9281 (LTS) (DF), 2021 WL 1721818 (S.D.N.Y. Apr. 30, 2021) ........ 8, 20

*Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046 (S.D.N.Y. 1981) .... 16, 17

*Shulman v. Becker & Poliakoff, LLP*, No. 17-CV-9330 (VM) (JLC), 2018 WL 4938808 (S.D.N.Y. Oct. 11, 2018) ........ 8, 21, 22, 23

*Spinelli v. Nat'l Football League*, No. 13 Civ. 7398 (RWS), 2015 WL 7302266 (S.D.N.Y. Nov. 17, 2015) ........ 22

*Tecon Oil Servs. Ltd. v. Bayerische Hypo-Und Vereinsbank*, 492 F. Supp. 2d 398 (S.D.N.Y. 2007) ........ 18, 19

*Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781 (2d Cir. 1994) ........ 9, 19

*United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Sq., Inc.*, 30 F.3d 298 (2d Cir. 1994) ........ 9, 19

*United States v. Wolin*, No. 17-CV-2927 (KAM) (CLP), 2024 WL 779056 (E.D.N.Y. Feb. 26, 2024) ........ 23

*Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579 (2d Cir. 2002).. 10, 15, 16, 18

*Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, 224 F.3d 139 (2d Cir. 2000) ......... 11, 12

**STATUTES**

28 U.S.C. § 1332(a) ........................................................................................... 1, 9, 11, 16

28 U.S.C. § 1332(c)(1)................................................................................................ 15

28 U.S.C. § 1359 ......................................................................................................... 17

N.Y. C.P.L.R. § 302(a)(2)–(3) ...................................................................................... 23

N.Y. C.P.L.R. § 302(a)(4)............................................................................................. 23

**RULES**

Fed. R. Civ. P. 12(h)(3) ............................................................................................ 9, 21

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure § 3661* (4th ed. 2013) ...................................................................................................................... 11, 12

Defendants Daniel Yu, Gotham City Research LLC ("Gotham"), General Industrial Partners LLP ("GIP"), and Cyrus de Weck (collectively, the "Defendants") submit this memorandum of law in support of their motion to stay merits discovery pursuant to Federal Rules of Civil Procedure 16(b)(4) and 26(c) pending the resolution of their upcoming motion to dismiss.

**PRELIMINARY STATEMENT**

As Defendants will show in their motion to dismiss, there is no subject matter jurisdiction here because Mr. Yu has been domiciled abroad since before 2020 and because Grifols Shared Services North America, Inc. ("GSSNA"), the sole domestic plaintiff at the time of filing, was not a proper plaintiff and has been dismissed. As a result, merits discovery in this case is improper and would needlessly burden the Court's and the parties' resources. Accordingly, there is good cause to stay merits discovery pending the resolution of Defendants' motion to dismiss.

Plaintiff Grifols, S.A. ("Grifols") is a foreign corporation. When it filed this case, it invoked subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a) between GSSNA, its primary U.S. operating subsidiary, and Mr. Yu, who according to Grifols was a resident of New York. Both assertions were (and remain) wrong.

*First*, Mr. Yu was not domiciled in New York when Grifols filed this suit in 2024 (nor since). He has lived and worked in [redacted] since before 2020. [redacted]. He has no intent to live anywhere else, and that has been the case since before 2020.

These facts are dispositive. U.S. citizens domiciled abroad, like Mr. Yu, are considered "stateless" for diversity purposes. Mr. Yu's single-member LLC, Gotham, is stateless as well. Stateless parties cannot form the basis for diversity. *See Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990) ("[A] suit by or against United States citizens domiciled abroad may not

be premised on diversity."). Mr. Yu's domicile thus destroyed diversity from the outset.

*Second*, GSSNA also could not form the basis for diversity. GSSNA was the only domestic plaintiff when this case was filed, but as this Court held, GSSNA "is not a proper plaintiff because neither the allegations in the complaint nor the Report concern GSSNA." ECF No. 56 at 48. Moreover, the Court dismissed GSSNA from this case.

These facts are also dispositive. As an improper plaintiff, GSSNA could not and should not have been considered for diversity purposes from the outset. And even if it were considered, GSSNA's dismissal from the case upends diversity in any event. Without GSSNA, there was and is no diversity irrespective of Mr. Yu's domicile.

In their answer, Defendants mistakenly accepted subject matter jurisdiction. But that does not change the result. Subject matter jurisdiction cannot be waived and can be raised at any time.

Based on these facts, Defendants will—and at the very least are likely to—succeed on the merits. Defendants satisfy the other good cause requirements as well. As shown below, continuing with (improper) merits discovery will impose substantial burden on the parties and the Court. That satisfies the second requirement. The third and final requirement of no undue prejudice is also met. If Defendants are correct—and they will show they are—Grifols would not be entitled to merits discovery in this case. But even if Defendants' motion to dismiss is denied, the only impact on Grifols will be a short delay. Delay, however, is not reason enough to justify denying a stay and forcing the parties to incur the burden of wide-ranging and unnecessary merits discovery.

Accordingly, the Court should grant Defendants' motion to stay merits discovery pending the resolution of their motion to dismiss this case for lack of subject matter jurisdiction.

