**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GRIFOLS, S.A.,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL YU, GOTHAM CITY RESEARCH LLC, GENERAL INDUSTRIAL PARTNERS LLP, CYRUS DE WECK,<br><br>Defendants. | No: 1:24-cv-00576-LJL-GWG |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO STAY DISCOVERY**

Proskauer Rose LLP

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
Peter C. Angelica
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com
pangelica@proskauer.com

*Counsel for Plaintiff Grifols, S.A*

## TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ........ 1

FACTUAL AND PROCEDURAL BACKGROUND ........ 2

A. Grifols Sues Mr. Yu in his Home State of New York. ........ 2

B. Defendants Decline to Contest Jurisdiction After GSSNA's Dismissal ........ 4

C. Defendants Admit, and Then Affirmatively Invoke, Diversity Jurisdiction. ........ 5

D. Defendants Reverse Course After Losing in Discovery. ........ 6

E. Mr. Yu Has "Altered" the Supposed Evidence of His Residency. ........ 7

LEGAL STANDARD ........ 8

ARGUMENT ........ 8

I. DEFENDANTS CANNOT MAKE A "STRONG SHOWING" THAT THEIR UNFILED MOTION TO DISMISS WILL SUCCEED. ........ 8

A. Mr. Yu is Bound by His Admission that He Resides in New York. ........ 9

B. Mr. Yu Cannot Prove by Clear and Convincing Evidence That He Abandoned His New York Domicile. ........ 11

1. Mr. Yu's Own Declaration Confirms His Enduring New York Ties. ........ 12

2. Mr. Yu's Account Does Not Establish When He Purportedly Abandoned His New York Domicile. ........ 13

3. Mr. Yu's Evidence Has Conspicuous Gaps—and Omissions—at the Precise Moment That Matters. ........ 15

4. Mr. Yu's Prior Statements Undercut His Self-Serving Declaration. ........ 18

5. Defendants' "Mistake by Counsel" Explanation Is Unsupported—and, in Any Event, Irrelevant. ........ 19

C. Defendants' Alternative Argument Regarding GSSNA Fails. ........ 20

II. THE LIMITED DISCOVERY THAT REMAINS DOES NOT JUSTIFY A STAY ........ 21

A. Defendants' Document Production Was Near the Finish Line. ........ 22

B. The Near-Term Burden Is One Defendants Voluntarily Assumed. ........ 22

C. The Remaining Discovery Will Be Taken No Matter What. ........ 22

III. A STAY WOULD SUBSTANTIALLY PREJUDICE GRIFOLS. ....24

CONCLUSION ....25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ahvakana v. United States*,
2022 WL 489613 (D. Alaska Feb. 17, 2022)....................19

*Airlines Reporting Corp. v. S & N Travel, Inc.*,
58 F.3d 857 (2d Cir. 1995)....................20

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*,
757 F.2d 523 (2d Cir. 1985)....................10–11

*Cambridge Cap. LLC v. Ruby Has LLC*,
No. 20-cv-11118 (LJL), 2021 WL 2413320 (S.D.N.Y. June 10, 2021)....................8, 21

*Caterpillar Inc. v. Lewis*,
519 U.S. 61 (1996)....................21

*Cavallaro-Kearins v. Gruns Nutrition, Inc.*,
No. 25-cv-4998 (LJL), 2026 WL 594027 (S.D.N.Y. Mar. 3, 2026) (Liman, J.)....................8, 23

*Chenming Holdings (Hong Kong) Ltd. v. Sklarov*,2025 WL 2695281 (S.D.N.Y. Sept. 22, 2025)....................15

*City of New York v. Fleet Gen. Ins. Grp., Inc.*,
2024 WL 3517856 (2d Cir. July 24, 2024)....................9, 10, 11

*Cooper v. Meridian Yachts, Ltd.*,
575 F.3d 1151 (11th Cir. 2009)....................10

*Core VCT PLC v. Hensley*,89 F. Supp. 3d 104 (D.D.C. 2015)....................14

*Cota v. Art Brand Studios, LLC*,
2022 WL 767110 (S.D.N.Y. Mar. 14, 2022)....................8

*David v. Crompton & Knowles Corp.*,
58 F.R.D. 444 (E.D. Pa. 1973)....................10, 24, 25

*Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*,
7 N.Y.3d 65 (2006)....................23

*Diffley v. Allied-Signal, Inc.*,
921 F.2d 421 (2d Cir. 1990)....................23

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
422 F. Supp. 2d 357 (S.D.N.Y. 2006)....................20

*Feher v. Dimension Grp. LLC*,2026 WL 177740 (E.D.N.Y. Jan. 15, 2026) ....14

*FIA Leveraged Fund Ltd. v. Grant Thornton LLP*,
150 A.D.3d 492 (1st Dep't 2017) ....23

*Finnegan v. Long Island Power Auth.*,
409 F. Supp. 3d 91 (E.D.N.Y. 2019) ....14

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*,
498 U.S. 426 (1991)....20, 21

*Freidrich v. Davis*,767 F.3d 374 (3d Cir. 2014) ....14

*Gibbs v. CIGNA Corp.*,
440 F.3d 571 (2d Cir. 2006)....10

*Giuffre v. Maxwell*,
2016 WL 254932 (S.D.N.Y. Jan. 20, 2016) ....9

*Gonzalez v. PepsiCo, Inc.*,
2007 WL 1100204 (D. Kan. Apr. 11, 2007)....23

*Grupo Dataflux v. Atlas Global Grp., L.P.*,
541 U.S. 567 (2004)....15, 20, 21

*Gutierrez v. Fox*,
141 F.3d 425 (2d Cir. 1998)....9, 12, 13

*Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*,
297 F.R.D. 69 (S.D.N.Y. 2013) ....8

*Hoodho v. Holder*,
558 F.3d 184 (2d Cir. 2009)....19

*Hopper v. Credit Assocs., LLC*,
2021 WL 2800707 (S.D. Ohio July 6, 2021)....9

*In re Motors Liquidation Co.*,
590 B.R. 39 (S.D.N.Y. 2018)....11

*In re Motors Liquidation Co.*,957 F.3d 357 (2d Cir. 2020) ....11

*In re Vitamin C Antitrust Litig.*,
237 F.R.D. 35 (E.D.N.Y. 2006) ....23

*Ins. Co. of N. Am. v. M.B. Assocs.*,
1992 WL 395571 (S.D.N.Y. Dec. 10, 1992) ....9

*Ivy v. Tran*,
2021 WL 253797 (E.D. La. Jan. 26, 2021)....................23

*Kaplan v. Lebanese Canadian Bank, SAL*,
610 F. Supp. 3d 533 (S.D.N.Y. 2022)....................8, 24

*Kubin v. Miller*,
801 F. Supp. 1101 (S.D.N.Y. 1992)....................10, 12, 14

*Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*,
32 F.2d 195 (2d Cir. 1929)....................11

*Langford v. Beck*,
2021 WL 1393120 (S.D.N.Y. Apr. 12, 2021) (Liman, J.)....................9

*Linardos v. Fortuna*,
157 F.3d 945 (2d Cir. 1998)....................20

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962)....................19

*Med-X Global, LLC v. Azimuth Risk Solutions, LLC*,
2018 WL 4089062 (D.N.J. Aug. 27, 2018) ....................21

*Merrill Lynch & Co. v. Allegheny Energy, Inc.*,
500 F.3d 171 (2d Cir. 2007)....................21