## **RELEVANT FACTS**

Grifols is a Spanish company whose shares trade on the Spanish and U.S. stock exchanges.

ECF No. 1 ¶¶ 1, 64, 66, 72 ("Complaint"). Defendants are financial researchers who analyze and publish reports on companies that they believe the market has mispriced, and who sometimes take investment positions consistent with their views—an activity that, as this Court has recognized, "perform[s] a useful function by bringing information that securities are overvalued to the market." ECF No. 55 at 1 n.1 & ¶¶ CC3-CC4. In early January 2024, Gotham published a report ("Gotham Report") that criticized Grifols' reported leverage. ECF No. 55 ¶ CC5. Spain's securities regulator subsequently found "significant deficiencies" in "the detail and accuracy of the breakdowns and explanatory notes supporting the figures" in Grifols' financial information. ECF No. 48 at 13-14.

In response to the report, Grifols sued Defendants in this Court on January 26, 2024. It filed the case along with GSSNA, its primary U.S. subsidiary. Compl. ¶ 47. In its Complaint, Grifols asserted claims for defamation and other common law tort claims. *Id.* ¶¶ 240-89. Defendants asserted an anti-SLAPP counterclaim under New York Civil Rights Law § 70-a. ECF No. 55 ¶¶ CC46-CC53.

Grifols based its assertion of federal jurisdiction on diversity. Grifols alleged that it is a Spanish company with its principal place of business in Spain, and that GSSNA is a Virginia corporation with its principal place of business in California. Compl. ¶¶ 46-47. As for Defendants, Grifols alleged "[u]pon information and belief" that Mr. Yu "resides in Manhattan, New York" and that he is "domiciled in the State of New York." *Id.* ¶¶ 48, 55. Grifols further alleged that Gotham is a limited liability company registered in Delaware, has its principal place of business in New York, and that Mr. Yu is its sole member. *Id.* ¶ 49. Grifols alleged that the other defendants, GIP and Mr. de Weck, are foreign citizens. *Id.* ¶¶ 50, 51.

Defendants mistakenly accepted subject matter jurisdiction when this case was filed. ECF No. 55 ¶¶ 61-65. Unfortunately, that was based on an incomplete investigation by counsel, without

conferring with Mr. Yu. Yu Decl. ¶ 37. In reality, as described below, Mr. Yu has lived and worked in [redacted] since before 2020.

## I. Mr. Yu Has Been Domiciled in [redacted] Since Before 2020

Mr. Yu is a U.S. citizen who has been domiciled in [redacted] since at least 2020. On January 26, 2024, when Grifols filed this action, he had lived continuously in [redacted] for several years, considered [redacted] his permanent home, and had no plans to return to live in the U.S. Yu Decl. ¶¶ 2, 13, 26, 38.

Mr. Yu was born in the United States and moved with his family to New York when [redacted]

[redacted]

[redacted]

[redacted]

Mr. Yu's connections to the U.S. are limited. [redacted]

## II. Mr. Yu Is the Sole Member of Gotham

Mr. Yu formed Gotham as a Delaware limited liability company in or around 2013, and he has operated it from [redacted] since at least 2020. Yu Decl. ¶ 20; *see* ECF No. 55 ¶ 55. Mr. Yu is, and was on January 26, 2024, Gotham's sole member. Yu Decl. ¶¶1, 20. Grifols alleged the same. Compl. ¶ 49.

## III. GSSNA Was Not a Proper Plaintiff

Grifols amended its complaint in September 2024. ECF No. 22. The amended complaint repeated Grifols' jurisdictional allegations. *Id.* ¶¶ 52-57, 61-65. Defendants moved to dismiss the amended complaint on several grounds, including that GSSNA was not a proper plaintiff, and to strike some of Grifols' allegations in December 2024. ECF Nos. 26, 30.

The Court granted Defendants' motions in part and directed Grifols to refile a version of the amended complaint with the stricken statements redacted. ECF Nos. 48, 49 at 7-8. Grifols complied and refiled the redacted amended complaint in June 2025. ECF No. 50 ("Amended Complaint"). Defendants answered and asserted an anti-SLAPP counterclaim later that month. ECF No. 55. As noted, Defendants mistakenly accepted subject matter jurisdiction in their answer and mistakenly asserted it in their counterclaim. ECF No. 55 ¶¶ 61-65, CC1.

In July 2025, the Court issued an Amended Opinion and Order on the motion to dismiss. ECF No. 56. Among other things, the Court dismissed GSSNA from the case. *Id*. at 48-49. The Court held that GSSNA "is not a proper plaintiff because neither the allegations in the complaint nor the Report concern GSSNA." *Id.* at 48. Grifols alleged that GSSNA is a guarantor of Grifols' bonds and a creditor on Grifols' Credit Agreement, such that any increased refinancing costs for Grifols would also affect GSSNA. The Court found that "GSSNA's downstream experience of the injury to Grifols does not allow it to state a claim for relief in its own right." *Id.* Accordingly,

Plaintiffs failed to state "any claim for which GSSNA could recover." *Id.* at 48-49. Following that dismissal, Grifols—a foreign entity—is the sole remaining plaintiff.