*Mesirow v. Duggan*,
240 F.2d 751 (8th Cir. 1957) ....................9

*Mitchell v. United States*,
88 U.S. 350 (1874)....................12

*Morgan Art Found. Ltd. v. McKenzie*,
2020 WL 6135113 (S.D.N.Y. Oct. 18, 2020)....................24

*Nat'l Artists Mgmt. Co. v. Weaving*,
769 F. Supp. 1224 (S.D.N.Y. 1991)....................12

*Ohio Bell Tel. Co. v. Glob. NAPs Ohio, Inc.*,
2008 WL 641252 (S.D. Ohio Mar. 4, 2008)....................9

*Palazzo v. Corio*,
232 F.3d 38 (2d Cir. 2000)....................12, 13

*Quindell PLC v. Gotham City Research LLC*
(High Ct. of Justice, Q.B. Div. 2014) ....................2

*Ret. Program for Emps. of the Town of Fairfield v. NEPC, LLC*,
642 F. Supp. 2d 92 (D. Conn. 2009)....................21

*Ry. Co. v. Ramsey*,
89 U.S. 322 (1874)....................10

*Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*,
521 F. Supp. 1046 (S.D.N.Y. 1981)....................20

*Shcherbakovskiy v. Seitz*,
2010 WL 1063566 (S.D.N.Y. Mar. 23, 2010)....................8, 18

*Soto v. Lord*,
693 F. Supp. 8 (S.D.N.Y. 1988)....................9

*Techno-TM, LLC v. Fireaway, Inc.*,
928 F. Supp. 2d 694 (S.D.N.Y. 2013)....................10

*Triumph Constr. Corp. v. N.Y.C. Council of Carpenters Pension Fund*,
29 F. Supp. 3d 373 (S.D.N.Y. 2014)....................11, 19

*Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
589 F.2d 974 (9th Cir. 1978)....................10

*W. World Ins. Co. v. Stack Oil, Inc.*,
922 F.2d 118 (2d Cir. 1990)....................11

*Willis v. Westin Hotel Co.*,
651 F. Supp. 598 (S.D.N.Y. 1986)....................14

*Wilmington Tr., N.A. v. Aevri Salina Meadows LLC*,
2025 WL 3512140 (S.D.N.Y. Dec. 8, 2025)....................23, 24

**STATUTES**

6 Del. C. § 18-109(a)....................23

28 U.S.C. § 1332....................6

28 U.S.C. § 1332(a)....................3

N.Y. Civ. Rights Law § 79-h....................6, 24, 25

**RULES**

N.Y.C.P.L.R. 205(a)....................23

N.Y.C.P.L.R. 302(a)(1)....................23

Fed. R. Civ. P. 12(b)(6) .......... 4, 20, 21

Fed. R. Civ. P. 26(f) .......... 5

**OTHER AUTHORITIES**

Wright & Miller, *Federal Practice and Procedure* § 1262 (4th ed. 2026) .......... 9

## PRELIMINARY STATEMENT

Daniel Yu has spent over a year litigating on the premise that he is domiciled in New York. He has told the world the same thing. New York, he wrote, "is home." He posted that he is "a New Yorker." His federal tax returns list a New York apartment as his "home address." He frequently messaged his co-Defendants—including on the day Grifols commenced this action against him—from a New York number. He and his co-Defendants anticipated that if Grifols sued him it would have to be in New York. When Grifols then sued him here, alleging he resided in and was domiciled in New York, Mr. Yu did not deny it. He accepted this Court's jurisdiction. Then he affirmatively invoked it, suing Grifols on the express premise that "the parties are of diverse citizenship."

That was before he started losing. Defendants lost their bid to invoke New York's reporter's privilege that they banked on using to avoid producing documents. They were ordered to produce documents beyond the curated set they proposed. Their own discovery was curtailed. So, with their substantial-completion deadline approaching, Defendants conveniently "discovered" for the first time that this Court "does not have—and never had—subject matter jurisdiction," because they just learned that Mr. Yu lives outside the United States.

Defendants cannot come close to the "strong showing" their stay motion requires. Start with the burden, which Defendants ignore. Mr. Yu concedes that New York was his domicile. That domicile is presumed to continue, so Mr. Yu must prove by clear and convincing evidence that he abandoned it. He must also confront his own factual admissions and allegations, which bind him.

He cannot carry that burden, because living somewhere is not the same as being domiciled there. A New Yorker does not lose his domicile even after spending years abroad. Domicile turns on where someone intends to reside permanently, and substantial objective markers of Mr. Yu's

intent still point to New York: [redacted] and his own repeated declarations that New York—where his parents and sister indisputably still reside—is "home." Mr. Yu's own submission leaves those questions unresolved. His account of a transition to spending more time in Hong Kong, even if credited, does not establish that he abandoned his New York domicile, never mind that he did so by January 26, 2024.

And there are glaring problems with the evidence he submitted. The first lease in his own name begins in June 2024—more than four months after this suit was filed—and is unsigned. The only earlier lease names his former wife as the sole tenant and expired in 2022. He offers no tax return for 2024—the year this case was filed—and the returns he does offer are mere excerpts that stop just short of the Form 2555 questions that ask, under penalty of perjury, where his tax home was, whether he told Hong Kong he was a nonresident, and whether he kept a home in the United States. And his own counsel admits that Mr. Yu altered the exhibits he swore were "true and correct" copies, changing text and deleting content. A party who must prove his position clearly and convincingly cannot do so with curated excerpts, altered documents, and glaring omissions.

The remaining factors confirm that a stay is unwarranted. Defendants had nearly finished first-level review of their documents when they sought an interim stay, and what remains is principally depositions that will be taken wherever Grifols pursues its claims. And a stay would inflict real prejudice on Grifols, which has litigated for nearly three years in reliance on Defendants' admissions and assurances. The motion should be denied.

## <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A. Grifols Sues Mr. Yu in his Home State of New York.

In *Quindell PLC v. Gotham City Research LLC* (High Ct. of Justice, Q.B. Div. 2014), Mr.

Yu defaulted when facing a suit in the United Kingdom from another company that he defamed. Ex. 1.[1] To hold Mr. Yu accountable, Grifols sued him in his home state of New York. Grifols invoked diversity jurisdiction under 28 U.S.C. § 1332(a). ECF 1 ¶ 58. In support, Grifols alleged that Mr. Yu "is an individual, who upon information and belief, resides in Manhattan, New York," and that he "is a resident of and is domiciled in the State of New York." *Id.* ¶¶ 48, 55; *accord* ECF 115 ¶¶ 54, 61. Grifols further alleged that Gotham "has its principal place of business in New York and is solely controlled by a New York resident, Daniel Yu," and that venue was proper because "Yu and Gotham reside in the State of New York." ECF 1 ¶¶ 56, 59; ECF 115 ¶¶ 62, 65.

Public records from when Grifols sued in January 2024 supported its allegations. They showed that Mr. Yu had claimed to reside in a Manhattan apartment on East 40th Street since April 2022, and at 1950 Clove Road in Staten Island as recently as 2022. Ex. 2. Mr. Yu's own tax returns, which he has submitted excerpts from here, confirm the latter: each federal return he submits, for 2020 through 2023, lists [redacted] as his "Home address." Exs. 3–6.

Mr. Yu's own public statements on X (formerly Twitter), where he posts as @LongShortTrader[2], were to the same effect. In the years before this suit, he repeatedly held himself out as a New Yorker: New York "is home" (Sept. 11, 2019); "As a New Yorker who had lived there before and after 9/11" (May 31, 2020); "I'm a New Yorker and I'm pretty sure you're not" (Oct. 9, 2020). Ex. 7. In April 2022—long after he claims to have established a Hong Kong domicile—he Tweeted "USA is my home." *Id.* And in the months immediately preceding this lawsuit, he announced, "I am in NY" (Oct. 5, 2023), and "Gotta ♥ New York" (Nov. 24, 2023).