**IV. Procedural Posture**

Discovery is ongoing. In September 2026, the Court approved the parties' joint request to extend the case management schedule, setting November 16, 2026, as the deadline for substantial completion of Defendants' document production and February 17, 2027, as the close of fact discovery. ECF No. 205. Grifols served on Defendants 43 document requests, 34 interrogatories, and 168 requests for admission ("RFAs"). Declaration of Michael A. Asaro ("Asaro Decl.") ¶ 3. Defendants have agreed to amend their responses to 138 RFAs by October 30, 2026. Asaro Decl. ¶ 20. Defendants have largely adopted Grifols' ESI search and scope protocol, with few modifications. *Id.* ¶ 4. That protocol covers five custodians and a period of more than three years. *Id.* ¶¶ 5-6. Defendants have also agreed to respond to more than twenty of Grifols' requests for production, including requests for "All Documents and Communications concerning Grifols" and "All Documents and Communications concerning Grifols or Scranton Enterprises exchanged between any Defendant and any governmental body[.]" *Id.* ¶ 7. The resulting discovery protocol captured 132,019 documents, totaling 1,367,526 pages as of October 16, 2026, and that population will likely grow as document collection continues. *Id.* ¶ 10.

Defendants estimate that attorney review of the currently outstanding documents will require at least 420 hours. *Id.* ¶¶ 11-16. Attorneys will spend additional time preparing a privilege log, undertaking quality checks on document productions, and preparing factual chronologies and other litigation work product. *Id.* ¶¶ 17-18. Defendants will also need to review and analyze the substantial production that Grifols will soon make concerning the Scranton Loan and its claimed damages and serve discovery on Scranton Enterprises, B.V. (through the Hague Evidence

Convention). *Id.* ¶¶ 28-31.

Defendants and their witnesses are all located abroad. Grifols has already noticed the depositions of two of Defendants' document custodians, and Defendants anticipate that Grifols will seek depositions of all five, each of whom is outside the United States, and that Grifols will also seek Rule 30(b)(6) depositions of GIP and Gotham. Asaro Decl. ¶¶ 22, 27. Preparing for the depositions will require at least 250 attorney hours, including creating preparation materials and undertaking preparation sessions with each witness, and with additional time needed for international travel by counsel. *Id.* ¶¶ 23-25, 27. And Defendants will also need to depose multiple Grifols executives and directors, all of whom are located abroad. *Id.* ¶ 32. These facts underscore that a stay is necessary.

## **ARGUMENT**

"Upon a showing of 'good cause,' a court may grant a motion to stay discovery pending decision on a motion to dismiss." *Cota v. Art Brand Studios*, *LLC*, 2022 WL 767110, at *1 (S.D.N.Y. Mar. 14, 2022) (Liman, J.); *see also Renois v. WVMF Funding*, *LLC*, 2021 WL 1721818, at *1-2 (S.D.N.Y. Apr. 30, 2021) (granting motion to stay discovery pending motion to dismiss for lack of subject matter jurisdiction); *Hong Leong Fin. Ltd. v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 73-75 (S.D.N.Y. 2013) (Gorenstein, M.J.) (same); *Shulman v. Becker & Poliakoff, LLP*, 2018 WL 4938808, at *3-4 (S.D.N.Y. Oct. 11, 2018) (same); *Boelter v. Hearst Commc'ns*, 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (same).

In deciding whether to grant a stay, courts consider: "(1) [the] breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion." *Cota*, 2022 WL 767110, at *1 (quotations omitted). As set forth below and in the accompanying declaration from Mr. Yu,

each factor favors a stay here.

## I. Defendants Are Likely To Succeed On The Merits of Their Dismissal Motion

To grant a stay of discovery, "[t]he court need not make the ultimate and final determination that the defendant will succeed on the motion to dismiss." *Cohen v. United States*, 2022 WL 2181457, at *1 (S.D.N.Y. June 16, 2022) (Liman, J.). "In determining the strength of the motion to dismiss, a court considers whether it presents 'substantial grounds' for dismissal, or the alternative formulation presented by Judge Gorenstein, whether there is a strong showing that [the party moving for the stay] is likely to succeed on the merits." *Cota*, 2022 WL 767110, at *1 (cleaned up). Defendants satisfy their burden here.

It is well established that lack of subject matter jurisdiction is dispositive, cannot be waived, and can be raised at any time. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Sq., Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) ("Where jurisdiction is lacking … dismissal is mandatory."); *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 786 (2d Cir. 1994) (the defense "can be raised at any time in the course of litigation," and a party's failure to raise it in its answer "is not determinative"); *United Food*, 30 F.3d at 303 (parties "cannot waive subject matter jurisdiction by express consent, conduct, or estoppel"). There is no subject matter jurisdiction here.

Grifols based subject matter jurisdiction on diversity under 28 U.S.C. § 1332(a). Compl. ¶ 58; Am. Compl. ¶ 64. That section provides in relevant part:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between—(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state . . . ; [and] (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties . . . .

Under that section, diversity must be "complete"—that is, "[w]hen a plaintiff sues more than one

defendant in a diversity action, the plaintiff must meet the requirements of the diversity statute for each defendant or face dismissal." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989). "[D]iversity is lacking within the meaning of these sections where . . . on one side there are citizens and aliens and on the opposite side there are only aliens." *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002).