[1] Citations to exhibits ("Ex.") refer to exhibits to the Declaration of William T. Walsh ("Walsh Decl.") in support of Grifols' Opposition to Defendants' Motion to Stay.

[2] Mr. Yu has attested to the contents of the @LongShortTrader account under oath in this action. Ex. 8.

*Id.* The documents Defendants have produced confirm that while he was drafting the Gotham Report, including on the day this lawsuit was filed, Mr. Yu was messaging his co-Defendants from a New York (646 area code) mobile number. Ex. 9.

The press described Mr. Yu the same way, including in interviews. Barely a month before Mr. Yu told this Court he did not live in New York, Retraction Watch reported that it had spoken with "[Gotham City Research's] founder Daniel Yu, ***who is based in New York***." Ex. 10 (emphasis added). Press accounts starting from 2014 describe Mr. Yu as "a secretive New York short seller" and Gotham as "New York-based." Exs. 11–16.

Defendants' own contemporaneous communications show that they, too, expected to answer for the Gotham Report in a U.S. court, and in New York in particular. On [redacted] the day after publication, Defendants discussed retaining New York counsel as a [redacted] Ex. 17.[3] The next day, Mr. Yu wrote that he had [redacted] explaining why: [redacted] Ex. 9 at 3. On January 23, 2024—three days before Grifols sued—Mr. de Weck, after noting that Akin had provided [redacted] on a call, and referencing Mr. Yu's prior default in the United Kingdom, wrote that [redacted] Ex. 18 (emphasis added).

**B. Defendants Decline to Contest Jurisdiction After GSSNA's Dismissal.**

In its Complaint, Grifols' primary U.S. operating subsidiary, Grifols Shared Services North America, Inc. ("GSSNA"), a Virginia corporation headquartered in California, also sued for its own injuries stemming from the Report. ECF 1 ¶ 47. The Court dismissed GSSNA under Rule 12(b)(6)—not because it was a nominal, sham, or collusively joined party, but because it

[3] The message referred to Quinn Emanuel Urquhart & Sullivan, LLP, and Defendants later told Grifols they were retaining two lawyers from that firm's New York office. Walsh Dec. ¶2–3.

determined that the Report's statements were not "of and concerning" GSSNA. ECF 48 at 48.

Shortly after that decision, at the parties' Rule 26(f) conference, Grifols' counsel asked Defendants' then-counsel, David Korzenik, whether Defendants intended to challenge subject matter jurisdiction in light of GSSNA's dismissal. Ex. 19. Mr. Korzenik confirmed that they would not. *Id.* In reliance on that assurance, Grifols did not seek reconsideration or leave to amend. *Id.* Had Defendants disclosed that they would contest jurisdiction based on GSSNA being dismissed, Grifols would have sought leave to allege, among other things, that: (i) the Gotham Report identified GSSNA as the acquirer of Biotest US Corporation and, two paragraphs later, characterized the sale of that business to Scranton as a possible "tunnelling" transaction; ECF 115-1 at 12–13; (ii) readers familiar with GSSNA's role understood the Report's false concealed-loan charge related to the Biotest transaction to impugn GSSNA's own dealings, *see id.* at 12–13, 25; and (iii) GSSNA devoted its own personnel and resources to responding to that charge, injuring its own business.

**C. Defendants Admit, and Then Affirmatively Invoke, Diversity Jurisdiction.**

Defendants answered the Amended Complaint on June 26, 2025—nearly a month after GSSNA's dismissal. ECF 55. In addition to conceding that their Scranton Loan statements were wrong, *id.* at 2, Defendants responded to Grifols' allegation about Mr. Yu's residence as follows:

> **54. Defendant Daniel Yu is an individual, who upon information and belief, resides in Manhattan, New York. Upon information and belief, Yu goes by various other aliases and frequently changes his address. Yu is the founder, publisher, and editor of Gotham. He writes, edits, and publishes Gotham's reports, including the Gotham Report that is the subject of this Complaint.**
>
> 54. Admit that Daniel Yu is founder of Gotham City Research, and writes, researches, analyzes and publishes under that title. ***Deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.***

ECF 55 ¶ 54 (emphasis added). Defendants also "accept[ed] jurisdiction and venue." *Id.* ¶ 61.

But Defendants did not merely acquiesce in this Court's jurisdiction; they invoked it. They asserted a counterclaim under New York's anti-SLAPP statute seeking attorneys' fees and compensatory and punitive damages, premised in part on conduct unrelated to the merits of Grifols' claim—Grifols' supposed "incit[ement of] an SEC investigation" and "public relations campaign of misleading negative press." ECF 55 ¶¶ CC46–CC53; *see* ECF 136 ¶ CC50 (denying same). The only jurisdictional basis Defendants pleaded was diversity—a position necessarily premised on the fact that Mr. Yu was a citizen of a U.S. State because, as Defendants now insist, a stateless party destroys diversity. ECF 256 at 11–12. Defendants alleged (emphasis added):

> CC1. This court has jurisdiction pursuant to 28 U.S.C. § 1332 because ***the parties are of diverse citizenship*** and the amount in controversy exceeds $75,000.

Grifols admitted that allegation, ECF 136 ¶ CC1, and the parties litigated the counterclaim—including Grifols' motion to dismiss it—for more than a year. ECF 64; ECF 132.

**D. Defendants Reverse Course After Losing in Discovery.**

Defendants have used this forum aggressively. On top of their counterclaim brought under New York law, they invoked New York's Shield Law, N.Y. Civ. Rights Law § 79-h, to resist producing their documents, litigated that claim through objections to Judge Gorenstein's ruling, and lost. ECF 92; ECF 186. They resisted Grifols' motions to compel, *see, e.g.*, ECF 224; ECF 233, and after losing, ECF 142, served sweeping discovery of their own that Judge Gorenstein curtailed. ECF 217; ECF 248. Only as those losses mounted, and as the November 16, 2026 deadline for substantial completion of their own production approached, ECF 205, did Defendants change course. On September 30, 2026, without prior notice, Defendants announced that it had "come to our attention that the Court does not have—and never had—subject matter jurisdiction." ECF 214 at 1. They did not say when or how they learned this, and neither prior nor current counsel

has submitted a declaration explaining the reversal.[4]

### E. Mr. Yu Has "Altered" the Supposed Evidence of His Residency.

Mr. Yu's exhibits in support of this motion cannot be trusted. Defendants twice filed "corrected" versions, initially claiming there were unidentified redactions, and, in the second round conceding certain words had been "replac[ed]." ECF 281 at 1; ECF 277; ECF 278 at 1; ECF 280. Defendants' counsel has now admitted that Mr. Yu himself altered the exhibits before providing them to counsel, removing content from tax documents so that fields "appeared blank." Ex. 20. The unredacted versions recently provided to Grifols' counsel show that Mr. Yu substantively changed the documents, for example substituting "my Accountant" for the name of his actual tax preparer, which is a New York-based firm. *Compare* ECF 257 Exs. O–P, *with* Exs. 21–22.