The general rule is that "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green*, 490 U.S. at 830. There is an exception to the general rule, however, where, as here, there is a change of a party. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 574 (2004) ("*Where there is no change of party*, a jurisdiction depending on the condition of the party is governed by that condition as it was at the commencement of the suit.") (emphasis added) (quoting *Conolly v. Taylor*, 27 U.S. 556, 565 (1829)).

"It is . . . hornbook law that the party invoking federal jurisdiction bears the burden of proving facts to establish that jurisdiction." *Universal Licensing*, 293 F.3d at 581 (quotation omitted); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."). Doubt is resolved against jurisdiction. Where the record is "sufficiently powerful to create serious doubts" about a party's citizenship, those doubts are "fatal" to the party asserting diversity, "[b]ecause the burden of establishing diversity remains with" that party. *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 324 (2d Cir. 2001).

These principles compel dismissal on two independent grounds: because Mr. Yu was at all relevant times domiciled in [redacted], and GSSNA was not a proper plaintiff and has been dismissed, there was no diversity when this case was filed, and there is no diversity now.

**A. Mr. Yu's [redacted] Domicile Destroyed Diversity from the Outset**

Diversity was lacking from the outset of this case because Mr. Yu is (and was at the time of filing) a U.S. citizen domiciled abroad. Such parties are considered "stateless" and are not diverse. Federal courts lack diversity jurisdiction over actions involving stateless parties.

**1. U.S. Citizens Domiciled Abroad Are Stateless and Not Diverse**

To be a "citizen of a State" within the meaning of the diversity statute, "a natural person must both be a citizen of the United States *and* be domiciled within the State." *Newman-Green*, 490 U.S. at 828 (emphasis in original). But a United States citizen domiciled abroad, like Mr. Yu, "has no domicile in any State" and "is therefore 'stateless' for purposes of' § 1332." *Id.*; *accord Chenming Holdings (Hong Kong) Ltd. v. Sklarov*, 2025 WL 2695281, at *7 (S.D.N.Y. Sept. 22, 2025) (citations omitted) ("American nationals . . . domiciled outside the United States . . . 'are neither citizens of any state of the United States nor citizens or subjects of a foreign state' under § 1332" and are thus "necessarily non-diverse."); *Cresswell*, 922 F.2d at 68 ("United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state . . . .").

A party's "'stateless' status destroy[s] complete diversity under § 1332(a)(3), and his United States citizenship destroy[s] complete diversity under § 1332(a)(2)." *Newman-Green*, 490 U.S. at 829; *Cresswell*, 922 F.2d at 68 ("§ 1332(a) does not provide that the courts have jurisdiction over a suit to which such [stateless] persons are parties"; "a suit by or against United States citizens domiciled abroad may not be premised on diversity"); *Universal Reins. Co. v. St. Paul Fire & Marine Ins. Co.*, 224 F.3d 139, 141 (2d Cir. 2000) ("If [a U.S. citizen] is in fact a domiciliary of Bermuda and not just residing there, we lack jurisdiction over any lawsuit alleging only state law claims to which he is a party."); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure § 3661* (4th ed. 2013) ("[A]n American domiciled abroad . . . is stateless, and cannot

be a party to a Section 1332 suit.").

Because Mr. Yu is a U.S. citizen domiciled in [redacted], there is no diversity here.

**2. Mr. Yu is a U.S. Citizen Domiciled in [redacted] and is Therefore Stateless and Not Diverse**

"An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). Domicile is "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Id.* (quotation omitted). Thus, "establishing one's domicile in a state generally requires both physical presence there and intent to stay." *Universal Reins.*, 224 F.3d at 141. "To determine an individual's domicile, courts use a 'totality of the evidence' approach and look to numerous factors." *Chenming*, 2025 WL 2695281, at *6 (quotation omitted). "These factors include—but are not limited to—where political rights are exercised, where taxes are paid, where property or employment is located, and where close family lives." *Id.*; *accord Feher v. Dimension Grp. LLC*, 2026 WL 177740, at *3 (E.D.N.Y. Jan. 15, 2026) (relevant factors include "voting registration, employment, current residence, location of real and personal property, location of spouse and family, driver's license, automobile registration, tax payment and addresses, and location of a person's bank account and physician.") (quotation and citation omitted), *report and recommendation adopted* (E.D.N.Y. Jan. 22, 2026).

Here, these factors show that Mr. Yu has been domiciled in [redacted] since before 2020.[1] Mr. Yu lived in [redacted] full time in January 2024, when Grifols filed this case. Yu Decl. ¶¶ 2,

[1] To be sure, Grifols alleged "upon information and belief" that Mr. Yu "resides in Manhattan, New York," Compl. ¶ 48; Am. Compl. ¶ 54, and Defendants did not challenge those allegations and accepted subject matter jurisdiction at that time. ECF No. 55 ¶¶ 61-65. Unfortunately, that was based on an incomplete investigation by Defendants' counsel who did not consult with Mr. Yu about his domicile when this case was filed. Yu Decl. ¶ 37.

13. What's more, he had been living in [redacted] full time for over four years by that point. *Id.* ¶¶ 2, 4. [redacted]. *Id.* ¶¶ 8-9, 12.