Mr. Yu's altering of the documents is part of a pattern. A sworn affidavit from a Denver District Attorney's Office investigator recounts that Mr. Yu provided his probation officer with an altered copy of a paycheck displaying a Denver home address, whereas the employer's actual paycheck reflected a home address in Staten Island, New York. ECF 266-7 at 4. The affidavit further explains that Mr. Yu had not been authorized to reside outside Colorado and that his probation officer believed the alteration was intended to mislead her. *Id.*

Given Mr. Yu's history of altering residency-related documents, and Defendants' admission that Mr. Yu had done it again here, Grifols requested to review the original documents on an outside-counsel-eyes-only basis. Exs. 23–24. Defendants have not provided them or

[4] Counsel from Akin stated that they "recently" became co-lead counsel (ECF 214), despite having appeared in this matter on July 6, 2026 (ECF 169) and having discussed the Grifols case with Defendants in January 2024. Ex. 18. Indeed, Akin has represented Defendants in connection with the SEC's inquiry into the Grifols short attack since early 2024 and has represented them in this lawsuit since at least October 2025. ECF 242 at 1 n.1. It is not apparent how Akin could have been unaware for so long where its own client resides given, among other things, its know-your-client obligations and client intake process.

permitted their inspection. *Id.* Defendants' counsel has also refused to respond to Grifols' inquiry about whether they possess the complete, original documents or are relying entirely on supposed excerpts supplied by Mr. Yu. *See id.*

## LEGAL STANDARD

A motion to dismiss "does not automatically stay discovery," and a stay may be granted only "upon a showing of good cause by the moving party." *Cavallaro-Kearins v. Gruns Nutrition, Inc.*, No. 25-cv-4998 (LJL), 2026 WL 594027, at *1 (S.D.N.Y. Mar. 3, 2026) (Liman, J.) (citation omitted). Courts consider "(1) [the] breadth of discovery sought, (2) any prejudice that would result, and (3) the strength of the motion," *Cota v. Art Brand Studios, LLC*, 2022 WL 767110, at *1 (S.D.N.Y. Mar. 14, 2022) (quoting *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)), in light of "the particular circumstances and posture of each case," *Kaplan v. Lebanese Canadian Bank, SAL*, 610 F. Supp. 3d 533, 534 (S.D.N.Y. 2022) (citation omitted). On the third factor, the movant must make a "strong showing that [it] is likely to succeed on the merits." *Cambridge Cap. LLC v. Ruby Has LLC*, No. 20-cv-11118 (LJL), 2021 WL 2413320, at *1 (S.D.N.Y. June 10, 2021) (quoting *Hong Leong*, 297 F.R.D. at 72).

## ARGUMENT

### I. DEFENDANTS CANNOT MAKE A "STRONG SHOWING" THAT THEIR UNFILED MOTION TO DISMISS WILL SUCCEED.

Defendants ask the Court to credit Mr. Yu's disputed, self-serving account and incomplete excerpts over contrary objective evidence and his own prior pleadings—an account that must be tested against the record, not accepted as a basis for halting discovery nearly three years into this case. *See Shcherbakovskiy v. Seitz*, 2010 WL 1063566, at *3 (S.D.N.Y. Mar. 23, 2010). Defendants also must confront their own pleadings. For more than a year, Defendants admitted the fact of Mr. Yu's New York residence and affirmatively alleged diversity to obtain relief from this Court; they

disavowed both only after their discovery strategy (produce a curated set of documents and withhold the rest) failed and their production deadline was looming. Where jurisdictional issues are even "fairly debatable rather than clear-cut," the resulting "uncertainty counsels against granting a stay of discovery." *Hopper v. Credit Assocs., LLC*, 2021 WL 2800707, at *3 (S.D. Ohio July 6, 2021) (quoting *Ohio Bell Tel. Co. v. Glob. NAPs Ohio, Inc.*, 2008 WL 641252, at *2 (S.D. Ohio Mar. 4, 2008)); *see Giuffre v. Maxwell*, 2016 WL 254932, at *2 (S.D.N.Y. Jan. 20, 2016). That is the case here: Mr. Yu's shifting account and suspect exhibits strongly weigh against a stay.

### A. Mr. Yu is Bound by His Admission that He Resides in New York.

After a pre-suit investigation, Grifols properly alleged that Mr. Yu resided and was domiciled in New York. ECF 1 ¶¶ 48, 55. An allegation of residence is "the kind of jurisdictional fact that must be challenged at the moment, not later." *Langford v. Beck*, 2021 WL 1393120, at *2 (S.D.N.Y. Apr. 12, 2021) (Liman, J.) (citation omitted); *see Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998). Yet when Grifols alleged that Mr. Yu "resides in Manhattan, New York," he claimed to lack "knowledge or information sufficient to form a belief" about where he himself lived. ECF 55 ¶ 54. That is tantamount to an admission: a party "may not assert a lack of knowledge or information if the necessary facts . . . are within his knowledge," and such a denial "casts doubt on the good faith of the pleader." Wright & Miller, *Federal Practice and Procedure* § 1262 (4th ed. 2026). An averment is therefore "deemed admitted when the matter is obviously one as to which the defendant has knowledge or information." *Soto v. Lord*, 693 F. Supp. 8, 23 n.28 (S.D.N.Y. 1988); *see Mesirow v. Duggan*, 240 F.2d 751, 756 (8th Cir. 1957) (matter "peculiarly within his knowledge" "stood admitted"); *Ins. Co. of N. Am. v. M.B. Assocs.*, 1992 WL 395571, at *4 (S.D.N.Y. Dec. 10, 1992). The Second Circuit likewise holds parties to admissions about their own location that were "uniquely within [their] capacity to ascertain." *City of New York v. Fleet Gen. Ins. Grp., Inc.*, 2024 WL 3517856, at *2 (2d Cir. July 24, 2024) (citation omitted); *see Cooper*

*v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1178 (11th Cir. 2009).

Nothing is more obviously within a person's knowledge than where he lives. Mr. Yu concedes as much: his motion to stay rests entirely on his purported knowledge of those very facts. ECF 277 ¶¶ 2, 13, 26, 38. If he claims to know in November 2026 where he resided in January 2024, he must have known it then too and could have admitted or denied Grifols' allegations in his Answer. In *Fleet*, the Second Circuit rejects that kind of professed ignorance, as did the court in *David v. Crompton & Knowles Corp.*, where a defendant that pleaded ignorance of facts "peculiarly within [its] control and knowledge," then tried to deny them based on information "only recently discovered," was held to its admission and not permitted to escape a situation "of its own making" at the expense of a plaintiff it had "lulled." 58 F.R.D. 444, 446–48 (E.D. Pa. 1973). Mr. Yu's deemed admission of New York residence therefore "bind[s] the defendant throughout this litigation." *Gibbs v. CIGNA Corp.*, 440 F.3d 571, 578 (2d Cir. 2006).

Although a party cannot consent to jurisdiction, "parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission." *Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 589 F.2d 974, 977 (9th Cir. 1978) (quoting *Ry. Co. v. Ramsey*, 89 U.S. 322, 327 (1874)); *see Fleet*, 2024 WL 3517856, at *2 (rejecting argument that admissions about location were mere "legal conclusions" regarding diversity); *see also Kubin v. Miller*, 801 F. Supp. 1101, 1111 (S.D.N.Y. 1992); *Techno-TM, LLC v. Fireaway, Inc.*, 928 F. Supp. 2d 694, 698–99 (S.D.N.Y. 2013). By professing ignorance of whether he resided in New York at the time of filing, Mr. Yu admitted to such residence. That factual admission—which has stood for over a year—is binding.