[redacted] is given "considerable weight" in the domicile analysis. *Feher*, 2026 WL 177740, at *4 (quoting *Nat'l Artists Mgmt. Co. v. Weaving,* 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991)). [redacted]

While Mr. Yu continues to have some ties to the U.S., those ties are irrelevant for diversity purposes. [redacted]. But maintaining property or having business activity in the United States does not establish domicile where the other factors, like family, point abroad. *See Feher*, 2026 WL 177740, at *4 (U.S. ties maintained alongside foreign ones "do not contradict" intent to remain abroad); *accord Freidrich v. Davis*, 767 F.3d 374, 375-78 (3d Cir. 2014) (affirming dismissal for lack of diversity jurisdiction where defendant U.S. citizen was domiciled in Germany and therefore "stateless," notwithstanding that he voted in U.S. elections by absentee ballot, held a Pennsylvania driver's license, kept U.S. bank and retirement accounts, and checked a box on a voter form that he "intend[ed] to return" to the United States); *Core VCT*

*PLC v. Hensley*, 89 F. Supp. 3d 104, 110-13 (D.D.C. 2015) (dismissing for lack of diversity jurisdiction where defendant U.S. citizen was domiciled in Monaco, notwithstanding that he renewed his Illinois driver's license, filed federal and state tax returns as an Illinois resident, and owned a Chicago condominium that he "leased out") (quotation omitted).

In *Feher*, the court found an LLC member domiciled in Israel even though he owned over a dozen New York real estate companies, worked only in the United States and Greece, rented a Manhattan apartment, spent about sixty days in New York in 2025, and kept U.S. bank accounts, a car, and a driver's license. The court found that he was domiciled in Israel because his family, children's schooling, and doctors were all located in Israel, and he listed his Israeli residence on his tax forms. *Feher*, 2026 WL 177740, at *2, *4.

Mr. Yu's U.S. ties are thinner: [redacted]

In sum, as Mr. Yu has been domiciled in [redacted] since before 2020, he was stateless on January 26, 2024, when Grifols filed this case.

**3. Mr. Yu's [redacted] Domicile Renders Gotham Stateless and Not Diverse**

Gotham is a Delaware limited liability company that derives its citizenship and domicile from Mr. Yu, its sole member, and is therefore also stateless. Grifols alleged that Gotham is a Delaware limited liability company and that its sole member is Mr. Yu. ECF No. 50 ¶ 55. That is, in fact, true, Yu Decl. ¶¶ 1, 20, and that means Mr. Yu's domicile is imputed to Gotham.

It is settled law that a limited liability company "takes the citizenship of each of its members." *Bayerische Landesbank v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012).

Where, as here, a member of an LLC is stateless, the LLC is stateless as well. *See Feher*, 2026 WL 177740, at *3-4 ("if [a party] is domiciled [abroad], the Court lacks subject matter jurisdiction because [his] U.S. citizenship and domicile are imputed through [his] LLC to Defendant [another] LLC and the Court does not have subject matter jurisdiction in cases involving U.S. citizens domiciled abroad."); *Barnes v. Fort Hamilton Family Homes*, 524 F. Supp. 3d 40, 43 (E.D.N.Y. 2021) ("[I]f an LLC has a member which is not a citizen of any state, then, because the citizenship of the LLC is the imputed citizenship of all of its members, the LLC itself is not a citizen of any state. It can never be in federal court on the basis of diversity jurisdiction."); *see also Cresswell*, 922 F.2d at 69 (explaining that if any partner of a partnership is a United States citizen domiciled abroad, the partnership cannot be sued in diversity). Gotham is therefore also stateless, like Mr. Yu.

#### 4. The Presence of Stateless Parties—Mr. Yu and Gotham—Irreparably Destroyed Diversity from the Outset

The presence of stateless Defendants, Mr. Yu and Gotham, irreparably destroyed diversity from the outset. *See Cresswell*, 922 F.2d at 68 ("[A] suit by or against United States citizens domiciled abroad may not be premised on diversity."); *Chenming*, 2025 WL 2695281, at *6 (stateless parties are "necessarily non-diverse").

This defect cannot be cured. The other Defendants, GIP and Mr. de Weck, are foreign. ECF No. 50 ¶¶ 56-57. As Grifols is foreign as well,[2] there is no—and can never be—diversity in

[2] "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1); *accord Universal Licensing Corp.*, 293 F.3d at 581. A Spanish sociedad anónima, such as Grifols, is a corporation for these purposes. *See Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000) (per curiam) (treating Mexican sociedades anónimas as "foreign corporations" for diversity purposes); *see also NML Capital, Ltd. v. Republic of Argentina*, 2011 WL 524433, at *1 n.1 (S.D.N.Y. Feb. 15, 2011) (a sociedad anónima "is a stock corporation that is an independent, juridical entity with its own legal personality.").

this case, even if Mr. Yu and Gotham were dismissed from this case. *See Universal Licensing*, 293 F.3d at 581-82 ("[D]iversity is lacking within the meaning of [§ 1332(a)(2) and (3)] where the only parties are foreign entities.").

As a result of Mr. Yu's and Gotham's stateless status, there was no subject matter jurisdiction under § 1332(a) from the outset.