In addition, "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding," *Bellefonte Re Ins. Co. v. Argonaut*

*Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985), "especially" where it concerns "matters peculiarly within its knowledge or control[.]" *Triumph Constr. Corp. v. N.Y.C. Council of Carpenters Pension Fund*, 29 F. Supp. 3d 373, 380 (S.D.N.Y. 2014) (citation omitted). Here, Mr. Yu's counterclaim alleges that "the parties are of diverse citizenship." ECF 55 ¶ CC1. That is a factual assertion that when the lawsuit was filed he resided in New York, or at least some State, given that a stateless party destroys diversity, *see* ECF 256 at 11–12.

Mr. Yu cannot avoid his factual admissions by attributing them to counsel, because "[a] pleading prepared by an attorney is an admission by one presumptively authorized to speak for his principal." *In re Motors Liquidation Co.*, 590 B.R. 39, 55–56 (S.D.N.Y. 2018) (quoting *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter*, 32 F.2d 195, 198 (2d Cir. 1929)), *aff'd*, 957 F.3d 357 (2d Cir. 2020). Indeed, such factual admissions are "conclusive" where, as here, the party has never moved to amend. *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 122 (2d Cir. 1990).

The Court should therefore hold Mr. Yu to his admissions. In *Fleet*, the Second Circuit held a defendant to admissions it maintained "for a period over a year and a half" and tried to correct only "after losing on summary judgment and hiring new counsel." 2024 WL 3517856, at *2. The same result is warranted here. Mr. Yu's conceded prior New York domicile is presumed to continue, and his binding admission of New York residence at filing in his Answer further undermines his attempt to prove abandonment, as does his affirmative allegation of diverse citizenship in his Counterclaim. At a minimum, these circumstances require factual development through jurisdictional discovery and defeat the "strong showing" needed for a stay.

### B. Mr. Yu Cannot Prove by Clear and Convincing Evidence That He Abandoned His New York Domicile.

Defendants' motion is likely to fail even without Mr. Yu's admissions. Defendants seek to shift the burden regarding Mr. Yu's domicile to Grifols, invoking the general rule that the party

asserting jurisdiction must establish it. ECF 256 at 15. But Defendants ignore that Mr. Yu concedes he had an established domicile in New York, ECF 277 ¶ 3, and an established domicile "is presumed to continue until it is shown to have been changed," *Mitchell v. United States*, 88 U.S. 350, 353 (1874). "[T]he burden of proof rests upon the party" alleging a change. *Gutierrez*, 141 F.3d at 428; *Kubin*, 801 F. Supp. at 1110–11. Thus, to overcome the presumption that he is domiciled in New York, Mr. Yu must prove by clear and convincing evidence (1) residence in Hong Kong as of January 2024 ***and*** (2) the intent to remain there and abandon his prior New York domicile. *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). He fails to do so.

### 1. Mr. Yu's Own Declaration Confirms His Enduring New York Ties.

Domicile is "the place where a person has his true fixed home . . . and to which, whenever he is absent, he has the intention of returning." *Palazzo*, 232 F.3d at 42 (citation omitted). Because intent is the crux, courts "examine the entire course of a person's conduct," *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991) (citation omitted), and give self-serving testimony little weight when other facts contradict it. *Kubin*, 801 F. Supp. at 1111.

Courts assess domicile by weighing, among other things, where a person keeps property, where his spouse and family live, where he pays taxes and lists his address, where he banks, and where his accountant is located. *Nat'l Artists*, 769 F. Supp. at 1228; *see Kubin*, 801 F. Supp. at 1110–11 (New York domicile continued where party kept New York apartments and used New York accountants, lawyers, and brokers, despite Connecticut home, driver's license, and tax filings). Mr. Yu's own evidence identifies substantial continuing New York ties:

- Mr. Yu moved to New York as a child, lived there through high school, and admits that New York was his "primary residence" as an adult (ECF 277 ¶ 3);
- Mr. Yu says he "split [his] time between New York and Hong Kong" from 2014 through 2018 (*id.* ¶ 4);

- Mr. Yu admits he bought a Manhattan apartment in approximately 2017—while, by his own account, he was still splitting his time with New York—still owns it today (*id.* ¶¶ 4, 33);

- Each Form 1040 he submits, for 2020 through 2023, lists a "Home address" in [redacted] and leaves that form's foreign-address fields blank; his 2022 and 2023 Forms 8858 likewise list [redacted] for him as the filer (Exs. 3-6);

- Mr. Yu admits his parents have lived in New York for the past twenty-five years (*id.* ¶ 35);

- His only Hong Kong identification is a *non-permanent* identity card first marked "C," which means his stay in Hong Kong was limited by the Director of Immigration at the time of registration (Ex. 25; ECF 277 ¶¶ 5–6);[5]

- He uses a [redacted] mobile number (Ex. 9) and collected rent on his Manhattan apartment through Venmo, which requires a U.S. mobile number and U.S. bank account (Exs. 27, 28); and

- His tax preparer is a [redacted] (Exs. 21, 22, 29).

Defendants dismiss these ties as "limited" and "irrelevant," ECF 256 at 17–18, but they bear on Mr. Yu's intent to return. A long-time domicile "is presumed to continue," *Gutierrez*, 141 F.3d at 427, and Mr. Yu must show by clear and convincing evidence that he abandoned it, not merely that he acquired ties elsewhere. *Palazzo*, 232 F.3d at 42. His substantial continuing New York connections from his own evidence undermine that claim.

**2. Mr. Yu's Account Does Not Establish When He Purportedly Abandoned His New York Domicile.**

Mr. Yu's submission is also lacking because it fails to establish when he supposedly abandoned his New York domicile. He describes splitting his time between New York and Hong Kong from 2014 through 2018, "transition[ing]" to living in Hong Kong full-time around 2018,

[5] Hong Kong distinguishes between the ordinary Hong Kong Identity Card, which must be obtained by any person aged 11 or over who stays in Hong Kong for more than 180 days, but "does not state that the holder has the right of abode" in Hong Kong, and the Hong Kong Permanent Identity Card, which is issued only to permanent residents who hold the right of abode. *See* Ex. 26. Mr. Yu claims only the former, without "the right of abode."

and considering it his permanent residence "since at least 2020." ECF 277 ¶¶ 2, 4. But an increasing physical presence in Hong Kong does not establish when he abandoned New York as his fixed home, and his assertions of permanent intent are contradicted by his ongoing New York connections, his public statements, and the gaps in his documentary record.

Mr. Yu's documents do not resolve that question. The December 2018 identity card corroborates some Hong Kong connection, but does not prove when, if ever, he abandoned his New York domicile. Ex. 25. Likewise, the "Initial" Form 8858 for 2022 and his first Form 2555 excerpt, for 2023, do not establish when Gotham began operating in Hong Kong or when Mr. Yu first claimed a foreign earned income exclusion. Exs. 5–6. They are selected excerpts, not a complete record of the change.