### B. GSSNA Could Not Have Been the Basis for Diversity

Moreover, the inclusion of GSSNA on the plaintiff side was improper and could not have provided a basis for diversity or subject matter jurisdiction. As noted, GSSNA is Grifols' U.S. subsidiary—it is a Virginia corporation with its principal place of business in California. ECF No. 50 ¶ 53. As the Court confirmed in dismissing GSSNA from the case, it is "not a proper plaintiff." ECF No. 56 at 48-49. GSSNA should therefore be disregarded for diversity purposes.

#### 1. GSSNA Was a Nominal Party with No Real or Substantial Interest in This Case

"In determining whether complete diversity exists so as to support removal under 28 U.S.C. s 1441(a) and (b), the court disregards the presence of nominal parties with no real, or direct interest in the controversy." *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc*., 521 F. Supp. 1046, 1047 (S.D.N.Y. 1981) (collecting cases). As the Court already held when it dismissed GSSNA from the case, GSSNA "is not a proper plaintiff because neither the allegations in the complaint nor the Report concern GSSNA," and dismissed GSSNA from the case for that reason. ECF No. 56 at 48. In other words, GSSNA was a nominal party with no real or substantial interest in this case and should be disregarded from the diversity analysis.

"A party to an action is nominal or formal if no cause of action or claim for relief is or could be stated against him or on his behalf, as the case may be." *Martindale-Hubbell, Inc.*, 521 F. Supp. at 1048. That is GSSNA, in a nutshell. As the Court recognized, GSSNA alleged only a

"downstream experience of the injury to Grifols" that "does not allow it to state a claim for relief in its own right." *Id.* "GSSNA was not defamed by Defendants" and that there were no allegations of tortious interference or unjust enrichment specific to GSSNA. *Id.*

The Court's prior findings compel the conclusion that GSSNA should be disregarded for the purpose of assessing diversity at the time of filing. *See Saxe*, 521 F. Supp. at 1048 ("[T]he fact that a person closely affiliated with a corporation . . . is incidentally injured by an injury to the corporation does not confer on the individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation.").

As such, GSSNA should be disregarded for the purpose of assessing diversity. *See Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 861 (2d Cir. 1995) ("The 'citizens' upon whose diversity a plaintiff grounds jurisdiction *must be real and substantial parties to the controversy*.") (emphasis added) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460 (1980)); *accord Navarro*, 446 U.S. at 461 ("Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").[3]

**2. GSSNA's Dismissal Further Destroyed Diversity**

Moreover, diversity is also lacking because the Court dismissed GSSNA from the case. While subject matter jurisdiction ordinarily is assessed at the time of filing, *Newman-Green*, 490 U.S. at 830, an exception exists where there has been a change in the parties. *Grupo Dataflux*, 541

[3] Notably, it is not clear at this time whether Grifols added GSSNA for legitimate reasons or solely to obtain diversity. The parties will exchange jurisdictional discovery after this brief is filed, and Defendants will seek discovery on this issue. To the extent the evidence shows that Grifols joined GSSNA to establish diversity, that may be yet another ground for Defendants' dismissal motion. *See* 28 U.S.C. § 1359 ("A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."). Defendants reserve the right to raise that argument following jurisdictional discovery.

U.S. at 574 ("*Where there is no change of party*, a jurisdiction depending on the condition of the party is governed by that condition as it was at the commencement of the suit." (emphasis added, quotation omitted)).

For example, a dismissal of a non-diverse party may cure a jurisdictional defect. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64 (1996) (holding that a "district court's error in failing to remand a case improperly removed [for lack of diversity jurisdiction] is not fatal to the ensuing adjudication [by the district court] if federal jurisdictional requirements are met at the time judgment is entered," through pre-trial dismissal of non-diverse party). Likewise, the addition of a non-diverse party may destroy diversity. *See Merrill Lynch & Co. v. Allegheny Ener., Inc.*, 500 F.3d 171, 179 (2d Cir. 2007) ("[I]t is clear that a diversity-destroying party joined after the action is underway may catalyze loss of jurisdiction.").

The "change of party" exception is a practical safeguard against evasion of the complete-diversity requirement. Otherwise, a plaintiff could "defeat the statutory requirement of complete diversity" through artful pleading—such as "suing only those defendants who were of diverse citizenship" and adding nondiverse parties later, *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978), or, as here, including a nominal plaintiff for the sole purpose of creating diversity, and then continuing to prosecute the case after the nominal plaintiff inevitably is dismissed.

GSSNA's dismissal is therefore a "change of party." Since GSSNA was the only domestic plaintiff, its dismissal destroys diversity. *See Universal Licensing*, 293 F.3d at 581 ("[D]iversity is lacking within the meaning of these sections where . . . on one side there are citizens and aliens and on the opposite side there are only aliens."); *Tecon Oil Servs. Ltd. v. Bayerische Hypo-Und Vereinsbank*, 492 F. Supp. 2d 398, 399 (S.D.N.Y. 2007) (dismissing case for lack of subject matter jurisdiction where "[t]he sole plaintiff in this case is an alien . . . [and] [a]t least one of the

defendants is an alien"); *Growth Fund v. Morgan Stanley & Co. Int'l*, 1998 WL 375201, at *2 (S.D.N.Y. July 2, 1998) (dismissing case with "foreign and domestic parties on one side and only foreign parties on the other").