Even if Mr. Yu lives in Hong Kong now, it does not matter. Residence is not domicile, and domicile "is not destroyed by mere absence." *Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 603 (S.D.N.Y. 1986); *see Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 100 (E.D.N.Y. 2019). *Kubin* is instructive. There, a New York domiciliary bought a Connecticut home, married there, registered his cars and held his driver's license there, listed Connecticut as his principal residence on his tax returns, and swore he spent most of the year there. 801 F. Supp. at 1110–11. The court nonetheless held that he "failed to sustain the burden of proving that his domicile changed." *Id.* at 1111. He had "acquire[d] a second residence," but his "strong ties to New York" remained, and his self-serving account was "inconsistent with other established facts." *Id.* at 1111.[6]

[6] Defendants' cases show, at most, that U.S. ties do not *necessarily* defeat a foreign domicile. ECF 255 at 12-14. But they do not help Mr. Yu, whose proof, burden, and litigation conduct are entirely different. *See Feher v. Dimension Grp. LLC*, 2026 WL 177740, at *1-2, *4 (E.D.N.Y. Jan. 15, 2026) (live testimony credited at evidentiary hearing; family, schools, doctors, and tax-form residence all abroad); *Freidrich v. Davis*, 767 F.3d 374, 375–76, 378–79 (3d Cir. 2014) (after discovery and hearing; defendant had sold U.S. home, bought German home with wife, ran German business, and listed German address on returns); *Core VCT PLC v. Hensley*, 89 F. Supp. 3d 104, 106-12 (D.D.C. 2015) (after discovery and hearing; abandonment of U.S. domicile decades

*Kubin* shows why Mr. Yu's New York ties are relevant. His Forms 1040 continue to list a [redacted] "Home address." Exs. 3–6. And his own public statements continued to identify New York as "home." Ex. 7. He returned to New York for nearly three weeks in fall 2023 and again seven weeks before suit. ECF 277 ¶ 29. Barely a month before disavowing his New York domicile in this lawsuit, he spoke with Retraction Watch, which then reported he was "based in New York." Ex. 10. On these facts, Mr. Yu has failed to show clearly and convincingly that he abandoned his New York domicile.

### 3. Mr. Yu's Evidence Has Conspicuous Gaps—and Omissions—at the Precise Moment That Matters.

There are also significant reasons to doubt Mr. Yu's evidence. Domicile is measured as of the date of filing, *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570–71 (2004), yet Mr. Yu's supposed evidence is thinnest at precisely that point.

***No contemporaneous lease corroborating his claimed home.*** The first lease Mr. Yu offers in his own name commenced in June 2024—more than four months after the filing date—and was signed by no one. ECF 277 ¶ 14; Ex. 30. The only earlier lease names his former wife as the sole tenant, does not name Mr. Yu as a tenant or occupant, states that the tenancy is "personal to the Tenant named herein," expired in 2022, and is missing pages. Ex. 31 ¶ 3.[7] He supplies no document to corroborate that he continued living in that apartment as of January 26, 2024, despite his separation from his former wife. ECF 277 ¶¶ 11–13. That omission is conspicuous: Mr. Yu says

earlier was uncontested, so presumption favored defendant); *Chenming Holdings (Hong Kong) Ltd. v. Sklarov*, 2025 WL 2695281, at *8–11 (S.D.N.Y. Sept. 22, 2025) (no prior U.S. domicile shown; co-defendant not a U.S. citizen). Mr. Yu, by contrast, concedes a prior New York domicile, pleaded ignorance of his own residence, alleged diversity, anticipated he could be sued in the United States (and only there), interviewed New York lawyers before Grifols sued, and offers only an untested declaration and altered excerpts.

[7] By contrast, when Mr. Yu later leased an apartment for himself, the lease said so: "This unit mostly is YU DANIEL JUN live. [sic]" Ex. 30. The 2020 lease contains no comparable statement.

he still sees his former wife every day, *id.* ¶ 15, yet he did not submit a copy of the purported renewal covering the filing date.

***No complete tax returns—and none for the filing year.*** Mr. Yu relies on snippets from his tax filings to show that he "listed Hong Kong as [his] place of residence." ECF 277 ¶¶ 21, 36. The excerpts he submitted do not establish the change of domicile he claims. Each Form 1040 for 2020 through 2023 lists a [redacted] "Home address" and leaves the foreign-address fields blank. Exs. 3–6. The Hong Kong address on the submitted 2020–2022 Forms 2555 is his [redacted], on [redacted] own form. *Id.*; Ex. 20. Mr. Yu's own first Form 2555 is for 2023—filed after this suit—and lists Gotham's Delaware address for his employer. Ex. 6, and for 2024, he offers no return at all, only an undated extension request letter. ECF 277 ¶ 22; Ex. 21.

What Mr. Yu omits is more telling. He submitted only excerpts from Form 2555, stopping at line 4b. Exs. 3–6. The omitted portion asks, under penalty of perjury, questions that bear directly on domicile: the taxpayer's tax home and the date his bona fide foreign residence began; whether he told the foreign country he was not a resident and whether he paid its income tax; his days in the United States; his visa type and any limits on his stay; and whether he maintained a home in the United States and who lived there. Exs. 32–35, lines 9–10, 13a–13b, 14, 15b–15e. Mr. Yu has those answers, yet he chose to conceal them from Grifols and the Court.

***A family rooted in the United States.*** Mr. Yu describes his former wife only as "a woman from Hong Kong." ECF 277 ¶ 7. In fact, she is a U.S. citizen, as is their child. Exs. 4–5. She filed joint U.S. returns with Mr. Yu for 2020 through 2022 listing the same New York home address, claimed their child as a dependent, and filed her own Form 2555—a form "[f]or [u]se by U.S. [c]itizens and [r]esident [a]liens [o]nly." Exs. 3–5. That marriage was not dissolved until 2024. ECF 277 ¶ 11. And Mr. Yu's parents and sister all remain in New York—his parents apparently

at the Clove Road apartment he lists as his home address, his sister apparently in the Manhattan apartment he owns. *Id.* ¶¶ 27–36. On the filing date, then, Mr. Yu's wife and child were U.S. citizens, his parents and sister lived in New York at properties where he has resided, and he was part of a U.S. tax-filing household with a New York home address. All of that undermines his claim to have abandoned his New York domicile.

***Altered exhibits.*** Nor can the Court take Mr. Yu's curated excerpts at face value. Mr. Yu did not simply black out private information in the manner that one typically redacts a document. Instead, before handing the documents to his own lawyers, he erased and rewrote them, and they were then filed as if they were untouched originals. Fields that had contained information were made to appear blank, with no redaction box to signal that anything was missing. Ex. 20 (conceding that Mr. Yu altered the documents "[b]efore those documents were provided to us," so that information "appeared blank"). Mr. Yu also substituted his own words for the documents' actual text. His original Exhibit M replaced his former wife's employer's name, "[redacted]" with "aaaaaaaaaaaaaa" in the Form 2555 employer field, and his original Exhibits O and P replaced the name of his [redacted] tax preparer with "my Accountant" and "my accountant"—concealing precisely the kind of New York tie that bears on domicile. Yet he swore—falsely—that those exhibits were "true and correct" copies. *Compare* ECF 257 ¶¶ 21–22 & Exs. M, O–P, *with* Exs. 5, 21, 22; ECF 281 at 1.

When the discrepancies surfaced, Defendants twice refiled "corrected" exhibits, inaccurately told the Court they were "otherwise identical," and dismissed the changes as "not substantive" formatting issues. ECF 277; ECF 281 at 1; Ex. 20. Remarkably, Defendants still will not say whether their counsel has ever seen the originals, and they refuse to let Grifols inspect them. *Id.* Exs. 20, 23, 24. A declarant who rewrites his own evidence and falsely swears to their

authenticity—and who has done that before to mislead the authorities, *see supra* Background §E—fails to clearly and convincingly prove that he abandoned his New York domicile.

**4. Mr. Yu's Prior Statements Undercut His Self-Serving Declaration.**

Mr. Yu swears that from 2014 through 2018 he "split [his] time between New York and Hong Kong," ECF 277 ¶ 4, and that he and his former wife "lived together in Hong Kong between 2014 and 2024," *id.* ¶ 8. But in April 2016—squarely within that period—Mr. Yu swore to a California federal court that Gotham, of which he was then the sole member, *id.* ¶ 20, "regularly does business in San Francisco," Ex. 36 at 2, where his ex-wife [redacted]. Ex. 37. It is hard to see how a one-man firm could "regularly do[] business" in San Francisco while its only principal is dividing his time between New York and Hong Kong and living with his partner in Hong Kong. Mr. Yu's sworn accounts of where he and Gotham operate shift with his litigation needs, which weighs against crediting his uncorroborated statements of intent. *See Shcherbakovskiy*, 2010 WL 1063566, at *3.