GSSNA's dismissal therefore destroyed diversity further.

### C. That Defendants Did Not Raise Subject Matter Jurisdiction Earlier Does Not Affect the Analysis

As noted, Defendants mistakenly accepted and asserted subject matter jurisdiction in their answer based on an incomplete investigation by counsel that, among other things, did not include consulting with Mr. Yu when this case was filed. ECF No. 55 ¶¶ 61-65. That, however, is irrelevant for purposes of this motion. A defendant's failure to raise lack of subject matter jurisdiction in its answer "is not determinative," particularly where the defect comes to light later in the case. *See Tongkook*, 14 F.3d at 786 (the defense "can be raised at any time in the course of litigation," and a party's failure to raise it in its answer "is not determinative."); *United Food*, 30 F.3d at 303 (parties "cannot waive subject matter jurisdiction by express consent, conduct, or estoppel").

## II. Proceeding with Merits Discovery Would Impose a Substantial Burden on Defendants

Defendants also satisfy the next prong of the stay analysis because the burden of discovery here on the parties and the Court is substantial. *See Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) ("[T]he adjudication of the pending motion to dismiss may obviate the need for burdensome discovery.").

Fact discovery is in process and will not close until February 17, 2027. The scope of discovery is broad. Defendants have agreed to a broad search and scope protocol, and to produce documents in response to more than 20 requests for production, including requests for "All Documents and Communications concerning Grifols" and "All Documents and Communications concerning Grifols or Scranton Enterprises exchanged between any Defendant and any

governmental body[.]" Asaro Decl. ¶¶ 4, 7. *See Ema Fin., LLC v. Vystar Corp.*, 336 F.R.D. 75, 84 (S.D.N.Y. 2020) (Gorenstein, M.J.) (finding that "months" of discovery effort would be burdensome).

The Court has ruled that Grifols may seek "inferential evidence that will illuminate defendants' state of mind" even if that evidence does not "specifically refer to [the Scranton Loan] statements," and has set a presumptive one-year period from the filing of the complaint for post-publication discovery. ECF No. 142 at 7, 9. Discovery is therefore not confined to a single statement about a single loan; it reaches more than three years of Defendants' communications about Grifols across multiple custodians and repositories. *See Renois*, 2021 WL 1721818, at *2 (staying discovery where plaintiff had served "an extensive set of document requests" seeking communications "over a three-year period").

As a result, the volume and burden of disclosure are extensive and substantial. Namely, Defendants have agreed to review over 130,000 documents, totaling over 1,300,000 pages. Asaro Decl. ¶ 10. Defendants estimate that the currently outstanding document review alone will require over 420 attorney hours. *Id.* ¶¶ 11-16. And that does not include the cost of collecting and reviewing additional documents. *Id.* ¶ 10. *See Boelter v. Hearst Commc'ns, Inc.*, 2016 WL 361554, at *5 (S.D.N.Y. Jan. 28, 2016) (granting discovery stay where "Plaintiff's requests are broad and demand extensive responses").

Grifols has noticed the depositions of two of five of Defendants' document custodians and will almost certainly seek to depose the others, each of whom is outside the United States, and will likely also seek Rule 30(b)(6) depositions of GIP and Gotham. Asaro Decl. ¶¶ 22, 27. This only compounds the burden. *See Vystar Corp.*, 336 F.R.D. at 84 ("discovery sought by Vystar is all the

more troubling as it appears that Vystar is bent on obtaining discovery from third parties to address the broker-dealer issue.”).

Preparing for the depositions will require at least 250 attorney hours, including creating preparation materials and undertaking preparation sessions with each witness, and with additional time needed for international travel by counsel. *Id.* ¶¶ 23-25, 27. This is also a substantial burden. *See Shulman*, 2018 WL 4938808, at *3 (staying depositions of nine witnesses pending motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(h)(3)).

Of course, discovery runs both ways: Defendants will also need to review and analyze Grifols’ discovery and depose multiple Grifols executives and directors, all of whom are also located abroad. Asaro Decl. ¶¶ 29, 32. Requiring defendants “to engage in their own document discovery of plaintiffs, with the attendant need to review that discovery and make appropriate applications to compel,” would “create a significant burden on defendants in the face of a seemingly strong motion to dismiss.” *Hong Leong*, 297 F.R.D. at 75.

Last but not least, there is motion practice. As the Court is aware, there have been multiple discovery disputes already. Grifols has filed three discovery motions since the beginning of September 2026 alone. *See* ECF Nos. 188, 196, 225. Its most recent motion illustrates the burden: it sought, among other things, to compel amended RFA responses that Defendants had already agreed to provide and amended interrogatory responses that Defendants had already committed to serve. *See* ECF No. 225 at 1-2, 5; ECF No. 234 at 1. Fortunately, the parties were able to work out a resolution of that motion without requiring Court intervention. But addressing and litigating discovery disputes consumes the parties’ and the Court’s resources. Defendants may also need to seek judicial assistance regarding Grifols’ unwarranted refusal to collect and produce responsive documents, including Grifols’ refusal to collect the personal phones of its proposed custodians,

and its proposal of only four custodians, which Defendants believe is insufficient. Asaro Decl. ¶ 30.