Mr. Yu's other public statements during the relevant period also contradict his declaration. In September 2019, after his supposed transition to living in Hong Kong full-time, he wrote that New York "is home"; in October 2020, the year by which he now claims to have considered Hong Kong his permanent residence, he declared, "I'm a New Yorker and I'm pretty sure you're not." Ex. 7; ECF 277 ¶¶ 2, 4. In April 2022, he was still telling the public, "USA is my home." Ex. 7. And barely a month before he disavowed New York residence in this Court, Retraction Watch reported that it had interviewed him and that he was "based in New York." Ex. 10. Those repeated public descriptions of his home and base of operations undermine his present claim to have abandoned his established New York domicile and reinforce why his account cannot be accepted at face value.

### 5. Defendants' "Mistake by Counsel" Explanation Is Unsupported—and, in Any Event, Irrelevant.

Defendants' only explanation for accepting jurisdiction for two and a half years is that prior counsel conducted an "incomplete investigation" and never asked Mr. Yu about his domicile. ECF 256 at 8–9, 17 n.1; ECF 277 ¶ 37. Yet no declaration from counsel supports that claim, and it is implausible. Counsel could not answer a complaint alleging that Mr. Yu resided and was domiciled in New York, ECF 1 ¶¶ 48, 55, without at least inquiring where their client lived—and could not allege that "the parties are of diverse citizenship" without knowing. ECF 55 ¶¶ 54, 61, CC1. Akin, too, has advised Mr. Yu since at least January 2024, ECF 242 at 1 n.1, and must have been aware of his place of residence, yet no one raised the issue for more than two and a half years.

Moreover, Mr. Yu says only that "[w]hen Grifols filed this case," he was not asked about his Hong Kong residence, ECF 277 ¶ 37—not that he never read the Complaint or that he never reviewed his own Answer and Counterclaim. And even if he never read his own pleadings, Mr. Yu remains bound by their factual admissions anyway. A party who "voluntarily chose [an] attorney as his representative . . . cannot . . . avoid the consequences of the acts or omissions of this freely selected agent." *Hoodho v. Holder*, 558 F.3d 184, 192 (2d Cir. 2009) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962)). That "in hindsight, it might have been preferable" to contest a point does not free a party from counsel's concession. *Id.* at 193. Relief from a judicial admission requires an "honest mistake," *Triumph,* 29 F. Supp. 3d at 380 (quotation omitted), and Defendants have offered no sworn account of one. Nor was this a one-time slip; Defendants repeatedly litigated on the premise of diversity, making their "mistake" position entirely untenable. *See Ahvakana v. United States*, 2022 WL 489613, at *5–6 (D. Alaska Feb. 17, 2022) (rejecting claimed "mistake" in answer admitting jurisdictional fact where party, "[b]y engaging in litigation for over seven years, . . . continuously reaffirmed and acted upon its belief").

***

At bottom, Mr. Yu asks the Court to credit a declaration that contradicts his own pleadings, his own tax returns, and his own public statements—and to do so on the strength of exhibits he admittedly altered, which are mere excerpts that omit questions bearing on the domicile inquiry. That is not a "strong showing" of anything. It is a strong reason to let discovery proceed on a case that has been pending for nearly three years and is likely to go forward in this Court.

**C. Defendants' Alternative Argument Regarding GSSNA Fails.**

Defendants' alternative theory concerning GSSNA fares no better. Diversity is measured "against the state of facts that existed at the time of filing," *Grupo Dataflux*, 541 U.S. at 571, and jurisdiction that exists then "may not be divested by subsequent events," *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991); *accord Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998). At filing, GSSNA—a Virginia corporation based in California—was a plaintiff asserting its own injuries. ECF 50 ¶ 53. Defendants claim GSSNA was a "nominal party" and argue that its Rule 12(b)(6) dismissal was a "change of party" that divested jurisdiction. Not so.

First, a party is nominal only if it has "no personal stake in the outcome of the litigation." *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 388 (S.D.N.Y. 2006); *see Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 861–62 (2d Cir. 1995) (disregarding clearinghouse that was a "mere conduit for a remedy owing to others"). The test is whether the party had a real stake at filing, not whether it ultimately prevailed. Defendants' own case confirms the point: *Saxe* decided nominal status at the threshold, on the pleadings as of removal, placed the burden on the party claiming nominal status, and disregarded individual attorneys only because settled law categorically barred them from suing for their firm's injury. *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 521 F. Supp. 1046, 1048–49 (S.D.N.Y. 1981); *see* ECF 255 at 21–22. GSSNA, by contrast, is Grifols' "primary . . . operating entity in the United States," with more

than 18,000 employees, ECF 50 ¶¶ 53, 83; it took no assignment, was not formed for this litigation, and was not suing to pass a recovery through to someone else. Nor is there any basis for Defendants' speculation that GSSNA was "improperly or collusively" joined. ECF 255 at 22 n.3. A later merits ruling on a contested Rule 12(b)(6) motion is not a finding that GSSNA had "no possibility" of a claim at filing. *See Ret. Program for Emps. of the Town of Fairfield v. NEPC, LLC*, 642 F. Supp. 2d 92, 95 (D. Conn. 2009).

Second, GSSNA's later dismissal did not divest jurisdiction. The "change of party" dicta Defendants invoke, *Grupo Dataflux*, 541 U.S. at 574, does not help them. Every authority they cite involves a post-filing change that *cures* a defect or *adds* a non-diverse party, not the dismissal of a diverse party whose presence supported jurisdiction at filing. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 64 (1996); *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 179 (2d Cir. 2007). And jurisdiction that exists at filing "may not be divested by subsequent events." *Freeport-McMoRan*, 498 U.S. at 428. For instance, in *Med-X Global, LLC v. Azimuth Risk Solutions, LLC*, the only U.S. plaintiff was dismissed for lack of standing, leaving a foreign plaintiff against U.S. and foreign defendants; the court rejected the argument that diversity was destroyed because it would require "assess[ing] subject matter jurisdiction based on the identity of the parties *at the present moment*" rather than "*at the time the complaint was filed.*" 2018 WL 4089062, at *2–3 (D.N.J. Aug. 27, 2018). The same is true here.

## II. THE LIMITED DISCOVERY THAT REMAINS DOES NOT JUSTIFY A STAY.

The breadth of discovery is weighed together with the strength of the motion. *See Cambridge Cap.*, 2021 WL 2413320, at *3. Defendants' motion is weak, *supra* Point I, and the discovery they seek to avoid is not broad: their production was nearly complete (Point II.A), the near-term obligations are ones they assumed (Point II.B), and the remaining depositions will be taken in any forum (Point II.C).

**A. Defendants' Document Production Was Near the Finish Line.**

Defendants were well along with their document production when they sought an interim stay. Their claimed review of "over 130,000 documents," ECF 256 at 25, describes what they collected, not what was left. By October 16, 2026, only 6,423 documents—less than five percent—still awaited review. ECF 261 at 2; ECF 263 ¶¶ 11–13, 16.[8] Of the documents needing further checks, Defendants assert that 48,289 require only targeted searches and spot checks (10–20 hours); and about 8,327 require document-by-document review (roughly 257 hours). ECF 263 ¶¶ 10–18. Factual chronologies and other work product, *id.* ¶ 17, are not discovery burdens. And also on October 16, Defendants confirmed they would meet the Court-ordered deadlines absent a stay and produce on October 26. Ex. 38. Within forty-eight hours, they reversed course and sought an interim stay, and that production never came. ECF 261.