In sum, merits discovery will span months and likely require well over 1,100 hours of attorney time, including the review of over 150,000 pages of documents. Asaro Decl. ¶¶ 2, 12, 14; *see In re Term Commodities Cotton Futures Litig.*, 2013 WL 1907738, at *6 (S.D.N.Y. May 8, 2013) (staying discovery that would have required 1,000 attorney-hours to review 90,000 pages of documents). There is thus good cause for a stay, as it will ensure efficiency and conserve judicial resources.

## III. Plaintiff Faces No Undue Prejudice from Pausing Merits Discovery

Lastly, a stay will cause Grifols no undue prejudice. If Defendants are correct—and they will show they are—then Grifols was not entitled to any merits discovery in the first place. But even in the unlikely event Defendants' motion to dismiss is denied, the stay would only be temporary, and delay alone does not rise to undue prejudice. *See Cota*, 2022 WL 767110, at *1 ("[T]here is no reason to believe that Plaintiffs would suffer prejudice for the short period of time the Court expects will be necessary to reach that conclusion and to rule on the motion."); *Spinelli v. Nat'l Football League*, 2015 WL 7302266 (S.D.N.Y. Nov. 17, 2015) (holding, in a case that was over two years old, that a "stay pending determination of a dispositive motion that potentially eliminates the entire action will neither substantially nor unduly delay the action, should it continue" (quotation omitted)); *O'Sullivan v. Deutsche Bank AG*, 2018 WL 1989585, at *9 (S.D.N.Y. Apr. 26, 2018) ("[T]he passage of a reasonable amount of time, without any other form of attendant prejudice, cannot itself constitute prejudice sufficient to defeat a motion to stay discovery."); *see also generally Shulman*, 2018 WL 4938808, at *3-4 (granting stay of deposition

discovery, with the exception of a single pre-scheduled deposition, after the completion of document discovery, pending motion to dismiss for lack of subject matter jurisdiction).[4]

That Grifols seeks injunctive relief is of no consequence, as such considerations do not warrant denying motions to stay. *See Fellows v. Universal Servs. of Am., LP*, 2026 WL 2085727, at *3 (S.D.N.Y. July 20, 2026) (granting stay because, among other things, "the mere fact that plaintiffs may seek injunctive relief does not itself demonstrate prejudice"). That is particularly true if there were no subject matter jurisdiction for that claim in the first place. Nor can Grifols rely on generic concerns such as fading witness memories; such concerns "are the usual litigation risks that affect all the parties equally, regardless of the amount of time permitted for discovery." *Term Commodities*, 2013 WL 1907738, at *7. All parties remain bound by their preservation obligations, so a delay will also not affect the availability of evidence. *See Cohen*, 2022 WL 2181457, at *1. As such, a stay will cause Grifols no undue prejudice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court stay merits discovery pursuant to Federal Rules of Civil Procedure 16(b)(4) and 26(c), pending the

---

[4] It bears noting that if this case is dismissed, Grifols would not be able to simply refile this case or otherwise pursue discovery in New York state court because none of the Defendants have sufficient connections to New York. Mr. Yu is domiciled abroad, and [redacted], does not confer personal jurisdiction. *See United States v. Wolin*, 2024 WL 779056, at *7–10 (E.D.N.Y. Feb. 26, 2024) ("[O]wnership of the Queens Property" by defendant U.S. citizen living abroad, among other contacts, was not sufficient to show that defendant was "at home" in New York and thus susceptible to general jurisdiction ); *Okin v. Jiminy Peak, Inc*., 1995 WL 116277, at *3 (E.D.N.Y. Feb. 24, 1995) (ownership of New York real property "not sufficient to create jurisdiction" and does not subject owner to jurisdiction for claims unrelated to the property (citing N.Y. C.P.L.R. § 302(a)(4))); *see also* N.Y. C.P.L.R. § 302(a)(2)–(3) (excluding causes of action for defamation). As shown, Gotham takes Mr. Yu's domicile, and it is undisputed that the other defendants are foreign. Am. Compl. ¶¶ 56-57; *see also* de Weck Decl. ¶¶ 2-4; Gilliland Decl. ¶¶ 2-3; Cluett Decl. ¶¶ 2-3.

resolution of Defendants' forthcoming motion to dismiss for lack of subject matter jurisdiction.

Dated: October 19, 2026
New York, New York

Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD LLP

By: */s/ Uri A. Itkin*

Uri A. Itkin
Michael A. Asaro
John C. Murphy

One Bryant Park
New York, NY 10036

*Counsel for Defendants Daniel Yu, Gotham City Research LLC, General Industrial Partners LLP, and Cyrus de Weck*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Memorandum of Law in Support of Defendants' Motion to Stay Merits Discovery (the "Memorandum") complies with Local Rule 7.1(c) of the Local Rules of the United States District Court for the Southern District of New York. This memorandum contains 8,459 words, excluding the caption, tables of contents and authorities, signature blocks, and certificates.

Dated: October 19, 2026

*/s/ Uri A. Itkin*
Uri A. Itkin