**B. The Near-Term Burden Is One Defendants Voluntarily Assumed.**

The only near-term discovery is discovery Defendants promised to complete. Grifols withdrew a motion to compel in exchange for Defendants' commitments to produce documents by October 26 and serve amended RFA responses by October 30. ECF 241. Defendants made those commitments after announcing their jurisdictional motion, ECF 214, and agreed to a briefing schedule they knew would overlap, ECF 244; ECF 247, so any overlap is "of [their] own making." *David*, 58 F.R.D. at 448. And each of the "three discovery motions" they decry, ECF 256 at 26, was necessitated by their own failures. ECF 225; ECF 234; ECF 241.

**C. The Remaining Discovery Will Be Taken No Matter What.**

What remains is principally depositions—the bulk of Defendants' estimated "1,100 hours,"

[8] While the universe of documents is small, Grifols believes the remaining documents will be highly probative of actual malice; they are the documents Defendants selectively withheld based on their since-rejected claim of New York's reporter's privilege. *See* ECF 186.

ECF 263 ¶¶ 22–33—which will be taken however this motion is decided. Many overlap with jurisdictional discovery already under way, ECF 244, because the documents relevant for those depositions on the merits will also bear on where Mr. Yu lived and worked around the filing date. *See Wilmington Tr., N.A. v. Aevri Salina Meadows LLC*, 2025 WL 3512140, at *2 (S.D.N.Y. Dec. 8, 2025). That witnesses are abroad is "all the more reason to make an early start." *In re Vitamin C Antitrust Litig.*, 237 F.R.D. 35, 37 (E.D.N.Y. 2006). And if the case were dismissed—it should not be—Grifols could recommence it in state court anyway, N.Y.C.P.L.R. 205(a); *Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 424 (2d Cir. 1990), with well-established bases for personal jurisdiction over Defendants there.[9]

Wherever Grifols' claims proceed, the documents and witnesses will be the same, and courts decline to stay discovery that would be equally relevant in another forum. *See Gonzalez v. PepsiCo, Inc.*, 2007 WL 1100204, at *4 (D. Kan. Apr. 11, 2007); *Ivy v. Tran*, 2021 WL 253797, at *4 (E.D. La. Jan. 26, 2021) ("Discovery is a necessary stage in litigation whether a case proceeds in federal court or in state court."); *Wilmington Tr.*, 2025 WL 3512140, at *2 (federal discovery "would help streamline" any state-court proceeding).

## III. A STAY WOULD SUBSTANTIALLY PREJUDICE GRIFOLS.

Defendants say "delay alone does not rise to undue prejudice." ECF 256 at 27–28. But "lack of prejudice alone does not merit a stay," *Cavallaro-Kearins*, 2026 WL 594027, at *1

[9] Defendants' contrary assertion, ECF 256 at 28 n.4, is wrong. For example, New York's long-arm statute reaches non-domiciliaries who transact business in the State, including through communications with New York-based investors and the use of New York brokers and banks in connection with transactions at issue. N.Y.C.P.L.R. 302(a)(1); *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 71–72 (2006); *FIA Leveraged Fund Ltd. v. Grant Thornton LLP*, 150 A.D.3d 492, 493–94 (1st Dep't 2017). Both Mr. Yu and Mr. de Weck engaged in such conduct. Delaware is likewise available given, at a minimum, Gotham is a Delaware limited liability company, and its managers—including any person who "participates materially in the management" of the company—consent to jurisdiction there in actions relating to its business. 6 Del. C. § 18-109(a).

(citation omitted), and the prejudice here goes beyond mere delay. For nearly three years, Grifols has litigated in the forum Defendants accepted and invoked: its defamation claim survived their motion to dismiss, ECF 48; it has defended their anti-SLAPP counterclaim, ECF 64; ECF 132; defeated their New York Shield Law motions, ECF 186; secured a protective order against their overbroad discovery, ECF 219; and repeatedly moved to compel discovery they agreed to provide, ECF 188; ECF 196; ECF 225. A stay would freeze all of that at the tail end of fact discovery so Defendants can pursue an unlikely challenge that surfaced only after their New York Shield Law-strategy failed and as their production deadline approached.

The age and posture of this case make that prejudice acute. It has been pending since January 2024; Defendants' substantial-completion deadline is days away; and fact discovery closes in February 2027. ECF 1; ECF 205. Courts routinely deny stays at this stage. *See Kaplan*, 610 F. Supp. 3d at 535 ("[a]s more time passes, the higher the risk that witnesses will become unavailable and memories will fade"); *Wilmington Tr.*, 2025 WL 3512140, at *2 (refusing stay "[g]iven the advanced stage of this case" and "the present uncertainty" about jurisdiction); *Morgan Art Found. Ltd. v. McKenzie*, 2020 WL 6135113, at *2–3 (S.D.N.Y. Oct. 18, 2020) (unfair to halt depositions near the end of discovery pending a jurisdictional motion).

Grifols also relied on Defendants' own conduct. It did not seek reconsideration or leave to amend after Defendants' counsel assured it that Defendants would not challenge jurisdiction, Ex. 19; it litigated for more than a year on Defendants' admissions and their own allegation of diverse citizenship, *supra* Background §§ B, C; and it withdrew a motion to compel in exchange for promises Defendants then escaped through an interim stay, ECF 241; ECF 261; ECF 265; *supra* Point II.A. Courts refuse to impose that kind of prejudice on a party "lulled" by its adversary's pleadings and representations. *David*, 58 F.R.D. at 448.

Finally, a stay would unfairly reward Defendants' delay strategy. Defendants delayed preserving and collecting Mr. Yu's mobile devices, Ex. 39; refused to enter an ESI protocol, Ex. 40; reneged on discovery agreements, ECF 157; spent most of 2026 on a failed attempt to withhold documents under New York's Shield Law, ECF 186; waited nearly a year to serve their own discovery, Ex. 41; and halted production of documents they were ordered to produce after committing to a production schedule, *supra* Point II.A. Nor would the delay be "brief": Defendants still have not filed their motion to dismiss, jurisdictional discovery has barely begun, and Mr. Yu has not even produced the complete originals of his altered exhibits. And because the same discovery will be needed in any forum, *supra* Point II.C, a stay would only leave Grifols to complete it later, on a staler record. *See David*, 58 F.R.D. at 447–48.

## CONCLUSION

Defendants' motion to stay should be denied. Mr. Yu admitted residing in New York as of January 2024, and his curated, altered evidence and contrary public statements do not clearly and convincingly show that he abandoned his New York domicile—let alone make the "strong showing" a stay requires. Merits discovery should resume alongside jurisdictional discovery. At a minimum, the Court should require Defendants to complete their outstanding document production and agreed amended RFA and interrogatory responses—commitments Grifols relied on in withdrawing its motion to compel.

Dated: November 12, 2026

**PROSKAUER ROSE LLP**

*/s/ Peter D. Doyle*

Peter D. Doyle
Jeff Warshafsky
William T. Walsh, Jr.
Michael Guggenheim
Peter C. Angelica
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Telephone: (212) 969-3000
pdoyle@proskauer.com
jwarshafsky@proskauer.com
wwalsh@proskauer.com
mguggenheim@proskauer.com
pangelica@proskauer.com
*Counsel for Plaintiff Grifols, S.A.*